**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT CLEVELAND**

| | | |
|---|---|---|
| IN RE: SONIC CORP. CUSTOMER | § | MDL Case No. 1:17-md-02807-JSG |
| DATA BREACH LITIGATION | § | |
| | § | JUDGE: JAMES S. GWIN |
| THIS DOCUMENT RELATES TO: | § | |
| ALL CASES | § | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
**SONIC DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


ARGUMENT AND AUTHORITIES ........ 1

I. DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) FAILS ....... 1

A. THE APPLICABLE LEGAL STANDARD FOR RULE 12(B)(1) MOTIONS ........ 1

B. DEFENDANTS' FACTUAL ATTACK ON PLAINTIFFS' STANDING FAILS ........ 2

1. Defendants' attack on the merits of Plaintiffs' claims is improper and/or premature ........ 2

2. The "evidence" cited by Defendants is not sufficient to support finding that Plaintiffs lack Article III standing ........ 5

C. DEFENDANTS' FACIAL ATTACK ON PLAINTIFFS' STANDING FAILS ........ 7

1. Plaintiffs Gilmore and MacKay have standing ........ 7

2. Plaintiff Pearson has standing ........ 10

D. PLAINTIFFS HAVE PLAUSIBLY ALLEGED AN INCREASED RISK OF FUTURE HARM TO THEMSELVES AND THE MEMBERS OF THE PROPOSED CLASS(ES) ........ 11

E. THE INJURIES SUSTAINED BY PLAINTIFFS AND THE PROPOSED CLASS(ES) CAN BE REDRESSED BY A FAVORABLE DECISION ........ 13

II. DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) FAILS ..... 15

A. DEFENDANTS' MOTION MUST BE CONVERTED TO A MOTION FOR SUMMARY JUDGMENT ........ 15

B. THE APPLICABLE LEGAL STANDARD FOR RULE 12(B)(6) MOTIONS ........ 15

C. PLAINTIFFS HAVE STATED CLAIMS FOR VIOLATION OF STATE CONSUMER PROTECTION LAWS ........ 16

1. This is not a "shotgun" pleading ........ 16

2. If the heightened pleading standard applies, it has been satisfied ........ 17

3. Plaintiffs have standing to assert claims for consumers in other states .... 18

4. Plaintiffs have asserted valid claims under their home states' consumer protection laws ........ 19

*a.* *Mississippi* ..... 19

*b.* *Ohio* ..... 20

*c.* *Nevada* ..... 21

*d.* *Texas* ..... 24

*e.* *Florida* ..... 25

*f.* *Arizona* ..... 26

*g.* *New Mexico* ..... 27

D. THE COURT SHOULD NOT DISMISS CLAIMS FOR VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT ..... 28

E. PLAINTIFFS HAVE ASSERTED VALID NEGLIGENCE CLAIMS ..... 30

1. Plaintiffs adequately allege Defendants owed and breached the duty of care ..... 30

2. Plaintiffs properly allege causation and injuries ..... 32

F. PLAINTIFFS HAVE ASSERTED VALID NEGLIGENCE PER SE CLAIMS ..... 34

G. PLAINTIFFS HAVE ASSERTED VALID CLAIMS FOR BREACH OF IMPLIED CONTRACT ..... 35

H. PLAINTIFFS HAVE ASSERTED VALID UNJUST ENRICHMENT CLAIMS ..... 39

I. PLAINTIFFS' DECLARATORY JUDGMENT CLAIM IS NOT DUPLICATIVE ..... 40

CONCLUSION ..... 40

# TABLE OF AUTHORITIES

## Cases

*Adkins v. Apple Inc.*, 147 F. Supp. 3d 913 (N.D. Cal. 2014) ........ 10

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ........ 18

*Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011) ........ 37

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) ........ 3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 15

*Ashlock v. Sunwest Bank of Roswell, N.A.*, 107 N.M. 100 (N.M. 1988) ........ 28

*Attias v. CareFirst Inc.*, 865 F.3d 620 (D.C. Cir. 2017) ........ 6, 11, 12

*Berry v. Budget Rent a Car Sys.*, 497 F. Supp. 2d 1361 (S.D. Fla. 2007) ........ 17

*Board of County Com'rs of Clark County v. CMC of Nevada, Inc.*, 670 P.2d 102 (Nev. 1983).. 23

*Bradley v. Mortgage Electronic Registration System*, No. 1:11-CV-02492, 2012 WL 443198 (N.D. Ohio, Feb. 10, 2012) ........ 1

*Bristow First Assembly of God v. BP p.l.c.*, 210 F. Supp. 3d 1284 (N.D. Okla. 2016) ........ 34

*Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359 (S.D. Fla. 2017) ........ 39

*Buck v. Burton*, 768 F.2d 285 (8th Cir. 1985) ........ 9

*Carlsen v. GameStop Inc.*, 833 F.3d 903 (8th Cir. 2016) ........ 9, 39

*Casados v. Safeco Ins. Co. of Am.*, No. CIV 10-751, 2014 WL 11511720 (D. N.M. March 5, 2014) ........ 27

*Cataldo v. U.S. Steel Corp.*, 676 F.3d 542 (6th Cir. 2012) ........ 38

*Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815 (D. Ariz. 2016) ........ 26

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........ 13

*City of Memphis v. Wells Fargo Bank N.A.*, No. 09-2857-STA, 2011 WL 1706756 (W.D. Tenn. May 4, 2011) ........ 3

*Clapper v. Amensty Internat'l U.S.A.*, 568 U.S. 398 (2013)................................................ 11, 12

*Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988 (Fla. Dist. Ct. App. 2004) ........................... 25

*Commerce P'ship 8098 Ltd. Partnership v. Equity Contracting Co., Inc.*, 695 So.2d 383 (Fla. Dist. Ct. App. 1997)........................................................................................................... 36

*Cty. Line Inv. Co. v. Tinney*, 933 F.2d 1508 (10th Cir. 1991) ..................................................... 39

*DeFunis v. Odegaard*, 416 U.S. 312 (1974) .................................................................................. 14

*Desmond v. Baker*, No. 05-01417, 2005 WL 3276382 (Bankr. D. Mass. Aug. 24, 2005)........... 38

*Dieffenbach v. Barnes & Noble Inc., No. 17-2408*, 2018 WL 173128 (Apr. 11, 2018)... 6, 8, 9, 11

*Dirickson v. Mings*, 910 P.2d 1015 (Okla. 1996) .......................................................................... 32

*Doe v. College of Wooster*, 243 F.Supp.3d 875 (N.D. Ohio, 2017) ............................................ 15

*Dorrah v. U.S.*, No. 11-CV-04070-DEO, 2012 WL 860323 (N.D. Iowa, March 13, 2012) .......... 4

*Engl v. Natural Grocers by Vitamin Cottage, Inc.*, No. 15-cv-2129-MSK-NYW, 2016 WL 8578096 (D. Colo. June 20, 2016)......................................................................................... 37

*Enslin v. The Coca-Cola Company*, 136 F. Supp. 3d 654 (E.D. Pa. 2015) ........................ 9, 11, 37

*Erickson v. Pardus*, 551 U.S. 89 (2007) ......................................................................................... 16

*Fernandez v. United Acceptance Corp.*, 610 P.2d 461 (Ariz. Ct. App. 1980) ......................... 9, 14

*Flagstaff Med. Ctr., Inc. v. Sullivan*, 773 F. Supp. 1325 (D. Ariz. 1991)..................................... 27

*Forrester v. Southern Pac. Co.*, 134 P. 754 (Nev. 1913)............................................................. 23

*Galaria v. Nationwide Mut. Ins. Co.*, 663 Fed. Appx. 384 (6th Cir. 2016).................. 9, 11, 12, 13

*Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320 (6th Cir. 2007)............................... 2

*Gest v. Bradbury*, 443 F.3d 1177 (9th Cir. 2006)......................................................................... 13

*Global Technology Inc. v. Yubei (XinXiang) Power Steering System Co. Ltd.*, 807 F.3d 806 (6th Cir. 2015) ........................................................................................................................... 1

*Greenery Rehabilitation Group Inc. v. Sabol*, 841 F.Supp. 58 (D.C.NY. 1993)........................... 4

*Griffin v. Bank of Am., N.A.*, 226 F. Supp. 3d 899 (N.D. Ohio 2016) ......................................... 10

*Herold v. ASII Inc.*, No. 1:11-CV-1690, 2012 WL 243303 (N.D. Ohio, Jan. 23, 2012) ................ 6

*Himes v. Brown & Co. Sec. Corp.*, 518 So. 2d 937 (Fla. Dist. Ct. App. 1987) ........................... 26

*Holt v. U.S.*, 46 F.3d 1000 (10th Cir. 1995)........................................................................... 2

*Horton v. Bank of Am., N.A.*, 189 F. Supp. 3d 1286 (N.D. Okla. 2016)..................................... 39

*Howard v. Zimmer*, 299 P.3d 463 (Okla. 2013)........................................................................ 34

*Hunter v. Palisades Acquistion XVI LLC, 16 Civ. 8779 (ER)*, 2017 WL 5513636 (S.D. N.Y. Nov. 16, 2017) ........................................................................................................................ 9

*In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 3d 1197 (N.D. Calif. 2014)..... 9, 11, 12

*In re Anthem, Inc. Data Breach Litigation*, No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 17, 2016) ............................................................................................................ 10

*In re Aqua Dots Products Liability Litigation*, 654 F.3d 748 (7th Cir. 2011) ............................. 10

*In re Banner Health Data Breach Litig.*, No. CV-16-2696-PHX-SRB, 2017 WL 6763548 (D. Ariz. Dec. 20, 2017)............................................................................................... 24, 33

*In re Barnes & Noble Pin Pad Litig.*, No. 12-CV-8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) ........................................................................................................................ 6

*In re Carrier IQ Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) ............. 18

*In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518 (N.D. Ill. 2011) ............................... 37

*In re Reg'l Diagnostics, LLC*, 372 B.R. 3 (Bankr. N.D. Ohio 2007) .......................................... 17

*In re Science Applications Int'l Corp. Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14 (D.D.C. 2014) ........................................................................................................................ 8

*In re Sony Gaming Networks and Customer Data Security Breach Litigation*, 996 F. Supp. 2d 942 (S.D. Calif. 2014)................................................................................ 9, 11, 21, 26

*In re Target Corp. Data Sec. Breach Litigation*, 66 F. Supp. 3d 1154 (D. Minn. 2014) ....................................................................................... 10, 37, 39, 40

*In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017)............................................................................. 10, 11, 12

*In re: Porsche Cars North America Inc.*, 880 F. Supp. 2d 801 (S.D. Ohio 2012) ................. 17, 18

*In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583-TWT, 2016 WL 2897520 (N.D. Ga. May 18, 2016) ........................................................... 31, 34, 35

*Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064 (C.D. Ill. 2016) .................... 27, 37

*Jepson v. Ticor Title Ins. Co.*, No. C06-1723-JCC, 2007 WL 2060856 (D. Wash. May 1, 2007)........................................................................................ 19

*Jones v. City of Cincinnati*, 521 F.3d 555 (6th Cir. 2008)........................................................... 6

*Kerns v. U.S.*, 585 F.3d 187 (4th Cir. 2009) ............................................................................... 3

*Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010)...................................................... 12

*Krusinski v. US Dep't of Agriculture*, 4 F.3d 994 (6th Cir. 1993).............................................. 16

*Lambert v. Hartman*, 517 F.3d 433 (6th Cir. 2008).................................................................... 13

*Lavelle v. Owens-Corning Fiberglas Corp.*, 30 Ohio Misc. 2d 11, 507 N.E.2d 476 (Com. Pl. 1987) ......................................................................................................................... 14

*Levitt v. Sonardyne, Inc.*, 918 F. Supp. 2d 74 (D. Me. 2013) ...................................................... 37

*Lewert v. P.F. Chang's China Bistro Inc.*, 819 F.3d 963 (7th Cir. 2016) .......... 4, 9, 11, 12, 13, 14

*Lockhart v. Loosen*, 943 P.2d 1074 (Okla. 1997) ........................................................................ 30

*Lovell v. P.F. Chang's China Bistro, Inc.*, 2015 WL 4940371 (W.D. Wash. Mar. 27, 2015) ..... 38

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................................................... 7

*Macias v. HBC of Fla.*, 694 So. 2d 88 (Fla. Dist. Ct. App. 1997)............................................... 26

*Magluta v. Samples*, 256 F.3d 1282 (11th Cir. 2001).................................................................. 17

*Marrone v. Phillip Morris USA, Inc.*, 850 N.E.2d 31 (Ohio 2006) ............................................. 20

*Martin v. Home Depot U.S.A., Inc.*, 369 F. Supp. 2d 887 (W.D. Tex. 2005).............................. 24

*Maurer v. Cerkvenik-Anderson Travel, Inc.*, 181 Ariz. 294 (Ariz. Ct. App. 1994)..................... 27

*Max Arnold & Sons LLC v. W.L. Hailey & Co. Inc.*, 452 F.3d 494 (6th Cir. 2006).................... 15

*Mediacom Se. LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396 (6th Cir. 2012) ......... 14

*Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674 (6th Cir. 1988)................................. 18

*Moore v. Lafayette ins. Co.*, 458 F.3d 416 (6th Cir. 2006)........................................................... 3

*Nationwide Mutual Insurance Co.*, No. 2:13-cv-118, 2017 WL 4987663 (S.D. Ohio, Aug. 16, 2017) ....................................................................................................................... 33

*Nova Fin. Holdings, Inc. v. BancInsure, Inc.*, No. 11-07840, 2012 WL 1322932 (E.D. Pa. 2012) ....................................................................................................................... 40

*Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir.1990) ......................................... 1

*Patterson v. Beall*, 19 P.3d 839 (Okla. 2000) ............................................................................ 29

*Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651 (D. Nev. 2009) ................................................. 21

*Remijas v. Neiman Marcus Group LLC*, 794 F.3d 688 (7th Cir. 2015)......................... 8, 9, 11, 12

*Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012)............................................................ 33

*Robinson v. Sunshine Homes, Inc.*, 291 P.3d 628 (Okla. Civ. App. 2012)................................. 29

*Rogers v. Nat'l City Corp.*, No. 91103, 2009 WL 1622382 (Ohio Ct. App. June 11, 2009) ....... 37

*Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739 (S.D.N.Y. 2017) ............................... 37

*Sallee v. Dollar Thrifty Automotive Group Inc.*, No. 14-CV-250-GKF-PJC, 2015 WL 1281518 (N.D. Okla. Mar. 20, 2015)............................................................................................... 30

*Scheetz v. Consumer Research Corp*, No. 2:07-cv-00207, 2008 WL 11350242 (S.D. Ohio 2008) ....................................................................................................................... 18

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ...................................................................................... 1

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976).................................................. 13

*Sizova v. Nat'l Inst. of Standards & Technology*, 282 F.3d 1320 (10th Cir. 2002)........................ 4

*Smith v. WM. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336 (S.D. Fla. 2009) ....................................... 25

*Smithkline Beecham, Corp. V. v Cont'l Ins. Co.*, No. Civ.A. 04-2252, 2004 WL 1773713 (E.D. Pa. Aug. 4, 2004) .......................................................................................................... 40

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)....................................................... 13

*Steinbeck v. Dollar Thrifty Automotive Group Inc.*, No. 08-CV-0378-CVE-PJC, 2008 WL 4279798 (N.D. Okla. Sept. 15, 2008) ................................................................... 29, 30

*Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97 (N.M. 1991) .................................................. 28

*Strategic Income Fund LLC v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293 (11th Cir. 2002) .. 17

*Svenson v. Google Inc.*, No. 13-cv-04080-BLF, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ... 10

*Teel v. Public Serv. Co.*, 767 P.2d 391 (Okla.1985) ................................................................ 39

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ............................................ 16

*Thurman v. Pfizer, Inc.*, 484 F.3d 855 (6th Cir. 2007) ............................................................. 16

*U.S. v. Ritchie*, 15 F.3d 592 (6th Cir. 1994) .................................................................... 1

*U.S. v. Torlai*, 728 F.3d 932 (9th Cir. 2013)...................................................................... 9

*United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337 (4th Cir. 2009) ....................................... 3

*Welborn v. IRS*, 218 F. Supp. 3d 64 (D.D.C. 2016)...................................................................... 8

*West Virginia v. U.S.*, 479 U.S. 305 (1987) ........................................................................ 9

*Whitlock v. Johnson*, 153 F.3d 380 (7th Cir. 1998) ..................................................................... 19

*Wright v. U.S.*, No. 95-5175, 1996 WL 172119 (6th Cir. Apr. 11, 1996) ................................. 2, 4

*Zappos.com, Inc., 3:12-cv-00325-RCJ-VPC*, 2016 WL 2637810 (D. Nev. May 6, 2016)............ 8

**<u>Statutes</u>**

15 U.S.C. § 45.......................................................................................................... 34

Ark. Code § 4-110-104 .............................................................................................. 35

Cal Civ. Code § 1798.81.5.......................................................................................... 35

Conn. Gen. Stat. § 42-471.......................................................................................... 35

Fla. Stat. § 501.171 ................................................................................................. 35

Ind. Code § 24-4.9-3.5 .............................................................................................. 35

Mass. Gen Laws Ch. 93H, § 3 .................................................................................... 35

Miss. Code. Ann. § 75-24-15....................................................................................... 19

NRS 41.600 .......... 21, 22, 23, 24

NRS 598.0923 .......... 21, 22

NRS 603A.210 .......... 35

O.R.C. §1345.02, §1345.03, or §1345.031 .......... 20, 21, 30

Okla. Stat. tit. 15, § 753 .......... 30

Ore. Rev. Stat. § 646A.622(1) .......... 35

Tex. Bus. & Com. Code § 521.052 .......... 35

Tex. Bus. & Comm. Code § 17.50 .......... 9, 14

**Rules**

Fed. R. Civ. P. 8 .......... 16, 17

Fed. R. Civ. P. 9 .......... 17, 18

Fed. R. Civ. P. 12 .......... 15

Fed. R. Civ. P. 56 .......... 5, 15

**Other Authorities**

5B Fed. Prac. & Proc. § 1350 .......... 2, 4

Plaintiffs Septabeya Bean, Cornelius Bogard, John Stephen Dolembo, Caitlin Gilmore, Jeffrey Lewin, Megan MacKay, Dometric Pearson, and Denise Ramirez, on behalf of themselves and all others similarly situated, respectfully submit this Memorandum of Points and Authorities in Support of Plaintiffs' Opposition to the Sonic Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint.[1]

## ARGUMENT AND AUTHORITIES

### I. DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) FAILS

#### A. THE APPLICABLE LEGAL STANDARD FOR RULE 12(B)(1) MOTIONS

Motions to dismiss for lack of subject matter jurisdiction can be facial attacks or factual attacks. *See, e.g., U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the sufficiency of the pleading itself. *Id.* (*citing Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)). On such a motion, the court must take the allegations as true and construe them in the light most favorable to the nonmoving party. *Ritchie*, 15 F.3d at 598. A factual attack, by contrast, is a challenge to factual existence of subject matter jurisdiction. *Id.* When faced with a factual attack, the court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Bradley v. Mortgage Electronic Registration System*, No. 1:11-CV-02492, 2012 WL 443198 at *1 (N.D. Ohio, Feb. 10, 2012) (*citing Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990)). The court has discretion to allow affidavits, documents and even a *limited* evidentiary hearing to resolve disputed *jurisdictional* facts, *id.*, but , the court should not "weigh the evidence if the facts necessary to sustain jurisdiction implicate the merits of the plaintiff's claim." *Global Technology Inc. v. Yubei (XinXiang) Power Steering*

[1] In this Memorandum, Plaintiffs will cite to Defendants' *Memorandum of Points and Authorities in Support of Sonic Defendants' Motion to Dismiss Consolidated Complaint*, Dkt. No. 39-1, as "Def. Br." or the "Motion" and reference the page number of the docket (for example, 17) rather than the page number of the brief (for example, 5).

*System Co. Ltd.*, 807 F.3d 806, 814 (6th Cir. 2015). Instead, when the jurisdictional facts challenged are intertwined with the merits of a claim, the motion to dismiss should be treated as one for summary judgment. *See, e.g., Wright v. U.S.*, No. 95-5175, 1996 WL 172119 at *5 (6th Cir. Apr. 11, 1996).[2]

Defendants have launched both a factual and a facial attack on the Court's jurisdiction. Defendants present a *factual* attack on the Article III standing of five of the named Plaintiffs – Bean, Bogard, Dolembo, Lewin, and Ramirez. Def. Br. at 13-14, 16-18. Defendants present a *facial* attack on the Article III standing of the other three of the named Plaintiffs – Gilmore, MacKay, and Pearson. *Id.* at 14-14, 18-25. As discussed herein below, all of Defendants' arguments against Plaintiffs' standing fail.

### B. DEFENDANTS' FACTUAL ATTACK ON PLAINTIFFS' STANDING FAILS

#### 1. Defendants' attack on the merits of Plaintiffs' claims is improper and/or premature

Plaintiffs have alleged that Defendants operated antiquated payment systems and failed to take proper action to secure their customers' personal information and, as a result, Plaintiffs and the proposed class(es) are at risk of having, or have had, their data stolen by persons who gained unauthorized access to Defendants' systems. *Plaintiffs' Consolidated Class Action Complaint*, Dkt. No. 26, (hereafter, "the Complaint"), ¶¶ 9-13, 45-48, 53, 62-63, 108, 117, 119.[3] Defendants, however, cite to "evidence"–statements on their own website[4] and a declaration from one of their employees, Mark Davis-that they claim shows that customer data was not stolen from the stores

---

[2] *See also Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 331-32 (6th Cir. 2007); *Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir. 1995). *See also* Wright & Miller, 5B Fed. Prac. & Proc. § 1350 (3d ed.).

[3] Note, citations herein to "¶ __" are citations to allegations in the Complaint.

[4] It is surely no coincidence that Defendants' website contained *no* information about which stores were believed to have been affected until the day before Defendants filed this Motion.

where five of the named Plaintiffs alleged to have shopped, meaning any damages those Plaintiffs suffered is not Defendants' fault. Def. Br. at 13-14, 16-18, 56-69. Thus, Defendants' factual jurisdictional challenge goes to the merits of the case. As one court explained, "no purpose is served by indirectly arguing the merits in the context of federal jurisdiction." *Kerns v. U.S.*, 585 F.3d 187, 193 (4th Cir. 2009). By refusing to treat "indirect attacks on the merits" as Rule 12(b)(1) motions, the court affords greater protection to "the plaintiff who in truth is facing a challenge to the validity of his claim." *Id.* "If satisfaction of an essential element of a claim for relief is at issue… the jury is the proper trier of contested facts." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Accordingly, "when the jurisdictional facts and the facts central to a tort claim are inextricably intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Kerns*, 585 F.3d at 193, *citing United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009). *See also City of Memphis v. Wells Fargo Bank N.A.*, No. 09-2857-STA, 2011 WL 1706756 at *10 (W.D. Tenn. May 4, 2011) (citations omitted). Because Defendants' factual attack is directed at the merits of Plaintiffs' claims, the Court should treat Plaintiffs' allegations as true. *City of Memphis*, 2011 WL 170756 at *10. Defendants ask this Court to make Plaintiffs prove the merits of their claims in order to prove their standing. Defendants' arguments ignore the Supreme Court's instruction to lower courts "to assume jurisdiction when statutory standing and merits questions converge." *Moore v. Lafayette ins. Co.*, 458 F.3d 416, 443-44 (6th Cir. 2006) (citations omitted).

The Seventh Circuit heard and rejected the very same arguments Defendants make here—that only *some* locations were impacted by the data breach so Plaintiffs lack standing—stating:

> The plaintiffs plausibly allege that their data was stolen. In its June statement, P.F. Chang's addressed customers who had dined at *all of its stores* in the United States

> and admitted that *it did not know how many stores were affected*. * * * P.F. Chang's later analysis (based on internal information not before the district court at this stage) led it to conclude that only 33 stores were affected. *This creates a factual dispute about the scope of the breach, but* ***it does not destroy standing****.*
>
> ***
>
> ***When the data system for an entire corporation with locations across the country experiences a data breach and the corporation reacts as if that breach could affect all of its locations, it is certainly plausible that all of its locations were in fact affected.***

*Lewert v. P.F. Chang's China Bistro Inc.*, 819 F.3d 963, 968 (7th Cir. 2016) (emphasis added).

Like *P.F. Chang's,* Defendants addressed customers who shopped at *all* of their U.S. stores and acknowledged that they did not know how many stores were affected. ¶¶7-8. Defendants offered free credit monitoring to customers who shopped at *any* of their stores in 2017. ¶55. Plaintiffs alleged that they shopped at one of Defendants' stores in 2017. ¶18-26. Thus, Plaintiffs, like the plaintiffs in *P.F. Chang's*, have plausibly alleged that their data was stolen. The fact question of whether the particular store where the plaintiff shopped was affected by the data breach ***cannot be resolved at the motion to dismiss stage***. *See P.F. Chang's*, 819 F.3d at 969.

Alternatively, the Court may, in its discretion, treat Defendants' Rule 12(b)(1) motion as a motion for summary judgment, allowing Plaintiffs to conduct discovery, submit evidence, and contest the critical elements of the case. *Wright*, 1996 WL 172119 at *5.[5] A refusal to grant a party's request for discovery in such a circumstance is an abuse of discretion. *Sizova v. Nat'l Inst. of Standards & Technology*, 282 F.3d 1320 (10th Cir. 2002). This is especially true where jurisdiction hinges on facts unavailable to the plaintiffs except through discovery. *See, e.g., Dorrah v. U.S.*, No. 11-CV-04070-DEO, 2012 WL 860323 at *2 (N.D. Iowa, March 13, 2012); *Greenery Rehabilitation Group Inc. v. Sabol*, 841 F.Supp. 58 (D.C.NY. 1993). Here, for example, after

---

[5] *See also* Wright & Miller, 5B FED. PRAC. & PROC. § 1350 (3d ed.) (noting that if resolution of the jurisdictional issue "requires a ruling on the underlying substantive merits of the case, the decision should await a determination of the merits either by the district court on a summary judgment motion or by the fact finder at the trial").

Plaintiffs obtain discovery, Plaintiffs will be able to provide evidence to refute Defendants' suggestion that the locations where some Plaintiffs shopped were not affected. Federman Affidavit, Exhibit 1 hereto, ¶25. Accordingly, Plaintiffs request, pursuant to FED. R. CIV. P. 56(d), that the Court defer a decision on The Motion until Plaintiffs have had the opportunity to conduct discovery. *Id.* at ¶26.

**2. The "evidence" cited by Defendants is not sufficient to support finding that Plaintiffs lack Article III standing**

Defendants cannot definitively state what store locations were impacted by the data breach and what stores were not; rather, they only claim that "forensic evidence" gathered *"to date"* indicates that payment card data was stolen from those stores listed on Defendants' website. Def. Br. at 13-14, 17-18, 57. Thus, even if Defendants' "evidence" is taken as true, it is not evidence that personally identifiable information ("PII") of the five named Plaintiffs was *not* stolen, only that Defendants' investigation *to date* has not verified as much.[6] Further, neither the declaration nor Defendants' website provide critical information to assess their reliability such as: (1) how the investigation was conducted; (2) who decided that these were the only locations impacted; (3) what are his qualifications; (4) what information did he relied upon to reach this conclusion; and (5) whether the data he relied upon complete and reliable. Additionally, the declaration and website statements that Defendants rely upon for this Motion are inconsistent with other statements made by Defendants.[7] Therefore, even *if* it were appropriate to weigh evidence at this stage of the

[6] Ex. 1 at ¶¶10-11. *See also* Defendants' website, indicates that they are still working—present tense—with law enforcement and experienced third-party forensic experts to investigate this matter. https://www.sonicdrivein.com/-/notice-of-data-breach-faq.

[7] For instance, Defendants offer credit monitoring to customers who shopped at *any* of their stores in 2017—not just the stores they now claim were affected by the data breach. *See* https://www.experianidworks.com/sonic/ ("By clicking on 'continue' I attest to the fact that I used my credit or debit card at a Sonic Drive-In in the past year, and as a result I'm eligible to receive this offer for two years of free credit monitoring and identity restoration services.").

litigation, the "evidence" presented by Defendants is unsubstantiated, conclusory and self-serving. This is not sufficient for this Court to conclude that it lacks subject matter jurisdiction. *See, e.g.*, *Jones v. City of Cincinnati*, 521 F.3d 555, 561-562 (6th Cir. 2008) (6th Cir. Feb. 16, 2005); *Herold v. ASII Inc.*, No. 1:11-CV-1690, 2012 WL 243303 at *3–4 (N.D. Ohio, Jan. 23, 2012).

### C. DEFENDANTS' FACIAL ATTACK ON PLAINTIFFS' STANDING FAILS

In a devastating blow to Defendants' facial attack on subject matter jurisdiction, Def. Br. at 14-15, 18-26, the Seventh Circuit completely eviscerated the district court decision in *In re Barnes & Noble Pin Pad Litig.*, No. 12-CV-8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) ("*Barnes & Noble I*"), which is the cornerstone of Defendants' argument that Plaintiffs lack standing because they did not suffer an injury in fact, Def. Br. at 20-23. *Dieffenbach v. Barnes & Noble Inc.*, No. 17-2408, 2018 WL 173128, at * 1 (Apr. 11, 2018) ("*Barnes & Noble II*"). The court noted that the 2013 district court decision in *Barnes & Noble I* was implicitly reversed by the subsequent decisions in *Neiman Marcus* and *P.F. Chang's*. *Barnes & Noble II*, 2018 WL 173128, at *2. The court found the plaintiffs, clearly, *did* have standing:

> The plaintiffs have standing because the data theft may have led them to pay money for credit-monitoring services, because unauthorized withdrawals from their accounts cause a loss (the time value of money) even when banks later restore the principal, and because the value of one's own time needed to set things straight is a loss from an opportunity-cost perspective. These injuries can justify money damages, just as they support standing.

*Id.* Furthermore, the Supreme Court recently denied *certiorari* review of a decision by the D.C. Circuit which found that plaintiffs in a data breach case who had plead facts similar to those alleged by Plaintiffs had standing. *Attias v. CareFirst Inc.*, 865 F.3d 620 (D.C. Cir. 2017), *cert denied* 138 S.Ct. 981 (2018). As the D.C. Circuit noted, "[t]o demonstrate standing, a plaintiff must show that she has suffered an 'injury in fact' that is 'fairly traceable' to the defendant's actions and that is 'likely to be redressed' by the relief she seeks." *Id.* at 625 (citations omitted). "The burden to make

all of these showings always remains with the plaintiff, but the burden grows as the litigation progresses." *Id*. (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). At the pleading stage, plaintiffs only need to "state a plausible claim" that each of the standing elements exists. *Id.*

Plaintiffs here allege that they have suffered a variety of harms a result of the data breach, including unauthorized charges, loss of their personal and financial information, loss of use of funds, time spent, increased risk of fraud and identity theft, diminution in value of their personal data, and money paid to Defendants that they would not have paid had they known Defendants did not keep their data secure. ¶16-35, 63. That these types of injuries give rise to Article III standing is nearly universally accepted. Defendants' arguments that Plaintiffs have not been injured and are not facing the risk of imminent harm fail.

### 1. Plaintiffs Gilmore and MacKay have standing

Plaintiff Gilmore *experienced fraud* as a result of the data breach. Using data stolen from Defendants, individuals made charges to Gilmore's checking account. ¶21. These fraudulent charges drained her account, leaving her *without access to her funds* and unable to pay for necessities for herself and her young child. ¶16(a), 16(d), 21, 33. Gilmore *spent time* investigating the fraudulent charges to get her funds returned, and monitored her accounts for further fraud. ¶16(e), 21, 32, 61. Further, because Gilmore did not have access to her funds for approximately ten days, she had to *borrow money* to get by until her bank to return the charges to her. ¶16(d), 21, 33. She has not been reimbursed for these losses. ¶35. These events caused Gilmore embarrassment, worry, and stress. ¶21.

Plaintiff MacKay has also *experienced fraud* as a result of the data breach. Using data stolen from Defendants, individuals made unauthorized charges that depleted MacKay's checking account, causing charges to be rejected. ¶16(a), 24, 33. MacKay *had to expend time* investigating the fraudulent charges, trying to get her funds returned, and monitoring her accounts for further

fraud. ¶16(e), 24, 32, 61. MacKay also made charges to her credit card for necessities, which caused her to *incur fees and interest*, for bills and expenses until her bank completed its investigation and reversed the fraudulent charges. ¶16(d), 24, 33. The whole incident caused MacKay embarrassment, worry, and stress. ¶24.

Had Gilmore and MacKay known that Defendants did not adequately protect their personal information, they would not have shopped at Sonic. ¶16(h), 27, 29. Additionally, they overpaid for the products they purchased from Defendants when Defendants failed to deliver a secure transaction as promised. ¶138-154.

Despite all this, Defendants, amazingly, argue that Gilmore and MacKay have not suffered a cognizable injury. Def. Br at 20-23. It is clear from these well pled allegations that The Motion should be denied. Indeed, Defendants have ignored the overwhelming authority supporting MacKay's claims and argue that MacKay has not suffered a cognizable injury.

Standing for Gilmore and MacKay is established because they have ***already** experienced fraud* as a result of the data breach. *See, e.g., In re Science Applications Int'l Corp. Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 25 (D.D.C. 2014); *Welborn v. IRS*, 218 F. Supp. 3d 64, 76–77 (D.D.C. 2016); *In re Zappos.com, Inc.*, 3:12-cv-00325-RCJ-VPC, 2016 WL 2637810, at *4 (D. Nev. May 6, 2016) *reversed in part In re Zappos.com, Inc.*, 884 F.3d 893 (9th Cir. 2018). That the fraudulent charges were, or might be, reimbursed by the card issuer does not affect the Court's ability to hear the case. *See, e.g., Remijas v. Neiman Marcus Group LLC*, 794 F.3d 688, 696-697 (7th Cir. 2015).[8]

Gilmore and MacKay also have standing because they had to spend time investigating the

[8] *Barnes & Noble I*, which Defendants rely upon for this proposition was, effectively, overturned by the *Neiman Marcus* decision. *Barnes & Noble II*, 2018 WL 1737128 at *1.

fraudulent charges, trying to get their funds returned, and monitoring their accounts for further fraud. *See*, *e.g. Barnes & Noble II*, 2018 WL 1737128, at *1; *P.F. Chang's*, 819 F.3d at 967; *Neiman Marcus*, 794 F.3d at 693; *In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 3d 1197, 1215 (N.D. Calif. 2014); *In re Sony Gaming Networks and Customer Data Security Breach Litigation*, 996 F. Supp. 2d 942 (S.D. Calif. 2014); *Enslin v. The Coca-Cola Company*, 136 F. Supp. 3d 654, 664 (E.D. Pa. 2015). In fact, the Sixth Circuit has indicated that it, too, will recognize time spent dealing with fraud is a cognizable injury in a data breach. *Galaria v. Nationwide Mut. Ins. Co*., 663 Fed. Appx. 384, 388 (6th Cir. 2016). Gilmore and MacKay also have standing because they were damaged by not having access to their money for a period of time. *Barnes & Noble II*, 2018 WL 1737128 at *1. This so-called "time value of money" has been recognized by courts in many contexts. *See*, *e.g.*, *West Virginia v. U.S.*, 479 U.S. 305, 311 (1987) (noting that complete compensation must include an amount for delay in paying amounts owed).[9] The embarrassment, worry, and stress Gilmore and MacKay suffered are also recognized, compensable damages. *See, e.g.*, TEX. BUS. & COMM. CODE § 17.50; *Fernandez v. United Acceptance Corp.*, 610 P.2d 461, 464 (Ariz. Ct. App. 1980) (noting that the "gravamen" of privacy violation is the "injury to the feelings of the plaintiff and the mental anguish and distress caused thereby").

Gilmore and MacKay have standing because they would not have shopped at Defendants' stores if they had known that Defendants did not keep their personal information secure and/or overpaid for the products they did purchase. *See, e.g., Carlsen v. GameStop Inc.*, 833 F.3d 903, 909 (8th Cir. 2016) (plaintiff who alleged the value of product delivered was less than promised

[9] *See also Buck v. Burton*, 768 F.2d 285, 287 (8th Cir. 1985) (holding that equity requires that plaintiff be compensate for loss of use of money); *Hunter v. Palisades Acquistion XVI LLC*, 16 Civ. 8779 (ER), 2017 WL 5513636 (S.D. N.Y. Nov. 16, 2017) (discussing claim for, *inter alia*, unlawful restraint of access to account); *U.S. v. Torlai*, 728 F.3d 932, 945, n. 11 (9th Cir. 2013) (discussing the value of having funds available over a period of time).

due to data breach had standing).[10] Furthermore, the value of Gilmore and MacKay's personal and financial information has diminished as a result of the data breach. ¶ 16(g), 30, 63(g). This is also a sufficiently concrete injury for purposes of Article III standing. *See, e.g. In re Yahoo! Inc. Customer Data Security Breach Litig*., No. 16-MD-02752-LHK, 2017 WL 3727318 at *13 – *14 (N.D. Cal. Aug. 30, 2017); *In re Anthem, Inc. Data Breach Litigation*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016); *Svenson v. Google Inc.*, No. 13-cv-04080-BLF, 2015 WL 1503429, at *5 (N.D. Cal. Apr. 1, 2015). In short, every argument Defendants make against Gilmore and MacKay's standing has been rejected. The Motion should be denied.

**2. Plaintiff Pearson has standing**

Plaintiff Pearson shopped at Defendants' stores during the breach period. ¶25. Her credit card data was stolen. ¶16(b), 25. She has spent time dealing with the breach, ¶16(c), 25, 61, but her efforts have been unsuccessful and she has been unable to access and make use of her credit since the breach. ¶16(d), 25, 32. Like Plaintiffs Gilmore and MacKay, Pearson would not have bought from Defendants if they had disclosed that they did not adequately protected their customers' personal information. ¶138-154. She also overpaid for the products she purchased from Defendants when Defendants failed to deliver a secure transaction as promised. *Id.*

The fact that Pearson's personal information was stolen gives her standing. *See, e.g., Griffin v. Bank of Am., N.A.*, 226 F. Supp. 3d 899 (N.D. Ohio 2016) (holding that violation of a privacy right protected by statute is a concrete injury and, thus, there is Article III standing); TEXAS BUS. & COMM. CODE § 521.052(a) (personal information must be protected from unlawful use or disclosure). Furthermore, as discussed above with regard to Plaintiffs Gilmore and MacKay, the

[10] *See also In re Target Corp. Data Sec. Breach Litigation*, 66 F. Supp. 3d 1154, 1166 (D. Minn. 2014); *Adkins v. Apple Inc.*, 147 F. Supp. 3d 913, 918 (N.D. Cal. 2014); *In re Aqua Dots Products Liability Litigation*, 654 F.3d 748, 750-751 (7th Cir. 2011).

fact that Plaintiff Pearson has spent time dealing with consequences of the theft of her personal information and has been deprived of access to credit means that she has standing. *See, e.g. Barnes & Noble II*, 2018 WL 1737128, at *1; *P.F. Chang's*, 819 F.3d at 967; *Neiman Marcus*, 794 F.3d at 693; *Adobe*, 66 F. Supp. 3d at 1215; *In Re Sony Gaming Networks*, 996 F. Supp. 2d 942 (S.D. Cal. 2014); *Coca-Cola*, 136 F.Supp.3d at 664; *Galaria*, 663 Fed. Appx. at 388.

### D. PLAINTIFFS HAVE PLAUSIBLY ALLEGED AN INCREASED RISK OF FUTURE HARM TO THEMSELVES AND THE MEMBERS OF THE PROPOSED CLASS(ES)

Plaintiffs allege that their PII, including payment card data ("PCD"), was stolen from Defendants and sold on the black market. ¶5, 14, 31, 63(c). Criminals have already used the stolen data of some named Plaintiffs and members of the proposed Class(es), and the rest face an increased risk of such misuse for years. ¶5-6, 14, 16(f), 16(i), 18-26, 28, 31-33, 59-60. Defendants have recognized the imminent risk that Plaintiffs and the members of the proposed Class(es) face as a result of the breach and have offered ID theft protection. ¶55.

Defendants ignore these allegations and assert that Plaintiffs have not alleged a "certainly impending" risk of harm and lack Article III standing. Def. br. at 24-25. Defendants cannot cite to any controlling law and ignore numerous cases, including one from this circuit, holding that allegations like those made here *establish* Article III standing. *See, e.g. Galaria*, 663 Fed. Appx. at 388; *Attias*, 865 F.3d at 626; *Adobe*, 66 F. Supp. 3d at 1214; *Yahoo*., 2017 WL 3727318 at *17. Further, contrary to Defendants' suggestion, the Supreme Court's decision in *Clapper v. Amensty Internat'l U.S.A.*, 568 U.S. 398 (2013), supports Plaintiffs' standing in this case. *Clapper* merely confirms that, where standing is based on a "threatened injury," that injury "must be *certainly impending* to constitute injury in fact and that allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (emphasis added)(citations omitted). *Clapper* recognized that, "[i]n some instances, we have found standing based on a 'substantial risk' that the harm will

occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." *Id.* The D.C. Circuit, in a case where the Supreme Court denied certiorari, explained it this way:

> Our conclusion that the alleged risk here is "substantial" is bolstered by a comparison between this case and the circumstances in *Clappe*r. In *Clapper*, the plaintiffs feared the interception of their overseas communications by the government, but that harm could only occur through the happening of a series of contingent events, none of which was alleged to have occurred by the time of the lawsuit. The harm also would not have arisen unless a series of independent actors, including intelligence officials and Article III judges, exercised their independent judgment in a specific way. Even then, the intelligence officials would need to have actually captured the plaintiffs' conversations in the process of targeting those plaintiffs' foreign contacts.
>
> ***
>
> As the Seventh Circuit asked, in another data breach case where the court found standing, "Why else would hackers break into a ... database and steal consumers' private information? Presumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those consumers' identities." ***No long sequence of uncertain contingencies involving multiple independent actors has to occur before the plaintiffs in this case will suffer any harm; a substantial risk of harm exists already, simply by virtue of the hack and the nature of the data that the plaintiffs allege was taken.*** That risk is much more substantial than the risk presented to the *Clapper* Court, and satisfies the requirement of an injury in fact.

*Attias*, 865 F.3d at 628-629 (internal citations omitted) (emphasis added). The Sixth Circuit has indicated its acceptance of this logic, holding:

> There is no need for speculation where Plaintiffs allege that their data has already been stolen and is now in the hands of ill-intentioned criminals. Indeed, Nationwide seems to recognize the severity of the risk, given its offer to provide credit-monitoring and identity-theft protection for a full year. Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs complaints.

*Galaria*., 663 Fed. Appx. at 388 (internal citations omitted). Numerous other courts have reached the same conclusion. *See, e.g., Neiman Marcus*, 794 F.3d at 693; *P.F. Chang's*, 819 F.3d at 693; *Adobe*, 66 F.Supp. at 12140-1215; *Yahoo*, 2017 WL 3727318 at *12-*13; *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010).

There is no basis *in the pleadings*, to support Defendants' assumption that Gilmore's and MacKay's financial institution cancelled and replaced their compromised card. Def. Br. at 24. As

such this argument by Defendants may be disregarded.[11] Similarly, Defendants' argument that Plaintiffs lack standing to bring claims for Defendants' failure to protect customers' PII because injury depends on the conduct of a third party, Def. Br. at 25, may be disregarded. The Sixth Circuit has held that identity theft is fairly traceable to a defendant that mishandled the plaintiff's personal data even though "a third party was undoubtedly the direct cause of [the plaintiff's] injuries." *Lambert v. Hartman*, 517 F.3d 433, 438 (6th Cir. 2008). *See also Galaria*, 663 Fed. Appx. at 390. In the instant case, Plaintiffs' have alleged that but for Sonic's antiquated systems and failure to take proper precautionary measures to secure its customers' personal information, the hackers would not have been able to steal Plaintiffs' data. ¶9-14, 53, 62, 120-121. Therefore, Plaintiffs have met the threshold for Article III standing.

### E. THE INJURIES SUSTAINED BY PLAINTIFFS AND THE PROPOSED CLASS(ES) CAN BE REDRESSED BY A FAVORABLE DECISION

Defendants attempt to shoehorn a bevy of civil rights and environmental cases into their brief in an effort to prove that Plaintiffs have merely suffered "psychic harm" and therefore a favorable decision by this Court will not redress their injuries. Def. Br. at 25-26.[12] This

---

[11] Defendant's argument is also based on the assumption that only PCD was stolen and that such data cannot be used to perpetrate identity theft so, if a person's card is cancelled, she faces no further risk of harm. As the Seventh Circuit said in rejecting this argument, this is "a factual assumption that has yet to be tested." *P.F. Chang's*, 819 F.3d at 967. In fact, as the court pointed out, it is plausible to believe that the affected consumers *must* be at risk of identity theft due to the stolen data because the defendant offered identity theft protection to its customers. *Id.*

[12] *Citing,, e.g., Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 41 (1976) (denying Article III standing to indigent plaintiffs who brought an action against the Secretary of Treasury and the Commissioner of Internal Revenue for allowing favorable tax treatment to nonprofit hospitals who *only* provided emergency treatment to indigents); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) (environmental group had no Article III standing to bring an action against a steel company who had filed late paperwork required under the Emergency Planning and Community Right to Know Act of 1986); *Gest v. Bradbury,* 443 F.3d 1177, 1181 (9th Cir. 2006) (civil rights action brought by signature collectors against the Oregon Secretary of State for rejecting signature sheets that did not comply with procedure); *City of Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983) (plaintiff did not establish Article III standing in seeking injunctive relief barring all Los Angeles police officers from using a chokehold when subjugating a suspect);

misconstrues the allegations of the Complaint. Defendants admit that they experienced a data breach and that customers' PII was stolen. Def. Br. at 13. As a result of the data breach, Plaintiffs have suffered economic and other harm, including trespass, damage and theft to personal property, improper disclosure of PII, loss of privacy, out-of-pocket expenses related to correcting fraudulent charges, and the inability to access their own funds. ¶63. Clearly, Plaintiffs here have suffered more than mere "psychic harm." As discussed in Section I(C), the allegations made by Plaintiffs *are* actual, injury-in-fact damages, which can be redressed by a favorable decision.

In short, this case and the cases cited by Defendants have *nothing* to do with one another. In each of the cases cited by Defendants, the plaintiffs had suffered no concrete damages—causally connected or not—whereas, in the present case, Plaintiffs have sustained actual damages. At the motion to dismiss stage, Defendants have not, and cannot, present evidence that proves Plaintiffs' damages were *not* caused by Defendants' actions or negligence. *P.F. Chang's,* 819 F.3d at 967; *Mediacom Se. LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 399 (6th Cir. 2012). To the extent that Plaintiffs have sought damages for any form of "psychic harm," it would be part of claims recognized by state law. *See, e.g.,* TEX. BUS. & COMM. CODE § 17.50 (mental anguish recoverable); *Fernandez,* 610 P.2d at 464 (permitting recovery for "injury to the feelings of the plaintiff and the mental anguish and distress caused thereby"); *Lavelle v. Owens-Corning Fiberglas Corp.,* 30 Ohio Misc. 2d 11, 14, 507 N.E.2d 476, 480 (Com. Pl. 1987) (permitting recovery for "reasonable apprehension of a potential harm flowing from a present injury"). Defendants' arguments regarding "psychic harm" are unavailing.

---

*DeFunis v. Odegaard*, 416 U.S. 312, 319 (1974) (plaintiff brought an action alleging unconstitutional denial of his law school application, but the case was moot because plaintiff was in his last quarter of law school).

## II. THE MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) FAILS

### A. THE MOTION MUST BE CONVERTED TO A MOTION FOR SUMMARY JUDGMENT

Defendants ask for dismissal of certain claims based upon extrinsic evidence that, according to Defendants, "prove" that PCD was not stolen from the Sonic restaurants where five of the named plaintiffs (Bean, Bogard, Dolembo, Lewin, and Ramirez) alleged they shopped. Def. Br. at 13-14, 17-18, 34-36, 39, 42, 47. Defendants' rely upon this factual assertion as grounds for dismissal of all plaintiffs' claims pursuant to FED. R. CIV. P. 12(b)(1). *Id.* at 13-14, 17-18. Defendants' *also* rely on this extrinsic "evidence" for dismissal of Plaintiffs' claims pursuant to the Florida, Nevada, Ohio, and New Mexico consumer protection statutes and for dismissal of Plaintiffs' common law negligence and negligence per se claims pursuant to FED. R. CIV. P. 12(b)(6). *Id.* at 34-36, 39, 42, 47. It is well settled that if a party presents the Court with extrinsic evidence in support of or in opposition to a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) or (c), and the Court does not exclude such evidence, the motion is converted to a motion for summary judgment under Rule 56. FED. R. CIV. P. 12(d). *See, e.g., Max Arnold & Sons LLC v. W.L. Hailey & Co. Inc.*, 452 F.3d 494, 503 (6th Cir. 2006); *Doe v. College of Wooster*, 243 F.Supp.3d 875, 887 (N.D. Ohio, 2017). Accordingly, the extrinsic evidence cited by Defendants must be excluded <u>or</u> the Motion must be converted to a motion for summary judgment. If the Motion is converted to one for summary judgment, Plaintiffs request, pursuant to Fed. R. Civ. P. 56(d), that the Court postpone a decision until Plaintiffs conduct discovery. Ex. 1 at ¶26.

### B. THE APPLICABLE LEGAL STANDARD FOR RULE 12(B)(6) MOTIONS

The relevant question for this Court when reviewing the Consolidated Complaint is whether Plaintiffs have plead facts sufficient to "draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal of a complaint under FED. R. CIV. P. 12(b)(6) is only warranted "if the plaintiff's complaint fails to

state a claim upon which relief can be granted." *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). In considering the Motion, the Court must view the facts in the light most favorable to the non-moving party and accept the allegations in the complaint as true. *Id.* Further, the Court must draw all reasonable inferences in the non-moving party's favor. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Plaintiffs are only required to plead a "short and plain statement of the claim" showing that they are entitled to relief. FED. R. CIV. P. 8(a)(2). Plaintiffs do not have to plead specific facts in order to meet this standard. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The defendant need only be given notice as to what the claim is and what grounds support it. *Id.*

### C. PLAINTIFFS HAVE STATED CLAIMS FOR VIOLATION OF STATE CONSUMER PROTECTION LAWS

#### 1. This is not a "shotgun" pleading

Defendants' claim that Count I is a "classic shotgun" pleading because Plaintiffs have asserted that Defendants violate several states' statutes. Def. Br. at 27-28 *citing Krusinski v. US Dep't of Agriculture*, 4 F.3d 994 (6th Cir. 1993). Defendants' primary complaint about Plaintiffs supposed "shotgun" pleading relates to Count I, which alleges relates to the consumer-protection statutes of thirty-nine (39) states. However, the *number* of statutes that Defendants' conduct violated asserted does not make this a "shotgun" pleading. Plaintiffs are asking that the Court certify a *nationwide* class—a fact Defendants ignore for purposes of this motion even though Defendants' admit that a data breach occurred and (even by Defendants' own estimation) PCD and/or PII was stolen from *at least* 314 stores across twenty-eight states. Def. Br. at 13, 57-69.

The Complaint alleges what Defendants did wrong (¶83), the particular statutes Defendants violated (¶84, 86), how Plaintiffs were damaged (¶85), and the relief Plaintiffs seek (¶88-89). Plaintiffs have asserted claims under different states' laws because Defendants operate in those

states. Setting forth separate counts for each state's statute is redundant and unnecessary where, as here, the same conduct violates multiple laws. Plaintiffs must simply provide a "short plain" statement of their claims and the relief they seek. FED. R. CIV. P. 8(a)(2). Plaintiffs have done that and Defendants have been fairly apprised of the conduct, laws and damages at issue. In any event, the remedy for a shotgun complaint—at least the first time the argument is raised—is generally not dismissal, but to require the plaintiff to re-plead their claims. *In re Reg'l Diagnostics, LLC*, 372 B.R. 3, 21 n.76 (Bankr. N.D. Ohio 2007); *Magluta v. Samples*, 256 F.3d 1282 (11th Cir. 2001); *Strategic Income Fund LLC v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293 (11th Cir. 2002).

**2. If the heightened pleading standard applies, it has been satisfied**

Defendants argue, that claims under *some* states' consumer protections statutes "sound in fraud." Def. Br. at 29. Notably, the heightened pleading standard does not apply to *all* states' consumer protection act claims. For example, "the heightened pleading requirements of Rule 9(b) do not apply to causes of action under FDUTPA because Rule 9(b) applies only to claims for fraud, and conduct short of actual fraud can constitute a violation of the statute." *Berry v. Budget Rent a Car Sys.*, 497 F. Supp. 2d 1361, 1366-67 (S.D. Fla. 2007) (citations omitted). In any event, to satisfy FED. R. CIV. P. 9(b) with regard to consumer protection act claims, a pleading must allege the time, place and content of the alleged misrepresentation. *In re: Porsche Cars North America Inc.*, 880 F. Supp. 2d 801, 814-815 (S.D. Ohio 2012). The rule only requires that the plaintiff plead the *circumstances* – not the evidence – of the fraud. *Id.* Moreover, "Rule 9(b) may be relaxed when there has been a lack of discovery and the information needed for a plaintiff to achieve particularity is held exclusively by the opposing party. The main purpose behind Rule 9(b) is to provide the defendant with notice of the plaintiff's claim so that the defendant may prepare an informed responsive pleading." *Id.* (internal citations omitted).

Plaintiffs need only give the Defendants fair notice to the specific acts which constituted

fraudulent behavior so that they may have a fair opportunity to rebut Plaintiffs' claims. *Scheetz v. Consumer Research* Corp, No. 2:07-cv-00207, 2008 WL 11350242 at *9 (S.D. Ohio 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). Plaintiffs' allege that Defendants did not secure their customers' PII and PCD and that Defendants knew that such information was at risk but failed to disclose these facts to customers. ¶6-9, 12, 53, 83. Plaintiffs make allegations regarding how such conduct was unfair or deceptive. ¶83-84. Each Plaintiff asserts they would not have shopped with Defendants if Defendants had disclosed this information. ¶16(h), 27, 29. This is sufficient to satisfy Rule 9(b), *Porsche*, 880 F. Supp. 2d at 816, and belie Defendants' argument that Plaintiffs' allegations are so "vague" that they do not state a claim under any states' consumer protection laws, Def. Br. at 32-33. Specifics such as when the decision to conceal the data security defect was made, who made it, where it occurred, and where it was implemented are facts that, if they exist, are likely within Defendants' control and are best addressed after the close of discovery. *Porsche,* 880 F. Supp. 2d at 817.

**3. Plaintiffs have standing to assert claims for consumers in other states**

Defendants put the cart before the horse by asking the Court to dismiss the state consumer protection claims of members of the proposed Class(es) whose state of residence is different from the named Plaintiffs. "[T]he Supreme Court has expressly recognized that, in at least some cases, courts may address certification prior to resolving standing questions." *In re Carrier IQ Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1071 (N.D. Cal. 2015). The Supreme Court has held explicitly that when such questions of certification are "logically antecedent to the existence of any Article III issues, it is appropriate to reach them first." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). The issue of class certification certainly is antecedent to a standing analysis, because if the case were certified, Plaintiffs would be able to assert standing to bring the remaining state law claims. *See Jepson v. Ticor Title Ins. Co.*, No. C06-1723-JCC, 2007 WL 2060856 at *2

(D. Wash. May 1, 2007). It would be premature for the Court to sweep aside such a vast number of claims prior to addressing the certification of this nationwide class because "[t]he certification of a class changes the standing aspects of a suit." *Id.* The standing discussion changes drastically after certification because "[a] properly certified class has a legal status separate from and independent of the interest asserted by the named plaintiff." *Whitlock v. Johnson*, 153 F.3d 380, 384 (7th Cir. 1998). In cases where the named plaintiffs "purport[] to represent a class of those similarly injured by [the same] Defendant under analogous laws in other states[,] Addressing class certification prior to standing… is clearly warranted." *Jepson*, 2007 WL 2060856 at *2. Defendants do not argue that the law of the absent class members' home state consumer protection law differs in any significant and material way from the named Plaintiffs' home state consumer protection laws. Accordingly, the question of whether Plaintiffs have standing to assert claims for class members from other states should be reserved until certification.

#### 4. Plaintiffs have asserted valid claims under their home states' consumer protection laws

##### *a. Mississippi*

Plaintiff Bean did attempt to resolve her dispute with Defendants, informally, before suit was filed, albeit, not in writing. The Mississippi Consumer Protection Act ("MCPA") only requires that a plaintiff attempt to resolve the dispute in a manner approved by the attorney general ("AG"). Miss. Code. Ann. § 75-24-15(2). The Mississippi Attorney General's website suggests trying to resolve an issue with a company; it does not say a person *has* to submit a complaint to the AG, only that they *may*. http://www.ago.state.ms.us/wp-content/uploads/2013/08/Consumer-Guide-to-Mississippi-Consumer-Protection-Law.pdf Accordingly, Bean attempted to resolve the matter, pre-suit, in a manner approved by the AG. She has stated a claim under the MCPA.

***b. Ohio***

Under the Ohio Consumer Sales Practices Act ("OCSPA"), Plaintiffs must show their claim for relief satisfies the requirements of O.R.C. § 1345.09(B). *Marrone v. Phillip Morris USA, Inc.*, 850 N.E.2d 31 (Ohio 2006). As the Ohio Supreme Court explained, a party moving for certification under O.R.C. § 1345.09(B) must demonstrate that the defendant acted "in the face of prior notice that its conduct was deceptive or unconscionable." *Marrone*, 850 N.E.2d at 34. A moving party can satisfy notice by either (1) citing a rule by the Attorney General that declares the practice at issue to be deceptive or unconscionable ***or*** (2) a determination by a court made available for public inspection by the Attorney General that the particular practice at issue was determined to violate O.R.C. §1345.02, §1345.03, or §1345.031. *Id. Marrone* stands for the proposition of law that O.R.C. § 1345.09(B) requires an aggrieved party be able to show past notices that provide *meaningful notice* of specific acts or practices that violate the OCSPA in *similar industries* and *similar conduct* to that of the party relief is being sought. *Id.* at 36. A consent entry satisfies the prior notice requirement when an independent adjudication of the merits of the Plaintiffs' claims have been made and the consent entry contains substantially similar activity.

The interpretation suggested by Defendants would frustrate a consumer's ability to utilize O.R.C. § 1345.09(B) even when the defendant has notice that the conduct at issue is prohibited. At least one Court of Appeals in Ohio has agreed with the analysis of the use of consent/default judgments when there is clear factual reasoning. In *Charvat v. Teleytics, LLC*, the Tenth District Court of Appeals held that while consent judgments may not have precedential value even within a consent judgment, an act determined by a court to violation to OCSPA is actionable by O.R.C. 1345.09(B). 2006 Ohio 4623, ¶ 43 (10th Dist. 2006). In contrast, the rule proposed by Defendants has not been adopted by any Ohio appellate court.

Defendants' reliance on *Sony*, 996 F.Supp.2d at 1006, is misplaced. In that case, plaintiffs

conceded that a public inspection file ("PIF") or substantially similar judgment did not exist. Here, Plaintiffs have directed the Court and Defendants to the Choicepoint PIF. ¶ 87. This Court should find that the Choicepoint PIF is substantially similar to the facts and issues here in that the defendant did not adequately protect consumer PII. Much as here, third parties gained access to consumers' PII on Choicepoint's systems. *Choicepoint* at p. 2. Choicepoint admitted it was a business that collects, maintains and discloses certain consumers' PII and that it had a duty to implement measures reasonably designed to maintain the privacy, security and integrity of that information by, among other things, restricting access and maintain security measures. *Id.* at p. 4. Choicepoint then agreed to implement procedures to audit all persons who accessed their data and provide copies to state agencies. *Id.* at p. 20-21. Plaintiffs have alleged that Defendants collected customers' PII, third parties breached Defendants' system and customer PII (including Plaintiffs') was compromised. *Choicepoint* put Defendants on notice that they needed to keep customer PII secure. The Choicepoint PIF meets the requirements under *Marrone* for the Plaintiffs to state relief under O.R.C. § 1345.09(b).

***c. Nevada***

Plaintiffs allege that Sonic violated NRS 41.600 and 598.0923(3). ¶86(u). NRS 41.600 provides a remedy for victims of "consumer fraud," with such fraud defined to encapsulate a violation of NRS 598.0923(3). *See* NRS 41.600(e) (defining "A deceptive trade practice as defined in NRS 598.0195 to 598.0925, inclusive."). NRS 598.023(3) in turn defines a "deceptive trade practice" to be one in which a defendant knowingly violates "a state or federal statute or regulation relating to the sale or lease of goods or services." The well-pled Complaint establishes (1) Defendants committed an act of consumer fraud in the form of failing to comply with state regulations, (2) this act caused (3) damages to Plaintiff Dolembo. *See* ¶81-89; *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009) (describing elements of consumer fraud claim).

These allegations plead a consumer fraud claim.[13]

Defendants wrongly assert that Plaintiffs have not alleged that they violated any statute. This is not true. NRS 598.0923(3) does not require that a "state" violation is restricted to a Nevada statute; and Plaintiffs alleged, *inter alia*, that Defendants' violations were "substantially similar" to those of entities who violated Ohio law, ¶87, and elsewhere allege that Defendants' failure to safeguard Plaintiffs' personal information violated the laws of a number of states—including Nevada. ¶134. By continuing to operate a 30-year-old payment card system, Sonic knowingly failed to maintain its security infrastructure in a manner that failed to comply with PCI guidance and thereby violated Nevada law. ¶9-13 117(d), 119(c ).

Defendants next claim that only actual damages are recoverable under NRS 41.600. Def. Br. at 35. The statutory remedies provided Nevada consumers in NRS 41.600 include "(a) [a]ny damages that the claimant has sustained; (b) [a]ny equitable relief that the court deems appropriate; and (c) [t]he claimant's costs in the action and reasonable attorney's fees." *See* NRS 41.600(3). Plaintiffs requested no fewer than eight discrete forms of equitable injunctive remedies arising in connection with Defendants' violations of Nevada state law – recovery plainly within the purview of NRS 41.600(b). ¶88. Plaintiffs also requested attorney's fees, cognizable under NRS 41.600(c). ¶164(b), (e). Setting aside Defendants' apparent failure to read subsection (b) and (c) or apply those sub-provisions to the allegations in the Complaint, Defendants' assertion that the reference in subsection (a) to "damages" must be limited to "actual damages" is unfounded. The phrase "actual damages" appears nowhere in NRS 41.600, and the structure of the subsection—with

[13] For reasons articulated in Section II(A), suggestion that Plaintiffs' Nevada law claims fail because Plaintiff Dolembo "did not shop at a Sonic Drive-In where payment card data was stolen," Def. Br. at 35, expands the argument beyond the allegations of the Complaint and must be disregarded or the motion converted from a Rule 12(b)(6) motion to a Rule 56 motion.

subparts which broadly address legal and equitable relief, as well as a fee-shifting mechanism—do not suggest any qualification. A cornerstone of statutory interpretation is the presumption that any construction must "give meaning to all of their party and language," and "[a] reading of legislation which would render any part thereof redundant or meaningless, where that party may be given a separate substantive interpretation, should be avoided." *Board of County Com'rs of Clark County v. CMC of Nevada, Inc.*, 670 P.2d 102, 105 (Nev. 1983). Here, reading the term "damages" in NRS 41.600(3)(a) to mean "actual damages" would render the term "actual" redundant as used in NRS 41.690(1), 41.700(2), 41.730(2)(a) and 41.800(2)(b). Controlling Nevada authority designed to instruct the interpretation of Nevada statutes, clarifies that the word "damages" in NRS 41.600(3)(a) is viewed expansively, to include not only actual damages, but also punitive damages. The Complaint seeks punitive damages. ¶ 164(b).

Even if the Court agrees with Sonic that NRS 41.600(3)(b) and (c) can be read out of existence and NRS 41.600(3)(a) can be construed to limit "damages" to "actual damages," this conclusion would be meaningless. While Defendants contend that all Dolembo did was "preemptively cancel[]his debit card as a result of the data breach," Def. Br. at 23,[14] Dolembo alleged he incurred actual damages including lost time in dealing with his financial institution to prevent fraud, as well as the inconvenience of cancelling his payment card. ¶20. The Nevada Supreme Court has recognized lost time as a type of actual damage for over a century. *Forrester v. Southern Pac. Co.*, 134 P. 754, 775 (Nev. 1913). More contemporary authority recognizes that actual damages include actions a plaintiff takes to mitigate his exposure to identity theft. *See In re*

[14] Sonic's use of the word "preemptively" in this sentence is telling. Surely, if Mr. Dolembo had not incurred the time and expense of taking adequate measures to protect his privacy by cancelling the payment card which had been allegedly exposed to criminals, Sonic would take him to task for failing to attempt to mitigate his damages.

*Banner Health Data Breach Litig.*, No. CV-16-2696-PHX-SRB, 2017 WL 6763548, at *9 (D. Ariz. Dec. 20, 2017). Even under Defendants' restrictive interpretation of NRS 41.600, Dolembo plausibly alleged damages stemming from a violation of NRS 41.600 and 598.0923(3).

#### *d. Texas*

Plaintiffs have adequately alleged all elements for a cause of action under the Texas Deceptive Trade Practices Act ("TDTPA"). The TDTPA provides:

> A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:
> (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:
> (A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and
> (B) relied on by a consumer to the consumer's detriment;
> (2) breach of an express or implied warranty; [or]
> (3) any unconscionable action or course of action by any person[.]

TEXAS BUS. & COMM. CODE § 17.50 (emphasis added).[15]

Plaintiffs allege: (1) that Plaintiffs Gilmore and Pearson are consumers of Defendant's goods or services in the state of Texas, (¶21, 25); (2) that Defendants committed false, misleading, and deceptive acts in connection with the sale of goods by misrepresenting to its customers that it had adequate systems and procedures to reasonably safeguard customers' personal information (¶29, 83); and (3) that they *relied* on Defendants' false, misleading, and deceptive acts when they chose to shop at Defendants' stores and *would not have bought* from Defendants if they had known that Defendants systems were inadequate (¶27). Thus, Plaintiffs' allegations satisfy sub-part (1). Furthermore, Plaintiffs allege that Defendants breached an implied contract with its consumers,

---

[15] Note, Defendants attempt to modify this standard by stating that recovery under the TDTPA requires Plaintiffs to establish that Defendants' false, misleading, or deceptive acts "were a producing cause of ***actual*** damages." Def. Br. at 38-39 (*citing to Martin v. Home Depot U.S.A., Inc.*, 369 F. Supp. 2d 887, 894 (W.D. Tex. 2005). However, not only is this not the standard under the TDTPA, the language quoted by Defendant in support of this contention does not appear anywhere in the cited case.

whereby Defendants warranted they would safeguard consumers' personal information using reasonable or industry-standard means and would timely notify Plaintiffs' and the Class in the event of a data breach. ¶141, 146. Thus, Plaintiffs' allegations satisfy sub-part (2). Additionally or alternatively, Plaintiffs allege that Defendants engaged in an unconscionable course of action by failing to disclose they lacked systems and procedures to reasonably safeguard customers' personal information. ¶83. This satisfies sub-part (3). Finally, Plaintiffs allege that Defendants caused Plaintiffs' actual and economic damages. 21, 25, 29-33. The Motion should be denied.

***e. Florida***

Defendants claim that Plaintiff Lewin[16] has not stated a claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") because he has not alleged "actual damages." Def. Br. at 33-34. Defendants' argument ignores the fact that "'Florida courts have allowed diminished value to serve as 'actual damages' recoverable in a FDUTPA claim." In addition, "'actual out of pocket losses' are not a prerequisite to a deceptive trade practices action in Florida." *Smith v. WM. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009) (quoting *Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990 (Fla. Dist. Ct. App. 2004)) (citations omitted). Analogous FDUTPA claims that a plaintiff paid more for a product than she would have paid absent deception, have been held to state plausible claim. ¶ 16(h), 27, 29; *Smith*, 663 F.Supp.2d at 1340-41. Defendants, instead, focus on claims that Lewin's credit card was misused and impending harm as not being "actual damages" under FDUTPA. Def. Br. at 34. They assert that Plaintiff Lewin "alleges only that he received a notice that someone *attempted* to use his credit card in Georgia" but, his damages

[16] For reasons articulated in Section II(A), suggestion that Plaintiffs' Florida law claims fail because Plaintiff Lewin "did not shop at a Sonic Drive-In where payment card data was stolen," Def. Br. at 34, expands the argument beyond the allegations of the Complaint and must be disregarded or the motion converted from a Rule 12(b)(6) motion to a Rule 56 motion.

are "speculative".[17] This argument is illogical. The fact that a fraudulent charge could even be *attempted* means that Lewin's personal information *is* in the hands of criminals because of Defendant's data security failures.

Defendants cite to *Sony*, 996 F. Supp. 2d 942, but the holding of that case is easily distinguishable. *Sony* held that "although Plaintiffs' supplemental ***brief contends*** that Plaintiffs suffered actual damages in the form of the purchase price of their Consoles, because they bargained for secure access to the [Play Station Network ('PSN')] at the time they purchased their [PlayStation 3 console ('PS3') ('Consoles')], ***the[ir complaint] does not support these contentions***." *Id.* at 993. The FDUTPA claim did not allege "Plaintiffs would not have purchased their Consoles but for Sony's alleged deceptive or unfair conduct." *Id.* Here, Lewin alleges the information that was briefed, but not pled, in *Sony*. The Motion should be denied.

***f. Arizona***

Plaintiffs' claim under Arizona's Consumer Fraud Act ("ACFA") are well pled. Defendants' assertion that Plaintiffs have failed to set forth a "statement" by Sonic that was misleading, Def. Br. at 38, fails because Arizona courts have held that the ACFA applies to "[m]aterial omissions..." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825 (D. Ariz. 2016) (citations omitted). The court in *Cheatham* held that ADT's failure to "notify customers that their systems are unencrypted or insufficiently secure" constituted a material omission significant enough to be actionable under the ACFA. *Id* at 830. Sonic made a similar "material omission" by

[17] The case Defendants cite are inapposite. *See Macias v. HBC of Fla.*, 694 So. 2d 88, 90 (Fla. Dist. Ct. App. 1997) (alleging a "missed opportunity to play [a] contest and win the prize money"); *Himes v. Brown & Co. Sec. Corp.*, 518 So. 2d 937, 938-39 (Fla. Dist. Ct. App. 1987) (recognizing that plaintiff's "only claim is that Brown's actions deprived him of anticipated profits because he would have sold (or purchased, in the case of the short sale) the securities at the optimal time and earned a profit" but plaintiff "did not present any evidence which would prove that he would have completed the time-sensitive transactions at precisely the correct time and we doubt whether he could have offered such proof.")

failing to notify Plaintiffs that its payment system was not secure, and that by using it Plaintiffs were putting their personal information at risk. Under the ACFA defendants "can be held liable for misrepresentations and 'concealment, suppression or omission,' of any material fact in selling its [merchandise or] services." *Maurer v. Cerkvenik-Anderson Travel, Inc.*, 181 Ariz. 294, 297 (Ariz. Ct. App. 1994).

Further, Defendants' argument that Plaintiffs' ACFA claim fails because Plaintiff MacKay has not suffered any actual damages, Def. Br. at 38, also fails because the ACFA requires that Plaintiffs suffered damages due to "reliance on the unlawful acts" of Defendants. *Flagstaff Med. Ctr., Inc. v. Sullivan*, 773 F. Supp. 1325, 1362 (D. Ariz. 1991). The fraudulent charges to Plaintiff MacKay's account are not the only damages she alleges, and all damages she suffered came as a result of reliance upon Defendant's misrepresentation. It has recently been held that an ACFA claim against a fast food company for failing to secure customers' PCD should survive a motion to dismiss. *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072-1073 (C.D. Ill. 2016). The Motion should be denied.

***g. New Mexico***

Defendants assert that Plaintiffs' claim under the New Mexico Unfair Practices Act ("NMUPA") fails because the fraudulent charges to the accounts of Plaintiff Ramirez[18] were refunded and, therefore, she has not suffered any loss of money or property. Def. Br. at 39. However, in a case cited by Defendants in the very next paragraph, the court held that "[n]otwithstanding statutory language to the contrary, a UPA claim need not allege actual monetary or property loss." *Casados v. Safeco Ins. Co. of Am.*, No. CIV 10-751, 2014 WL

---

[18] For reasons articulated in Section II(A), suggestion that Plaintiffs' New Mexico law claims fail because Plaintiff Ramirez "did not shop at a Sonic Drive-In where payment card data was stolen," Def. Br. at 39, expands the argument beyond the allegations of the Complaint and must be disregarded or the motion converted from a Rule 12(b)(6) motion to a Rule 56 motion.

11511720, at *14 - *15 (D. N.M. March 5, 2014). Regardless, Ramirez did allege loss of money – over $1,000 to fraudulent charges, the loss of use of those funds, and a $36.50 insufficient funds fee. ¶26. Furthermore, as Defendants admit, Def. Br. at 39-40, the NMUPA applies to material omissions as well as affirmative statements. Defendant's failure to notify Plaintiffs that its payment system was not secure and that by using it Plaintiffs were putting their personal information at risk, constitutes a material omission because if that information had been disclosed Plaintiffs would not have bought from Defendants. ¶16(h), 27, 29. In order to make an omission "knowingly," in violation of the NMUPA, it is enough that a Defendant, "in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97 (N.M. 1991). Defendants knew their systems were vulnerable to persons looking to steal valuable customer data. ¶12, 53. Defendants, however, did not reveal this to consumers. Undoubtedly, Defendants knew they would lose customers if it became known that data collected as part of transacting with Defendants was not kept secure. However, even if the misrepresentation/omission was made with pure intent it is not protected from liability under the NMUPA. *Ashlock v. Sunwest Bank of Roswell, N.A.*, 107 N.M. 100 (N.M. 1988) ("If purity of intent at the moment of making the representation were a complete defense, without regard to the conduct of the representing party before the deal is consummated, the [NMUPA] would become toothless…"). The Motion should be denied.

### D. THE COURT SHOULD NOT DISMISS CLAIMS FOR VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT

Defendants claim that because none of the named Plaintiffs made a purchase from one of Defendants' stores in Oklahoma, the Court should dismiss all claims for violation of the Oklahoma Consumer Protection Act ("OCPA") with prejudice, Def. Br. at 40-41, but, as discussed in Section II(C)(3), *supra*, Plaintiffs bring this case as a proposed *nationwide* class. Some members of the

proposed class made purchases from Defendants' stores in Oklahoma. Defendants even admit that their investigation, to date, shows that customer data was stolen from some of their Oklahoma stores. Def. Br. at 63. Moreover, Defendants are headquartered in Oklahoma and all decisions regard data security (and presumably, marketing and public announcements) were made in Oklahoma. ¶36-40, 49, 96. As such, the misrepresentation and omissions regarding the security of customers' data emanated from Oklahoma and the OCPA applies.

"The elements of a consumer's private right of action under the [OCPA] are (1) that the defendant engaged in an unlawful practice; (2) that the practice occurred in the course of the defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury. The Act is remedial in nature and is to be liberally construed to effectuate its underlying purpose." *Robinson v. Sunshine Homes, Inc.*, 291 P.3d 628, 634 (Okla. Civ. App. 2012) *citing Patterson v. Beall*, 19 P.3d 839 (Okla. 2000). While Defendants argue that the OCPA cannot be applied to transactions that occurred in other states, Def. Br. at 40-41, there is nothing in the plain language of the OCPA that restricts its applicability to transactions that occur within the state. Further, no *Oklahoma* court has held that the OCPA does *not* apply to transactions that took place in another state. *Id.*

Defendants rely on two unpublished decisions from the Northern District of Oklahoma to assert that the OCPA cannot be applied "extraterritorially." In *Steinbeck*, the court recognized that the OCPA does not expressly require that the transaction have occurred in Oklahoma. *Steinbeck v. Dollar Thrifty Automotive Group Inc.*, No. 08-CV-0378-CVE-PJC, 2008 WL 4279798 at * 2 (N.D. Okla. Sept. 15, 2008). Noting that the plaintiff had not specifically alleged that the defendant "created, mandated, or administered the Fee [at issue] from its corporate headquarters in Oklahoma," *id.*, the Court decided, based on the fact the Oklahoma Supreme Court had decided

that the *Ohio* consumer protection law did not apply extra-territorially, that the OCPA did not apply to the plaintiff's transaction, which occurred in Arizona. *Id.* at *3. However, the Ohio statute, unlike Oklahoma's, specifies that it only applies to transactions that occur in the state. *Compare* OKLA. STAT. tit. 15, § 753 *with* O.R.C. § 1345.04. Therefore, Plaintiffs assert the conclusion reached in *Steinbeck* about the applicability of Oklahoma's law is incorrect.[19] As the statute does not prohibit application of the OCPA to transactions that occur in other states and the wrong emanated from Oklahoma, the court should decline to follow *Steinbeck* and deny the Motion. Alternatively, the Court should delay determining whether Plaintiffs have standing to assert OCPA claims until certification. *See* Section II(C)(3).

### E. PLAINTIFFS HAVE ASSERTED VALID NEGLIGENCE CLAIMS

To state a claim for negligence, Plaintiffs must allege that (1) Defendants owed a duty of reasonable care to Plaintiffs; (2) breached that duty; (3) a causal connection between Defendants' conduct and the resulting injury; and (4) damages. *See, e.g. Lockhart v. Loosen*, 943 P.2d 1074, 1079 (Okla. 1997).

#### 1. Plaintiffs adequately allege Defendants owed and breached the duty of care

Defendants stored and maintained personal information, including PCD, of Plaintiffs and Class members. ¶106. Defendants were aware of the risks inherent in collecting and storing PII and received warnings from within and outside the company regarding its vulnerability to a potential attack. ¶107. In 2013, Defendants announced an intent to upgrade the company's antiquated POS systems; however, as of April 14, 2017, only seventy-seven percent of Defendants' 3,593 locations were updated. ¶45-48. Even though Defendants were aware of the numerous data

---

[19] The subsequent federal court decision cited by Defendants, *Sallee v. Dollar Thrifty Automotive Group Inc.*, No. 14-CV-250-GKF-PJC, 2015 WL 1281518 at * 8 (N.D. Okla. Mar. 20, 2015), simply followed *Steinbeck* and contained no new analysis of Oklahoma law.

breaches suffered by other national entities, they failed to invest in data security systems and technology to encrypt PCD. ¶53, 107. Defendants owe duties of care to Plaintiffs and the Class members to: (i) exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII and PCD in their possession; (ii) protect customers' PII and PCD using reasonable and adequate security procedures and systems that are compliant with the PCI-DSS standards and consistent with industry-standard practices; (iii) implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and, (iv) to promptly notify Plaintiffs and Class members of the data breach. ¶108.

Courts have held that companies have a legal duty to safeguard customer information, particularly when the company knew or should have known of foreseeable risks to their data security systems, because "[a] retailer's actions and inactions, such as disabling security features and ignoring warning signs of a data breach, are sufficient to show that the retailer caused foreseeable harm to a plaintiff and therefore owed a duty in tort." *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583-TWT, 2016 WL 2897520, at *3 (N.D. Ga. May 18, 2016). Indeed, "[t]o hold that no such duty existed would allow retailers to use outdated security measures and turn a blind eye to the ever-increasing risk of cyber attacks, leaving consumers with no recourse to recover damages even though the retailer was in a superior position to safeguard the public from such a risk." *Id.* at *4.

Defendants do not deny that they owed these duties to Plaintiffs and Class members, nor do they deny that they breached these duties of care. Def. Br. at 41-43. Defendants were aware of the foreseeable risks that it subjected Plaintiffs to as a direct result of its decision to continue operating with susceptible security systems. ¶109-112. Despite this knowledge, Defendants failed to protect Plaintiffs' personal information. *Id.* Defendants breached the duties they owed to

Plaintiffs by exposing Plaintiffs' personal information to a foreseeable risk of harm through its failure to "(i) secure its point-of-sale systems; (ii) secure access to its servers; (iii) comply with industry standard security practices; (iv) follow the PCI-DSS standards; (iv) encrypt PCD at the point-of-sale and during transit; (v) employ adequate network segmentation; (vi) implement adequate system and event monitoring; (vii) utilize modern payment systems that provided more security against intrusion; (viii) install updates and patches in a timely manner; and, (ix) implement the systems, policies, and procedures necessary to prevent this type of data breach. ¶117. As a result of the Defendants' security failure, the personal information and payment card data ("PCD") of at least 5 million of Defendants' customers has been exposed to criminals for misuse. ¶14. The Court should construe Defendants' failure to challenge the allegations in the Complaint they owed Plaintiffs and Class members the duties of care alleged therein (and discussed above), or that Defendants breached those duties by, *inter alia*, failing to implement adequate computer systems and data security practices to safeguard the PII and PCD of Plaintiffs and Class members, as acknowledgements that Plaintiffs have sufficiently alleged the duty and breach elements of their negligence claim.

**2. Plaintiffs properly allege causation and injuries**

Whether there is a causal connection between Defendants' negligence and Plaintiffs' injuries is typically an issue for the jury, because "[c]ausation traditionally lies within the realm of fact, not law." *Dirickson v. Mings*, 910 P.2d 1015, 1020 (Okla. 1996). Plaintiffs allege that absent Defendants' negligence, their personal and financial information either would not have been compromised or they would have been able to prevent some or all of their damages. ¶120. Plaintiffs further allege that as a direct result of Defendants' negligence, Plaintiffs personal information, including their PCD, was stolen by the hackers and has been exposed to criminals on

the black market. ¶5, 7, 14.

Defendants ignore Plaintiffs' detailed allegations which describe the causal link between Defendants' negligence and their injuries, and cite *Galaria v. Nationwide Mutual Insurance Co.*, No. 2:13-cv-118, 2017 WL 4987663 (S.D. Ohio, Aug. 16, 2017), for the proposition that pleading "time and sequence" allegations regarding data breach is insufficient to satisfy the causation element of a negligence claim, and that Plaintiffs' allegations do not allege a sufficient nexus between the data breach and the injuries suffered by Plaintiffs as a result of the data breach. Def. Br. 41-42. However, *Galaria*'s decision to imbue the passage of time with independent substantive meaning is not universally shared.

For example, the Eleventh Circuit has found that conduct occurring years after alleged identity theft could qualify to satisfy causation, so long as a nexus between the two events "includes more than a coincidence of time and sequence." *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1327 (11th Cir. 2012). Further, an Arizona trial court decision, issued shortly after *Galaria*, found that allegations that (1) inadequate security measures left PII exposed, (2) financially motivated criminals stole the PII, and (3) the theft led to identity them and an increased risk of identity theft, requiring plaintiffs to take protective actions *was* sufficient to show causation. *In re Banner Health Data Breach Litigation*, No. CV-16-2696-PHX-SRB, 2017 WL 6763548, at *9 (D. Ariz. Dec. 20, 2017). The pattern of events articulated in *In re Banner* is precisely what befell Plaintiffs here. ¶5. Plaintiffs were exposed to injury and the risk of future injury, and were forced to take corrective measures. ¶27-35, 120-121. Further, the injuries Plaintiffs allege, ¶18-26, are consistent with the types harm likely to result from the theft of PII and PCD, ¶16-17, 58. Plaintiffs allege detailed, non-speculative damages arising from the actual theft and fraudulent use of their private information, such as the fact it was being sold on the dark web, they have alleged more

than a mere coincidence between time and sequence. Plaintiffs have stated a claim for negligence.

### F. PLAINTIFFS HAVE ASSERTED VALID NEGLIGENCE PER SE CLAIMS

For negligence per se, a plaintiff must show (1) the claimed injury is of a type intended to be prevented by the statute or regulation; (2) the injured party is a member of the class intended to be protected by the statute or regulation; and (3) the claimed injury was caused by the statutory or regulatory violation. *Bristow First Assembly of God v. BP p.l.c.*, 210 F. Supp. 3d 1284, 1294 (N.D. Okla. 2016), reconsideration denied, No. 15-CV-523-TCK-FHM, 2017 WL 3123661 (N.D. Okla. July 21, 2017) (citing *Howard v. Zimmer*, 299 P.3d 463, 474 (Okla. 2013)). Section 5 of the Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45. The Oklahoma Supreme Court has found that a negligence per se action can be brought for violation of a federal statute, even when that statute provides no private right of action. *See Howard*, 299 at 467. Defendants' failure to adhere to industry standards coupled with their decision to continue operating with antiquated security systems created the foreseeable risk (and actual result) of its systems being infiltrated by the data hackers resulting in Plaintiffs' and Class members' PII and PCD has being stolen and misused.

Defendants contends that Plaintiffs negligence per se claim fails because the FTCA and the state statutes referenced in the Complaint do not sufficiently state a standard or enumerate any required or prohibited acts by which Defendants failed to comply. Def. Br. at 43-47. However, of the seven cases they cite for the proposition that a statute must be "sufficiently specific," *none* involve either a data breach or interpretation of the FTCA. Def. Br. at 44-45. Defendants ignore the more recent, on-point case law – like *Home Depot*, which involved application of negligence per se allegations to the FTC Act in response to a data breach. In *Home Depot*, the court found that an allegation that "Home Depot violated [Section 5] by failing to use reasonable measures to protect PII and not complying with applicable industry standards, including PCI DSS as described

in detail previously in this complaint" was sufficient to allege a violation of negligence per se, as "the plaintiffs are within the class of persons intended to be protected by the statute, and….the harm suffered is the kind the statute meant to protect." *Home Depot*, 2016 WL 2897520, at *5 n. 65. Thus, the question as to whether the FTCA is "sufficiently specific" to support a negligence per se claim has already been answered in the affirmative.

Defendants' assertion that Plaintiffs cannot base their negligence per se claims on state data breach laws because none of the statutes Plaintiffs cite are "sufficiently specific," Def. Br. at 46-47, also fails. First and foremost, the statutes Plaintiffs cite from Arkansas, California, Connecticut, Florida, Indiana, Massachusetts, Nevada, Oregon, and Texas *all* impose a duty on Defendants to implement reasonable security procedures to safeguard electronically stored personal information. ¶134 (citing, *e.g.*, Ark. Code § 4-110-104; Cal Civ. Code § 1798.81.5; Conn. Gen. Stat. § 42-471; Fla. Stat. § 501.171(2); Ind. Code § 24-4.9-3.5; Mass. Gen Laws Ch. 93H, § 3(a); NRS 603A.210; Ore. Rev. Stat. § 646A.622(1); and Tex. Bus. & Com. Code § 521.052(a)). This is sufficiently specific considering the standards set by the Payment Card Industry.[20] For each of the cited statutes, Plaintiffs are within the classes of persons the statutes were designed to protect, and the harm suffered is precisely the type these statutes are designed to avoid. Defendants' argument for dismissal of Plaintiffs' negligence *per se* claims fails.

### G. PLAINTIFFS HAVE ASSERTED VALID CLAIMS FOR BREACH OF IMPLIED CONTRACT

Defendants move to dismiss Plaintiffs' breach of implied contract claims, contending that only the seven states in which the eight named plaintiffs actually shopped are those for which this claim could be brought (i.e., Arizona, Florida, Mississippi, Nevada, New Mexico, Ohio, and

[20] Nevada not only requires that merchants who accept payment via payment cards adopt "reasonable security measures," but further requires explicit compliance "with the current version of the Payment Card Industry (PCI) Data Security Standard." NRS 603A.215(1).

Texas). Def. Br. at 41, n. 8. Veering outside the pleadings, Sonic claims that only Plaintiffs from Arizona and Texas can recover in this action, because its forensic examination "to date" has not revealed that Plaintiffs shopped at stores which were actually impacted. Def. Br. at 16-18.[21] However, Defendants' 40-page brief fails to cite a single case from Arizona or Texas in support of dismissal of these state law implied-contract claims.[22] Neither Plaintiffs nor the Court should bear the burden of Defendants' failure to argue the applicability of any state law. Defendants only touch on law governed by Florida and Ohio as it relates to the breach of the implied contract. Consequently, Plaintiffs restrict their specific analysis to the breach-of-the-implied-contract claims as they arise under Florida and Ohio law, and suggest that the Court find the Motion is not properly supported with respect to any other state.

Under Florida law, "[t]o prove that a quasi-contract exists, the Plaintiff must establish that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit; (3) the defendant accepted or retained the benefit; and (4) it would be inequitable for the defendant to retain the benefit without paying for it." *Commerce P'ship 8098 Ltd. Partnership v. Equity Contracting Co., Inc.*, 695 So.2d 383, 386 (Fla. Dist. Ct. App. 1997). Plaintiffs' allegations satisfy this standard, alleging that benefits were conferred on Defendants in the form of payments for goods (¶ 149); Defendants knew of and accepted these benefits (¶ 150); and it would be inequitable for Defendants to retain the full benefit of the payment in circumstances where implicit in the transaction of private payment card data was the promise that Sonic would safeguard that data (¶ 153). Similarly in Ohio, promissory estoppel requires a plaintiff to allege facts which demonstrate (1) a clear and unambiguous promise; (2) reliance on the promise; (3) that the reliance is reasonable

[21] As discussed in Section II(A), this converts the Motion to one for summary judgment.

[22] Sonic's voluminous brief also fails to provide even a passing citation to case law from Mississippi, Nevada, or New Mexico in support of dismissal of Plaintiffs' implied-contract claims.

and foreseeable; and (4) that he was injured by his reliance. *Rogers v. Nat'l City Corp.*, No. 91103, 2009 WL 1622382 (Ohio Ct. App. June 11, 2009). Defendants promised to safeguard Plaintiff's PCD and PII, which Plaintiffs relied on when paying Defendants with a payment card. ¶148-154. The price of food purchased by Plaintiffs necessarily included the cost of data security, which was foreseeable because no consumer expects their PCD to be stolen when it is relinquished to complete a business transaction. *Id.* Plaintiffs were damaged by this reliance, as their data was stolen—in other words, when Defendants did not deliver data security as promised. *Id.*

In *Hannaford*, one of the earliest appellate opinions on the topic, the First Circuit addressed an implied-contract theory pled after a retail store data breach, and found that "a jury could reasonably find an implied contract between Hannaford and its customers that Hannaford… would take reasonable measures to protect the information." *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 159 (1st Cir. 2011). The *Hannaford* holding has been cited favorably by numerous federal trial courts in Illinois, Colorado, Maine, Minnesota, and Pennsylvania.[23] One of these was *Target*, 66 F. Supp. 3d at 1176, in which the Minnesota District Court concluded that "a customer's use of a credit or debit card to pay at a retailer may include the implied contract term that the retailer 'will take reasonable measures to protect the information' on these cards."[24] Less than a month ago, a federal court interpreting Georgia state law found that "it is reasonable to infer from the facts and circumstances of the case that both Arby's and the Consumer Plaintiffs have an understanding that

---

[23] *See Enslin*, 2017 WL 1190979 at *14; *Engl v. Natural Grocers by Vitamin Cottage, Inc.*, No. 15-cv-2129-MSK-NYW, 2016 WL 8578096, at *11 (D. Colo. June 20, 2016); *Irwin*, 175 F. Supp. 3d at 1070; *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1176 (D. Minn. 2014); *Levitt v. Sonardyne, Inc.*, 918 F. Supp. 2d 74, 83 (D. Me. 2013); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 531 (N.D. Ill. 2011).

[24] *See also Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017) (finding that a data provider who required PII as part of an employment relationship evinced "an implicit promise . . . to act reasonably to keep its employees' PII safe.").

every sale of an Arby's 'Beef and Cheddar' is not accompanied by unauthorized fraudulent charges on the customer's bank statement." *In re Arby's Rest. Grp. Inc. Litig.*, No 1:17-cv-00514-AT, ECF No. 139, at 40 (N.D. Ga. Mar. 5, 2018.[25]. Even Defendants' self-chosen authority is in accord:

> [t]he Court does not doubt that the offer and acceptance of a credit card as payment of a consumer debt necessarily involves certain implied promises, such as that the card is not fraudulent and that the vendor will utilize the card only for payment of the debt owed. Such promises arise out of the acts of the parties when viewed in light of the surrounding circumstances and the common understanding of the transaction.

*Lovell v. P.F. Chang's China Bistro, Inc.,* No. C14–1152RSL, 2015 WL 4940371, at *3, n.4 (W.D. Wash. Mar. 27, 2015). Plaintiffs' implied contract allegations rest on the very commonsense understanding consumer have that, by accepting payment cards at their stores, the merchant is promising to keep that PCD safe.

Finally, Defendants ask the Court to consider its Answer and Affirmative Defenses in connection with their argument that Defendants "do not own or operate any Sonic Drive-In Restaurants and, therefore, they could not have entered into any payment transaction with Plaintiffs…" Def. Br. at 48. However, a Rule 12(b)(6) motion to dismiss "is generally an inappropriate vehicle for dismissing a claim based upon" an affirmative defense.[26] *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).[27] This "general" practice can be overridden if the substance of an affirmative defense requires mechanical application of an unequivocal proposition.

---

[25] A copy of opinion is attached hereto as Exhibit 2.

[26] *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (discussing limited exception where the statute of limitations is alleged as an affirmative defense); *see also Desmond v. Baker*, No. 05-01417, 2005 WL 3276382, at *1 (Bankr. D. Mass. Aug. 24, 2005) (finding that "a motion to dismiss under Rule 12(b)(6) tests only the sufficiency of the complaint," and that a defendant's recourse to affirmative defenses was "extraneous" and could not be considered).

[27] *See also Desmond v. Baker*, No. 05-01417, 2005 WL 3276382, at *1 (Bankr. D. Mass. Aug. 24, 2005) (finding that "a motion to dismiss under Rule 12(b)(6) tests only the sufficiency of the complaint," and that a defendant's recourse to affirmative defenses was "extraneous" and could not be considered).

*Id.* That isn't the case here. The ownership of Sonic franchises–and more specifically, the relative control Defendants exert over franchisee in connection with payment card infrastructure–are highly factual issues to be determined via discovery. Defendants were free to style the Motion as one for a motion for judgment on the pleadings under Rule 12(c), but did not do so. Defendants should be held to their strategic choice, and the Court must disregard the allegations and affirmative defenses. The Motion should be denied.

### H. PLAINTIFFS HAVE ASSERTED VALID UNJUST ENRICHMENT CLAIMS

To state a claim for unjust enrichment, a party must allege enrichment to another coupled with a resulting injustice. *Cty. Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1518 (10th Cir. 1991) citing *Teel v. Public Serv. Co.*, 767 P.2d 391, 398 (Okla.1985).[28] Unjust enrichment is a recognized ground for recovery under Oklahoma law. *Horton v. Bank of Am., N.A.*, 189 F. Supp. 3d 1286, 1289 (N.D. Okla. 2016). Defendants misconstrue the factual underpinnings of Plaintiffs' claim for unjust enrichment, and again cites cases from jurisdictions which by its own reasoning are inapplicable and readily distinguishable. In *GameStop*, 833 F.3d at 903, the plaintiff failed to allege that any specific portion of the subscriber fee he paid went toward data protection. Similarly, in *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359 (S.D. Fla. 2017), the plaintiff failed to allege that she paid any money above and beyond what she paid for her services. But unlike *GameStop* and *Brush*, Plaintiffs in this case allege that protection of their payment data was implicit in their payment for food and services from Defendants, and had they been made aware of Sonic's inadequate data security systems or were notified by Defendants that their systems had been compromised, Plaintiffs would not have made any of these purchases. ¶27, 85(g), 149-151. Defendants were therefore unjustly enriched and should not be permitted to retain

---

[28] *See also Target Corp.*, 66 F. Supp. 3d at 1177 (the substantive law of unjust enrichment is consistent across all jurisdictions).

these benefits conferred by Plaintiffs. *In re Target,* 66 F. Supp. 3d at 1177-78. The Motion should be denied.

### I. PLAINTIFFS' DECLARATORY JUDGMENT CLAIM IS NOT DUPLICATIVE

Defendants' argument to dismiss the Plaintiffs' declaratory judgment claim is illogical given their desire to seek dismissal of the declaratory relief sought under Plaintiffs' claims under Count II, Count III, and Count V. Defendants point to *Smithkline Beecham, Corp. V. v Cont'l Ins. Co.*, No. Civ.A. 04-2252, 2004 WL 1773713 (E.D. Pa. Aug. 4, 2004), and ask this Court to adopt a blanket rule that when Plaintiffs seek duplicative relief in multiple claims, those claims should be dismissed. This reading of *Smithkline* is misplaced. In a subsequent case out of the same judicial district, a Court clarified the analysis of *Smithkline*. Declaratory judgments are binding adjudications that set forth the rights and other legal relations of the parties involved without regard for whether or not further relief is or could be claimed. *Nova Fin. Holdings, Inc. v. BancInsure, Inc.*, No. 11-07840, 2012 WL 1322932 at *7 (E.D. Pa. 2012) (9th Ed. 2009). The issue is whether or not the Plaintiffs will suffer prejudice from dismissal of the declaratory judgment claim if they can receive the same relief under another claim. *Id.* at *8. Should this Court grant dismissal of Counts II, Count III and Count V in their entirety, Count VII is not duplicative as it would be the only count where the Plaintiffs seek declaratory relief. Count VII should only disposed of by this Court if this Court disposed of all of the other Counts where the Plaintiffs could be afforded Declaratory Relief. The Plaintiffs would request any decision to dismiss Count VII be held in abeyance until the close of discovery and any dispositive Motions under Civ. R. 56 are filed.

## CONCLUSION

**WHEREFORE,** Plaintiffs request an Order Denying Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint in its entirety and for all other relief this Court may deem just and proper.

Dated: April 13, 2018

Respectfully Submitted,

/s/ William B. Federman
William B. Federman
Carin L. Marcussen
Joshua D. Wells
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com
clm@federmanlaw.com
jdw@federmanlaw.com

*Interim Lead Counsel for Plaintiffs*

Marc E. Dann (0039425)
Brian D Flick (0081605)
DANN LAW
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
mdann@dannlaw.com
bflick@dannlaw.com

*Interim Liaison Counsel for Plaintiffs*

Thomas A. Zimmerman, Jr.
tom@attorneyzim.com
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, IL 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180
tom@attorneyzim.com

Melissa R. Emert
STULL, STULL, & BRODY
6 East 45th Street
New York, NY 10017
Telephone: (954) 341-5561
Facsimile: (954) 341-5531
memert@ssbny.com

Michael Fuller
OLSEN DAINES
US Bancorp Tower
111 Southwest 5th Ave, Suite 3150
Portland, OR 97204
Telephone: (503) 201-4570
Facsimile: (503) 361-1375
michael@underdoglawyer.com

Miles N. Clark
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Telephone: (702) 825-6060
Facsimile: (702) 447-8048
miles.clark@knepperclark.com

*Plaintiffs Steering Committee*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2018, a copy of foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system. All other parties will be served by email.

/s/ *William B. Federman*
William B. Federman