**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT CLEVELAND**

| | | |
|---|---|---|
| IN RE: SONIC CORP. CUSTOMER | § | MDL Case No. 1:17-md-02807-JSG |
| DATA BREACH LITIGATION | § | |
| | § | JUDGE JAMES S. GWIN |
| THIS DOCUMENT RELATES TO: | § | |
| ALL CASES | § | |

**REPRESENTATIVE PLAINTIFFS' MEMORANDUM**
**OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR**
**<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT</u>**

William B. Federman
Carin L. Marcussen
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone:  (405) 235-1560
Facsimile:  (405) 239-2112
wbf@federmanlaw.com
clm@federmanlaw.com

*Interim Lead Counsel*

Thomas A. Zimmerman, Jr.
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, IL 60602
Telephone:  (312) 440-0020
Facsimile:  (312) 440-4180
tom@attorneyzim.com

*Member of Plaintiffs' Steering Committee*

Michael Fuller
OLSEN DAINES
US Bancorp Tower
111 Southwest 5th Ave, Suite 3150
Portland, OR 97204
Telephone:  (503) 201-4570
Facsimile:  (503) 362-1375
michael@underdoglawyer.com

*Member of Plaintiffs' Steering Committee*

Marc E. Dann (0039425)
Brian D Flick (0081605)
DANNLAW
P.O. Box 6031040
Cleveland, OH  44103
Telephone: (216) 373-0539
Facsimile:  (216) 373-0536
notices@dannlaw.com

*Interim Liaison Counsel*

Melissa R. Emert
STULL, STULL, & BRODY
6 East 45th Street
New York, NY 10017
Telephone:  (954) 341-5561
Facsimile:  (954) 341-5531
memert@ssbny.com

*Member of Plaintiffs' Steering Committee*

Miles N. Clark
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Telephone:  (702) 825-6060
Facsimile:  (702) 447-8048
miles.clark@knepperclark.com

*Member of Plaintiffs' Steering Committee*

## TABLE OF CONTENTS

**INTRODUCTION**....................................................................................................1

**BACKGROUND**.....................................................................................................5

I.     **NATURE OF THE LITIGATION AND PROCEDURAL HISTORY**...........................5

II.    **SUMMARY OF THE SETTLEMENT**.......................................................8

    **A.  The Settlement Class**.......................................................................8

    **B.  Payments to Settlement Class Members**.........................................9

    **C.  Agreement Relating to Sonic's Business Practices**........................10

    **D.  Service Awards to Class Representatives**.......................................10

    **E.  Attorneys' Fees and Costs**...............................................................12

    **F.  Settlement Class Notice**...................................................................12

        **1.  In-Store Notice**...............................................................13

        **2.  Internet Banner Notice**..................................................14

        **3.  Publication Notice**.........................................................14

        **4.  Website Notice on Sonic's Website and Facebook Page**....................15

        **5.  Long Form Notice on the Settlement Website**.................15

    **G.  Settlement Class Members' Right to Opt Out**...............................16

    **H.  Settlement Class Members' Right to Object**.................................17

    **I.  Schedule for Settlement Administration**.........................................18

**ARGUMENT**.......................................................................................................18

I.     **PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE**...........18

    **A.  Legal Standard**.................................................................................18

    **B.  Preliminary Approval is Warranted**...............................................20

II.    **CERTIFICATION OF THE SETTLEMENT CLASS** .................................................22

    A.  **The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied** ...........................23

        1.  **The Settlement Class Is So Numerous that
Joinder of Individual Members Is Impracticable** .................................23

        2.  **There are Questions of Law and Fact
Common to the Settlement Class** ...........................................................24

        3.  **Representative Plaintiffs' Claims Are
Typical of the Claims of the Settlement Class** .....................................25

        4.  **The Interests of Representative Plaintiffs and Proposed Settlement Class
Counsel are Aligned with the Interests of the Settlement Class** ........................26

    B.  **The Requirements of Fed. R. Civ. P. 23(b)(3) Are Satisfied** ....................26

        1.  **Questions Common to All Settlement Class Members Predominate
Over Any Potential Individual Questions** ............................................27

        2.  **A Class Action Is the Superior Method to Fairly
and Efficiently Adjudicate the Matter** .................................................27

III.   **SETTLEMENT CLASS COUNSEL ARE WELL-QUALIFIED
TO REPRESENT THE INTERESTS OF THE SETTLEMENT CLASS** ...................28

IV.   **THE NOTICE PROGRAM SATISFIES ALL APPLICABLE
REQUIREMENTS**...................................................................................................28

    A.  **Contents of the Notice** ...............................................................................29

        1.  **Opting Out** ............................................................................................30

        2.  **Objecting** ...............................................................................................30

    B.  **Notice Program** .........................................................................................31

**<u>CONCLUSION</u>** ................................................................................................................33

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................ 23

*Bentley v. Honeywell Int'l, Inc.*,
    223 F.R.D. 471 (S.D. Ohio 2004) ................................................................... 25

*Bronson v. Bd. of Educ.*,
    604 F. Supp. 68 (S.D. Ohio 1984) ................................................................. 19

*Daffin v. Ford Motor Co.*,
    458 F.3d 549 (6th Cir. 2006) .......................................................................... 23

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    177 F.R.D. 54 (D. Mass. 1997) ...................................................................... 20

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ........................................................................................ 32

*Golden v. City of Columbus*,
    404 F.3d 950 (6th Cir. 2005) .......................................................................... 23

*Gooch v. Life Inv'rs Ins. Co. of Am.*,
    672 F.3d 402 (6th Cir. 2012) .......................................................................... 31

*In re A.M.S.*,
    75 F.3d 1069 (6th Cir. 1996) .......................................................................... 25

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .............................................................................. 22

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
    204 F.R.D. 330 (N.D. Ohio 2001) ............................................................ 19, 20

*In re Nationwide Fin. Servs. Litig.*,
    No. 2:08-CV-00249, 2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) ............... 18, 19

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
    176 F.R.D. 158 (E.D. Pa. 1997) .................................................................... 20

*In re Polyurethane Foam Antitrust Litig.*,
    135 F. Supp. 3d 679 (N.D. Ohio 2015) .......................................................... 32

*In re Prudential Sec. Ltd. P'ship Litig.*,
 163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................. 22

*In re Telectronics Pacing Sys., Inc.*,
 137 F. Supp. 2d 985 (S.D. Ohio 2001) ....................................................... 18

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
 722 F.3d 838 (6th Cir. 2013) ...................................................................... 24

*Leonhardt v. ArvinMeritor, Inc.*,
 581 F. Supp. 2d 818 (E.D. Mich. 2008) ...................................................... 19

*Ohio Public Interest Campaign v. Fisher Foods, Inc.*,
 546 F. Supp. 1 (N.D. Ohio 1982) ............................................................... 20

*Phillips Co. v. Shutts*,
 472 U.S. 797 (1985) .............................................................................. 27, 29

*Sprague v. Gen. Motors*,
 133 F.3d 388 (6th Cir. 1998) ...................................................................... 24

*Taylor v. CSX Transp., Inc.*,
 264 F.R.D. 281 (N.D. Ohio 2007) .............................................................. 23

*Williams v. Vukovich*,
 720 F.2d 909 (6th Cir. 1983) ................................................................ 19, 20

**Statutes**

28 U.S.C. § 1715 ................................................................................................ 33

**Rules**

Fed. R. Civ. P. 23(a) ......................................................................................... 23

Fed. R. Civ. P. 23(b)(3) ........................................................... 3, 8, 23, 26, 27, 31

Fed. R. Civ. P. 23(c)(1)(B) ............................................................................... 27

Fed. R. Civ. P. 23(e) .................................................................................... 19, 33

Fed. R. Civ. P. 23(g)(1)(A) .............................................................................. 28

Federal Civil Rule 23(c)(2)(B) ......................................................................... 31

Federal Rule of Civil Procedure 23(e)(1) ......................................................... 31

Rule 23 of the Federal Rules of Civil Procedure ...................................... 4, 32, 33

Rule 23(a) and (b) of the Federal Rules of Civil Procedure ........................................................ 22

Rule 23(a)(3) ................................................................................................................................. 25

Rule 23(g) ...................................................................................................................................... 27

## **Other Authorities**

Manual for Complex Litigation, § 30.41, at 236–37 (3d ed.1995) ............................................... 19

## INTRODUCTION

Named Plaintiffs Septabeya Bean, Patrick Blanford, Cornelius Bogard, Penny Bolin, Shadawna Carson, John Dolembo, Carlton Donovan, Shannon Gannon, Henry Gil, Esmeralda Hernandez, Melvin Hildreth III, Vonda Hoover, Barbara Kelley, Mark Korabelnikov, Megan MacKay, Dometric Pearson, Denise Ramirez, Edward Ramirez, Paula Sbabo, Cassandra Sharp, Linda Sipple, and Angela Williams ("Representative Plaintiffs"), individually and on behalf of a settlement class as defined in the Settlement Agreement and set forth below (the "Settlement Class"), by and through their counsel William B. Federman of Federman & Sherwood ("Interim Lead Counsel");  Marc E. Dann of DannLaw ("Interim Liaison Counsel"); Carin L. Marcussen of Federman & Sherwood; Brian D. Flick of DannLaw; Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C.; Melissa R. Emert of Stull, Stull, & Brody; Michael Fuller of Olsen Daines; and Miles N. Clark of Knepper & Clark LLC ("Plaintiffs' Steering Committee") (collectively, "Plaintiffs' Counsel" or proposed "Class Counsel"), hereby seek preliminary approval of the Class Action Settlement and for certification of the Settlement Class.

The Representative Plaintiffs have asserted claims against Sonic Corp., Sonic Industries Services Inc., Sonic Capital LLC, Sonic Franchising LLC, Sonic Industries LLC, and Sonic Restaurants, Inc. (collectively, "Sonic" or the "Sonic Defendants"[1]) for negligence, negligence per se, breach of implied contract, negligent misrepresentation, unjust enrichment, violation of twenty-six (26) state consumer protection statutes, violation of fifteen (15) state data breach statutes, and injunctive/declaratory relief stemming from a third-party cyberattack on the point-of-sale ("POS") systems of certain Sonic Drive-In locations in 2017.  Representative Plaintiffs allege that Sonic

---

[1] Collectively, the Representative Plaintiffs and Sonic are referred to herein as the "Parties".

did not take adequate security precautions to prevent the third-party cyberattack and protect customers' information.

Sonic denies each and every one of Representative Plaintiffs' allegations, and specifically contends that Sonic did have adequate security precautions in place, denies that Sonic is liable or responsible in any way for the third-party cyberattack on the POS systems at certain Sonic Drive-In locations, and further denies that Representative Plaintiffs are entitled to any relief from Sonic. Sonic has not conceded or admitted any liability, and has asserted a number of defenses in response to Representative Plaintiffs' claims. Nevertheless, given the risks, uncertainties, burden, and expense of continued litigation, Sonic has agreed to settle this Litigation on the terms set forth in the Settlement Agreement ("Agreement" or "Settlement"), subject to Court approval.

The Parties engaged in extensive discovery before participating in Court-ordered mediation. The Settlement resulted from good faith, arm's-length settlement negotiations, including two full-day mediation sessions with the Honorable Magistrate Judge Jonathan D. Greenberg on August 3 and 10, 2018 in Cleveland, Ohio. Class Counsel conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims to be resolved by the Agreement and how best to serve the interests of the putative class in the Litigation. Based on this investigation and the negotiations described above, Class Counsel have concluded, taking into account the sharply-contested issues involved, the risk, uncertainty, and cost of further prosecution of this Litigation, and the substantial benefits to be received by the Settlement Class (as defined in the Agreement and set forth below) pursuant to the Agreement, that a settlement with Sonic on the terms set forth in the Agreement is fair, reasonable, adequate, and in the best

interests of the Settlement Class. After the mediation, the Parties entered into the Agreement, a copy of which is attached hereto as Exhibit 1.[2]

The Agreement provides, pursuant to Federal Rule of Civil Procedure 23(b)(3), for certification of a Settlement Class for settlement purposes only. The Settlement Class is comprised of all residents of the United States who made a purchase at one of the 325 Impacted Sonic Drive-Ins and paid using a debit or credit card during the period of time from April 7, 2017 through October 28, 2017.[3] (SA ¶¶ 1.26, 1.28.)

Under the Settlement, and again without admitting or conceding any liability, the amount of Four Million Three Hundred Twenty-Five Thousand Dollars and Zero Cents ($4,325,000.00) (hereinafter, "Settlement Fund") shall be paid by Sonic into an escrow account, to fully resolve and settle this Litigation. (SA, ¶¶ 1.29, 3.2.)  The Settlement Fund is intended to cover all payments to Settlement Class Members who submit Verified Claims, Class Counsel's attorneys' fees, costs, and expenses, Service Awards to the twenty-two Representative Plaintiffs, and costs of class notice and settlement administration. (SA, ¶¶ 1.29, 3.1.) After deducting (1) the Costs of Settlement Administration, which includes administrative costs and expenses applicable to class notice and settlement administration, (2) an award of attorneys' fees, costs, and expenses to Class Counsel, and (3) Service Awards to the Representative Plaintiffs, the amount remaining in the Settlement Fund (the "Net Settlement Fund") shall be distributed by sending checks to Settlement Class

---

[2] The Agreement is cited herein as "SA." The definitions in the Agreement are incorporated herein by reference.

[3] The Settlement Class specifically excludes: (i) Sonic (as defined in SA, ¶ 1.31); (ii) Sonic Franchisees (as defined in SA, ¶ 1.32); (iii) Infor (as defined in SA, ¶ 1.15); (iv) all Settlement Class Members who timely and validly request exclusion from and/or opt-out of the Settlement Class; (v) the Judge or Magistrate Judge to whom the action is assigned and, any member of those Judges' staffs or immediate family members; and (vi) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Breach or who pleads *nolo contendere* to any such charge. (SA, ¶ 1.26).

Members who submit Verified Claims for approximately $10 or $40, according to the terms set forth in the Agreement. (SA, ¶¶ 3.1.4, 3.1.5.)

Additionally, Sonic has acknowledged that it has made certain governance changes since the filing of the Litigation (SA, ¶ 3.3.), and Sonic has agreed to continue using and employing certain data security practices for a period of no less than three (3) years. (SA, ¶ 3.4.) Sonic's acknowledgement that it made certain governance changes since the filing of the Litigation, and its agreement to *continue* to use and employ certain data security practices is not, and should not be construed as, an admission or concession by Sonic, in any regard whatsoever, that Sonic's data security practices were inadequate.

As shown herein, the Settlement readily satisfies the standard for preliminary approval—that is, it is well within the required range of possible approval. As such, Representative Plaintiffs respectfully request that this Honorable Court enter an Order:

(1)     Preliminarily approving the Settlement Agreement;

(2)     Certifying the Settlement Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only;

(3)     Appointing the Representative Plaintiffs as Class Representatives of the Settlement Class;

(4)     Appointing William B. Federman of Federman & Sherwood, Marc E. Dann of DannLaw, Carin L. Marcussen of Federman & Sherwood, Brian D. Flick of DannLaw, Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C., Melissa R. Emert of Stull, Stull, & Brody, Michael Fuller of Olsen Daines, and Miles N. Clark of Knepper & Clark LLC as Settlement Class Counsel;

(5)     Approving the Claim Forms, attached as Exhibit B-1 (downloadable version) and Exhibit B-2 (electronic version), to the Settlement Agreement;

(6)     Appointing KCC LLC as the Settlement Administrator;

(7)     Approving the Notice Program as set forth in the Settlement Agreement;

(8)     Approving as to form and content the notices attached to the Settlement Agreement as Exhibit C (In-Store Notice), Exhibit D (Internet Banner Notice), Exhibit E (Long Form Notice), Exhibit F (Publication Notice), and Exhibits G-1 and G-2 (Sonic Website and Facebook Notices, respectively); and

(9)     Scheduling a final approval hearing to consider entry of a final judgment approving the Settlement and the request for Class Counsel's attorneys' fees, costs, and expenses, and Class Representative Service Awards.

## **BACKGROUND**

### I.     **NATURE OF THE LITIGATION AND PROCEDURAL HISTORY**

Sonic is the fourth largest quick-service burger restaurant chain in the United States, operating more than 3,500 stores in 44 states. Sonic Drive-In restaurants routinely process consumer transactions through point-of-sale ("POS") systems that transmit payment card data of customers who pay with a credit or debit card.

In late September 2017, Sonic was alerted by its third-party payment card processor of unusual activity involving payment cards used at certain Sonic Drive-In locations. Upon being alerted of this unusual activity, Sonic immediately initiated an internal investigation and engaged experienced third-party forensic investigators to assist it in investigating the suspicious activity. At the same time, Sonic's counsel also notified federal law enforcement and began working with law enforcement to investigate the unusual activity as well.  Shortly thereafter, Sonic's forensic investigators discovered that certain Sonic Drive-In locations had been the victim of a malware attack that appeared to have resulted in possible unauthorized acquisition of credit or debit card numbers.

Four days later, on October 4, 2017, though its forensic investigations into the nature and extent of the data breach were still underway, Sonic made the statutorily permissible substitute notice to Sonic customers via its website, via national press release (distributed through the

Business Wire), and by taking advertisements out in certain local media outlets and publications as required by certain state data breach notification statutes. At the same time, Sonic also notified the requisite state regulators and credit bureaus of the data breach. Further, as a precautionary measure, Sonic offered customers who used their credit or debit cards at Sonic Drive-In locations in 2017, 24 months of free fraud detection and identity theft protection through Experian's IdentityWorks program.

After issuing notice, Sonic continued to investigate the nature and extent of the data breach. Based on Sonic's investigation, Sonic identified three hundred and twenty-five (325) franchisee-owned and -operated Sonic Drive-In locations for which the forensic evidence indicates that customer credit or debit card information was stolen.

In response to Sonic's data breach, eight civil data breach class actions were filed in several different states and were eventually consolidated and transferred to this Court by the Judicial Panel on Multidistrict Litigation. (Dkt. 1, 3, 17). On January 3, 2018, the Court granted the unanimous and unopposed motion by the plaintiffs in the consolidated actions (Dkt. 4) to appoint William B. Federman of Federman and Sherwood as Interim Lead Counsel, Marc Dann of DannLaw as Interim Liaison Counsel, and Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C., Melissa R. Emert of Stull, Stull, & Brody, Michael Fuller of Olsen Daines, and Miles N. Clark of Knepper & Clark LLC as members of Plaintiffs' Steering Committee. (*See* non-document order entered Jan. 3, 2018.)

At the early stage of the litigation, Plaintiffs' counsel filed a Motion for Expedited Discovery Relative to the Identities of Knowledgeable Third Parties. (Dkt. 14). On January 13, 2018, the Court granted in part and denied in part Plaintiffs' motion to authorize expedited discovery. (Dkt. 24). On February 12, 2018, Plaintiffs filed a Consolidated Class Action

Complaint. (Dkt. 26.) On March 14, 2018, Sonic filed a motion to dismiss Plaintiffs' Consolidated Class Action Complaint. (Dkt. 39.) On April 13, 2018, Plaintiffs filed their opposition to Sonic's motion to dismiss (Dkt. 73), and Sonic filed its reply on April 27, 2018. (Dkt. 79.) On July 27, 2018, prior to any decision on Sonic's motion to dismiss, Class Counsel filed a Second Amended Consolidated Class Action Complaint on behalf of the Representative Plaintiffs. (Dkt. 114.)

Throughout the Litigation, the Parties engaged in substantial discovery. As part of the discovery process, Class Counsel: negotiated the protective order regarding confidential materials (Dkt. 67); prepared and served detailed document requests and interrogatories on the Sonic Defendants; prepared and served twenty (20) subpoenas *duces tecum* on third parties (*see*, *e.g.*, Plaintiffs' Notice of Intent to Serve Third Parties, Dkt. Nos. 32, 36, 37, 38, 64, 66, 77, 92); engaged in numerous meet and confers with Sonic and third parties concerning the scope of document productions, ESI protocols, search terms, and document custodians; responded to the Sonic Defendants' requests for production and interrogatories, including gathering and producing responsive documents from numerous Plaintiffs; defended the depositions of Plaintiffs Bogard, Dolembo, Pearson, MacKay, Ramirez, and Bean; prepared for and deposed Mark Davis, who was Sonic's Vice President of Cybersecurity and Enterprise Systems during the Class Period; obtained evidentiary affidavits, in lieu of depositions, from third party vendors addressing their role in Sonic's information technology and cybersecurity systems and processes; prepared and issued several letters to Defense Counsel concerning document production and other discovery issues; filed motions against Sonic and third parties First Data Corporation, Oracle Hospitality, Inc., SCI Group, LLC, ServiceNow, and Texas P.O.S. to compel the production of documents (Dkt. 81) and argued those motions before the Court; filed an opposition to Sonic's motion for protective order relating to production by third-party CoalFire Systems, Inc. (Dkt. 88); filed an opposition to

Sonic's motion to compel initial disclosures (Dkt. 41) and argued against that motion in a hearing before the Magistrate Judge; reviewed and analyzed more than 130,000 pages of documents produced by Sonic and third parties; interviewed several former Sonic employees identified by Sonic as having relevant knowledge; and retained and consulted with multiple experts, including cybersecurity experts and damages experts.

On June 5, 2018, the Court referred the matter to Magistrate Judge Jonathan D. Greenberg for mediation. (Dkt. 105). In advance of the mediation, Class Counsel prepared a Confidential Mediation Statement, which was submitted via email to the chambers of Judge Greenberg. On August 3, 2018, the Parties participated in a full-day of mediation presided over by Judge Greenberg. (Dkt. 119). Given that substantial progress was made towards a settlement, the Parties participated in a second full day of mediation with Judge Greenberg on August 10, 2018. (Dkt. 121). On August 10, 2018, the Parties were able to reach an agreement as to the material terms of the settlement, which were memorialized on the record that same day. (*See* Aug. 10, 2018 Transcript of Proceedings, Dkt. 124). Thereafter, the Parties negotiated the remaining terms, exchanging drafts back and forth of the Agreement and its exhibits during the process. The Agreement was executed on October 9, 2018. Representative Plaintiffs now seek preliminary approval of that Agreement.

## II.      SUMMARY OF THE SETTLEMENT

### A.      The Settlement Class

Under the terms of the Settlement, the Parties agreed to certification pursuant to Federal Rule of Civil Procedure 23(b)(3) of a Settlement Class for settlement purposes only:

> All residents of the United States who made a purchase at one of the 325 Impacted Sonic Drive-Ins and paid using a debit or credit card during the period of time from April 7, 2017 through October 28, 2017.

(SA, ¶¶ 1.26, 1.28.)

The "Impacted Sonic Drive-Ins" are defined in the Agreement as the three hundred and twenty-five (325) franchisee-owned and -operated Sonic Drive-In locations for which the forensic evidence indicates that customer credit or debit card information was stolen during the Data Breach, as listed in Exhibit A to the Agreement. (SA, ¶ 1.13.) The "Data Breach" means the third-party cyberattack targeting the point-of-sale systems of Sonic Drive-Ins from April 7, 2017 through October 28, 2017 in an effort to acquire, without authorization, customer payment card information. (SA, ¶ 1.10.)

The Settlement Class specifically excludes: (i) Sonic (as defined in SA, ¶1.31); (ii) Sonic Franchisees (as defined in SA, ¶1.32); (iii) Infor (as defined in SA, ¶1.15); (iv) all Settlement Class Members who timely and validly request exclusion from and/or opt-out of the Settlement Class; (v) the Judge or Magistrate Judge to whom the action is assigned and, any member of those Judges' staffs or immediate family members; and (vi) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Breach or who pleads *nolo contendere* to any such charge. (SA, ¶ 1.26.)

### B.     Payments to Settlement Class Members

The Settlement provides that the Sonic Defendants will pay Four Million Three Hundred Twenty-Five Thousand Dollars and Zero Cents ($4,325,000.00) into a "Settlement Fund". (SA, ¶¶ 1.29, 3.1.) After deducting the Costs of Settlement Administration (as defined in SA, ¶1.9), Attorneys' Fees Costs (as defined in SA, ¶1.1), and Class Representative Service Awards (as defined in SA, ¶1.8), the "Net Settlement Fund" remaining will be distributed to Settlement Class Members who submit Verified Claims. (SA, ¶ 3.1.4.) The amount of the payment will be (i)

approximately $10 for those Settlement Class Members who made a purchase using a credit or debit card at one of the Impacted Sonic Drive-Ins during the Settlement Class Period ("Category 1 Class Members"), or (ii) approximately $40 for those Settlement Class Members who made a purchase using credit or debit card at one of the Impacted Sonic Drive-Ins during the Settlement Class Period *and* who experienced fraudulent or unauthorized charges on the credit or debit card account used at the Impacted Sonic Drive-In location any time thereafter up through February 28, 2018 ("Category 2 Class Members"). (SA, ¶ 3.1.4.) The Settlement Administrator will adjust the amounts of the payments to Settlement Class Members by decreasing or increasing them on a *pro rata* (proportionate) basis such that the total aggregate amount of Verified Claims to be paid does not exceed the Net Settlement Fund or, alternatively, in order to fully allocate and pay to Settlement Class Members the full Net Settlement Fund so that no money remains. (SA, ¶ 3.1.5.). No monies will revert to the Sonic Defendants. *Id.*

### C. Agreement Relating to Sonic's Business Practices

Sonic has acknowledged that it made certain governance changes since the filing of the Litigation. Additionally, Sonic has agreed to continue using and employing the certain data security practices outlined in the Settlement Agreement for a period of no less than three (3) years. (SA, ¶¶ 3.3, 3.4.)

### D. Service Awards to Class Representatives

Class Counsel will make an application to the Court for Service Awards from the Settlement Fund to the twenty-two (22) Representative Plaintiffs up to the total aggregate amount of $42,000. (SA, ¶ 10.7.) Said application shall be filed no earlier than thirty (30) days from entry of the Preliminary Approval Order by the Court, and no later than fourteen (14) days before the

deadline for opt-outs and objections. (SA, ¶ 10.7.) The Sonic Defendants have agreed not to oppose or object to any such application that is consistent with the terms of the Agreement. *Id.*

In consideration of the respective contributions of the Representative Plaintiffs, Class Counsel will seek individual Service Awards for each Representative Plaintiff up to the amounts set forth below:

(a) $5,500 for Representative Plaintiff Cornelius Bogard who prosecuted this action on behalf of the Settlement Class, attended court hearings, attended the mediation, answered discovery, and appeared for a deposition;

(b) $5,000 each for Representative Plaintiffs Megan MacKay and Denise Ramirez who each prosecuted this action on behalf of the Settlement Class, attended the mediation, answered discovery, and appeared for a deposition;

(c) $3,500 each for Representative Plaintiffs Septabeya Bean, John Dolembo, and Dometric Pearson, who each prosecuted this action on behalf of the Settlement Class, answered discovery, and appeared for a deposition; and

(d) $1,000 for each of the sixteen (16) remaining Representative Plaintiffs: Patrick Blanford, Penny Bolin, Shadawna Carson, Carlton Donovan, Shannon Gannon, Henry Gil, Esmeralda Hernandez, Melvin Hildreth III, Vonda Hoover, Barbara Kelley, Mark Korabelnikov, Edward Ramirez, Paula Sbabo, Cassandra Sharp, Linda Sipple, and Angela Williams, who each prosecuted this action on behalf of the Settlement Class.

Representative Plaintiffs' support for the Settlement Agreement as fair and reasonable is not conditioned upon the Court's award of the requested Service Awards. Further, the terms and

enforcement of the Settlement Agreement is not conditioned on the approval of the requested Service Awards. (SA, ¶10.8.)

### E. Attorneys' Fees and Costs

Class Counsel will make an application to the Court for payment from the Settlement Fund of attorneys' fees of up to one-third (1/3) of the Settlement Fund (*i.e.*, up to $1,441,666.67), plus the costs and expenses that Class Counsel has incurred in the prosecution of this Litigation ("Attorneys' Fees and Costs"). (SA, ¶¶ 1.1, 10.1.) Said application shall be filed no earlier than thirty (30) days from the entry of the Preliminary Approval Order by the Court, and no later than fourteen (14) days before the deadline for opt-outs and objections. (SA, ¶ 10.1.) Sonic has agreed it will not oppose or object to any such application. (SA, ¶ 10.2.) The amount of Attorneys' Fees and Costs awarded by the Court shall be deducted from the Settlement Fund and paid by the Settlement Administrator to Lead Counsel, who will, in his sole discretion, fairly and reasonably allocate and distribute the amounts among Class Counsel. (SA, ¶¶ 10.1.) Class Counsel's support of the Settlement Agreement as fair and reasonable is not conditioned upon the Court's award of the requested fees and expenses, and the terms and enforcement of the Settlement Agreement are not conditioned on the approval of an award of the requested fees and expenses. (SA, ¶ 10.6.)

### F. Settlement Class Notice

The Agreement provides that the Costs of Settlement Administration (as defined in the Agreement (SA, ¶ 1.9), which includes all costs for notice, as well as claims administration) shall be paid from the Settlement Fund. (SA, ¶ 3.1.1.) Further, the Agreement provides for a comprehensive Notice Program to be administered by the Settlement Administrator, subject to Court approval. (SA, § 7, ¶ 1.24.)

The Parties seek approval of the following forms of notice attached as exhibits to the Agreement: Exhibit C (In-Store Notice), Exhibit D (Internet Banner Notice), Exhibit E (Long Form Notice), Exhibit F (Publication Notice), and Exhibits G-1 and G-2 (Website and Facebook Notice) (collectively, the "Notices"). (SA, ¶ 7.2.) The notices collectively will provide a sufficiently clear and concise description of the Litigation, the Settlement terms, the rights and responsibilities of the Settlement Class Members (*e.g.*, how to submit a claim, opt-out, or object), and the date and location of the final approval hearing. *Id.*

The Notice Program provides for dissemination of the notices in the following manner (i) conspicuously posting the In-Store Notice at the 325 Impacted Sonic Drive-In locations, (ii) posting the Internet Banner Notice geo-tagged to the Facebook pages of Facebook users located with the zip codes of Impacted Sonic Drive-In locations, (iii) publishing the Publication Notice in a manner certified by the Settlement Administrator as being targeted to adults over 18 years of age located within the zip codes of the Impacted Sonic Drive-In locations, (iv) conspicuously posting the Website Notice on Sonic's website and Sonic's Facebook page, and (v) posting the Long Form Notice on the Settlement Website. (SA, ¶ 7.2-¶ 7.3.) The Settlement Administrator shall use its best efforts to ensure that these Notices collectively have a reach of not less than approximately 70% of the Settlement Class Members (in one way or another). (SA, ¶ 7.2.)

### 1. In-Store Notice

Within thirty (30) days after the entry of the Preliminary Approval Order, the Settlement Administrator shall print or otherwise generate the In-Store Notice (substantially in the form attached to the Agreement as Exhibit C) and shall provide it to the Sonic Defendants to be conspicuously posted on the main customer entrance door of each of the Impacted Sonic Drive-In locations within forty-five (45) days after the entry of the Preliminary Approval Order and for a

period of ninety (90) days from the start of the Notice Program. (SA, ¶ 7.2.3.)

### 2. Internet Banner Notice

Within thirty (30) days after the entry of the Preliminary Approval Order, the Settlement Administrator shall submit the Internet Banner Notice (substantially in the form attached to the Agreement as Exhibit D) to Facebook for advertisement. (SA, ¶ 7.2.2.) Facebook is the largest social media platform with approximately 1.47 billion daily active users. *See* https://newsroom. fb.com/company-info/ (last visited Aug. 30, 2018). The Internet Banner Notice shall be targeted to Settlement Class Members via the use of Internet banner advertisements geo-tagged to the Facebook pages of Facebook users located within the zip codes of the 325 Impacted Sonic Drive-In locations and posted for a period of ninety (90) days from the start of the Notice Program. *See* https://www.facebook.com/business/help/202297959811696 (last visited Aug. 30, 2018) ("Location targeting allows you to advertise to people based on their location, which can be a country, a region, or a city.").

### 3. Publication Notice

The Publication Notice (substantially in the form attached to the Agreement as Exhibit F) shall be submitted by the Settlement Administrator for publication in a periodical and manner certified by the Settlement Administrator—and expressly approved by the Parties—as being targeted to adults over 18 years of age located within the zip codes of the 325 Impacted Sonic Drive-In locations. (SA, ¶ 7.2.1.) The Settlement Administrator shall utilize its best efforts to have the Publication Notice submitted for publication no later than thirty (30) days after the entry of the Preliminary Approval Order. (SA, ¶ 7.2.1.)

### 4. Website Notice on Sonic's Website and Facebook Page

Within thirty (30) days after the entry of the Preliminary Approval Order, the Sonic Defendants shall cause the Website Notice (substantially in the form attached to the Agreement as Exhibits G-1 and G-2) to be conspicuously posted as a banner advertisement at the top of the home page of the Sonic website and as a "pinned" post at the top of Sonic's Facebook page for a period of ninety (90) days from the start of the Notice Program. The Website Notice on Sonic's website (Exhibit G-1) will link to the Long Form Notice (Exhibit E) on the Settlement Website. (SA, ¶ 7.2.4.)

### 5. Long Form Notice on the Settlement Website

Within thirty (30) days after the entry of the Preliminary Approval Order, but no later than the earliest date of (a) Publication Notice, (b) Internet Banner Notice, (c) In-Store Notice, or (d) Website Notice, the Settlement Administrator shall establish the Settlement Website and shall maintain and update the Settlement Website, as necessary, throughout the Claims Period. (SA, ¶ 7.3.) The Settlement Website shall contain important information, including:

a) The Settlement Administrator's toll-free telephone number for Settlement Class Members to call for Settlement-related information or request copies of documents;

b) A list of important dates and deadlines;

c) Links to the Agreement, the Long Form Notice (attached to the Agreement as Exhibit E), the Publication Notice, and relevant orders entered by the Court relating to the Settlement;

d) An online claim process by which a Settlement Class Member can submit his or her Claim Form electronically;

e)      A link through which a Settlement Class Member can download and print a Claim Form;

f)      The list of all 325 Impacted Sonic Drive-In locations; and

g)      Such other documents and information as may be agreed on by the Parties or ordered by the Court.

(SA, ¶ 7.3.)

The Notice Program is the best means practicable, and is reasonably calculated to apprise the Settlement Class Members of the Litigation and their right to participate in, object to, or exclude themselves from the Settlement.

### G.      Settlement Class Members' Right to Opt Out

Any Settlement Class Member seeking to opt-out of the Settlement must submit a written request for exclusion from the Settlement Class to the Settlement Administrator—postmarked on or before the opt-out deadline (*i.e.*, 90 days from commencement of the Notice Program)—which must include: (a) the individual's name and address; (b) a statement that he/she wants to be excluded from the Settlement Class in this Litigation; and (c) the individual's signature. (SA, ¶¶ 8.1.1, 8.1.3.) Any Settlement Class Member who fails to submit a timely request for exclusion containing the above information shall be bound by the Settlement Agreement. (SA, ¶ 8.2.)

All Settlement Class Members who properly file a timely Request for Exclusion from the Settlement Class shall (a) not be bound by any orders or the Final Judgment entered in this Litigation, (b) not be entitled to relief under the Agreement, (c) not gain any rights by virtue of the Agreement, and (d) not be entitled to object to any aspect of the Agreement. (SA, ¶ 8.2.) No person may opt out of the Settlement Class through a so-called "mass" or "class" opt-out. (SA, ¶ 8.1.1.)

### H.    Settlement Class Members' Right to Object

Any Settlement Class Member who does not opt out of the Settlement Class may object to the Settlement or any portion of the Agreement. (SA, § 9.) To be timely, written notice of the objection must be filed with the Clerk of the Court, and served upon Lead Counsel and Defense Counsel, no later than ninety (90) days from the commencement of the Notice Program. (SA, ¶ 9.1.1.) The Agreement provides, and the Long Form Notice specifies, that any person who wants to object to the Settlement, must state in writing: (a) the objector's full name, current address, telephone number, and email address (if any); (b) a statement that he/she is a Settlement Class Member, including an attestation that he/she made a purchase using a debit or credit card at one of the 325 Impacted Sonic Drive-Ins during the Settlement Class Period and identifying the address of the location where he/she made his/her purchase; (c) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (d) the identity of all counsel representing the objector, if any; (e) a written statement indicating whether he/she intends to appear and/or testify at the final approval hearing and the identity of all counsel, if any, representing the objector who will appear at the final approval hearing; (f) a statement identifying any person who will be called to testify at the final approval hearing in support of the objection; (g) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); (h) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last three (3) years; and (i) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last three (3) years.  (SA, ¶ 9.1.)

## I.      Schedule for Settlement Administration

The Parties request that the Court set the following schedule for the proposed Agreement:

- Within thirty (30) days of entry of Preliminary Approval, a Settlement Website shall be established and the commencement of the Notice Program, as outlined in Section 7 of the Settlement Agreement (which includes the administration of In-Store Notice, Internet Banner Notice, Website Notice, and Publication ).

- Settlement Class Members shall have ninety (90) days from the commencement of the Notice Program (SA, ¶ 7.7) to request to be excluded from the Settlement Class or to object to the Settlement Agreement.

- Settlement Class Members shall have ninety (90) days from the commencement of the Notice Program (SA, ¶ 7.7) to submit a Claim Form.

- A final hearing on the fairness and reasonableness of the Agreement and whether the final approval shall be given to it, and the requests for fees, expenses and Service Awards, will be held before this Court approximately 170 days after preliminary approval.

An Excel spreadsheet of the proposed Settlement timeline with the proposed dates ("Settlement Timeline") will be emailed to the Court. All dates in the Settlement Timeline are calculated from the date of Preliminary Approval. A printout of the Settlement Timeline is attached hereto as Exhibit 2.

## ARGUMENT

## I.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.      Legal Standard

The "settlement of a class action is generally favored and encouraged." *In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 WL 8747486, at *1 (S.D. Ohio Aug. 19, 2009) (internal citations omitted); *see also In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1008–09 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement.") (citation omitted).

Rule 23(e) requires three steps for the approval of a proposed class action settlement:

1.  The Court must preliminarily approve the proposed settlement;

2.  Members of the class must be given notice of the proposed settlement; and

3.  A fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable and adequate.

*In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *1 (citing Fed. R. Civ. P. 23(e)); *Williams v. Vukovich,* 720 F.2d 909, 920–21 (6th Cir. 1983); *Bronson v. Bd. of Educ.*, 604 F. Supp. 68, 71 (S.D. Ohio 1984)).

"[I]n determining the reasonableness and adequacy of a proposed settlement, the Court should ascertain whether the settlement is within a 'range of reasonableness[.]'" *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *2 (citing *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 831 (E.D. Mich. 2008)).  The Manual for Complex Litigation explains that:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001) (citing *Manual for Complex Litigation,* § 30.41, at 236–37 (3d ed.1995)). A preliminary fairness assessment "is not to be turned into a trial or rehearsal for trial on the merits," for "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *In re Inter-Op Hip*, 204 F.R.D. at 350 (citation omitted). Rather, the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light

of the likely outcome and the cost of continued litigation. *Id.* (citing *Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 7 (N.D. Ohio 1982)).

"[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *In re Inter-Op Hip*, 204 F.R.D. at 350-51 (citing *Vukovich,* 720 F.2d at 923; *see also Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997) ("[i]n general, a settlement arrived at after genuine arm's length bargaining may be presumed to be fair"); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 184 (E.D. Pa. 1997) ("[s]ignificant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class'") (internal citations omitted)).

## B. Preliminary Approval is Warranted

The issues are hotly contested in this Litigation and the outcome is uncertain. Sonic's motion to dismiss argued that Representative Plaintiffs did not suffer an actionable concrete injury as a result of the Data Breach and failed to establish an elevated or imminent risk of future injury. (Dkt. 39-1.) Sonic argues that Representative Plaintiffs who alleged they made credit or debit card purchases during the Class Period at the Impacted Sonic Drive-Ins did not experience any fraudulent charges (*e.g.*, Plaintiff Pearson), or did not suffer any unreimbursed fraudulent charges or out-of-pocket expenses (*e.g.*, Plaintiffs Gilmore and MacKay) as a result of the Data Breach. (Dkt. 39-1, pgs. 6-8.) Sonic further asserts that the other types of injury that Representative Plaintiffs allege they suffered are not sufficient to create Article III standing. (Dkt. 39-1, pgs. 8-11.) Lastly, Sonic argued that Representative Plaintiffs failed to establish an elevated or imminent risk of future injury. (Dkt. 39-1, pgs. 12-13; *see also* Dkt. 79, pgs. 16-17, arguing that the type of credit and debit card information stolen here is not the type that generally can be used alone to open unauthorized new accounts).

Representative Plaintiffs allege that they have suffered a variety of harms as a result of the Data Breach, including unauthorized charges, loss of their personal and financial information, loss of use of funds, time spent, increased risk of fraud and identity theft, diminution in value of their personal data, and money paid to Sonic that they would not have paid had they known Sonic did not keep their data secure. (Dkt. 73-1, pgs. 7-11.)

While Representative Plaintiffs believe in the strength of their case, there is no guarantee that Representative Plaintiffs would be successful. The Court never decided Sonic's motion to dismiss before the Representative Plaintiffs filed their Second Amended Consolidated Class Action Complaint on July 27, 2018. If not for the Settlement, Sonic would certainly continue to argue, *inter alia*, that Representative Plaintiffs have not shown any cognizable injury or damages as a result of the Data Breach.

Further, the terms of the Settlement were negotiated at a mediation presided over by the Honorable Magistrate Judge Jonathan D. Greenberg and should be presumed to be fair. The Settlement provides monetary relief and non-monetary relief. Settlement Class Members who made a purchase at one of the Impacted Sonic Drive-Ins (but did not experience fraudulent or unauthorized charges) during the Settlement Class Period and who submit valid Claim Forms are eligible to be paid an estimated $10. (SA, ¶ 3.1.4.) Settlement Class Members who made a purchase at one of the Impacted Sonic Drive-Ins during the Settlement Class Period *and* experienced fraudulent or unauthorized charges on the credit or debit card used at one of the Impacted Sonic Drive-In Locations any time thereafter up through February 28, 2018, and who submit valid Claim Forms are eligible to be paid an estimated $40. (SA, ¶ 3.1.4.). These amounts are well within the range of fair, reasonable, and adequate.

The monetary benefits offered to Settlement Class Members are fair and reasonable in light of reported average out-of-pocket expenses attributable to a data breach. According to *The Aftermath of a Data Breach: Consumer Settlement (April 2014)*, which summarizes a research study sponsored by Experian Data Breach Resolution and conducted and reported by Ponemon Institute, "[e]ighty-one percent of respondents who were victims of a data breach did not have any out-of-pocket costs", and nine percent had less than $10 in out-of-pocket costs. (*See* Exhibit 3, pgs. 7, 18.) Further, for those respondents who incurred out-of-pocket costs, the average amount was $38.00. *Id*. at 7.

With regard to non-monetary benefits, Sonic has acknowledged that it made certain governance changes since the filing of the Litigation, and has agreed to continue using and employing the data security practices outlined in Paragraph 3.4 of the Agreement for a period of no less than three (3) years following the Effective Date of the Settlement. (SA, ¶ 3.3.)

The Settlement does not provide unduly preferential treatment to the Class Representatives. Any Service Awards to Class Representatives are subject to approval by the Court. As there is no reason to doubt the Settlement's fairness to Settlement Class Members and there are no obvious deficiencies, the Court should grant Representative Plaintiffs' preliminary approval motion.

## II. CERTIFICATION OF THE SETTLEMENT CLASS

Courts favor the use of settlement classes "to foster negotiated conclusions to class actions." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). A settlement class in complex litigation "actually enhances absent class members' opt-out rights because the right to exclusion is provided simultaneously with the opportunity to accept or reject the terms of a proposed settlement." *In re Prudential Sec. Ltd. P'ship Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995). When granting preliminary approval of a class action

settlement, it is appropriate for a court to certify a class for settlement purposes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Certification of a class is governed by Rule 23(a) and (b) of the Federal Rules of Civil Procedure.

### A.  The Requirements Under Fed. R. Civ. P. 23(a) Are Satisfied

Rule 23(a) sets forth the following prerequisites for certifying a class:  "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Additionally, where certification is sought under Rule 23(b)(3), the plaintiffs must demonstrate that common questions of law or fact predominate over individual issue and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3). These requirements are satisfied here.

### 1.  The Settlement Class is so Numerous that Joinder of Individual Members is Impracticable

First, the Settlement Class is so numerous that joinder of all individual members is impracticable. "[T]here is no strict numerical test for determining impracticability of joinder." *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). "'[S]ubstantial' numbers are usually enough to satisfy the numerosity requirement, and 'it is generally accepted that a class of 40 or more members is sufficient to establish numerosity.'" *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). Here, numerosity is satisfied because there are 325 Impacted Sonic Drive-Ins, and the Settlement Class includes **all** persons who made a purchase at one of those locations using a credit or debit card over an approximately seven (7) month period. Based on the information obtained through discovery in the Litigation, there are more than 40 Settlement Class Members.

## 2.	There are Questions of Law and Fact Common to the Settlement Class

Second, there are questions of law and fact common to all Settlement Class Members. There need be only one common question to certify a class. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013) (citing *Sprague v. Gen. Motors*, 133 F.3d 388, 397 (6th Cir. 1998)). Here, there are questions of law and fact common to the proposed Settlement Class that predominate over any individual questions. These questions include, but are not limited to:

a.	Whether Sonic failed to adequately safeguard and protect Representative Plaintiffs' and the Settlement Class Members' Personal Information;

b.	Whether Sonic engaged in unfair, unlawful, or deceptive practices by failing to safeguard and protect Representative Plaintiffs' and the Settlement Class Members' Personal Information;

c.	Whether Sonic failed to notify Representative Plaintiffs and the Settlement Class Members about the Data Breach as soon as practical and without delay in violation of applicable data breach notification statutes;

d.	Whether Sonic acted negligently in failing to safeguard and protect Representative Plaintiffs' and the Settlement Class Members' Personal Information;

e.	Whether Sonic entered into implied contracts with Representative Plaintiffs and the Settlement Class Members that included contract terms requiring Sonic to protect the confidentiality of Representative Plaintiffs' and the Settlement Class Members' Personal Information and have reasonable security measures;

f.	Whether Sonic's conduct described herein constitutes a breach of their implied contracts with Representative Plaintiffs and the Settlement Class Members;

g.  Whether Representative Plaintiffs and the Settlement Class Members are entitled to damages as a result of Sonic's wrongful conduct;

h.  Whether equitable relief is appropriate to redress Sonic's wrongful conduct; and

i.  Whether injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by members of the Settlement Class.

These common questions predominate over any individual questions that may exist.

### 3.  Representative Plaintiffs' Claims are Typical of the Claims of the Settlement Class

Third, the claims and defenses of Representative Plaintiffs are typical of the claims and defenses of the Settlement Class. "A named plaintiff's claim is considered to be typical 'if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 482 (S.D. Ohio 2004) (citing *In re A.M.S.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). "The requirement has been described as 'the representative's interests [being] aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.'" *Id*

Representative Plaintiffs' and all other Settlement Class Members' claims arise from the same factual issues, their claims are based on the same legal theories, and they all claim to have sustained damages as a result of Sonic's alleged failure to take adequate security precautions to prevent a third-party cyberattack and protect customers' cardholder information.  As a result, Rule 23(a)(3)'s typicality requirement is satisfied.

**4. The Interests of Representative Plaintiffs and Proposed Settlement Class Counsel are Aligned with the Interests of the Settlement Class**

Fourth, Representative Plaintiffs and proposed Class Counsel will fairly and adequately protect the interests of the Settlement Class. Representative Plaintiffs have demonstrated that they are well-suited to represent the Settlement Class, as they have prosecuted this action on behalf of the Settlement Class. Several Representative Plaintiffs have already answered discovery, attended court hearings, attended the mediation, and appeared for a deposition. Representative Plaintiffs' interests are aligned with those of the other Settlement Class Members.

Additionally, as set forth in Plaintiffs' Unanimous and Unopposed Motion for Appointment of Interim Lead Counsel and Steering Committee, Class Counsel are well-qualified to represent the Settlement Class, as they all are experienced attorneys who have handled many complex civil litigation matters, including other class actions. (Dkt. 4.) On January 3, 2018, the Court granted the motion and appointed William B. Federman of Federman and Sherwood as Interim Lead Counsel, Marc Dann of DannLaw as Interim Liaison Counsel, and Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C., Melissa R. Emert of Stull, Stull, & Brody, Michael Fuller of Olsen Daines, and Miles N. Clark of Knepper & Clark LLC as members of Plaintiffs' Steering Committee. (*See* non-document order entered Jan. 13, 2018.) Since that time, the work of these firms in this Litigation and negotiating the Settlement now before the Court evidences that they are well-qualified to represent the Settlement Class.

**B. The Requirements Under Fed. R. Civ. P. 23(b)(3) Are Satisfied.**

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members of the class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied here.

1.      **Questions Common to All Settlement Class Members Predominate Over Any Potential Individual Questions**

Questions common to all Settlement Class Members predominate over any potential individual questions. For the reasons discussed above regarding commonality and typicality, there is no reason to believe that any individual question will predominate over the common questions in this Litigation. Common legal issues predominate because all Settlement Class Members' claims arise out of the same alleged wrongful conduct on the part of Sonic. Common fact issues predominate because all Settlement Class Members' claims are focused on Sonic's conduct.

2.      **A Class Action is the Superior Method to Fairly and Efficiently Adjudicate the Matter**

Additionally, a class action is the superior method to resolve Representative Plaintiffs' and Settlement Class Members' claims against Sonic. Rule 23(b)(3) requires a class action to be "superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth the following factors:

> The matters pertinent to the findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

A class action is the only reasonable method to fairly and efficiently adjudicate Settlement Class Members' claims against Sonic. *See, e.g.*, *Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [in such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available"). Individual Settlement Class Members likely would be unable or unwilling to shoulder the great expense of litigating the claims at issue against well-funded Sonic,

given the comparatively small size of each individual Settlement Class Member's claims. On the facts here, the superiority requirement is satisfied.

## III. SETTLEMENT CLASS COUNSEL ARE WELL-QUALIFIED TO REPRESENT THE INTERESTS OF THE SETTLEMENT CLASS

"An order certifying a class action . . . must also appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). In appointing class counsel, courts should consider (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

The work of Interim Lead Counsel, Interim Liaison Counsel, and members of Plaintiffs' Steering Committee in this Litigation to date, as well as their experience prosecuting complex litigation matters, demonstrate that they are well-qualified to represent the Settlement Class. (*See* Dkt. 4-1 through 4-5.) As the Court is aware from the time and expense summaries submitted by Interim Lead Counsel each month, proposed Class Counsel have already expended significant time and money to represent the Settlement Class in these proceedings, including the mediation presided over by the Court.

## IV. THE NOTICE PROGRAM SATISFIES ALL APPLICABLE REQUIREMENTS

The Parties agreed upon KCC LLC ("KCC" or "Settlement Administrator") to be the Settlement Administrator for class notice and settlement administration. (SA, ¶ 1.24.) KCC has significant experience as a class action notice provider and settlement administrator. *See* KCC Bio, attached hereto as Exhibit 4. The Parties request the Court's approval and appointment of KCC as the Settlement Administrator.

As explained below, the contents of the Notices and the plan for dissemination of the Notices—the Notice Program (SA, § 7)—should also be approved.

### A.    Contents of the Notice

"The notice should describe the action and the plaintiffs' rights in it." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). "All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.* Notice documents include the Notices attached to the Settlement Agreement as Exhibit C (In-Store Notice), Exhibit D (Internet Banner Notice), Exhibit E (Long Form Notice), Exhibit F (Publication Notice), and Exhibits G-1 and G-2 (Website and Facebook Notice respectively). The Notices were designed to provide information about the Settlement, along with clear, concise, easily understood information about Settlement Class Members' legal rights.

The Notices collectively include a fair summary of the general terms of the Settlement; instructions for how to opt-out of or object to the Settlement; the Settlement website address and toll-free telephone number where Settlement Class Members can obtain more information; instructions on how to participate in the Settlement and how Settlement Class Members can make a claim; the amount of money Class Counsel may request for attorneys' fees, costs and expenses, and Class Representative Service Awards; and will set forth the date, time, and place of the final fairness hearing, as set by the Court.

The Notices contain information that a reasonable person would consider material in making an informed, intelligent decision of whether to opt out of the Settlement or remain a member of the Settlement Class and be bound by a final judgment, and they direct individuals to a convenient location to obtain more detailed information. Altogether, the Notices fairly apprise

the Settlement Class Members of the terms of the Settlement, and the options that are open to them in connection with this Litigation.

### 1. Opting Out

Any Settlement Class Member wishing to opt out of the Settlement Class must individually sign and timely submit to the designated mailing address established by the Settlement Administrator written notice clearly manifesting their intent to be excluded from the Settlement Class in this Litigation, along with their name and address ("Request for Exclusion" or "Opt-Out"). (SA, ¶¶ 8.1, 8.1.1.) To be effective, the Opt-Out must be postmarked no later than ninety (90) days from the commencement of the Notice Program ("the Opt-Out and Objection Deadline"). (SA, ¶ 8.1.3.) The Opt-Out and Objection Deadline will be set forth in the Notices.

### 2. Objecting

A Settlement Class Member desiring to object to the Settlement will be required to submit a timely written notice of his or her objection. To be timely, written notice of an objection in appropriate form must be filed with the Clerk of Court on or before the Opt-Out and Objection Deadline and served concurrently therewith upon Interim Lead Counsel and Defense Counsel at the addresses set forth in the Notices. (SA, ¶ 9.1.1.)

The written notice of the objection must include: (a) the objector's full name, current address, telephone number, and email address (if any); (b) a statement that he/she is a Settlement Class Member, including an attestation that he/she made a purchase using a debit or credit card at one of the 325 Impacted Sonic Drive-Ins during the Settlement Class Period and identifying the address of the location where he/she made his/her purchase; (c) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (d) the identity of all counsel representing the objector, if any; (e) a written statement

indicating whether he/she intends to appear and/or testify at the final approval hearing and the identity of all counsel, if any, representing the objector who will appear at the final approval hearing; (f) a statement identifying any person who will be called to testify at the final approval hearing in support of the objection; (g) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); (h) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last three (3) years; and (i) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last three (3) years. (SA, ¶ 9.1.)

Any Settlement Class Member who fails to object in the manner prescribed will be deemed to have waived their objections and be forever barred from making any such objections in the Litigation or in any other action or proceeding. (SA, ¶ 9.2.)

### B.  Notice Program

Pursuant to Federal Rule of Civil Procedure 23(e)(1), a district court, when approving a class action settlement, "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Pursuant to Federal Civil Rule 23(c)(2)(B), for any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

Additionally, "[t]he Due Process Clause … gives unnamed class members the right to notice of the settlement of a class action. To comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *Gooch v. Life Inv'rs Ins. Co. of Am.*,

672 F.3d 402, 422–23 (6th Cir. 2012) (citations omitted); *see also In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 684 (N.D. Ohio 2015), *reconsideration denied*, No. 1:10 MD 2196, 2015 WL 12748013 (N.D. Ohio Dec. 21, 2015); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974) (notice to absent class members must meet minimum due process requirements).

The Settlement Agreement provides that notice to Settlement Class Members shall occur through various methods targeted to reach members of the Settlement Class. The Notice Program provides for dissemination of the Notices through the following methods: (i) conspicuously posting the In-Store Notice at the Impacted Sonic Drive-In locations, (ii) posting the Internet Banner Notice geo-tagged to the Facebook pages of Facebook users located with the zip codes of Impacted Sonic Drive-In locations, (iii) publishing the Publication Notice in a manner certified by the Settlement Administrator as being targeted to adults over 18 years of age located within the zip codes of the Impacted Sonic Drive-In locations, (iv) conspicuously posting the Website Notice on the Sonic website and Sonic Facebook page, and (v) posting the Long Form Notice on the Settlement Website.

The Settlement Website will also include relevant court documents, and will enable Settlement Class Members to either download a Claim Form or electronically fill out and submit a Claim Form. Further, the Settlement Administrator shall establish a toll-free telephone number that Settlement Class Members can call with questions or for more information regarding the Settlement. As the Notice Program includes numerous methods to reach Settlement Class Members, it readily satisfies the "best practicable" standard.

The Notice documents and the Notice Program should be approved because they are the best notice practicable under the circumstances, constitute due and sufficient notice to the Settlement Class Members, and comply with Fed. R. Civ. P. 23 and due process requirements.

## V.     THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING

The final step in the preliminary approval process is to schedule a final approval hearing, at which the Court will hear evidence and argument necessary to make its final evaluation of the Settlement. The Court will determine at or after the final approval hearing whether the Settlement should be finally approved; whether to enter the final approval order under Rule 23(e); and whether to approve Class Counsel's application for attorneys' fees, costs and expenses, and request for Service Awards for the Representative Plaintiffs. Representative Plaintiffs request that the Court schedule the final approval hearing approximately 170 days after entry of the Preliminary Approval Order or at a date otherwise convenient for the Court, and in compliance with the provisions of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. Class Counsel will file the Motion for Final approval no later than fourteen (14) days before the final approval hearing.

## <u>CONCLUSION</u>

The Settlement readily meets the standard for preliminary approval. Representative Plaintiffs respectfully request that this Honorable Court enter an Order:

(1)     Preliminarily approving the Settlement;

(2)     Certifying the Settlement Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only;

(3)     Appointing Representative Plaintiffs as Class Representatives of the Settlement Class;

(4)     Appointing William B. Federman of Federman & Sherwood,  Marc E. Dann of DannLaw, Carin L. Marcussen of Federman & Sherwood, Brian D. Flick of DannLaw, Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C., Melissa

R. Emert of Stull, Stull, & Brody, Michael Fuller of Olsen Daines, and Miles N. Clark of Knepper & Clark LLC as Settlement Class Counsel;

(5)     Approving the Claim Form, attached as Exhibit B-1 (downloadable) and Exhibit B-2 (electronic) to the Agreement;

(6)     Appointing KCC LLC as Settlement Administrator;

(7)     Approving the Notice Program as set forth in the Agreement;

(8)     Approving as to form and content the Notices attached to the Settlement Agreement as Exhibit C (In-Store Notice), Exhibit D (Internet Banner Notice), Exhibit E (Long Form Notice), Exhibit F (Publication Notice), and Exhibits G-1 and G-2 (Website and Facebook Notice);

(9)     Scheduling a final approval hearing to consider entry of a final order approving the Settlement and the request for attorneys' fees, costs, expenses, and Class Representative Service Awards; and

(10)    Granting any other relief that the Court deems reasonable.

Date: October 10, 2018                         Respectfully Submitted,

                                               /s/ *William B. Federman*
                                               William B. Federman
                                               Carin L. Marcussen
                                               FEDERMAN & SHERWOOD
                                               10205 N. Pennsylvania Ave.
                                               Oklahoma City, OK 73120
                                               Telephone:  (405) 235-1560
                                               Facsimile:  (405) 239-2112
                                               wbf@federmanlaw.com
                                               clm@federmanlaw.com

                                               *Interim Lead Counsel*

                                               Marc E. Dann (0039425)
                                               Brian D Flick (0081605)
                                               DANNLAW
                                               P.O. Box 6031040
                                               Cleveland, OH  44103
                                               Telephone: (216) 373-0539
                                               Facsimile:  (216) 373-0536
                                               notices@dannlaw.com

                                               *Interim Liaison Counsel*

Thomas A. Zimmerman, Jr.
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, IL 60602
Telephone:  (312) 440-0020
Facsimile:  (312) 440-4180
tom@attorneyzim.com

Melissa R. Emert
STULL, STULL, & BRODY
6 East 45th Street
New York, NY 10017
Telephone:  (954) 341-5561
Facsimile:  (954) 341-5531
memert@ssbny.com

Michael Fuller
OLSEN DAINES
US Bancorp Tower
111 Southwest 5th Ave, Suite 3150
Portland, OR 97204
Telephone:  (503) 201-4570
Facsimile:  (503) 362-1375
michael@underdoglawyer.com

Miles N. Clark
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Telephone:  (702) 825-6060
Facsimile:  (702) 447-8048
miles.clark@knepperclark.com

*Plaintiffs' Steering Committee*

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2018, a copy of the foregoing was served via ECF upon the following counsel for Defendants:

Kari M. Rollins
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112
Telephone: 212.634.3077
Fax: 917.438.6173
krollins@sheppardmullin.com

Craig C. Cardon
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: 310.228.3749
Fax: 310.228.3701
ccardon@sheppardmullin.com

Lisa Thomas
David M. Poell
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
Three First National Plaza
70 West Madison Street, 48th Floor
Chicago, IL 60602
Telephone: 312.499.6335
Fax: 312.499.4731
lmthomas@sheppardmullin.com
dpoell@sheppardmullin.com

David A. Riepenhoff
Melanie J. Williamson
FISHEL HASS KIM ALBRECHT
DOWNEY LLP
7775 Walton Parkway, Suite 200
New Albany, OH 43054
Telephone: 614.221.1216 –
Fax:  614.221.8769
driepenhoff@fishelhass.com
mwilliamson@fishelhass.com

/s/ *William B. Federman*
William B. Federman
*Interim Lead Counsel for Plaintiffs*