# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION AT CLEVELAND

In re:

**SONIC CORP. CUSTOMER DATA
BREACH LITIGATION**

**THIS DOCUMENT RELATES TO
ALL CASES**

Case No. 1:17-md-02807-JSG

Judge James S. Gwin

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement" or "Settlement Agreement"), dated as of October 9, 2018, is made and entered into by and among the following Parties: (i) Septabeya Bean, Patrick Blanford, Cornelius Bogard, Penny Bolin, Shadawna Carson, John Dolembo, Carlton Donovan, Shannon Gannon, Henry Gil, Esmeralda Hernandez, Melvin Hildreth III, Vonda Hoover, Barbara Kelley, Mark Korabelnikov, Megan MacKay, Dometric Pearson, Denise Ramirez, Edward Ramirez, Paula Sbabo, Cassandra Sharp, Linda Sipple, and Angela Williams ("Representative Plaintiffs"), individually and on behalf of a settlement class (the "Settlement Class," as defined below), by and through their counsel William B. Federman of Federman & Sherwood ("Interim Lead Counsel"), Marc E. Dann of DannLaw ("Interim Liaison Counsel"), and Thomas A. Zimmerman, Jr. ("Plaintiffs' Steering Committee" member); and (ii) Sonic Corp., Sonic Industries Services Inc., Sonic Capital LLC, Sonic Franchising LLC, Sonic Industries LLC, and Sonic Restaurants, Inc. (collectively, the "Sonic Defendants"), by and through their counsel of record, lead counsel P. Craig Cardon and Kari M. Rollins of Sheppard Mullin Richter & Hampton LLP ("Defense Counsel"). The Representative Plaintiffs, the Settlement Class (as defined below), and Sonic Defendants are collectively referred to in this Agreement as the "Parties".

## RECITALS

**WHEREAS**, on behalf of themselves and a putative class of similarly situated individuals, the Representative Plaintiffs are prosecuting the above-captioned civil action against the Sonic Defendants, entitled *In re: Sonic Corp. Customer Data Breach Litigation*, MDL Case No. 1:17-md-02807-JSG, pending in the Northern District of Ohio, Eastern Division at Cleveland, before the Honorable James S. Gwin (the "Litigation").

**WHEREAS**, on behalf of themselves and the putative class, Representative Plaintiffs have asserted claims against the Sonic Defendants for negligence, negligence per se, breach of implied contract, negligent misrepresentation, unjust enrichment, violation of twenty-six (26) state consumer protection statutes, violation of fifteen (15) state data breach statutes, and injunctive/declaratory relief, arising out of a third-party cyber attack on the point-of-sale systems of certain Sonic Drive-In locations in 2017.

**WHEREAS**, Representative Plaintiffs allege that the Sonic Defendants failed to take adequate security precautions to prevent the third-party cyber attack and protect customer information.

**WHEREAS**, the Sonic Defendants deny each and every one of Plaintiffs' allegations, and specifically contend that they did have adequate security precautions in place, deny that they are liable in any way for the third-party cyber attack on the point-of-sale systems of certain Sonic Drive-In locations, and deny that Plaintiffs are entitled to any relief from the Sonic Defendants. The Sonic Defendants have not conceded or admitted any liability, and have a asserted a number of defenses to Plaintiffs' claims. Nevertheless, given the risks, uncertainties, burden, and expense of continued litigation, the Sonic Defendants have agreed to settle this Litigation on the terms set forth in this Agreement, subject to Court approval.

WHEREAS, prior to mediation, the Parties engaged in extensive discovery: (i) the Sonic Defendants produced voluminous documents, data, and communications, which Class Counsel (as defined below) reviewed and analyzed; (ii) Class Counsel conducted third-party discovery, including preparing and serving twenty (20) subpoenas *duces tecum* on third parties identified by Sonic Defendants as having relevant information about Sonic's information technology and cybersecurity processes and procedures, and obtained evidentiary affidavits, in lieu of depositions, from certain such third party vendors; (iii) the Parties deposed and/or interviewed several key fact witnesses; (iv) the Parties retained and consulted with multiple experts, including cybersecurity experts and damages experts; and (v) the Parties engaged in significant motion practice relating to discovery disputes.

WHEREAS, this Agreement resulted from good faith, arm's-length settlement negotiations, including two full-day mediation sessions before the Honorable Jonathan D. Greenberg.

WHEREAS, Class Counsel (as defined below) has conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims to be resolved by this Settlement Agreement and how best to serve the interests of the putative class in the Litigation. Based on this investigation and the negotiations described above, Class Counsel have concluded, taking into account the sharply-contested issues involved, the risk, uncertainty, and cost of further prosecution of this Litigation, and the substantial benefits to be received by the Settlement Class (as defined below) pursuant to this Agreement, that a settlement with the Sonic Defendants on the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

WHEREAS, the Parties understand, acknowledge, and agree that the execution of this

3

Agreement constitutes the settlement and compromise of all disputed claims brought by Representative Plaintiffs (as defined above) and the Settlement Class (as defined below). This Agreement is inadmissible as evidence against any of the Parties except for purposes of enforcing the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any of the Parties to this Agreement.

WHEREAS, the Settlement contemplated by this Agreement is subject to preliminary and final approval by the Court, as set forth herein. This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle all claims and causes of action asserted, or that could have been asserted by Representative Plaintiffs (as defined above) and the Settlement Class (as defined below), against the Sonic Defendants and Released Persons (as defined below) arising out of or relating to the Data Breach (as defined below).

THEREFORE, the Parties hereby agree as follows:

1. **DEFINITIONS**

1.1.  "Attorneys' Fees and Costs" means the attorneys' fees, costs, and expenses to be requested by Class Counsel, subject to Court approval, as set forth in Paragraph 10.1 below.

1.2.  "Claimant" means any Settlement Class Member who submits a Settlement Claim via a Claim Form.

1.3.  "Claims Administration" means the processing of Claim Forms received from Settlement Class Members and the processing of payment of Verified Claims by the Settlement Administrator.

1.4.  "Claims Deadline" means the deadline by which Settlement Class Members must submit any Settlement Claims; Settlement Claims submitted after the Claims Deadline will not be timely and will not qualify for approval as set forth in Section 5 below and will be rejected unless the Parties expressly agree to accept them. The Claims Deadline shall be set by the Court in the

4

Preliminary Approval Order. The parties propose a Claims Deadline that is the 90th day after the commencement of the Notice Program as set forth in Paragraph 7.7 below.

1.5.  "Claim Form" shall mean the claim forms substantially in the forms attached hereto as Exhibits B-1 and B-2, which have been and must be (if substantively altered in any respect) agreed to by the Parties, and are subject to Court approval, for the submission of Settlement Claims to the Settlement Administrator by Settlement Class Members.  Only those Settlement Class Members who submit a Claim Form in the manner set forth in this Agreement, subject to Court approval, shall be eligible to recover a share of the Settlement proceeds.

1.6.  "Claims Period" shall mean the time for Settlement Class Members to submit claims, running from the commencement of the Notice Program through the Claims Deadline.

1.7.  "Class Counsel" means Interim Lead Counsel and Interim Liaison Counsel, together with Carin L. Marcussen of Federman & Sherwood, Brian D. Flick of DannLaw, Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C., Melissa R. Emert of Stull, Stull, & Brody, Michael Fuller of Olsen Daines, and Miles N. Clark of Knepper & Clark LLC.

1.8.  "Class Representative Service Award" means an award Class Counsel shall request be paid from the Settlement Fund to each of the Representative Plaintiffs in their capacity as representatives of the Settlement Class in the amounts set forth herein to compensate each Representative Plaintiff for prosecuting this Litigation.

1.9.  "Costs of Settlement Administration" means all actual costs associated with or arising from the establishment and administration of the Settlement Fund as a Qualified Settlement Fund ("QSF") as set forth in Section 4 below, Claims Administration, and the administration of the Notice Program as forth in Sections 5 through 8 below, including the printing, electronic generation, publication, and dissemination of all Settlement Notices identified in Paragraph 7.2

below. The Costs of Settlement Administration shall be paid to the Settlement Administrator from the Settlement Fund as set forth in this Agreement.

1.10. "Data Breach" means the third-party cyber attack targeting the point-of-sale systems of Sonic Drive-Ins from April 7, 2017 through October 28, 2017 in an effort to acquire, without authorization, customer payment card information.

1.11. "Effective Date" means the first date by which all of the events and conditions specified in Paragraph 14.1 herein have occurred and been met.

1.12. "Final Judgment" means a final order and judgment rendered by the Court that, among other things, finally approves the Settlement Agreement and dismisses the Litigation with prejudice against the Sonic Defendants, which this Settlement Agreement contemplates will be entered and approved by the Court. The proposed Final Judgment is attached hereto as Exhibit I, has been agreed to by the Parties, and is subject to Court approval.

1.13. "Impacted Sonic Drive-Ins" means the three hundred and twenty-five (325) franchisee-owned and -operated Sonic Drive-In locations for which the forensic evidence indicates that customer credit or debit card information was stolen during the Data Breach, as listed in Exhibit A to this Settlement Agreement.

1.14. "In-Store Notice" means a notice in substantially the form attached hereto as Exhibit C, which has been, and must be (if substantively altered in any respect), agreed to by the Parties and the Settlement Administrator, and is subject to Court approval, and which will be disseminated in accordance with the Notice Program set forth in Section 7 and the terms of this Settlement.

1.15. "Infor" means Infor Restaurant Systems, a Division of Infor (US), Inc. and its current and former parents, subsidiaries, affiliated companies, and divisions, whether indirect or

6

direct, as well as their respective predecessors and successors, their respective past and present directors, officers, employees, and principals, and their respective agents, attorneys, insurers, and reinsurers.

1.16. "Internet Banner Notice" means a notice in substantially the form attached hereto as Exhibit D, which has been, and must be (if substantively altered in any respect), agreed to by the Parties and the Settlement Administrator, and is subject to Court approval, and which will be disseminated in accordance with the Notice Program set forth in Section 7 and the terms of this Settlement.

1.17. "Long Form Notice" means a document substantially in the form attached as Exhibit E, which has been, and must be (if substantively altered in any respect), agreed to by the Parties and the Settlement Administrator, and is subject to Court approval, and which will be disseminated in accordance with the Notice Program set forth in Section 7 and the terms of this Settlement.

1.18. "Personal Information" means information that is or could be used, whether on its own or in combination with other information, to identify, locate, or contact a person, and further includes, without limitation, names, addresses, credit or debit card numbers, expiration dates, security codes, and any other credit or debit card related information.

1.19. "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and, among other things, ordering that notice be provided to the Settlement Class. The proposed Preliminary Approval Order is attached hereto as Exhibit H, has been agreed to by the Parties, and is subject to Court approval.

1.20. "Publication Notice" means a document substantially in the form attached as Exhibit F, which has been, and must be (if substantively altered in any respect), agreed to by the

7

Parties and the Settlement Administrator, and is subject to Court approval, and which will be disseminated in accordance with the Notice Program set forth in Section 7 and the terms of this Settlement.

1.21. "Released Claims" shall mean any and all claims, rights, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature, and character, known and unknown, including without limitation, negligence, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of confidence, invasion of privacy, misrepresentation (whether fraudulent, negligent, or innocent), unjust enrichment, bailment, wantonness, failure to provide adequate notice pursuant to any breach notification statute or common law duty, any federal, state, or local statutory or regulatory claims, including, but not limited to, pursuant to consumer protection laws, unfair and deceptive trade practice laws, and further including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees, costs, and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that any Settlement Class Member has, has asserted, could have asserted, or could assert against any of the Released Persons based on, relating to, concerning, or arising out of the Data Breach (including, but not limited to, the theft or compromise of Personal Information) or the allegations, facts, or circumstances described in the Litigation. "Released Claims" shall also include Unknown Claims, as that term is defined below.

1.22. "Released Persons" means Sonic (as defined below), Sonic Franchisees (as defined below), and Infor (as defined above).

1.23. "Settlement" means the compromise and settlement of the Litigation as

8

contemplated by this Agreement.

1.24.   "Settlement Administrator" means KCC LLC, as has been agreed by the Parties, which is experienced in formulating and effectuating notice programs and administering class action settlements, generally and specifically those of the type provided for and made in data breach litigation.  For the avoidance of doubt, the Settlement Administrator shall perform the duties of, among other things: (i) providing notice and Claim Forms to Settlement Class Members; (ii) printing or otherwise electronically generating the Publication Notice, the Internet Banner Notice, the In-Store Notice, and the Long Form Notice (iii) publishing Publication Notice and administering Internet Banner Notice; (iv) tracking returned Claim Forms and written opt-out notices; (v) notifying the Parties of determinations regarding submitted Claim Forms and opt-out requests consistent with this Agreement; (vi) setting up the Settlement Fund as a QSF and administering the QSF as set forth herein; (vii) distributing Settlement proceeds to those Settlement Class Members who submitted Verified Claims as provided for by this Agreement; and (viii) other notice and administration duties in accordance with this Agreement and the Court's orders.

1.25.   "Settlement Claim" means a claim or request submitted by way of a Claim Form either online at the Settlement Website or by mail, seeking settlement benefits as provided for in Sections 3 and 5 of this Settlement Agreement.

1.26.   "Settlement Class" means all residents of the United States who made a purchase at one of the 325 Impacted Sonic Drive-Ins and paid using a debit or credit card during the Settlement Class Period.  The Settlement Class specifically excludes: (i) Sonic (as defined below); (ii) Sonic Franchisees (as defined below); (iii) Infor (as defined above); (iv) all Settlement Class Members who timely and validly request exclusion from and/or opt-out of the Settlement Class; (v) the Judge or Magistrate Judge to whom the action is assigned and, any member of those Judges'

9

staffs or immediate family members; and (vi) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Breach or who pleads *nolo contendere* to any such charge.

1.27.  "Settlement Class Member" and "Settlement Class Members" mean all persons residing in the United States who fall within the definition of the Settlement Class.

1.28.  "Settlement Class Period" means, for the purposes of Settlement only, the period of time from April 7, 2017 through October 28, 2017.

1.29.  "Settlement Fund" as used herein means $4,325,000.00 to be paid by the Sonic Defendants pursuant to this Settlement, which represents the Sonic Defendants' total monetary liability under this Agreement. In no event shall the total value of Verified Claims, Attorneys' Fees and Costs, Class Representative Service Awards, and the Costs of Settlement Administration exceed $4,325,000.00. The Settlement Fund shall be set up by the Settlement Administrator as a QSF in accordance with the terms set forth in Section 4 below.

1.30.  "Settlement Website" means an Internet website established and maintained by the Settlement Administrator regarding this Settlement. The Settlement Website shall be an easy-to-remember URL that relates to this Litigation and Settlement, such as www.SonicDataBreachSettlement.com.

1.31.  "Sonic" means the Sonic Defendants and their current and former parents, subsidiaries, affiliated companies, and divisions, whether indirect or direct, as well as their respective predecessors and successors, their respective past and present directors, officers, employees, and principals, and their respective agents, attorneys, insurers, and reinsurers.

1.32.  "Sonic Franchisees" means the independent franchise owners and operators of Sonic Drive-In restaurants and their current and former parents, subsidiaries, affiliated companies,

and divisions, whether indirect or direct, as well as their respective predecessors and successors, their respective past and present directors, officers, employees, and principals, and their respective agents, attorneys, insurers, and reinsurers.

1.33. "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any of the Representative Plaintiffs, does not know or suspect to exist in his or her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Representative Plaintiffs expressly shall have, and each of the other Settlement Class Members who have not timely opted-out of this Settlement shall be deemed to have, and by operation of the Final Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542 to the extent applicable, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Settlement Class Members, including Representative Plaintiffs, and any of them, may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Released Claims, but Representative Plaintiffs expressly shall have, and each other Settlement Class Member who has not timely opted-out of this Settlement

shall be deemed to have, and by operation of the Final Judgment shall have, upon the Effective Date, fully, finally, and forever settled and released any and all Released Claims, including Unknown Claims. The Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.34. "Verified Claim" or "Verified Claims" means Settlement Claims completed using a Claim Form that have been found to be valid by the Settlement Administrator for payment in accordance with this Agreement.

1.35. "Website Notice" means a notice substantially in the forms attached hereto as Exhibits G-1 and G-2, which have been, and must be (if substantively altered in any respect), agreed to by the Parties and the Settlement Administrator, and are subject to Court approval, and which will be published in accordance with the Notice Program set forth in Section 7 and the terms of this Settlement.

## 2. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY

2.1. The Parties agree that, for purposes of Settlement only, Representative Plaintiffs, by and through their Class Counsel, shall request, and the Sonic Defendants shall not oppose, certification of the Settlement Class (as defined above) pursuant to Federal Rule of Civil Procedure 23(b)(3).

2.2. The Parties agree that, for purposes of Settlement only, Representative Plaintiffs shall request, and the Sonic Defendants will not oppose, the Court's appointment of Lead Counsel, Liaison Counsel, and Class Counsel for the Settlement Class, and the appointment of the Representative Plaintiffs as representatives of the Settlement Class.

2.3. The Settlement is conditioned on the Court certifying the Settlement Class. The Parties and Class Counsel agree that, if approved, certification of the Settlement Class is a

conditional certification for settlement purposes only, and if for any reason the Court does not grant final approval of the Settlement, or if final approval is not granted following appeal of any order by the Court, the certification of the Settlement Class shall be deemed null and void, and each Party shall retain all their respective rights and positions in the Litigation as they existed prior to the execution of the Settlement Agreement.

3.      **SETTLEMENT CONSIDERATION**

**Settlement Fund**

3.1.    Subject to the other terms and conditions of this Agreement, and subject to Court approval, the Sonic Defendants have a agreed to pay $4,325,000.00 (the "Settlement Fund") for the monetary component of the Settlement into a QSF to be established by the Settlement Administrator, which will be used to pay for the following benefits provided by this Settlement:

3.1.1. The Costs of Settlement Administration incurred in accordance with this Agreement;

3.1.2. Attorneys' Fees and Costs, in the amount approved and awarded by the Court;

3.1.3. Class Representative Service Awards, in the amounts approved and awarded by the Court to each of the Class Representatives; and

3.1.4. Payments—as described herein and in accordance with this Agreement—to Settlement Class Members who submitted Verified Claims. After the deductions from the Settlement Fund described in Paragraphs 3.1.1 through 3.1.3 above, and provided the Effective Date occurs, the remaining amount in the Settlement Fund (hereinafter, the "Net Settlement Fund") will be distributed in accordance with Section 6 below to Settlement Class Members who submit a Verified Claim to the Settlement Administrator. The value of the Verified Claims paid to each Settlement Class Member will be as follows, subject to the qualifications below in Paragraph 3.1.5: (1) Settlement Class Members who made a purchase using a credit or debit card at one of the

13

Impacted Sonic Drive-Ins during the Settlement Class Period shall be paid $10.00 per Settlement Class Member ("Category 1 Settlement Class Members"); or (2) Settlement Class Members who made a purchase using a credit or debit card at one of the Impacted Sonic Drive-Ins during the Settlement Class Period and who experienced fraudulent or unauthorized charges on the credit or debit card used at the Impacted Sonic Drive-In location any time thereafter up through February 28, 2018 shall be paid $40.00 per Settlement Class Member ("Category 2 Settlement Class Members").

3.1.5. If the total amount of Verified Claims to be paid pursuant to Paragraph 3.1.4 exceeds the Net Settlement Fund, the Settlement Administrator shall adjust the amounts of individual payments to Settlement Class Members by decreasing the payments on a pro rata basis such that the total aggregate amount of Verified Claims to be paid pursuant to Paragraph 3.1.4 does not exceed the Net Settlement Fund. However, if the total amount of Verified Claims to be paid pursuant to Paragraph 3.1.4 is less than the Net Settlement Fund, the Settlement Administrator shall adjust the amounts of individual payments to Settlement Class Members by increasing the payments on a pro rata basis in order to fully allocate and pay the full Net Settlement Fund. No monies shall revert to the Sonic Defendants.

3.2. The payments identified in Paragraphs 3.1.1 through 3.1.4 of this Agreement shall be paid solely from the Settlement Fund pursuant to the terms of this Agreement. The $4,325,000.00 monetary component as described above shall be the total amount owed by the Sonic Defendants as part of this Settlement. The Sonic Defendants will not be obligated to pay any additional sums, and shall have no other monetary liability for any costs or expenses related to this Settlement, including, without limitation, the costs of administering the Settlement, preparation of Notice, oversight and reporting of the Notice Program, establishing the appropriate

Settlement Website, any escrow or QSF expenses, and/or tax filing and distributions. All such costs shall be paid from the Settlement Fund. For clarity, all costs of the QSF shall be paid from the Settlement Fund. In no event shall the Sonic Defendants' liability or obligation under this Settlement Agreement exceed $4,325,000.00 as set forth above.

**Agreement Relating to Sonic's Business Practices**

3.3.    Sonic acknowledges that it has made certain governance changes since the filing of the Litigation.

3.4.    For a period of no less than three (3) years following the Effective Date, the Sonic Defendants agree to continue using and employing the following data security practices:

3.4.1.  Consistent with the PCI DSS obligations imposed on each franchisee directly by the five (5) major card brands (VISA, MasterCard, American Express, Discover, and JCB), Sonic will continue to require all Sonic Drive-In franchise locations to comply with the PCI DSS standards applicable to their merchant level.

3.4.2.  Sonic will continue to employ an executive officer with responsibility for and oversight of Sonic's enterprise-wide approach to information security and data privacy as it relates to both company, employee, and customer information.

3.4.3.  Sonic will continue to facilitate the regular reporting and discussion of information security and/or data privacy concerns or threats by and among employees and franchisees to members of the Sonic Cybersecurity team, including up to the Vice President of Cybersecurity and/or the executive officer with ultimate responsibility for Sonic's enterprise-wide approach to information security and data privacy.

3.4.4.  Sonic will continue to operate a 24-Hour Cybersecurity Hotline and dedicated cybersecurity email addresses to enable employees and franchisees to report any information

15

security or data privacy concerns they may have.

3.4.5.  The Vice President of Cybersecurity or the equivalent executive officer with ultimate responsibility for Sonic's enterprise-wide approach to information security and data privacy will continue to report to and update the Board on at least a quarterly basis regarding the status of, planned future tasks for, and any developments or issues relating to Sonic's enterprise-wide information security and data privacy program.

3.4.6.  Sonic's internal audit team will continue to perform annual audits of Sonic's information security and data privacy program. Additionally, the Sonic Cybersecurity team will continue to utilize the regular and ongoing services of independent third parties to provide managed information security services, to identify emerging threats and develop counter measures against new exploits, and to conduct risk assessments, vulnerability assessments, penetration testing, compliance audits, and security assessments, among other things.

3.4.7.  Sonic will continue to utilize and follow reasonable and standard information security policies, practices, procedures, and standards to manage and address, among other things, information security and data privacy risks or threats posed to company, employee, and customer information.

3.4.8.  Consistent with its enterprise-wide approach to information security and data privacy, and similar to its existing vendor management program, Sonic will continue to maintain a policy that requires Sonic vendors with access to Sonic's systems or which process or store company, employee, or customer information to adhere to security standards that are reasonable and relevant to the services performed by the vendor.

3.4.9.  Sonic will continue to require the encryption of all payment card data at the time of transaction.

3.4.10. Sonic will continue to require the use of multi-factor authentication ("MFA") for access to its point-of-sale systems by employees or third-party vendors (where applicable) for as long as MFA is deemed reasonable and industry standard.

3.4.11. Sonic will continue to distribute educational and training resources to employees and franchisees that emphasize the importance of information security and data privacy as it relates to company, employee, and customer information.

3.5. Sonic will continue, on at least a quarterly basis, to report to and update the Franchise Advisory Council or similar franchise committee on the status of, developments relating to, and issues concerning the Sonic information security and data privacy program as it relates to and impacts Sonic Drive-In locations.

## 4. ESTABLISHING THE SETTLEMENT FUND AS A QUALIFIED SETTLEMENT FUND

4.1. Within thirty (30) days following the entry of the Preliminary Approval Order by the Court, the Sonic Defendants shall transfer the amount of $4,325,000.00 into an escrow account established by and at the direction of the Settlement Administrator for the creation of the Settlement Fund pursuant to and consistent with the terms of this Agreement.

4.2. The Settlement Administrator shall take all necessary steps to establish, organize, and operate the Settlement Fund, and the escrow account established therefore, as a QSF pursuant to Treasury Regulation § 1.46B-1, § 46B of the Internal Revenue Code, 26 U.S.C. § 46B, and the regulations promulgated pursuant thereto. The Sonic Defendants shall provide the Settlement Administrator with the information necessary to establish the Settlement Fund as a QSF. The Settlement Administrator shall be the "administrator" of the QSF within the meaning of Treasury Regulation § 1.46B-2(k)(3).

4.3. If requested either by the Sonic Defendants or the Settlement Administrator, the

Settlement Administrator and the Sonic Defendants shall fully cooperate in filing a relation-back election under Treasury Regulation § 1.46B-1(j)(2) to treat the QSF as coming into existence as a settlement fund as of the earliest possible date.

4.4.    Upon establishment of the QSF, the Settlement Administrator shall apply for an employer identification number for the QSF, utilizing Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation § 1.46B-2(k)(4).  The Settlement Administrator shall cause to be timely and properly filed, on behalf of the QSF, all required federal, state, and local tax returns, information returns, and tax withholdings statements in accordance with the provisions of Treasury Regulation § 1.46B-2(k) and Treasury Regulation § 1.46B-2(1)(2), as well as the timely and proper payments of any federal, state, or local taxes (included estimated taxes) and associated tax-related penalties and interest for which the QSF may be liable.  The Settlement Administrator shall also be responsible for the timely and proper response to any questions from, or audits regarding, such taxes by the IRS or any state or local tax authority, as well as compliance with any other tax-related requirements.

4.5.    If required by applicable law, the QSF (through the Settlement Administrator) shall issue 1099s to Class Counsel (for payments of Attorneys' Fees and Costs approved and awarded by the Court) and to the Representative Plaintiffs for any Class Representative Service Award approved and awarded by the Court.

4.6.    The Settlement Administrator may amend, either in whole or in part, any administrative provision of this Section or the escrow instrument through which the QSF is established to maintain the qualification of the QSF pursuant to the above described authorities provided that the rights and liabilities of the Parties hereto and the Settlement Class are not altered thereby in any material respect.

5.    **CLAIMS PROCESS**

5.1.    All Settlement Class Members who desire to receive the benefits and/or proceeds of the Settlement as provided for under Paragraph 3.1.4 above must complete and submit a Claim Form to the Settlement Administrator. If mailed, the Claim Form must be postmarked on or before the Claims Deadline. If submitted online through the Settlement Website, the Claim Form must be completed and submitted on or before the Claims Deadline. Each Settlement Class Member will be required to attest to the truthfulness and accuracy of the representations made in his/her Claim Form to the best of his/her knowledge and belief.  Notarization shall not be required.

5.2.    The Settlement Administrator, in its sole discretion to be reasonably exercised, will determine: (a) whether a Claimant qualifies as a Settlement Class Member; (b) the total value of all Verified Claims to be distributed to Settlement Class Members from the Net Settlement Fund; (c) assuming a Claimant qualifies as a Settlement Class Member and has submitted a Verified Claim, the amount to be paid to each Settlement Class Member.

5.3.    Upon receipt of an incomplete or unattested Claim Form, the Settlement Administrator shall request additional information ("Claim Supplementation") and give the Claimant thirty (30) days to cure the defect before rejecting the Settlement Claim. The Settlement Administrator shall endeavor to send requests for Claim Supplementation on a rolling basis as Claim Forms are received but no later than thirty (30) days after the Claims Deadline.  In the event of unusual circumstances interfering with compliance during the 30-day period, the Claimant may request and, for good cause shown (*e.g.*, illness, military service, out of the country, mail failures, lack of cooperation of third-parties in possession of required information, etc.), shall be given a reasonable extension of the 30-day deadline in which to comply; however, in no event shall the deadline be extended to later than one hundred and eighty (180) days from the Effective Date. If the defect is not cured, then the Settlement Claim will be deemed invalid and there shall be no

19

obligation to pay the Settlement Claim.

5.4.    Following receipt of the additional information requested as Claim Supplementation, the Settlement Administrator shall have thirty (30) days to accept, in whole or lesser amount, or reject each Settlement Claim. If, after review of the Settlement Claim, the Settlement Administrator determines that such a Settlement Claim is facially valid, then the Settlement Claim shall be deemed a Verified Claim and paid within the time period allotted by Paragraph 6.2 to the extent and in the amount that the Settlement Administrator finds the Settlement Claim to be valid. If the Settlement Claim remains invalid because the Claimant does not provide the requested information needed to supplement and complete the Claim Form and evaluate the Settlement Claim, then the Settlement Administrator may reject the Settlement Claim without any further action.

5.5.    The Settlement Administrator shall review all submitted Claim Forms for completeness, validity, accuracy, and timeliness, and if there is any reasonable basis to believe a Claim Form is not valid (*e.g.*, the repetition of a single address on multiple Claim Forms, or any other issue or indicator of fraud that appears from the Claim Form), then the Settlement Administrator shall, at any time, contact any Claimant to request additional information and documentation to evaluate and determine the validity of any Settlement Claim. For example, the Settlement Administrator may request proof of purchase at one of the Impacted Sonic Drive-Ins during the Settlement Class Period (*e.g.*, in the form of a receipt, a credit or debit card statement, or identification of the date, store location, and last four digits of the credit or debit card used, and the amount of the purchase). Additionally, in cases where the Claimant is asserting that he/she experienced fraudulent or unauthorized charges on the credit or debit card used at one of the Impacted Sonic Drive-Ins, the Settlement Administrator may request proof of such fraudulent or

unauthorized charges. The proof could be, for example, in the form a credit or debit card statement or other communications or correspondence regarding the fraudulent or unauthorized charges.

5.6.    Within thirty (30) days of the deadline to submit Claim Forms to the Settlement Administrator, the Settlement Administrator shall provide Class Counsel and Defense Counsel with a preliminary report stating the total dollar amount of the claims submitted, and indicating whether it appears that (in light of the other anticipated amounts to be deducted from the Settlement Fund) the total amount of claims may exceed the Net Settlement Fund. If, and only if, the Settlement Administrator indicates that it appears the total amount of claims may exceed the Net Settlement Fund, then Class Counsel and/or the Sonic Defendants may demand the Settlement Administrator to require up to 10% of the Claimants who submitted a Claim Form to provide proof of purchase at one of the Impacted Sonic Drive-Ins during the Settlement Class Period (in the form of a receipt or a credit or debit card statement) and/or proof of fraudulent or unauthorized charges experienced on the credit or debit card used at the Impacted Sonic Drive-In (in the form a credit or debit card statement with the fraudulent or unauthorized charges clearly denoted). The Settlement Administrator may select, at random, the Claimants from whom to demand such proof, and can include in such population Claimants from whom the Settlement Administrator has already demanded and obtained such proof. Such proof of purchase and/or proof of fraudulent or unauthorized charges must be provided to the Sonic Defendants within thirty (30) days of the request.

5.7.    Any Claimant requested to provide documentation under this Section and who fails to do so will not receive any benefits under this Agreement. Further, any Claimant who provides a proof of purchase that evidences the Claimant does not fall within the definition of the Settlement Class because he or she did not make a purchase at one of the Impacted Sonic Drive-Ins during

the Settlement Class Period is not entitled to receive any benefits under this Agreement.

6. **ADMINISTRATION AND PAYMENT OF CLAIMS**

6.1.    The Settlement Administrator shall administer and calculate the value of Verified Claims submitted by Settlement Class Members, and give reports as to the number of claims, opt-outs, and the value of Verified Claims to Class Counsel and Defense Counsel. No later than fourteen (14) days after the Claims Deadline, the Settlement Administrator shall provide Class Counsel and Defense Counsel with a declaration attesting to the number of Claim Forms submitted by Settlement Class Members and the number of deficient Claim Forms. No later than forty-five (45) days after the Claims Deadline, the Settlement Administrator shall provide Class Counsel and Defense Counsel with a declaration attesting to the number of Verified Claims. Class Counsel and Defense Counsel shall have the right to request and obtain supporting documentation from the Settlement Administrator if they have a reasonable basis to believe the reports to be inaccurate or inadequate. The Settlement Administrator has the final decision as to whether to deem a Claim Form a Verified Claim and the amount that each Settlement Class Member with a Verified Claim will be paid.

6.2.    Payment of Verified Claims shall be made by check and shall be mailed and postmarked within sixty (60) days after the Effective Date, or within thirty (30) days after the date that the Settlement Claim is approved, whichever is latest. The Settlement Administrator shall pay these Verified Claims from the Net Settlement Fund as provided by this Section and Sections 3 through 5 above.

6.3.    Each Claimant who receives a settlement check pursuant to this Agreement is responsible for paying any applicable taxes associated with the monies received by that recipient.

6.4.    All Settlement checks shall be void ninety (90) days after issuance and shall bear the language: "This check must be cashed within 90 days, after which time it is void." If a check

22

becomes void, the Settlement Class Member shall have until one hundred and fifty (150) days after the Effective Date to request re-issuance. If no request for re-issuance is made within this period, the Settlement Class Member's right to receive monetary relief shall be extinguished, and the Sonic Defendants shall have no obligation to make payments to the Settlement Class Member under this Agreement or any other type of monetary relief. The same provisions shall apply to any re-issued check. For any checks that are issued or re-issued for any reason more than one hundred and eighty (180) days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

6.5.    All Settlement Class Members who do not timely opt-out of this Settlement and who fail to submit a Settlement Claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, shall be forever barred from receiving any payments or benefits pursuant to the Settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein, and the Final Judgment.

6.6.    No person shall have any claim against the Settlement Administrator, Released Persons, Lead Counsel, Liaison Counsel, Class Counsel, Defense Counsel, the Sonic Defendants, and/or Representative Plaintiffs based on distributions of benefits to Settlement Class Members.

7.    **NOTICE PROGRAM**

7.1.    Upon entry of the Preliminary Approval Order, the Settlement Administrator shall cause notice to be disseminated to the Settlement Class pursuant to the Preliminary Approval Order and Paragraphs 7.2 to 7.7 of this Settlement Agreement ("Notice Program"), and in order to comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution and Fed. R. Civ. P. 23, and be effectuated pursuant to provisions set forth below, the costs of which shall be included in the Costs of Settlement Administration. The Sonic Defendants

23

shall provide notice as required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.

7.2.    Notice shall be provided to Settlement Class Members, subject to input and approval by the Parties, the Settlement Administrator and the Court, by the following means: (a) Publication Notice, (b) Internet Banner Notice, (c) In-Store Notice, (d) Website Notice, and (e) Long Form Notice posted to the Settlement Website (collectively, the "Settlement Notices" or "Notices"). These Notices together shall include a fair summary of the Parties' respective positions in this Litigation, the general terms of the Settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the Settlement, the process and instructions for making Settlement Claims to the extent contemplated herein, and the date, time, and place of the final approval hearing. The Settlement Administrator shall use its best efforts to ensure that these Notices collectively have a reach of not less than approximately 70% of the Settlement Class Members (in one way or another).

7.2.1.    The Publication Notice (substantially in the form of Exhibit F) shall be submitted by the Settlement Administrator for publication in a periodical and manner certified by the Settlement Administrator—and expressly approved by the Parties—as being targeted to adults over 18 years of age located within the zip codes of the 325 Impacted Sonic Drive-In locations. The Settlement Administrator shall utilize its best efforts to have the Publication Notice submitted for publication no later than thirty (30) days after the entry of the Preliminary Approval Order.

7.2.2.    Within thirty (30) days after the entry of the Preliminary Approval Order, Internet Banner Notice (substantially in the form of Exhibit D) shall be submitted by the Settlement Administrator to Facebook for advertisement. The Internet Banner Notice shall be targeted to Settlement Class Members via the use of Internet banner advertisements geo-tagged to the Facebook pages of Facebook users located within the zip codes of the 325 Impacted Sonic Drive-

24

In locations and posted for a period of ninety (90) days from the start of the Notice Program.

7.2.3. Within thirty (30) days after the entry of the Preliminary Approval Order, the Settlement Administrator shall print or otherwise generate the In-Store Notice (substantially in the form of Exhibit C) and shall provide it to the Sonic Defendants to be conspicuously posted on the main customer entrance door of each of the Impacted Sonic Drive-In locations facing outwards within forty-five (45) days after the entry of the Preliminary Approval Order and for a period of ninety (90) days from the start of the Notice Program.

7.2.4. Within thirty (30) days after the entry of the Preliminary Approval Order, the Sonic Defendants shall cause the Website Notice (substantially in the form of Exhibits G-1 and G-2) to be conspicuously posted as a banner advertisement at the top of the home page of the Sonic website and as a "pinned" post at the top of Sonic's Facebook page for a period of ninety (90) days from the start of the Notice Program. The Website Notice on Sonic's website (Exhibit G-1) will link to the Long Form Notice (Exhibit E) on the Settlement Website.

7.3. Within thirty (30) days after the entry of the Preliminary Approval Order, but no later than the earliest date of (a) Publication Notice, (b) Internet Banner Notice, (c) In-Store Notice, or (d) Website Notice, the Settlement Administrator shall establish the Settlement Website and shall maintain and update the Settlement Website, as necessary, throughout the Claims Period. The Settlement Website shall include important information, including, among other things, a toll-free number for Settlement Class Members to call to obtain answers to Settlement-related questions or request copies of documents, a list of important deadlines, and links to the Long Form Notice, the Publication Notice, the Claim Form (available in both printable and fillable forms), the Settlement Agreement, the List of Impacted Sonic Drive-In Locations, and relevant orders entered by the Court relating to the Settlement.

7.4. The Notice Program shall be subject to approval by the Court as meeting constitutional due process requirements.

7.5. The Long Form Notice, Publication Notice, Internet Banner Notice, In-Store Notice, Website Notice, and Claim Form may be adjusted by the Settlement Administrator in consultation and agreement with the Parties, as may be reasonable and necessary and not inconsistent with the Court's approval.

7.6. No later than fourteen (14) days after the Claims Deadline, the Settlement Administrator shall provide Class Counsel and Defense Counsel with a declaration describing and attesting to the dissemination of the Notices pursuant to the Notice Plan. Prior to the final approval hearing, Lead Counsel or Liaison Counsel shall cause to be filed with the Court an appropriate affidavit or declaration from the Settlement Administrator attesting to its compliance with the Court-approved Notice Program.

7.7. The Notice Program shall be deemed to commence thirty (30) days following entry of the Preliminary Approval Order by the Court.

8. **OPT-OUT PROCEDURES**

8.1. Each Settlement Class Member wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to opt-out to the designated Post Office box to be established by the Settlement Administrator.

8.1.1. The written opt-out notice must include the individual's name and address; a statement that he/she wants to be excluded from the Settlement Class in this Litigation; and the individual's signature. To be effective, the written opt-out notice must clearly manifest a person's intent to be excluded from the Settlement Class. No Settlement Class Member may opt-out of the Settlement Class through a so-called "mass" or "class" opt-out.

8.1.2. The Settlement Administrator shall provide the Parties with copies of all written

26

opt-out notifications, and a final list of all Settlement Class Members who have timely and validly excluded themselves from the Settlement Class. No later than fourteen (14) days after the Claims Deadline, the Settlement Administrator shall provide Class Counsel and Defense Counsel with a declaration attesting to the identities and number of Settlement Class Members who have timely and validly excluded themselves from the Settlement Class. A list of the names of persons who have timely and validly opted-out shall be filed by Lead Counsel or Liaison Counsel with the Court prior to the final approval hearing.

8.1.3.   To be effective, the written opt-out notice must be postmarked no later than ninety days (90) from the commencement of the Notice Program as set forth in Paragraph 7.7 above.

8.2.    All persons who submit valid and timely written opt-out notices of their intent to be excluded from the Settlement Class shall not receive any benefits of or be bound by the terms of this Settlement Agreement. All persons falling within the definition of the Settlement Class who do not submit valid and timely written opt-out notices of their intent to be excluded from the Settlement Class shall be bound by the terms of this Settlement Agreement and the Final Judgment entered thereon.

## 9.    OBJECTION PROCEDURES

9.1.    Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his/her objection. Such notice shall state: (a) the objector's full name, current address, telephone number, and email address (if any); (b) a statement that he/she is a Settlement Class Member, including an attestation that he/she made a purchase using a debit or credit card at one of the 325 Impacted Sonic Drive-Ins during the Settlement Class Period and identifying the address of the location where he/she made his/her purchase; (c) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (d) the identity of all counsel representing the objector, if any; (e) a written

27

statement indicating whether he/she intends to appear and/or testify at the final approval hearing and the identity of all counsel, if any, representing the objector who will appear at the final approval hearing; (f) a statement identifying any person who will be called to testify at the final approval hearing in support of the objection; (g) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); (h) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last three (3) years; and (i) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last three (3) years.

9.1.1.  To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court no later than ninety (90) days from the commencement of the Notice Program as set forth in Paragraph 7.7 above, and served concurrently therewith upon Lead Counsel William B. Federman of Federman & Sherwood at 10205 N. Pennsylvania Ave., Oklahoma City, Oklahoma 73120, and Defense Counsel Kari M. Rollins of Sheppard Mullin Richter & Hampton LLP at 30 Rockefeller Plaza, New York, New York 10112.

9.2.  Any Settlement Class Member who fails to substantially comply with the requirements for objecting in Paragraph 9.1 shall waive and forfeit any and all rights he/she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of Paragraph 9.1. Without limiting the foregoing, any challenge to the Settlement

Agreement, the final order approving this Settlement Agreement, or the Final Judgment to be entered upon final approval, shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

## 10.    PROPOSED CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS

### Attorneys' Fees and Costs

10.1.   Class Counsel will make an application to the Court for an award of reasonable attorneys' fees of up to one-third of the Settlement Fund (*i.e.*, up to $1,441,666.67), and for reimbursement of the costs and expenses that Class Counsel incurred in this Litigation.  Class Counsel shall file a preliminary motion for Attorneys' Fees and Costs no earlier than thirty (30) days from the entry of the Preliminary Approval Order by the Court, and no later than fourteen (14) days before the deadline to opt-out or object to the Settlement.  Such a motion may be supplemented prior to the final approval hearing. The Settlement Administrator shall pay the amount of Attorneys' Fees and Costs awarded by the Court from the Settlement Fund to Lead Counsel who, in his sole discretion, shall fairly and reasonably allocate and distribute the amounts among Class Counsel.

10.2.   The Sonic Defendants agree not to oppose or object to Class Counsel's application for attorneys' fees up to one-third of the Settlement Fund, and agree not to oppose or object to Class Counsel's application for reimbursement of costs and expenses sought in accordance with this Agreement; provided, however, that the Sonic Defendants' agreement not to oppose or object to Class Counsel's application for Attorneys' Fees and Costs shall not be characterized or construed as Sonic Defendants' belief or agreement that Class Counsel is entitled to an award of up to one-third the Settlement Fund or an affirmative endorsement by the Sonic Defendants of Class Counsel's application.  Class Counsel agree to waive and hereby forego seeking Attorneys'

29

Fees and Costs except as provided for by this Settlement Agreement if a final approval order is entered by the Court.

10.3. Subject to express Court approval, the Sonic Defendants agree that any Court-approved and awarded Attorneys' Fees and Costs and Class Representative Service Awards shall be paid and distributed from the Settlement Fund to a client trust account established to hold such awarded Attorneys' Fees and Costs and Class Representative Service Awards (the "Class Counsel and Class Representative Fund") designated and established by Lead Counsel within ten (10) days of the entry of an order by the Court of an award of Attorneys' Fees and Costs and Class Representative Service Awards, with any such Attorneys' Fees and Costs and Class Representative Service Awards to be held in the designated client trust account until after all conditions of Paragraph 14.1 have been satisfied.

10.4. The Sonic Defendants' agreement to the "fast pay" provision contained in Paragraph 10.3 is predicated upon the presumption that the Settlement will be finally approved by Final Judgment of the Court and will become effective after satisfaction of all the conditions in Paragraph 14.1.

10.5. In the event that (i) the Court's award of Attorneys' Fees and Costs and/or Class Representative Service Awards is reversed or modified, or (ii) all of the conditions in Paragraph 14.1 are not otherwise satisfied, then, within ten (10) days from receiving notice from the Settlement Administrator, Defense Counsel, or a court of appropriate jurisdiction, Lead Counsel who was holding the amount in a client trust account pursuant to Paragraph 10.3, shall refund or payback to the QSF the Attorneys' Fees and Costs previously paid to them from the QSF.

10.6. The finality, effectiveness, or enforceability of the Settlement Agreement shall not depend upon the Court awarding any particular amount of Attorneys' Fees and Costs. No order

of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any Attorneys' Fees and Costs ordered by the Court to Class Counsel shall affect whether the Final Judgment is final or shall constitute grounds for cancellation or termination of this Settlement Agreement.

**Class Representative Service Awards**

10.7.   Class Counsel intends to apply to the Court for an aggregate award of up to $42,000.00 to be distributed to the Representative Plaintiffs as their Class Representative Service Awards. Class Counsel shall file a preliminary motion for Class Representative Service Awards no earlier than thirty (30) days from the entry of the Preliminary Approval Order by the Court, and no later than fourteen (14) days before the deadline to opt-out or object to the Settlement. Such a motion may be supplemented prior to the final approval hearing. The Sonic Defendants agree not to oppose or object to this application.

10.8.   The finality, effectiveness, or enforceability of the Settlement Agreement shall not depend upon the Court awarding any particular amount of Class Representative Service Awards. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any Class Representative Service Awards ordered by the Court to Representative Plaintiffs shall affect whether the Final Judgment is final or shall constitute grounds for cancellation or termination of this Settlement Agreement.

11.   **PLAINTIFFS' RELEASE**

11.1.   Upon the Effective Date, each Settlement Class Member who has not timely opted-out of this Settlement, including Representative Plaintiffs, shall be deemed to have, and by operation of the Final Judgment shall have, completely, fully, finally, irrevocably, and forever released, relinquished, and discharged all Released Claims. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member who has not timely opted-

out of this Settlement, including Representative Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum based on, relating to, concerning, or arising out of any of the Released Claims.

11.2.    Notwithstanding anything in the foregoing to the contrary, it is the intent of the Parties that this Release shall not be considered, interpreted, or construed to prevent Settlement Class Members from pursuing claims related to the Data Breach against any person or entity that is not a Released Person.

## 12.    PRELIMINARY APPROVAL

12.1.    As soon as practicable after the execution of the Settlement Agreement, Class Counsel shall submit this Settlement Agreement to the Court and file a motion for preliminary approval of the Settlement with the Court requesting entry of a Preliminary Approval Order (substantially in the form of Exhibit H) requesting, *inter alia*:

12.1.1. certification of the Settlement Class for settlement purposes only;

12.1.2. preliminary approval of the Settlement Agreement;

12.1.3. appointment of William B. Federman of Federman & Sherwood as Lead Counsel;

12.1.4. appointment of Marc E. Dann of DannLaw as Liaison Counsel;

12.1.5. appointment of Carin L. Marcussen of Federman & Sherwood, Brian D. Flick of DannLaw, Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C., Melissa R. Emert of Stull, Stull, & Brody, Michael Fuller of Olsen Daines, and Miles N. Clark of Knepper & Clark LLC as Class Counsel.

12.1.6. appointment of the Representative Plaintiffs as settlement class representatives;

12.1.7. approval of the Notice Program;

12.1.8. approval of the In-Store Notice, Internet Banner Notice, Long Form Notice, Publication Notice, and Website Notice in substantially the forms attached hereto as Exhibits C through G;

12.1.9. appointment of the Settlement Administrator; and

12.1.10.    approval of the Claim Form substantially in the forms attached hereto as Exhibits B-1 and B-2.

13.    **FINAL APPROVAL**

13.1.    The final approval hearing shall be scheduled no earlier than ninety (90) days after the notices are made, in order to comply with CAFA, 28 U.S.C. § 1715, Class Counsel shall file a motion for final approval, which has been submitted to the Sonic Defendants for review in advance of filing, no later than fourteen (14) days before the final approval hearing.

13.2.    This Settlement Agreement is subject to and conditioned upon the Court's entry of a Final Judgment (substantially in the form of Exhibit I), which shall, among other things:

13.2.1. determine that the Settlement Agreement is fair, adequate, and reasonable;

13.2.2. finally certify the Settlement Class for settlement purposes only;

13.2.3. determine that the Notice Program satisfies due process requirements;

13.2.4. dismiss with prejudice all claims in the Litigation against the Sonic Defendants;

13.2.5. bar and enjoin any Settlement Class Members who did not timely opt-out in accordance with the requirements of the Settlement Agreement from asserting any of the Released Claims; and

13.2.6. release and forever discharge the Released Persons from the Released Claims, as provided for in this Settlement Agreement.

14.    **CONDITIONS OF SETTLEMENT, CANCELLATION, OR TERMINATION**

14.1.    The Effective Date of the Settlement shall be conditioned on the occurrence of all

33

of the following events:

14.1.1. the Court has entered the Final Judgment granting **final** approval to the Settlement Agreement (among other things) as set forth herein; and

14.1.2. either (a) thirty (30) days have passed after entry of the Final Judgment (*i.e.*, the Final Judgment is entered as a final judgment) and no appeal is taken after the entry of the Final Judgment and no motion or other pleading has been filed with the Court (or with any other court) seeking to set aside, enjoin, or in any way alter the Final Judgment or to toll the time for appeal of the Final Judgment; or (b) all appeals, reconsideration, rehearing, or other forms of review and potential review of the Final Judgment are exhausted, and the Final Judgment is upheld without any material modification of the terms of this Agreement.

14.2.    If all of the conditions specified in Paragraph 14.1 hereof are not satisfied, the Settlement Agreement shall be deemed terminated and/or canceled unless Class Counsel and the Sonic Defendants' counsel mutually agree in writing to proceed with the Settlement Agreement.

14.3.    If the Settlement Agreement is not approved by the Court in accordance with its terms or the Settlement Agreement is terminated and/or cancelled, then (a) the Parties shall be restored to their respective positions in the Litigation as if the Agreement had never been entered into (and without prejudice to any of the Parties' respective positions on the standing of Plaintiffs to pursue this Litigation, the sufficiency of the claims plead in Plaintiffs' Amended Consolidated Class Action Complaint filed with the Court on July 27, 2017, and the issue of class certification or any other issue in the Litigation), and (b) the terms and provisions of the Settlement Agreement and statements made in connection with seeking approval of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in

accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*. The Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Parties in this or any other proceeding, case, or action, as to which all of their rights are specifically preserved.

14.4. The Settlement Agreement may be terminated and/or cancelled by any of the Parties if (a) the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily approve or finally approve the Settlement Agreement; (b) an appellate court reverses the final approval order and/or Final Judgment, and the Settlement Agreement is not reinstated and finally approved without material change by the Court on remand; or (c) the Court or any reviewing appellate court incorporates material terms or provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the proposed Preliminary Approval Order, Preliminary Approval Order, the proposed Final Judgment, the Final Judgment, or the Settlement Agreement.

14.5. Notwithstanding any provision of this Settlement Agreement to the contrary, including but not limited to Paragraphs 14.2 and 14.3, and for the avoidance of any doubt, the finality or effectiveness of the Settlement Agreement shall not depend upon the Court awarding any particular amount of Attorneys' Fees and Costs and/or Class Representative Service Awards. No order of the Court, or modification or reversal or appeal of any order of the Court concerning the amount(s) of any Attorneys' Fees and Costs and/or Class Representative Service Awards awarded by the Court to Class Counsel and/or Representative Plaintiffs shall affect whether the Final Judgment is final or shall constitute grounds for cancellation and/or termination of this Settlement Agreement.

14.6. The Sonic Defendants shall have the sole discretion to terminate the Settlement

Agreement if more than fifteen percent (15%) of Settlement Class Members submit valid requests to opt-out as separately agreed to by the Parties and, if requested, submitted to the Court for *in camera* review.

**15.    MISCELLANEOUS PROVISIONS**

15.1.    <u>Cooperation</u>. The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

15.2.    <u>No Admission</u>. The Settlement Agreement reflects an agreement to settle claims that are contested and shall not be deemed an admission by any of the Parties as to the merits of any claim or defense.

15.3.    <u>Good Faith and Arm's-Length Negotiations</u>. The Parties each agree that the Settlement was negotiated in good faith by the Parties, and reflects a Settlement that was reached voluntarily after consultation with competent legal counsel. The Parties reserve their right to rebut, in a manner that such Party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

15.4.    <u>Modifications to this Agreement</u>. The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

15.5.    <u>Complete Agreement</u>. The Parties intend this Settlement Agreement and the exhibits hereto to be a final and complete resolution of all disputes between them with respect to the Litigation, and no representations, warranties, or inducements have been made to any Party concerning the Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in such document. Except as otherwise provided herein, each Party

36

shall bear its own costs. This Agreement supersedes all previous agreements made by the Parties.

15.6.   Authorization. Class Counsel, on behalf of the Settlement Class, is expressly authorized by Representative Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

15.7.   Each counsel or other person executing the Settlement Agreement on behalf of any Party hereto hereby warrants that such person has the full authority to do so.

15.8.   Execution in Counterparts. The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

15.9.   Successor and Assigns. The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

15.10.   Court Retains Jurisdiction. The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Settlement Agreement.

15.11.   Governing Law and Forum. The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Ohio, and the rights and obligations of the Parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Ohio without giving effect to choice of law principles.

37

15.12. <u>Currency</u>. All dollar amounts are in United States dollars.

15.13. <u>Continuing Confidentiality</u>. All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

**IN WITNESS WHEREOF**, the Parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

Dated: October 9, 2018

Craig Cardon
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067

Kari M. Rollins
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10112

*Counsel for the Sonic Defendants*

William B. Federman
Carin L. Marcussen
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Avenue
Oklahoma City, Oklahoma 73120

*Interim Lead Counsel for Representative
Plaintiffs and the Settlement Class*

Marc E. Dann
Brian D. Flick
DANNLAW
P.O. Box 6031040
Cleveland, Ohio 44103

*Interim Liaison Counsel for Representative
Plaintiffs and the Settlement Class*

Thomas A. Zimmerman, Jr.
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602

Melissa R. Emert
STULL, STULL, & BRODY
6 East 45th Street
New York, NY 10017

Michael Fuller
OLSEN DAINES

38

US Bancorp Tower
111 Southwest 5th Ave, Suite 3150
Portland, Oregon 97204

Miles N. Clark
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129

*Members of Plaintiffs' Steering Committee for
Representative Plaintiffs and the Settlement
Class*

# **Exhibit A**

**List of Impacted Sonic Drive-In Locations**

| Store No. | Store Address | City | State | Zip |
|---|---|---|---|---|
| 3733 | 8269 U S Highway 431 North | Albertville | AL | 35950 |
| 5124 | 3371 South Oates Street | Dothan | AL | 36301 |
| 5503 | 366 Sutton Road | Hampton Cove | AL | 35763 |
| 5267 | 77 Dudley Drive | Millbrook | AL | 36054 |
| 5279 | 12438 Alabama Highway 157 | Moulton | AL | 35650 |
| 2880 | 500 West Fort Williams | Sylacauga | AL | 35150 |
| 5085 | 990 S. Constitution Ave. | Ashdown | AR | 71822 |
| 3842 | 130 Highway 167 | Bald Knob | AR | 72010 |
| 3721 | 2920 Harrison Street | Batesville | AR | 72501 |
| 1627 | 715 Saint Louis Street | Batesville | AR | 72503 |
| 1644 | 1506 Dewitt Henry Drive | Beebe | AR | 72012 |
| 1606 | 1703 Military Road | Benton | AR | 72015 |
| 6518 | 8100 Highway 49 North | Brookland | AR | 72417 |
| 5907 | 15357 Highway 5 | Cabot | AR | 72023 |
| 5258 | 3090 Bill Foster Memorial Dr | Cabot | AR | 72023 |
| 1724 | 670 Cash Road Southwest | Camden | AR | 71701 |
| 4264 | 404 South Main Street | Cave City | AR | 72521 |
| 5578 | 4311 Park Avenue | Fountain Lake | AR | 71901 |
| 2134 | 262 Highway 70 East | Glenwood | AR | 71943 |
| 2127 | 98 South Broadview Street | Greenbrier | AR | 72058 |
| 5431 | 5997 Highway 67 | Haskell | AR | 72015 |
| 2168 | 1220 Highway 25b North | Heber Springs | AR | 72543 |
| 2586 | 919 Highway 65 North | Marshall | AR | 72650 |
| 5963 | 101 East Highway 64 | McCrory | AR | 72101 |
| 3903 | Highway 69 & Main | Melbourne | AR | 72556 |

| Store No. | Store Address | City | State | Zip |
|---|---|---|---|---|
| 2544 | 246 Highway 425 North | Monticello | AR | 71655 |
| 4307 | 325 E 13th | Murfreesboro | AR | 71958 |
| 4918 | 820 N. Fourche Avenue | Perryville | AR | 72126 |
| 3791 | 1627 Highway 270 West | Rockport | AR | 72104 |
| 5863 | 1201-a North Maple Street | Searcy | AR | 72143 |
| 1202 | 1823 Beebe-Capps Expressway | Searcy | AR | 72143 |
| 3016 | 1104 Highway 69 | Trumann | AR | 72472 |
| 3092 | 849 North Sebastian Street | West Helena | AR | 72390 |
| 3528 | 13751 West Glendale Avenue | Glendale | AZ | 85307 |
| 4122 | 8002 N 43rd Avenue | Glendale | AZ | 85302 |
| 3895 | 4007 E. Greenway Road | Phoenix | AZ | 85032 |
| 6484 | 30171 Haun Road | Menifee | CA | 92584 |
| 6400 | 3005 Highland Avenue | National City | CA | 91950 |
| 6479 | 40 Rio Rancho Road | Pomona | CA | 91766 |
| 6483 | 9505 Magnolia Avenue | Riverside | CA | 92503 |
| 6522 | 913 Pleasant Grove Boulevard | Roseville | CA | 95678 |
| 6444 | 2829 El Cajon Boulevard | San Diego | CA | 92104 |
| 6555 | 1580 East Main Street | Woodland | CA | 95776 |
| 5339 | 45 Stafford Lane | Delta | CO | 81416 |
| 4970 | 675 Wapiti Road | Rifle | CO | 81650 |
| 6472 | 11900 Hialeah Gardens | Hialeah Gardens | FL | 33018 |
| 5816 | 3712 Mike Padgett Highway | Augusta | GA | 30906 |
| 5270 | 3464 Victory Drive | Columbus | GA | 31903 |
| 5722 | 2725 Trinity Drive | Sioux City | IA | 51108 |
| 6388 | 1022 West Wilson Avenue | Chicago | IL | 60640 |
| 6358 | 2922 South Cicero Avenue | Cicero | IL | 60804 |
| 5868 | 221 W Douglas Road | Mishawaka | IN | 46545 |

| Store No. | Store Address | City | State | Zip |
|---|---|---|---|---|
| 5824 | 3906 Portage Road | South Bend | IN | 46628 |
| 1081 | 1212 Jones Street | Garden City | KS | 67846 |
| 1092 | 1313 E. Kansas Avenue | Garden City | KS | 67846 |
| 6438 | 2219 Enterprise Road | Goodland | KS | 67735 |
| 3060 | 451 E. Oklahoma Street | Ulysses | KS | 67880 |
| 3083 | 1921 S. Main Street | Winfield | KS | 67156 |
| 6423 | 329 Main Street | Benton | KY | 42025 |
| 3506 | 100 Woodford Avenue | Berea | KY | 40403 |
| 5470 | 3016 Nashville Road | Bowling Green | KY | 42101 |
| 3204 | 101 Baughman Avenue | Danville | KY | 40422 |
| 2019 | 811 N. Main | Franklin | KY | 42134 |
| 3324 | 1036 Lexington Road | Georgetown | KY | 40324 |
| 3417 | 2704 Fort Campbell Boulevard | Hopkinsville | KY | 42240 |
| 2478 | 815 S. Main | Madisonville | KY | 42431 |
| 4036 | 960 N. Main | Madisonville | KY | 42431 |
| 2513 | 220 N. Highway 25 East | Middlesboro | KY | 40965 |
| 2934 | 350 Gallatin Road | Scottsville | KY | 42164 |
| 2916 | 1361 Highway 27 | Somerset | KY | 42501 |
| 3033 | 607 N. Main | Tompkinsville | KY | 42167 |
| 1004 | 522 Veteran Memorial Drive | Abbeville | LA | 70510 |
| 5198 | 68077 Highway 59 | Abita Springs | LA | 70471 |
| 4927 | 5212 Jackson Street | Alexandria | LA | 71303 |
| 1533 | 642 West Oak Street | Amite | LA | 70422 |
| 5376 | 6411 Groom Road | Baker | LA | 70714 |
| 1915 | 11145 Coursey Blvd | Baton Rouge | LA | 70816 |
| 1689 | 5305 Government Street | Baton Rouge | LA | 70806 |
| 3623 | 8223 Airline Highway | Baton Rouge | LA | 70805 |

| Store No. | Store Address | City | State | Zip |
|-----------|---------------|------|-------|-----|
| 1625 | 1018 S. Columbia Street | Bogalusa | LA | 70427 |
| 1016 | 901 Reese Street | Breaux Bridge | LA | 70517 |
| 4476 | 1300 Albertson Parkway | Broussard | LA | 70518 |
| 3434 | 149 S Main Street | Church Point | LA | 70525 |
| 4315 | 9223 Highway 67 | Clinton | LA | 70722 |
| 1857 | 815 S. Tyler | Covington | LA | 70433 |
| 5282 | 13339 Highway 73 | Dutchtown | LA | 70734 |
| 1065 | 1851 W. Laurel | Eunice | LA | 70535 |
| 5635 | 16909 Highway 3235 | Galliano | LA | 70354 |
| 5642 | 2629 South Cabela Parkway | Gonzales | LA | 70737 |
| 2110 | 413 N. Airline Highway | Gonzales | LA | 70737 |
| 5221 | 14175 W University Avenue | Hammond | LA | 70401 |
| 6155 | 1600 SW Railroad Avenue | Hammond | LA | 70403 |
| 2230 | 2109 W. Thomas Street | Hammond | LA | 70401 |
| 3965 | 5963 W Main Street | Houma | LA | 70364 |
| 6398 | 703 North Thompson Avenue | Iowa | LA | 70647 |
| 2314 | 729 Avenue G | Kentwood | LA | 70444 |
| 3641 | 14004 Highway 165 | Kinder | LA | 70648 |
| 3297 | 2511 Kaliste Saloom Rd | Lafayette | LA | 70508 |
| 2418 | 3521 West Pinhook Road | Lafayette | LA | 70508 |
| 2424 | 616 West Pinhook Road | Lafayette | LA | 70503 |
| 5982 | 1004 Highway 70 | Morgan City | LA | 70380 |
| 5335 | 1141 East Saint Peter Street | New Iberia | LA | 70560 |
| 6402 | 915 Hospital Road | New Roads | LA | 70760 |
| 2647 | 635 Highway 165 South | Oakdale | LA | 71463 |
| 5117 | 64107 Highway 41 | Pearl River | LA | 70452 |
| 4150 | 3129 Highway 28 E | Pineville | LA | 71360 |

| Store No. | Store Address | City | State | Zip |
|---|---|---|---|---|
| 5682 | 59680 Belleview Road | Plaquemine | LA | 70764 |
| 5594 | 17334 Airline Highway | Prairieville | LA | 70769 |
| 3421 | 41027 Highway 42 | Prairieville | LA | 70769 |
| 6487 | 4740 Hwy 1 | Raceland | LA | 70394 |
| 6070 | 1414 The Boulevard | Rayne | LA | 70578 |
| 4973 | 2105 Farmerville Highway | Ruston | LA | 71270 |
| 2940 | 6885 U.S. Highway 61 | Saint Francisville | LA | 70775 |
| 1261 | 1924 N. Main Street | Saint Martinville | LA | 70582 |
| 3437 | 1249 Gause Blvd. | Slidell | LA | 70461 |
| 5930 | 194 Brownswitch Road | Slidell | LA | 70458 |
| 2977 | 1968 Gause Boulevard | Slidell | LA | 70461 |
| 6519 | 3225 Pontchartrain Drive | Slidell | LA | 70458 |
| 5464 | 61105 Airport Road | Slidell | LA | 70460 |
| 6567 | 10128 North Line Street | St. James | LA | 70086 |
| 6477 | 110 South Cities Services Hwy | Sulphur | LA | 70663 |
| 5340 | 800 North Canal Boulevard | Thibodaux | LA | 70301 |
| 1304 | 3601 Front Street | Winnsboro | LA | 71295 |
| 6369 | 3016 East Milton Avenue | Youngsville | LA | 70592 |
| 3247 | 5249 Main Street | Zachary | LA | 70791 |
| 6403 | 10160 Baltimore National Pike | Ellicott City | MD | 21042 |
| 6340 | 1710 Dual Highway | Hagerstown | MD | 21740 |
| 6434 | 46350 Lexington Village Way | Lexington Park | MD | 20653 |
| 6406 | 2027 York Road | Timonium | MD | 21093 |
| 6495 | 2055 Crain Highway | Waldorf | MD | 20601 |
| 6507 | 2680 South M-139, Suite 100 | Benton Harbor | MI | 49022 |
| 6094 | 40257 Groesbeck Highway | Clinton Township | MI | 48036 |
| 6563 | 201 Prairie Drive | East Prairie | MO | 63845 |

| Store No. | Store Address | City | State | Zip |
|---|---|---|---|---|
| 3448 | 1407 S. Broadway | Poplar Bluff | MO | 63901 |
| 2778 | 214 S. Westwood | Poplar Bluff | MO | 63901 |
| 3097 | 1710 Gibson | West Plains | MO | 65775 |
| 3603 | 934 Brookway Blvd | Brookhaven | MS | 39601 |
| 1804 | 200 Highway 35 North | Carthage | MS | 39051 |
| 1767 | 221 Alabama Street | Columbus | MS | 39702 |
| 1825 | 152 Bobo Drive | Crystal Springs | MS | 39059 |
| 2028 | 150 West Third Street | Forest | MS | 39074 |
| 2239 | 520 Highway 82 E. | Indianola | MS | 38751 |
| 2295 | 360 Highway 12 East | Kosciusko | MS | 39090 |
| 2415 | 206 S. Church Street | Louisville | MS | 39339 |
| 2453 | 1104 Delaware Avenue | McComb | MS | 39648 |
| 3414 | 2449 North Hill Street | Meridian | MS | 39305 |
| 2605 | 294 Sgt. Prentiss Drive | Natchez | MS | 39120 |
| 2730 | 191 Highway 15 | Pontotoc | MS | 38863 |
| 4792 | 169 Mobile Street | Saltillo | MS | 38866 |
| 3805 | 3080 Goodman Road | Southaven | MS | 38672 |
| 5202 | 7152 Airways Boulevard | Southaven | MS | 38671 |
| 3064 | 730 Highway 61 North | Vicksburg | MS | 39183 |
| 3216 | 2615 Lewisville-Clemmons Road | Clemmons | NC | 27012 |
| 5241 | 7761 Gateway Lane NW | Concord | NC | 28027 |
| 3164 | 915 Summit Avenue | Greensboro | NC | 27405 |
| 4545 | 5445 Highway 49 South | Harrisburg | NC | 28075 |
| 3538 | 528 Nelson St | Kernersville | NC | 27284 |
| 3586 | 1301 Winston Rd | Lexington | NC | 27292 |
| 5735 | 304 South Main Street | Rolesville | NC | 27571 |
| 6525 | 1131 North Brightleaf Blvd | Smithfield | NC | 27577 |

| Store No. | Store Address | City | State | Zip |
|-----------|---------------|------|-------|-----|
| 6020 | 1925 South Main Street | Wake Forest | NC | 27587 |
| 4050 | 4807 3rd Avenue | Kearney | NE | 68847 |
| 4492 | 1910 Market Lane | Norfolk | NE | 68701 |
| 6375 | 112 Black Horse Pike | Audubon | NJ | 8106 |
| 6471 | 1660 North Olden Avenue | Ewing | NJ | 8638 |
| 2144 | 2216 N. Dal Paso Street | Hobbs | NM | 88240 |
| 6512 | 3601 Union Road | Cheektowaga | NY | 14225 |
| 6491 | 701 Troy Schenectady Road | Latham | NY | 12110 |
| 6440 | 368 Route 211 East | Middletown | NY | 10940 |
| 6528 | 3808 Brewerton Road | North Syracuse | NY | 13212 |
| 6433 | 945 Jefferson Road | Rochester | NY | 14623 |
| 6459 | 121 Western Boulevard | Watertown | NY | 13601 |
| 1511 | 902 W. Petree | Anadarko | OK | 73005 |
| 1603 | 430 West Doolin | Blackwell | OK | 74631 |
| 4641 | 112 East H Avenue | Cache | OK | 73527 |
| 4672 | 7457 US Highway 277 | Elgin | OK | 73538 |
| 5403 | 24125 South Highway 49 | Lawton | OK | 73507 |
| 2407 | 2612 Southwest Lee Boulevard | Lawton | OK | 73505 |
| 2466 | 908 N. Broadway | Marlow | OK | 73055 |
| 6547 | 301 South Main Street | Okarche | OK | 73762 |
| 6494 | 11577 Ridge Road | Thackerville | OK | 73459 |
| 2681 | 125 S. Mustang Road | Yukon | OK | 73099 |
| 6533 | 901 North Cemetery Road | Yukon | OK | 73099 |
| 6510 | 61165 South Highway 97 | Bend | OR | 97702 |
| 6119 | 3775 River Road North | Keizer | OR | 97303 |
| 6490 | 393 Putnam Pike | Smithfield | RI | 02917 |
| 6542 | 707 Grand Army Highway | Somerset | RI | 2726 |

| Store No. | Store Address | City | State | Zip |
|-----------|---------------|------|-------|-----|
| 3812 | 1522 E Greenville Street | Anderson | SC | 29621 |
| 1854 | 3036 Broad River Road | Columbia | SC | 29210 |
| 2431 | 312 Columbia Avenue | Lexington | SC | 29072 |
| 3505 | 804 Us Highway 1 South | Lugoff | SC | 29078 |
| 3330 | 1624 Wilson Road | Newberry | SC | 29108 |
| 5065 | 2076 East Main Street | Spartanburg | SC | 29307 |
| 1322 | 3955 Platt Springs Road | West Columbia | SC | 29170 |
| 5321 | 559 West Main Street | Algood | TN | 38506 |
| 6315 | 6101 Airline Road | Arlington | TN | 38002 |
| 4041 | 3115 Waterlevel Highway | Cleveland | TN | 37323 |
| 3836 | 381 W. Jackson Avenue | Cookeville | TN | 38501 |
| 2222 | 319 Broadway | Hartsville | TN | 37074 |
| 4156 | 3845 Fort Henry Drive | Kingsport | TN | 37663 |
| 2400 | 1211 Scottsville Road | Lafayette | TN | 37083 |
| 5154 | 605 N. Main Street | Lake City | TN | 37769 |
| 4234 | 1050 Murfreesboro Road | Lebanon | TN | 37090 |
| 4173 | 6651 Eastgate Blvd. | Lebanon | TN | 37090 |
| 2416 | 420 Ellington Parkway | Lewisburg | TN | 37091 |
| 3649 | 1375 W Main Street | Livingston | TN | 38570 |
| 2564 | 1565 North Gallatin Pike | Madison | TN | 37115 |
| 5434 | 1169 N. Houston Levee Road | Memphis | TN | 38018 |
| 4079 | 3540 Covington Pike | Memphis | TN | 38128 |
| 2537 | 3685 Mendenhall Road South | Memphis | TN | 38115 |
| 2550 | 3804 Summer Avenue | Memphis | TN | 38122 |
| 2567 | 4130 Kirby Parkway | Memphis | TN | 38115 |
| 3691 | 5860 Highway 70 | Memphis | TN | 38134 |
| 4481 | 1331 Bell Road | Nashville | TN | 37013 |

| Store No. | Store Address | City | State | Zip |
|---|---|---|---|---|
| 4224 | 1701 Murfreesboro Pike | Nashville | TN | 37217 |
| 3752 | 3910 Gallatin Pike | Nashville | TN | 37216 |
| 2624 | 6308 Charlotte Pike | Nashville | TN | 37209 |
| 4110 | 1410 Robinson Road | Old Hickory | TN | 37138 |
| 5325 | 1324 N. Gateway Avenue | Rockwood | TN | 37854 |
| 2893 | 659 W. Bockman Way | Sparta | TN | 38583 |
| 5139 | 300 N. Fm 1187 | Aledo | TX | 76008 |
| 4893 | 207 E. White Street | Anna | TX | 75409 |
| 5623 | 4111 South Bowen Road | Arlington | TX | 76016 |
| 3249 | 4719 Little Road | Arlington | TX | 76017 |
| 5885 | 26741 East University Drive | Aubrey | TX | 76227 |
| 4791 | 924 Highway 377 South | Aubrey | TX | 76227 |
| 1681 | 103 Perkins Street | Bastrop | TX | 78602 |
| 5768 | 1206 North Pecan Street | Bells | TX | 75414 |
| 4922 | 716 Front Street | Bellville | TX | 77418 |
| 6559 | 510 East Second | Big Lake | TX | 76932 |
| 5719 | 2312 South Day Street | Brenham | TX | 77833 |
| 5194 | 441 E. Renfro Street | Burleson | TX | 76028 |
| 4454 | 725 NE Alsbury Boulevard | Burleson | TX | 76028 |
| 5581 | 812 West 2nd Street | Clarendon | TX | 79226 |
| 4557 | 12755 Fm 2154 | College Station | TX | 77845 |
| 3792 | 512 Harvey Road | College Station | TX | 77840 |
| 6413 | 619 North Interstate 35 | Cotulla | TX | 78014 |
| 4862 | 11601 S. Highway 380 | Crossroads | TX | 76227 |
| 1931 | 1109 Avenue F | Del Rio | TX | 78840 |
| 5227 | 1510 East Gibbs | Del Rio | TX | 78840 |
| 4553 | 2131 East University Drive | Denton | TX | 76209 |

| Store No. | Store Address | City | State | Zip |
|---|---|---|---|---|
| 3788 | 2219 Colorado Blvd | Denton | TX | 76205 |
| 5248 | 2910 State School Road | Denton | TX | 76210 |
| 1919 | 512 N. Temple | Diboll | TX | 75941 |
| 1957 | 1408 N. Mechanic | El Campo | TX | 77437 |
| 5369 | 3701 Sycamore School Road | Fort Worth | TX | 76133 |
| 2049 | 1605 Brazosport Boulevard | Freeport | TX | 77541 |
| 3952 | 3207 Williams Drive | Georgetown | TX | 78626 |
| 2076 | 406 N. Austin Avenue | Georgetown | TX | 78626 |
| 4968 | 201 E. Ovilla Road | Glenn Heights | TX | 75154 |
| 3655 | 210 West Pioneer | Grand Prairie | TX | 75051 |
| 4387 | 2991 S Highway 360 | Grand Prairie | TX | 75052 |
| 4240 | 4050 S Great SW Parkway | Grand Prairie | TX | 75052 |
| 2081 | 201 West NW Highway | Grapevine | TX | 76051 |
| 2187 | 2045 Fm 1488 | Hempstead | TX | 77445 |
| 4569 | 11902 Bissonnet Street | Houston | TX | 77099 |
| 5497 | 1201 W. Sam Houston Parkway No | Houston | TX | 77043 |
| 1125 | 13028 Veteran's Memorial Hwy | Houston | TX | 77014 |
| 5690 | 2010 Aldine Bender Road | Houston | TX | 77032 |
| 6298 | 4020 S. Sam Houston Pkwy East | Houston | TX | 77047 |
| 5283 | 105 N. Collins Freeway | Howe | TX | 75459 |
| 5622 | 1451 W. Hurst Boulevard | Hurst | TX | 76053 |
| 5812 | 306 West First Street | Idalou | TX | 79329 |
| 2238 | 1310 W. Pioneer | Irving | TX | 75061 |
| 2247 | 1105 South Jackson Street | Jacksonville | TX | 75766 |
| 4537 | 802 South Highway 156 | Justin | TX | 76247 |
| 4607 | 1955a Mason Road | Katy | TX | 77449 |
| 6380 | 25022 Fm 1093 Road | Katy | TX | 77494 |

| Store No. | Store Address | City | State | Zip |
|---|---|---|---|---|
| 5360 | 301 South Old Betsy | Keene | TX | 76059 |
| 3217 | 401 S. Poplar Street | Kermit | TX | 79745 |
| 4928 | 1302 International Boulevard | Laredo | TX | 78045 |
| 3939 | 2001 Highway 83 | Laredo | TX | 78043 |
| 6541 | 2855 East League City | League City | TX | 77573 |
| 5437 | 3214 S. Main Street | Lindale | TX | 75771 |
| 1164 | 510 S. Main | Lindale | TX | 75771 |
| 6527 | 917 Highway 59 South | Linden | TX | 75563 |
| 6177 | 11951 Fm 423 | Little Elm | TX | 75068 |
| 4520 | 900 West Eldorado Parkway | Little Elm | TX | 75068 |
| 3944 | 101 N University Ave | Lubbock | TX | 79415 |
| 4776 | 1609 Martin Luther King Blvd | Lubbock | TX | 79403 |
| 3736 | 1901 34th Street & Avenue S | Lubbock | TX | 79401 |
| 2336 | 4611 34th Street | Lubbock | TX | 79414 |
| 3496 | 4904 Indiana Avenue | Lubbock | TX | 79413 |
| 4556 | 5202b 50th Street | Lubbock | TX | 79414 |
| 3262 | 1805 S First | Lufkin | TX | 75901 |
| 2326 | 417 N. Timberland Drive | Lufkin | TX | 75901 |
| 2532 | 2605 E. Main Street | Madisonville | TX | 77864 |
| 5352 | 17518 State Highway 6 | Manvel | TX | 77578 |
| 2493 | 1405 Highway 281 North | Marble Falls | TX | 78654 |
| 5175 | 2404 Sam Rayburn Highway | Melissa | TX | 75454 |
| 6107 | 9846 Interstate 20 | Merkel | TX | 79536 |
| 1186 | 1109 Midkiff Road | Midland | TX | 79701 |
| 1176 | 2104 N. Big Spring | Midland | TX | 79705 |
| 1177 | 311 W. Broad Street | Mineola | TX | 75773 |
| 4257 | 5647 Rufe Snow Drive | North Richland Hills | TX | 76180 |

| Store No. | Store Address | City | State | Zip |
|---|---|---|---|---|
| 2623 | 6724 Davis Boulevard | North Richland Hills | TX | 76180 |
| 3266 | 2636 John Ben Sheppard Parkway | Odessa | TX | 79761 |
| 3602 | 3823 E 52nd Street | Odessa | TX | 79762 |
| 6115 | 7725 West University Blvd. | Odessa | TX | 79763 |
| 4873 | 14050 Us Hwy 190 West | Onalaska | TX | 77360 |
| 2783 | 5020 Fairmont Parkway | Pasadena | TX | 77505 |
| 4299 | 300 S Us Hwy 377 | Pilot Point | TX | 76258 |
| 4114 | 501 W Fifth Street | Plainview | TX | 79072 |
| 4485 | 202 E Highway 120 | Pottsboro | TX | 75076 |
| 5183 | 100 N. State Hwy 289, Bldg A | Prosper | TX | 75078 |
| 2798 | 1704 Avenue H | Rosenberg | TX | 77471 |
| 6018 | 23700 Southwest Freeway | Rosenberg | TX | 77471 |
| 1278 | 3311 Sherwood Way | San Angelo | TX | 76901 |
| 4753 | 351 E. Cedar Creek Parkway | Seven Points | TX | 75143 |
| 6392 | 7459 Highway 84 | Shallowater | TX | 79363 |
| 2852 | 4100 College | Snyder | TX | 79549 |
| 4897 | 3838 W. Parker Road | St. Paul | TX | 75098 |
| 5611 | 3010 West Washington | Stephenville | TX | 76401 |
| 2851 | 1516 South Broadway | Sulphur Springs | TX | 75482 |
| 6412 | 6280 Highway 281 | Three Rivers | TX | 78071 |
| 3127 | 501 N. Williams | Wylie | TX | 75098 |
| 6513 | 999 Independence Blvd | Bedford | VA | 24523 |
| 1872 | 355 N. Franklin Street | Christiansburg | VA | 24073 |
| 5475 | 10045 Jefferson Davis Highway | Fredericksburg | VA | 22407 |
| 5763 | 695 Commonwealth Drive | Norton | VA | 24273 |
| 5552 | 4504 Challenger Avenue | Roanoke | VA | 24012 |
| 3236 | 790-b East Main Street | Wytheville | VA | 24382 |

| Store No. | Store Address | City | State | Zip |
|---|---|---|---|---|
| 6540 | 655 Northwest Arkansas Way | Chehalis | WA | 98532 |
| 6514 | 7746 Martin Way East | Lacey | WA | 98516 |
| 6381 | 6793 Bonanza Road | Evansville | WY | 82636 |

# **Exhibit B-1**

**[downloadable] CLAIM FORM**
*In re: Sonic Corp. Customer Data Breach Litigation*,
MDL Case No. 1:17-md-02807-JSG (N.D. Ohio)

**YOUR CLAIM FORM MUST BE POSTMARKED (IF BY U.S. MAIL) OR SUBMITTED (IF USING THE ONLINE CLAIMS SUBMISSION PROCESS) NO LATER THAN [DATE].**
*By submitting this claim form, you will be included as a member of the settlement class identified in the notice. If you also submit a request for exclusion from the class and settlement, the request for exclusion will be deemed invalid.*

**PERSONAL INFORMATION.** Please legibly print or type the following information:

Name (first and last):_____

Residential Street Address:_____

City, State, and Zip Code:_____

Daytime Telephone Number: (_____)_____

Email Address (Optional): _____

**SETTLEMENT OVERVIEW.** A Settlement has been reached with Sonic in a class action lawsuit about a data breach that occurred at certain Sonic Drive-In locations from April 7, 2017 through October 28, 2017 ("Data Breach"). A list of the 325 Impacted Sonic Drive-In locations is attached to this Claim Form. The amount of any settlement payment for a Verified Claim will depend upon whether you qualify as a Category 1 Class Member or a Category 2 Class Member, and may be adjusted up or down depending on the number of total claimants:

1. **CATEGORY 1 CLASS MEMBERS:** A one-time payment of approximately $10.00 to any person who made a purchase using a credit or debit card at one of the 325 Impacted Sonic Drive-In locations during the period of time from April 7, 2017 through October 28, 2017. The amount of the Category 1 payment may be adjusted up or down depending on the number of claimants.

2. **CATEGORY 2 CLASS MEMBERS:** A one-time payment of approximately $40.00 to any person who: (i) made a purchase using a credit or debit card at one of the 325 Impacted Sonic Drive-In locations during the period of time from April 7, 2017 through October 28, 2017 **and** (ii) experienced a fraudulent or unauthorized charge on the credit or debit card account used at the Impacted Sonic Drive-In location any time thereafter up through February 28, 2018. If the fraudulent/unauthorized charge occurred *after* February 28, 2018, you are only eligible for the $10.00 payment to Category 1 Class Members. The amount of the Category 2 payment may be adjusted up or down depending on the number of claimants.

   **Please answer the following questions to determine your eligibility for a payment of either $10.00 or $40.00:**

   1. Did you use a credit or debit card at one of the 325 Impacted Sonic Drive-In locations during the period of time from April 7, 2017 through October 28, 2017?

      <u>Yes</u> ☐ (**Category 1 Class** – *You are eligible for a payment of $10.00*) (*Proceed to Question 2*)   <u>No</u> ☐ (*You are not eligible to submit a claim*)

2.    Please identify the address of the Sonic Drive-In location where you made your purchase. (list up to 3 locations)

_____

_____

_____

3.    After your purchase, did you experience any fraudulent or unauthorized charges on the credit or debit card account that you used at any of the Impacted Sonic Drive-In location(s) you listed in response to Question 2 above?  If yes, provide the last four digits of the credit or debit card(s) used which experienced the fraudulent or unauthorized charges.

Yes ☐ (*Proceed to Question 4*)          No ☐ (**Category 1 Class** – *You are still eligible for a payment of $10.00*)

_____          _____

_____          _____

4.    Did the fraudulent or unauthorized charges on your payment card occur on or before February 28, 2018?

Yes ☐ (**Category 2 Class** – *You are eligible for a payment of $40.00*)  No ☐ (**Category 1 Class** – *You are still eligible for a payment of $10.00*)

**THIS FORM MUST BE COMPLETED AND POSTMARKED (IF BY U.S. MAIL) OR SUBMITTED (IF COMPLETED THROUGH THE ONLINE CLAIM PROCESS) ON OR BEFORE [DATE].**

**MAIL FORM TO:**          **[CLAIMS ADMINISTRATOR P.O. Box ADDRESS]**

***ATTESTATION***

*I understand that the Settlement Administrator, Sonic, or Class Counsel may require me to provide support for my claim and that I should retain in my possession any receipts, credit card statements, bank statements, or other documents that support my purchase(s) at an Impacted Sonic Drive-In Location during the Class Period and, if applicable, any documents supporting my claim that there was a fraudulent or unauthorized charge on or before February 28, 2018 on the credit or debit card account used at the Impacted Sonic Drive-In Location.*

**I do hereby swear and affirm that the information provided above is true and accurate to the best of my knowledge and belief.**

Dated:_____          Signature: _____

# **<u>Exhibit B-2</u>**

**[electronic] CLAIM FORM**
*In re: Sonic Corp. Customer Data Breach Litigation*,
MDL Case No. 1:17-md-02807-JSG (N.D. Ohio)

**YOUR CLAIM FORM MUST BE SUBMITTED NO LATER THAN [DATE].**
*By submitting this claim form, you will be included as a member of the settlement class identified in the notice. If you also submit a request for exclusion from the class and settlement, the request for exclusion will be deemed invalid.*

**PERSONAL INFORMATION.**          Please enter the following information:

Name (first and last):_____

Residential Street Address:_____

City, State, and Zip Code:_____

Daytime Telephone Number: (_____)_____

Email Address (Optional): _____

**SETTLEMENT OVERVIEW.** A Settlement has been reached with Sonic in a class action lawsuit about a data breach that occurred at certain Sonic Drive-In locations from April 7, 2017 through October 28, 2017 ("Data Breach") (click here to see a list of the 325 Impacted Sonic Drive-In locations). The amount of any settlement payment for a Verified Claim will depend upon whether you qualify as a Category 1 Class Member or a Category 2 Class Member, and may be adjusted up or down depending on the number of total claimants:

1. **CATEGORY 1 CLASS MEMBERS:** A one-time payment of approximately $10.00 to any person who made a purchase using a credit or debit card at one of the 325 Impacted Sonic Drive-In locations (click here to see a list of the 325 Impacted Sonic Drive-In locations) during the period of time from April 7, 2017 through October 28, 2017.  The amount of the Category 1 payment may be adjusted up or down depending on the number of claimants.

2. **CATEGORY 2 CLASS MEMBERS:** A one-time payment of approximately $40.00 to any person who: (i) made a purchase using a credit or debit card at one of the 325 Impacted Sonic Drive-In locations (click here to see a list of the 325 Impacted Sonic Drive-In locations) during the period of time from April 7, 2017 through October 28, 2017 **and** (ii) experienced a fraudulent or unauthorized charge on the credit or debit card account used at the Impacted Sonic Drive-In location any time thereafter up through February 28, 2018. If the fraudulent/unauthorized charge occurred *after* February 28, 2018, you are only eligible for the $10.00 payment to Category 1 Class Members. The amount of the Category 2 payment may be adjusted up or down depending on the number of claimants.

   **Please answer the following questions to determine your eligibility for a payment of either $10.00 or $40.00:**

   1.          Did you use a credit or debit card at one of the 325 Impacted Sonic Drive-In locations during the period of time from April 7, 2017 through October 28, 2017? (click here to see a list of the 325 Impacted Sonic Drive-In locations)

      Yes ☐ (**Category 1 Class** –*You are eligible for a payment of $10.00*) (*Proceed to Question 2*)  No ☐ (*You are not eligible to submit a claim*)

   2.          Please identify the address of the Sonic Drive-In location where you made your purchase. (list up to 3 locations)

_____

_____

_____

3.      After your purchase, did you experience any fraudulent or unauthorized charges on the credit or debit card account that you used at any of the Impacted Sonic Drive-In location(s) you listed in response to Question 2 above?  If yes, provide the last four digits of the credit or debit card(s) used which experienced the fraudulent or unauthorized charges.

<u>Yes</u> ☐ (***Proceed to Question 4***)      <u>No</u> ☐ (**Category 1 Class** – ***You are still eligible for a payment of $10.00***)

_____    _____

_____    _____

4.      Did the fraudulent or unauthorized charges on your payment card occur on or before February 28, 2018?

<u>Yes</u> ☐ (**Category 2 Class** –*You are eligible for a payment of $40.00*)   <u>No</u> ☐ (**Category 1 Class**–*You are still eligible for a payment of $10.00*)

**THIS FORM MUST BE COMPLETED AND SUBMITTED ON OR BEFORE [==DATE==].**

### ***ATTESTATION***

*I understand that the Settlement Administrator, Sonic, or Class Counsel may require me to provide support for my claim and that I should retain in my possession any receipts, credit card statements, bank statements, or other documents that support my purchase(s) at an Impacted Sonic Drive-In Location during the Class Period and, if applicable, any documents supporting my claim that there was a fraudulent or unauthorized charge on or before February 28, 2018 on the credit or debit card account used at the Impacted Sonic Drive-In Location.*

**I do hereby swear and affirm that the information provided above is true and accurate to the best of my knowledge and belief.**

Dated:_____      Electronic Signature: _____

# **Exhibit C**

**LEGAL NOTICE**

## NOTICE OF CLASS ACTION SETTLEMENT

**Did you shop at this Sonic Drive-In location
from April 7, 2017 through October 28, 2017
and pay with a debit or credit card?**

**If so, you may be eligible for a cash payment from a class action settlement.**

**For more information:**

**[insert scannable QR code]**

visit **www.SonicDataBreachSettlement.com** or call **1-800-XXX-XXXX**
to learn more about the Settlement and find out how to submit a claim.

# **Exhibit D**

**If you used a credit or debit card at certain [insert Sonic logo] Drive-In locations from April 7, 2017 through October 28, 2017, you may be eligible for a cash payment from a class action settlement.**

**Click here to learn more about your legal rights, your eligibility, and how to submit a claim in the Sonic Data Breach settlement.**

# **Exhibit E**

<u>**NOTICE OF CLASS ACTION SETTLEMENT**</u>

<span style="text-align:center">N<small>ORTHERN</small> D<small>ISTRICT OF</small> O<small>HIO</small></span>

*In re: Sonic Corp. Customer Data Breach Litigation*,
MDL Case No. 1:17-md-02807-JSG (N.D. Ohio)

# If you used a credit or debit card at one of 325 certain Sonic Drive-In locations from April 7, 2017 through October 28, 2017, you may be eligible for a cash payment from a class action settlement.

*A court authorized this Notice. This is not a solicitation from a lawyer.*

- A Settlement has been reached with Sonic in a class action lawsuit asserting claims against several Sonic entities relating to a data breach arising out of a third-party cyber attack in 2017 that targeted the point of sale systems of Sonic Drive-In locations in an effort to steal customer payment card information (the "Data Breach").  Sonic denies all of the claims in the lawsuit. The Settlement does not establish who is right, and is not an admission of fault, but rather reflects a compromise to end the lawsuit.

- For a list of the 325 impacted Sonic Drive-In locations, go to www.SonicDataBreachSettlement.com.

- The Settlement includes all residents of the United States of America who made a purchase at any one of the 325 impacted Sonic Drive-In locations and paid using a credit or debit card from April 7, 2017 through October 28, 2017 (the "Relevant Time Period").

- The Settlement provides payments to people who submit valid and timely claims attesting (i) that they made a purchase using a credit or debit card at one of the 325 impacted Sonic Drive-In locations during the Relevant Time Period (**Category 1**), or (ii) that they made a purchase using a credit or debit card at one of the 325 impacted Sonic Drive-In locations during the Relevant Time Period *and* that they experienced fraudulent or unauthorized charges on the credit or debit card used at the impacted location any time thereafter up through February 28, 2018 (**Category 2**).

**Your legal rights are affected even if you do nothing. Read this Notice carefully.**

| Y<small>OUR</small> L<small>EGAL</small> R<small>IGHTS AND</small> O<small>PTIONS IN THIS</small> S<small>ETTLEMENT</small> | |
|---|---|
| **Submit a Claim** | This is the only way to receive a payment to compensate you for losses which you believe you suffered as a result of the Data Breach. |
| **Ask to be Excluded** | You will not receive a payment, but you will retain any rights you currently have with respect to Sonic and the issues in this lawsuit.  This is the only option that allows you to bring your own lawsuit against Sonic related to the Data Breach. |

1

| Object | Write to the Court about why you do not like the Settlement. |
|---|---|
| Go to the Hearing | Ask to speak in Court about the fairness of the Settlement. |
| Do Nothing | Get no payment. Give up rights to submit a claim or bring a different lawsuit against Sonic related to the Data Breach. |

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

- The Court in charge of this lawsuit still has to decide whether to grant final approval of the Settlement.  Payments will only be made after the Court grants final approval of the Settlement and after any appeals are resolved.

## <u>WHAT THIS NOTICE CONTAINS</u>

**BASIC INFORMATION**................................................................................................................**Page 3**
1. Why was this Notice issued and why should I read it?
2. What is this lawsuit about?
3. Why is this lawsuit a class action?
4. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT?** ........................................................................................**Page 4**
5. How do I know if I am included in the Settlement?
6. What if I am not sure whether I am included in the Settlement?

**SETTLEMENT BENEFITS–WHAT YOU GET IF YOU QUALIFY** ...................................**Pages 4-5**
7. What does the Settlement provide?
8. What payments are available for Category 1?
9. What payments are available for Category 2?

**HOW DO YOU SUBMIT A CLAIM?** .....................................................................................**Pages 5-6**
10. How do I get a payment?
11. How will claims be decided?
12. When will I get my payment?

**WHAT DOES SONIC GET?** ...................................................................................................**Pages 6-7**
13. What am I giving up as part of the Settlement?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ....................................................**Page 7**
14. If I exclude myself, can I get a payment from this Settlement?
15. If I do not exclude myself, can I sue Sonic for the same thing later?
16. How do I exclude myself from the Settlement?

**OBJECTING TO THE SETTLEMENT** ................................................................................**Page 8**
17. How do I tell the Court that I do not like the Settlement?
18. What is the difference between objecting and asking to be excluded?

**THE LAWYERS REPRESENTING YOU** .............................................................................**Page 9**
19. Do I have a lawyer in this case?
20. How will the lawyers be paid?

2

**THE COURT'S FINAL APPROVAL HEARING** ............................................................Pages 9-10
21.   When and where will the Court decide whether to approve the Settlement?
22.   Do I have to attend the hearing?
23.   May I speak at the hearing?

**IF YOU DO NOTHING** ................................................................................................Page 10
24.   What happens if I do nothing?

**GETTING MORE INFORMATION**...............................................................................Page 10
25.   How do I get more information?

## BASIC INFORMATION

### 1.   Why was this Notice issued and why should I read it?

The Court authorized this Notice because you may be included in the settlement class and have a right to know about the proposed Settlement of this class action lawsuit and about all of your options before the Court decides whether to give "final approval" to the Settlement. This Notice explains the legal rights and options that you may exercise before the Court decides whether to approve the Settlement.

Judge James S. Gwin of the United States District Court for the Northern District of Ohio is overseeing this case known as *In re: Sonic Corp. Customer Data Breach Litigation*, MDL Case No. 1:17-md-02807-JSG. The people who sued the Sonic entities are called the Plaintiffs. The Sonic entities that were sued are called the Defendants.

### 2.   What is this lawsuit about?

The lawsuit claims that Sonic did not have adequate safeguards in place and should be held responsible for the Data Breach and asserts claims such as: breach of implied contract, negligence, negligence per se, unjust enrichment, and violations of numerous state consumer-protection and data breach statutes. Sonic denies these claims in their entirety and asserts that Sonic did have adequate safeguards in place and did nothing wrong.

### 3.   Why is this lawsuit a class action?

In a class action, one or more people called class representatives or representative plaintiffs sue on behalf of all people who have similar claims. Together, all of these people are called a class and the individuals are called class members. One court resolves the issues for all class members, except for those who validly and timely exclude themselves from the class. Here, 22 Representative Plaintiffs sued on behalf of a class of all customers who made a purchase using a credit or debit card at one of the 325 impacted Sonic Drive-In locations from April 7, 2017 through October 28, 2017.

### 4.   Why is there a Settlement?

The Court did not issue a ruling in favor of the Plaintiffs or Sonic. Rather, both sides, with the assistance of Magistrate Judge Jonathan D. Greenberg as mediator, agreed to a settlement. The Settlement is not an admission that Sonic did anything wrong, but rather reflects a compromise to end the lawsuit. By agreeing to settle, both sides avoid the cost and risk of a trial, and people who submit valid claims will get compensation. The Representative Plaintiffs and their attorneys believe the Settlement is fair, reasonable, and adequate and, thus, in the best interests of the Settlement Class.

3

## WHO IS IN THE SETTLEMENT?

**5.  How do I know if I am included in the Settlement Class?**

You are included in the Settlement Class if you reside in the United States and you made a purchase using a credit or debit card at one of the 325 impacted Sonic Drive-In locations from April 7, 2017 through October 28, 2017.

Specifically excluded from the Settlement Class are:

> (i) the Sonic entities named as Defendants, Sonic Franchisees, Sonic's third-party point-of-sale vendor, Infor Restaurant Systems, their respective parents, subsidiaries, affiliated companies, divisions, predecessors, and successors, and their respective officers, directors, employees, principals, agents, attorneys, insurers, and reinsurers; (ii) all Settlement Class Members who timely and validly request exclusion from or opt out of the Settlement Class; (iii) the Judge or Magistrate Judge to whom the lawsuit is assigned and any member of those Judges' staffs or immediate family members; and (iv) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Breach or who pleads *nolo contendere* to any such charge.

**6.  What if I am not sure whether I am included in the Settlement?**

The Settlement website at www.SonicDataBreachSettlement.com provides the list of 325 impacted Sonic Drive-In locations; if you made a purchase using a credit or debit card at one of these 325 impacted Sonic Drive-In locations from April 7, 2017 through October 28, 2017, then you are included in the Settlement. If you are still not sure whether you are included in the Settlement, you may call 1-XXX-XXX-XXXX with any further questions.  You may also write with questions to the Settlement Administrator, P.O. Box XXXX, [City], [State] XXXXX-XXXX.

## THE SETTLEMENT BENEFITS – WHAT YOU GET IF YOU QUALIFY

**7.  What does the Settlement provide?**

The Settlement will provide payments to people who submit valid and timely claims.  There are different settlement payments available to Settlement Class Members depending upon which one of two categories the Settlement Class Member falls into: (1) Category 1 Settlement Class Members (see Question 8 below) or (2) Category 2 Settlement Class Members (see Question 9 below).

You can only receive payment under one category: either Category 1 or Category 2.

**8.  What payment is available for Category 1 Settlement Class Members?**

Category 1 Settlement Class Members are eligible to receive a one-time payment of approximately $10.00 if they made a purchase using a credit or debit card at one of the 325 impacted Sonic Drive-In locations during the Relevant Time Period (April 7, 2017 through October 28, 2017).  Settlement Class Members who file a claim under Category 1 are eligible for the approximately $10.00 payment even if they did not experience any fraudulent or unauthorized charges subsequent to their purchase at one of the 325 impacted Drive-In locations. The precise amount of the payment may be adjusted up or down based on the total number of valid claims received (see Question 11 below).

4

**9.  What payment is available for Category 2 Settlement Class Members?**

Category 2 Settlement Class Members are eligible to receive a one-time payment of $40.00 only if they satisfy these conditions: (i) they made a purchase using a credit or debit card at one of the 325 impacted Sonic Drive-In locations during the Relevant Time Period (April 7, 2017 through October 28, 2017); and (ii) they experienced fraudulent or unauthorized charges on the credit or debit card used at the impacted Sonic Drive-In location anytime thereafter up through February 28, 2018. The precise amount of the payment may be adjusted up or down based on the total number of valid claims received (see Question 11 below).

## HOW DO YOU SUBMIT A CLAIM?

**10. How do I get a payment?**

To request to receive a payment, you must complete and submit a Claim Form that will be used to determine your eligibility. Claim Forms are available at www.SonicDataBreachSettlement.com or by calling 1-XXX-XXX-XXXX. Read the instructions carefully, fill out the Claim Form, and submit it online or mail it in, postmarked no later than **[MONTH], [DAY], [YEAR]**, to:

Sonic Data Breach Settlement Administrator
P.O. Box XXXXX
[City], [State], XXXXX-XXXX

**11. How will claims be decided?**

The Settlement Administrator will ultimately decide whether the information provided on each Claim Form is complete and valid.  The Settlement Administrator may require additional information.  If you do not provide the additional information in a timely manner the claim will be considered invalid and will not be paid.

The Settlement Administrator, Sonic, or Class Counsel may require you to provide support for your claim. You should retain in your possession any receipts, credit card statements, bank statements, or other documents that support your purchase(s) at one of the 325 impacted Sonic Drive-In locations during the Relevant Time Period and, if applicable, any documents supporting your claim that you experienced a fraudulent or unauthorized charge on or before February 28, 2018 on the credit or debit card used at the impacted Sonic Drive-In location during the Relevant Time Period.

Verified Claims are those submitted in a timely manner and found to be valid by the Settlement Administrator.

Sonic's payments under the Settlement for (1) Verified Claims to Settlement Class Members, (2) any Court-awarded attorneys' fees, costs, and expenses, (3) any Court-awarded service awards to Representative Plaintiffs, and (4) the costs involved in notice and administering the Settlement are capped in the aggregate at $4,325,000.00.  If, after deducting the court-awarded attorneys' fees, costs, and expenses, service awards, and costs of notice and settlement administration, the total amount of Verified Claims is greater than the balance remaining in the Net Settlement Fund, then each Verified Claim payment will be reduced on a *pro rata* (proportionate) basis such that the total aggregate amount of Verified Claims does not exceed the value of the Net Settlement Fund.  However, if, after deducting the court-awarded attorneys' fees, costs, and expenses, service awards, and the costs of notice and settlement administration, the total amount of Verified

Claims is less than the balance remaining in the Net Settlement Fund, then each Verified Claim payment will be increased on a *pro rata* (proportionate) basis in order to fully allocate the full Net Settlement Fund.

## 12. When will I get my payment?

The Court will hold a hearing on **[MONTH], [DAY], [YEAR]** to decide whether to approve the Settlement. If the Court approves the Settlement after that, there may be appeals.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than one year.  It also takes time for all the Claim Forms to be processed.  Please be patient.

## WHAT DOES SONIC GET?

## 13. What am I giving up as part of the Settlement?

If the Settlement becomes final and you do not exclude yourself from the Settlement, you will remain a Settlement Class Member and you will give up your right to sue Sonic, Sonic Franchisees, Infor Restaurant Systems, and all Released Persons for any Released Claims arising out of or relating to the Data Breach. The specific claims being released are described below and in the "Release" section (¶¶ 1.21, 11.1) of the Settlement Agreement.  Capitalized terms in the Release below are defined in the Settlement Agreement. If you have any questions you can talk to the law firms listed in Question 19 for free or you can, of course, talk to your own lawyer.

### Plaintiffs' Release

> Upon the Effective Date, each Settlement Class Member who has not timely opted-out of this Settlement, including Representative Plaintiffs, shall be deemed to have, and by operation of the Final Judgment shall have, completely, fully, finally, irrevocably, and forever released, relinquished, and discharged all Released Claims.  Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member who has not timely opted-out of this Settlement, including Representative Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum based on, relating to, concerning, or arising out of any of the Released Claims.

> It is the intent of the Parties that this Release shall not be considered, interpreted, or construed to prevent Settlement Class Members from pursuing claims related to the Data Breach against any person or entity that is not a "Released Person" as that term is defined in the Settlement Agreement.

> "Released Claims" means any and all claims, rights, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature, and character, known and unknown, including without limitation, negligence, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of confidence, invasion of privacy, misrepresentation (whether fraudulent, negligent, or innocent), unjust enrichment, bailment, wantonness, failure to provide adequate notice pursuant to any breach notification statute or common law duty, any federal, state, or local statutory or regulatory claims, including, but not limited to, pursuant to consumer protection laws, unfair and deceptive trade practice laws, and further including,

**but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees, costs, and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that any Settlement Class Member has, has asserted, could have asserted, or could assert against any of the Released Persons based on, relating to, concerning, or arising out of the Data Breach (including, but not limited to, the theft or compromise of Personal Information) or the allegations, facts, or circumstances described in the Litigation.  "Released Claims" include Unknown Claims, as that term is defined in the Settlement Agreement.**

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to be part of this Settlement, but you want to keep the right to sue Sonic about the legal issues in this case, then you must take steps to get out of the Settlement Class. This is called excluding yourself from—or is sometimes referred to as "opting out" of—the Settlement Class.

### 14. If I exclude myself, can I get a payment from this Settlement?

No.  If you exclude yourself, you will not be entitled to any money from the Settlement, but you will not be bound by any judgment in this case.

### 15. If I do not exclude myself, can I sue Sonic for the same thing later?

No.  Unless you exclude yourself, you give up any right to sue Sonic (and the Released Persons as that term is defined in the Settlement Agreement) for the claims that this Settlement resolves.  You must exclude yourself from the Settlement Class to start your own lawsuit or to be part of any different lawsuit relating to the claims in this case.  If you exclude yourself, do not submit a Claim Form to ask for a payment. If you exclude yourself and submit a Claim Form, your exclusion will be deemed invalid.

If you are requesting exclusion because you want to bring your own lawsuit based on the matters alleged in this class action, you may want to consult an attorney and discuss whether any individual claim that you may wish to pursue would be time-barred by the applicable statute of limitations or repose.

### 16. How do I exclude myself from the Settlement?

To exclude yourself, you must send a letter that says you want to be excluded from the Settlement in *In re: Sonic Corp. Customer Data Breach Litigation*, MDL Case No. 1:17-md-02807-JSG. Include your name, address, and signature. You must mail your written request for exclusion postmarked by **[MONTH], [DAY], [YEAR],** to:

Sonic Data Breach Settlement Administrator
P.O. Box XXXXX
City, State XXXXX

## OBJECTING TO THE SETTLEMENT

### 17. How do I tell the Court that I do not like the Settlement?

You can tell the Court that you do not agree with the Settlement or some part of it by objecting to the Settlement.  The Court will consider your views in its decision to approve the Settlement.  To object, you must file a written objection in this case, *In re: Sonic Corp. Customer Data Breach Litigation*, MDL Case No. 1:17-md-02807-JSG, with the Clerk of Court, and mail copies to Class Counsel and Defense Counsel at the addresses below.

Your objection must state: (1) your full name, current address, telephone number, and email address (if any); (2) a statement that you are a Settlement Class Member, including an attestation that you made a purchase using a debit or credit card at one of the 325 impacted Sonic Drive-In locations during the Relevant Time Period and identifying the address of the location where you made your purchase; (3) a written statement of all grounds for the objection, accompanied by any legal support for the objection that you believe is applicable; (4) the identity of all counsel representing you, if any; (5) a written statement indicating whether you intend to appear at the final approval hearing and the identity of all counsel, if any, representing you who will appear at the final approval hearing on your behalf; (6) a statement identifying all persons who you will call to testify at the final approval hearing in support of the objection; (7) your signature and the signature of your duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); (8) a list, by case name, court, and docket number, of all other cases in which you (directly or through counsel) have filed an objection to any proposed class action settlement within the last three (3) years; and (9) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last three (3) years.

To be considered, your objection must be **filed** with the Clerk of the Court for the United States District Court for the Northern District of Ohio no later than **[MONTH], [DAY], [YEAR]**.  In addition, you must **mail** a copy of your objection to both Class Counsel and Defense Counsel, postmarked no later than **[MONTH], [DAY], [YEAR]**:

| Court | Class Counsel | Defense Counsel |
|-------|---------------|-----------------|
| Clerk of the Court<br>Carl B. Stokes U.S. Court House<br>801 West Superior Ave.<br>Cleveland, OH 44133 | William B. Federman<br>Federman & Sherwood<br>10205 North Pennsylvania Ave.<br>Oklahoma City, OK 73120 | Kari M. Rollins<br>Sheppard Mullin Richter &<br>Hampton, LLP<br>30 Rockefeller Center<br>New York, NY 10112 |

## 18. What is the difference between objecting and asking to be excluded?

Objecting is telling the Court that you do not like the Settlement or some part of the Settlement and why you do not think it should be approved.  You can object only if you are a member of the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class and do not want to receive any payment from the Settlement.  If you exclude yourself, you have no basis to object because you are no longer a member of the Settlement Class and the case no longer affects you.

## THE LAWYERS REPRESENTING YOU

## 19. Do I have a lawyer in this case?

8

Yes. The Court appointed William B. Federman of Federman & Sherwood as Lead Counsel for the Plaintiffs and Settlement Class. The Court also appointed the following attorneys as Class Counsel to represent the Settlement Class: Carin Marcussen of Federman & Sherwood; Marc Dann and Brian Flick of Dann Law; Thomas Zimmerman, Jr. of Zimmerman Law Offices, P.C.; Melissa Emert of Stull, Stull & Brady; Michael Fuller of Olsen Daines; and Miles Clark of Knepper & Clark LLC.

## 20. How will the lawyers be paid?

Class Counsel will ask the Court for an award of attorneys' fees of up to one-third of the Settlement Fund (*i.e.*, up to $1,441,667), plus reimbursement of their litigation costs and expenses. Any award of attorneys' fees, plus reasonable costs and expenses, would compensate Class Counsel for investigating the facts, litigating the case, engaging in formal discovery with Sonic and third parties, retaining experts, and negotiating the settlement and will be the only payment to them for their efforts in achieving the Settlement and for their risk in undertaking this representation on a wholly contingent basis.

Class Counsel will also ask the Court for service awards totaling $42,000 in the aggregate for the twenty-two (22) Representative Plaintiffs.

Any award of attorneys' fees, costs, and expenses for Class Counsel, and service awards to the Representative Plaintiffs must be approved by the Court. The Court may award less than the amounts requested.  If approved, these amounts will be deducted from the $4,325,000 total Settlement Fund prior to making payments to Settlement Class Members who submit valid Claim Forms.  Class Counsel's preliminary application for attorneys' fees, costs, and expenses, and service awards will be filed no later than **[MONTH], [DAY], [YEAR]** and these documents will be posted on the Settlement website.

## THE COURT'S FINAL APPROVAL HEARING

## 21. When and where will the Court decide whether to approve the Settlement?

The Court will hold a final approval hearing at ___:_____ __.m. on **[MONTH], [DAY], [YEAR]**, at the Carl B. Stokes United States Court House, Courtroom 18A, 801 West Superior Avenue, Cleveland, Ohio 44113.  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and should be granted final approval.  If there are timely objections, the Court will consider them and will listen to people who have asked to speak at the hearing if such a request has been properly made.  The Court will also rule on the request for an award of attorneys' fees and reasonable costs and expenses, as well as the request for service awards for the Representative Plaintiffs.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check for updates at www.SonicDataBreachSettlement.com or by calling 1-XXX-XXX-XXXX.

## 22. Do I have to attend the hearing?

No. Class Counsel will present the Settlement Agreement to the Court.  You or your own lawyer are welcome to attend at your expense, but you are not required to do so. If you send an objection, you do not have to come to Court to talk about it.  As long as you filed your written objection on time with the Court and mailed it according to the instructions provided in Question 17, the Court will consider it.

## 23. May I speak at the hearing?

You may ask the Court for permission to speak at the final fairness hearing.  To do so, you must file an objection according to the instructions in Question 17, including all the information required. Your objection must be **filed** with the Clerk of the Court for the United States District Court for the Northern District of Ohio no later than **[MONTH], [DAY], [YEAR]**.  In addition, you must **mail** a copy of your objection to both Class Counsel and Defense Counsel listed in Question 17, postmarked no later than **[MONTH], [DAY], [YEAR]**.

## IF YOU DO NOTHING

### 24. What happens if I do nothing?

If you do nothing, you will not get any money from this Settlement and after the Settlement is granted final approval and the judgment becomes final, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Sonic or any of the other Released Persons about the Data Breach, ever again.

## GETTING MORE INFORMATION

### 25. How do I get more information?

This Notice summarizes the proposed Settlement.  More details are in the Settlement Agreement. A copy of the Settlement Agreement is available at www.SonicDataBreachSettlement.com. You may also call the Settlement Administrator with questions (or to get a Claim Form) at 1-XXX-XXX-XXXX (toll-free number).

10

# Exhibit F

**LEGAL NOTICE**

# If you used a credit or debit card at certain Sonic Drive-In locations from April 7, 2017 through October 28, 2017, you may be eligible for a cash payment from a class action settlement.

A Settlement has been reached with Sonic in a class action lawsuit about a data breach that occurred at Sonic Drive-In locations from April 7, 2017 through October 28, 2017 ("Data Breach"). The Settlement provides cash payments to people who (1) made a purchase using a credit or debit card at one of the 325 impacted Sonic Drive-In locations during the Data Breach period, or (2) made a purchase at one of the 325 impacted Sonic Drive-In locations during the Data Breach period **and** experienced fraudulent or unauthorized charges on the credit or debit card used at the impacted Sonic Drive-In location any time thereafter up through February 28, 2018.

The United States District Court for the Northern District of Ohio authorized this notice in the case, known as *In re: Sonic Corp. Customer Data Breach Litigation*, MDL Case No. 1:17-md-02807-JSG.

Go to www.SonicDataBreachSettlement.com for additional Settlement information, including the list of 325 impacted Sonic Drive-Ins.

## WHAT IS THIS ABOUT?

The lawsuit claims that Sonic should be held responsible for the Data Breach. Sonic denies all of the claims and says it did not do anything wrong. The Court did not decide in favor of either side. Instead, both sides agreed to a settlement. This Settlement is not an admission of wrongdoing or an indication that any law was violated.

## WHO IS INCLUDED?

You are included in the Settlement if you reside in the United States and made a purchase using a credit or debit card at one of the 325 impacted Sonic Drive-In locations from April 7, 2017 through October 28, 2017 ("Settlement Class Members").

## WHAT DOES THE SETTLEMENT PROVIDE?

The Settlement provides for payments to Settlement Class Members who submit valid claim forms. The amount of any settlement payment for a Verified Claim will depend upon whether you qualify as a Category 1 Class Member or a Category 2 Class Member, and may be adjusted up or down depending on the number of total claimants:

(1) **Category 1:** A one-time payment of approximately $10.00 to Settlement Class Members who made a purchase using a credit or debit card at one of the 325 impacted Sonic Drive-In locations from April 7, 2017 through October 28, 2017. The precise amount of the payment may be adjusted up or down depending on the number of valid claims received.

(2) **Category 2:** A one-time payment of approximately $40.00 to Settlement Class Members who (i) made a purchase using a credit or debit card at one of the 325 impacted Sonic Drive-In

locations from April 7, 2017 through October 28, 2017, **and** (ii) experienced a fraudulent or unauthorized charge on the credit or debit card used at the impacted Sonic Drive-In location any time thereafter up through February 28, 2018. The precise amount of the payment may be adjusted up or down depending on the number of valid claims received.

Sonic will pay $4.325 million into a non-reversionary Settlement Fund to settle the lawsuit. Court-awarded attorneys' fees, costs and expenses, service awards to the Representative Plaintiffs, and costs associated with notice and administering the Settlement will be deducted from the Settlement Fund prior to payments being made to Settlement Class Members who submit valid Claim Forms.

## How Do You Get a Payment?

To request a payment you must submit a Claim Form that will be used to determine your eligibility by _____ __, 201_. Claim Forms are available at www.SonicDataBreachSettlement.com or by calling toll-free XXX-XXX-XXXX.

## WHAT ARE YOUR OPTIONS?

If you do not want to be legally bound by the Settlement, you must exclude yourself from it by _____ __, 201_, or you will not be able to sue, or continue to sue, Sonic about the legal claims this Settlement resolves. If you exclude yourself, you cannot get money from the Settlement.

If you stay in the Settlement Class, you can tell the Court that you do not agree with the Settlement or some part of it by objecting to it by _____ __, 201_.

The Long Notice available at www.SonicDataBreachSettlement.com explains how to exclude yourself or object and describes the released claims in detail.

## WHO REPRESENTS YOU?

The Court appointed William Federman of Federman & Sherwood as Lead Counsel. The Court also appointed the following attorneys as Class Counsel to represent the Settlement Class: Carin Marcussen of Federman & Sherwood; Marc Dann and Brian Flick of Dann Law; Thomas Zimmerman, Jr. of Zimmerman Law Offices, P.C.; Melissa Emert of Stull, Stull & Brady; Michael Fuller of Olsen Daines; and Miles Clark of Knepper & Clark LLC. Class Counsel will ask the Court for an award for attorneys' fees of up to $1,441,667, plus reasonable costs and expenses, and service awards up to a total of $42,000 for the 22 Representative Plaintiffs. If you want to be represented by your own lawyer, you may hire one at your own expense.

## WHEN WILL THE SETTLEMENT BE APPROVED?

The Court will hold a hearing on Month Day, Year, at TIME at Carl B. Stokes U.S. Court House, Courtroom 18A, 801 W. Superior Ave.,

Cleveland, OH 44133 to consider whether to approve the Settlement and Class Counsel's request for attorneys' fees, costs and expenses, and service awards. You or your own lawyer may ask to appear and speak at the hearing at your own cost, but you do not have to.

**WANT MORE INFORMATION?**

Visit www.SonicDataBreachSettlement.com or call toll-free XXX-XXX-XXXX.

# **Exhibit G-1**

## NOTICE OF DATA BREACH CLASS ACTION SETTLEMENT

# **Exhibit G-2**

**LEGAL NOTICE**

## NOTICE OF CLASS ACTION SETTLEMENT

<span style="color:red">**If you used a credit or debit card at certain Sonic Drive-In locations from April 7, 2017 through October 28, 2017, you may be eligible for a cash payment from a class action settlement.**</span>

**For a list of the 325 impacted Sonic Drive-In locations
and for more information about the settlement and how to submit a claim,
please visit www.SonicDataBreachSettlement.com or call 1-800-XXX-XXXX.**

# **Exhibit H**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND**

**In re:**

| | |
|---|---|
| **SONIC CORP. CUSTOMER DATA BREACH LITIGATION** | Case No. 1:17-md-02807-JSG |
| | Judge James S. Gwin |
| **THIS DOCUMENT RELATES TO ALL CASES** | |

## [PROPOSED] PRELIMINARY APPROVAL ORDER

The matter before the Court is the motion of Plaintiffs Septabeya Bean, Patrick Blanford, Cornelius Bogard, Penny Bolin, Shadawna Carson, John Dolembo, Carlton Donovan, Shannon Gannon, Henry Gil, Esmeralda Hernandez, Melvin Hildreth III, Vonda Hoover, Barbara Kelley, Mark Korabelnikov, Megan MacKay, Dometric Pearson, Denise Ramirez, Edward Ramirez, Paula Sbabo, Cassandra Sharp, Linda Sipple, and Angela Williams ("Representative Plaintiffs"), for preliminary approval of a proposed class action settlement with Defendants Sonic Corp., Sonic Industries Services Inc., Sonic Capital LLC, Sonic Franchising LLC, Sonic Industries LLC, and Sonic Restaurants, Inc. (collectively, "Sonic" or the "Sonic Defendants"), on behalf of a Settlement Class.  The proposed Settlement would resolve all of the claims asserted by Representative Plaintiffs and members of the proposed Settlement Class in this action against Sonic (the "Litigation").

This matter has been resolved by compromise as a result of two full-day mediation sessions on August 3 and 10, 2018 and a telephonic conference on October 2, 2018 with the Honorable Jonathan D. Greenberg (the "Mediation"). Plaintiffs and Sonic (collectively, the "Parties"), through their respective counsel, have executed and filed with this Court a Settlement Agreement that resolves this Litigation and all claims asserted by Representative Plaintiffs and members of

-1-

the proposed Settlement Class relating to or arising from the Data Breach (as defined in Paragraph 1.10 of the Settlement Agreement). The Court, having overseen the Mediation, reviewed the Settlement Agreement, including the exhibits thereto, and considered the briefing submitted in support of the unopposed motion and the arguments of counsel thereon, finds that the terms of the proposed Settlement are fair, reasonable and adequate to Representative Plaintiffs and the Settlement Class and that the interests of fairness, consistency, and efficiency are well served by a single class settlement. The Court therefore hereby GRANTS the preliminary approval motion and ORDERS as follows.

1.     Except as otherwise stated, this Order incorporates the defined terms set forth in the Settlement Agreement.

2.     For purposes of settlement, and conditioned upon the Settlement Agreement receiving final approval following the final approval hearing, the Court conditionally certifies the following Settlement Class, pursuant to Federal Rule of Civil Procedure 23(b)(3): All residents of the United States who made a purchase at one of the Impacted Sonic Drive-Ins and paid using a debit or credit card during the period of time from April 7, 2017 through October 28, 2017. The Settlement Class specifically excludes: (i) Sonic (as defined in Paragraph 1.31 of the Settlement Agreement); (ii) Sonic Franchisees (as defined in Paragraph 1.32 of the Settlement Agreement); (iii) Infor (as defined in Paragraph 1.15 of the Settlement Agreement); (iv) all Settlement Class Members who timely and validly request exclusion from and/or opt-out of the Settlement Class; (v) the Judge or Magistrate Judge to whom the action is assigned and, any member of those Judges' staffs or immediate family members; and (vi) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal

activity or occurrence of the Data Breach (as defined in Paragraph 1.10 of the Settlement Agreement) or who pleads *nolo contendere* to any such charge.

3.       With respect to the Settlement Class, the Court preliminarily finds, solely for purposes of effectuating the Settlement and for no other purpose, that (i) the members of the Settlement Class are so numerous that joinder of all Settlement Class Members in this action would be impracticable, as the Settlement Class comprises more than 40 members; (ii) there are questions of law and fact common to the Settlement Class that predominate over individual questions, including whether Defendants failed to take adequate security measures to protect consumers' cardholder data, whether Defendants were negligent, whether Defendants breached an implied contract, whether Defendants have been unjustly enriched at the expense of Plaintiffs and Settlement Class Members, whether Defendants violated applicable state consumer protection laws, whether Defendants violated applicable state data breach statutes, whether Plaintiffs and Settlement Class Members are entitled to injunctive/declaratory relief, and whether Plaintiffs and Settlement Class Members are entitled to, and the proper amount of, damages; (iii) the claims of the Representative Plaintiffs are typical of the claims of the Settlement Class, and Representative Plaintiffs do not have any conflicts of interest with the other members of the Settlement Class; (iv) Representative Plaintiffs and Plaintiffs' Counsel can fairly and adequately represent and protect the interests of the Settlement Class Members, as shown by their extensive investigation, vigorous prosecution of this Litigation, and services performed to date; and (v) a class action is superior to other available methods for the fair and efficient adjudication of the controversy as it relates to the proposed Settlement, considering the interests of the Settlement Class Members in individually controlling the prosecution of separate actions, the extent and nature of any litigation concerning the controversy already commenced by Settlement Class Members, the desirability or

undesirability of continuing the Litigation of these claims in this forum, and the difficulties likely to be encountered in the management of a class action.

4.      The Settlement, on the terms and conditions set forth in the Settlement Agreement, is preliminarily approved by this Court as being fair, reasonable, adequate, and within the range of possible final judicial approval. The Court finds that the Settlement resulted from arm's-length negotiations conducted in good faith by the Parties in a mediation before this Court, and reflects a settlement that was reached voluntarily after consultation with experienced legal counsel.

5.      The Court provisionally finds that the Representative Plaintiffs are able to fairly and adequately represent the Settlement Class and appoints Representative Plaintiffs as the Class Representatives for the Settlement Class.  Representative Plaintiffs have diligently prosecuted this Litigation.

6.      The Court appoints the following as "Class Counsel": William B. Federman of Federman & Sherwood ("Interim Lead Counsel"), Marc E. Dann of DannLaw ("Interim Liaison Counsel"), Carin L. Marcussen of Federman & Sherwood, Brian D. Flick of DannLaw, Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C., Melissa R. Emert of Stull, Stull, & Brody, Michael Fuller of Olsen Daines, and Miles N. Clark of Knepper & Clark LLC, finding that these attorneys are able to fairly and adequately represent the Settlement Class, and have competently represented the Representative Plaintiffs and Settlement Class in this matter.

7.      The Court preliminarily approves the monetary relief to Settlement Class Members provided in the Settlement Agreement, and recognizes that Sonic has acknowledged that it made certain governance changes since the filing of this Litigation and has agreed to continue employing certain data security practices set forth in Paragraph 3.4 of the Settlement Agreement for no less

than three (3) years, with the Court finding that this relief is within the range of fair, reasonable and adequate.

8.     The Court orders the Sonic Defendants to pay within thirty (30) days after entry of this Order four million three hundred twenty five thousand dollars ($4,325,000.00) (the "Settlement Fund") into an escrow account established and administered by the Settlement Administrator, pursuant to the terms set forth in the Settlement Agreement. The Settlement Administrator shall take all necessary steps to establish, organize, and operate the escrow account as a Qualified Settlement Fund pursuant to applicable rules and regulations of the Internal Revenue Service and the Treasury Department and the terms of the Settlement Agreement.

9.     The Court approves the Notice Program set forth in the Settlement Agreement, as well as the Notices attached as Exhibit C (In-Store Notice), Exhibit D (Internet Banner Notice), Exhibit E (Long Form Notice), Exhibit F (Publication Notice), and Exhibits G-1 and G-2 (Website and Facebook Notice) thereto. The Court finds that the Notices collectively provide a sufficiently clear and concise description of the Litigation, the Settlement terms, and the rights and responsibilities of the Settlement Class Members. The Court further finds that the plan for dissemination of the Notices by the following methods: (i) conspicuously posting the In-Store Notice at the Impacted Sonic Drive-In locations, (ii) posting the Internet Banner Notice geo-tagged to the Facebook pages of Facebook users located with the zip codes of Impacted Sonic Drive-In locations, (iii) publishing the Publication Notice in a manner certified by the Settlement Administrator as being targeted to adults over 18 years of age located within the zip codes of the Impacted Sonic Drive-In locations, (iv) conspicuously posting the Website Notice on the Sonic website and Facebook page, and (v) posting the Long Form Notice on the Settlement Website as set forth in the Settlement Agreement, is the best means practicable, and is reasonably calculated

to apprise the Settlement Class Members of the Litigation and their right to participate in, object to, or exclude themselves from the Settlement. Accordingly, the Parties and their counsel are directed to disseminate the Notices pursuant to the terms of the Settlement Agreement.

10.     The Court approves the Claim Forms attached to the Settlement Agreement as Exhibits B-1 and B-2.

11.     The Court approves and appoints KCC LLC as the Settlement Administrator, and directs them to perform the duties set forth in the Settlement Agreement. As set forth in the Settlement Agreement, all costs and expenses incurred by the Settlement Administrator in connection with disseminating the notice and administering the Settlement shall be paid from the Settlement Fund.

12.     The Court will conduct a final approval hearing, at which time it will consider any objections to the Settlement Agreement and determine whether the Settlement Agreement should be finally approved, on _____ ___, 2019 commencing at _____ _.m.  Class Counsel shall file their motion for final approval of the Settlement no later than fourteen (14) days prior to the final approval hearing.

13.     Class Counsel shall file their preliminary motions for an award of Attorneys' Fees and Costs, and for Service Awards to the Representative Plaintiffs as Class Representatives, no earlier than thirty (30) days from entry of the Preliminary Approval Order by the Court, and no later than fourteen (14) days prior to the deadline for submission of Requests for Exclusion and Objections. These motions may be supplemented prior to the final approval hearing, and the Court will rule upon the motions at the final approval hearing. As set forth in the Settlement Agreement, all such awards shall be paid only from the Settlement Fund.

14.    Any Settlement Class Member who intends to object to the fairness, reasonableness, or adequacy of the Settlement, the proposed Attorneys' Fees and Costs, and/or the proposed Service Awards, must deliver to Kari M. Rollins of Sheppard Mullin Richter & Hampton LLP as counsel for the Sonic Defendants, and to William B. Federman of Federman & Sherwood as Class Counsel, and file with the Court, a written statement of the objections, as well as the specific reasons for each objection, including any legal support the Settlement Class Member wishes to bring to the Court's attention and any evidence or other information the Settlement Class Member believes supports the objections. Any Settlement Class Member who objects must also set forth their full name and current address; include a written statement that he/she is a Settlement Class Member, including an attestation that he/she made a purchase using a debit or credit card at one of the 325 Impacted Sonic Drive-Ins during the Settlement Class Period and identifying the address of the location where he/she made his/her purchase; state the identity of all counsel representing the objector, if any; include a statement indicating if he/she intends to appear and/or testify at the final approval hearing and the identity of all counsel representing the objector who will appear at the final approval hearing; include a statement identifying any person who will be called to testify at the final approval hearing in support of the objection; include the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); include a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last three (3) years; and include a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last three (3) years.

15.     All objections must be filed with the Court and delivered to counsel for Defendants and Class Counsel not later than _____ __, 201_.  Objections must be delivered to the Court, Class Counsel, and the Sonic Defendants' counsel at the addresses listed below:

Court:

Clerk of the Court
U.S. District Court for the Northern District of Ohio
Carl B. Stokes United States Court House
801 West Superior Avenue
Cleveland, Ohio 44113

Class Counsel:

William B. Federman
Federman & Sherwood
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120

The Sonic Defendants' Counsel:

Kari M. Rollins
Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, New York 10112

No person will be entitled to be heard at the final approval hearing, and no written objections will be received or considered by this Court at the final approval hearing, unless all pertinent terms and conditions set forth above and in the Settlement Class Notice have been fully met. If an objection is overruled, the objecting Settlement Class Member will be bound by the terms of the Settlement and may not exclude him/herself later.

16.     Any person who elects to opt out of the Settlement Class shall not be bound by any orders, including, but not limited to, any final order approving the Settlement, entered in this Litigation, not be entitled to relief under the Settlement Agreement, not gain any rights by virtue of the Settlement Agreement, and not be entitled to object to any aspect of the Settlement

Agreement. No person may opt out of the Settlement Class through a so-called "mass" or "class" opt-out.

17.     Any Settlement Class Member who wishes to be excluded from the Settlement must fully comply with all pertinent terms and conditions set forth in the Long Form Notice. All Requests for Exclusion must be postmarked no later than _____ __, 201_. Settlement Class Members who submit a timely and valid Request for Exclusion will have no rights under the Settlement Agreement, will not share in the distribution of the Net Settlement Fund, and will not be bound by the Settlement Agreement. Any Settlement Class Member who does not submit a timely and valid Request for Exclusion shall be bound by all terms of the Settlement Agreement and any final order approving the Settlement.

18.     No later than fourteen (14) days after the deadline for submission of Claim Forms, the Settlement Administrator shall provide a declaration to Class Counsel and the Sonic Defendants' counsel attesting to the measures taken to provide the notice to the Settlement Class Members pursuant to the Notice Program, and the information pertaining to claims and requests for exclusion as set forth in the Settlement Agreement.

19.     In the event this Court does not finally approve the Settlement Agreement, any and all rights of the Parties existing prior to the execution of the Settlement Agreement, including but not limited to Plaintiffs' right to seek and the Sonic Defendants' right to oppose class certification in the Litigation, shall be preserved, and the Litigation shall proceed in all respects as if the Settlement Agreement and any related orders had not been entered. In such event, none of the terms of the Settlement Agreement shall be admissible in any trial or otherwise used against any Party, except to enforce the terms thereof that relate to the Parties' obligations in the event of termination. The portion of the Settlement Fund transferred to the Settlement Administrator shall

be returned to the Sonic Defendants, less notice and administrative expenses actually incurred by the Settlement Administrator (as to which the Sonic Defendants shall have no right of reimbursement from any person, including the Settlement Administrator, Plaintiffs, or Plaintiffs' Counsel).

20.     For the benefit of the Settlement Class Members and as provided in the Settlement Agreement, this Court retains continuing jurisdiction over the implementation, interpretation, and enforcement of the Settlement Agreement.

21.     The Parties are directed to carry out their obligations under the Settlement Agreement.

### Summary of Applicable Dates

| 1. | Preliminary Approval Order entered | _____ __, 2018 |
|---|---|---|
| 2. | Defendants to pay $4,325,000.00 into an escrow account established by the Settlement Administrator | No later than thirty (30) calendar days after entry of this Order |
| 3. | Commencement of the Notice Program as set forth in Section 7 of the Settlement Agreement | No later than thirty (30) calendar days after entry of this Order |
| 4. | Deadline to Opt Out, or Object | No later than ninety (90) calendar days from the commencement of the Notice Program |
| 5. | Deadline to submit a Claim Form ("Claim Deadline") | No later than ninety (90) calendar days from the commencement of the Notice Program |
| 6. | Deadline for Settlement Administrator to Submit Declaration re: Notice, Opt-Outs, and Claims | No later than fourteen (14) calendar days after Claim Deadline |
| 7. | Motion for Final Approval of Settlement to be filed | No later than fourteen (14) calendar days prior to Final Approval Hearing |
| 8. | Final Approval Hearing | At the Court's convenience, no earlier than one hundred twenty |

| | | (120) days after the commencement of the Notice Program |
|---|---|---|

**SO ORDERED.**


Dated: _____          _____
                                        Hon. James S. Gwin
                                        United States District Court Judge

# **Exhibit I**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND**

**In re:**

| | |
|---|---|
| **SONIC CORP. CUSTOMER DATA BREACH LITIGATION** | Case No. 1:17-md-02807-JSG |
| | Judge James S. Gwin |
| **THIS DOCUMENT RELATES TO ALL CASES** | |

**[PROPOSED] FINAL ORDER AND JUDGMENT**

The Court, having considered the Representative Plaintiffs' Motion for Final Approval (the "Motion") of the settlement (the "Settlement") of the above-captioned case ("the Litigation") pursuant to the Settlement Agreement dated October ___, 2018, between Representative Plaintiffs Septabeya Bean, Patrick Blanford, Cornelius Bogard, Penny Bolin, Shadawna Carson, John Dolembo, Carlton Donovan, Shannon Gannon, Henry Gil, Esmeralda Hernandez, Melvin Hildreth III, Vonda Hoover, Barbara Kelley, Mark Korabelnikov, Megan MacKay, Dometric Pearson, Denise Ramirez, Edward Ramirez, Paula Sbabo, Cassandra Sharp, Linda Sipple, and Angela Williams ("Representative Plaintiffs") and Defendants Sonic Corp., Sonic Industries Services Inc., Sonic Capital LLC, Sonic Franchising LLC, Sonic Industries LLC, and Sonic Restaurants, Inc. (collectively "Sonic" or the "Sonic Defendants"), having considered all of the submissions and arguments with respect to the Motion, and having held a Fairness Hearing on _____ ___, 2019, finds that:

1.      Unless defined herein, all capitalized terms in this Order shall have the respective meanings as the same terms in the Settlement Agreement.

2.      Notice to the Settlement Class Members has been provided in accordance with the Court's Preliminary Approval Order, and the substance of, and dissemination program for, the

-1-

Notice fully complied with the requirements of Federal Rule of Civil Procedure 23(b) and due process, constituted the best notice practicable under the circumstances, and provided due and sufficient notice to all persons entitled to notice of the Settlement of this Litigation.

3.      The Settlement Agreement was arrived at as a result of arm's-length negotiations conducted in good faith and without collusion by counsel for the Parties and is supported by Representative Plaintiffs and Class Counsel.

4.      The Settlement as set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class in light of the complexity, expense, and duration of litigation and the risks involved in establishing liability and damages, and in maintaining the class action through trial and appeal.

5.      The consideration provided under the Settlement Agreement constitutes fair value given in exchange for the release by Representative Plaintiffs and Settlement Class Members of the Released Claims. The Court finds that the consideration to be paid to members of the Settlement Class is reasonable, considering the facts and circumstances of the numerous types of claims and affirmative defenses asserted in the Litigation, and the potential risks and likelihood of success of alternatively pursuing trials on the merits.

6.      The persons listed on <u>Exhibit A</u> hereto are found to have validly excluded themselves from the Settlement in accordance with the provisions of the Preliminary Approval Order.

7.      It is in the best interests of the Parties and the Settlement Class Members, and consistent with principles of judicial economy, that any dispute between any Settlement Class Member and Sonic regarding a Settlement Matter (as defined below) should be presented exclusively to and resolved by this Court.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

8.      The Settlement Agreement is finally approved as fair, reasonable, adequate, and in the best interests of the Settlement Class. The Parties are directed to consummate the Settlement Agreement in accordance with its terms.  The Parties, and Settlement Class Members who did not timely exclude themselves from the Settlement Class, are bound by the terms and conditions of the Settlement Agreement.

9.      The following Settlement Class is hereby finally certified, solely for purposes of this Settlement, pursuant to Federal Rule of Civil Procedure 23: All residents of the United States who made a purchase at one of the Impacted Sonic Drive-Ins and paid using a debit or credit card during the period of time from April 7, 2017 through October 28, 2017. The Settlement Class specifically excludes: (i) Sonic (as defined in Paragraph 1.31 of the Settlement Agreement); (ii) Sonic Franchisees (as defined in Paragraph 1.32 of the Settlement Agreement); (iii) Infor (as defined in Paragraph 1.15 of the Settlement Agreement); (iv) all Settlement Class Members who timely and validly request exclusion from and/or opt-out of the Settlement Class; (v) the Judge or Magistrate Judge to whom the action is assigned and, any member of those Judges' staffs or immediate family members; and (vi) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Breach (as defined in Paragraph 1.10 of the Settlement Agreement) or who pleads *nolo contendere* to any such charge.

10.      The requirements of Rule 23 have been satisfied for settlement purposes.  The Settlement Class is so numerous that joinder of all members is impracticable; there are at least some questions of law or fact common to the Settlement Class, which common questions predominate over any questions affecting only individual members; the claims of the

Representative Plaintiffs are typical of the Settlement Class Members' claims; and the Representative Plaintiffs have fairly and adequately represented the interests of the Settlement Class.

11.     The Court hereby confirms the preliminary appointment of Representative Plaintiffs as representatives of the Settlement Class. The Class Representatives have fairly and adequately represented the interests of the Settlement Class.

12.     The Court hereby confirms the preliminary appointment of the following as Class Counsel: William B. Federman of Federman & Sherwood ("Lead Counsel"), Marc E. Dann of DannLaw ("Liaison Counsel"), Carin L. Marcussen of Federman & Sherwood, Brian D. Flick of DannLaw, Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C., Melissa R. Emert of Stull, Stull, & Brody, Michael Fuller of Olsen Daines, and Miles N. Clark of Knepper & Clark LLC. Class Counsel is experienced in complex class litigation and has fairly and adequately represented the interests of the Settlement Class.

13.     The Settlement Administrator is directed to distribute according to the terms of the Settlement Agreement the consideration provided for under the Settlement Agreement to Settlement Class Members who have submitted Verified Claims.

14.     The Releasing Parties release and forever discharge the Released Parties from the Released Claims, as set forth below:

> Upon the Effective Date, each Settlement Class Member who has not timely opted-out of this Settlement, including Representative Plaintiffs, shall be deemed to have, and by operation of this Final Judgment shall have, completely, fully, finally, irrevocably, and forever released, relinquished, and discharged all Released Claims.  Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member who has not timely opted-out of this Settlement, including Representative Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or

participating in any recovery in any action in this or any other forum based on, relating to, concerning, or arising out of any of the Released Claims. It is the intent of the Parties that this Release shall not be considered, interpreted, or construed to prevent Settlement Class Members from pursuing claims related to the Data Breach against any person or entity that is not a "Released Person" as that term is defined in the Settlement Agreement.

"Released Claims" means any and all claims, rights, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature, and character, known and unknown, including without limitation, negligence, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of confidence, invasion of privacy, misrepresentation (whether fraudulent, negligent, or innocent), unjust enrichment, bailment, wantonness, failure to provide adequate notice pursuant to any breach notification statute or common law duty, any federal, state, or local statutory or regulatory claims, including, but not limited to, pursuant to consumer protection laws, unfair and deceptive trade practice laws, and further including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees, costs, and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that any Settlement Class Member has, has asserted, could have asserted, or could assert against any of the Released Persons based on, relating to, concerning, or arising out of the Data Breach (including, but not limited to, the theft or compromise of Personal Information) or the allegations, facts, or circumstances described in the Litigation. Released Claims shall also include Unknown Claims, as that term is defined in the Settlement Agreement.

15. Representative Plaintiffs and members of the Settlement Class are permanently enjoined and barred from commencing, prosecuting, or otherwise litigating, in whole or in part, either directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency or other authority or forum wherever located, any of their respective Released Claims. Any person or entity that knowingly violates such injunction shall pay the reasonable costs and attorneys' fees incurred by the other party as a result of such violation.

16.     The  Court  hereby  awards  Settlement  Class  Counsel  $_____  for attorneys' fees plus $_____ for reimbursement of their litigation costs and expenses.  The Court finds this award of attorneys' fees, costs and expenses is fair and reasonable.

17.     The Court hereby approves the following payments of a service award to each of the twenty-two (22) Class Representatives in the amounts set forth below:

      (a)     $_____ for Representative Plaintiff Cornelius Bogard who prosecuted this action on behalf of the Settlement Class, attended court hearings, the mediation, answered discovery, and appeared for a deposition;

      (b)     $_____ for Representative Plaintiffs Megan MacKay and Denise Ramirez who each prosecuted this action on behalf of the Settlement Class, attended the mediation, answered discovery, and appeared for a deposition;

      (c)     $_____ for Representative Plaintiffs Septabeya Bean, John Dolembo, and Dometric Pearson, who each prosecuted this action on behalf of the Settlement Class, answered discovery, and appeared for a deposition, and

      (d)     $_____ for each of the 16 remaining Representative Plaintiffs: Patrick Blanford, Penny Bolin, Shadawna Carson, Carlton Donovan, Shannon Gannon, Henry Gil, Esmeralda Hernandez, Melvin Hildreth III, Vonda Hoover, Barbara Kelley, Mark Korabelnikov, Edward Ramirez, Paula Sbabo, Cassandra Sharp, Linda Sipple, and Angela Williams, who each prosecuted this action on behalf of the Settlement Class.

The Court finds the service awards are fair and reasonable.

18.     Without  affecting  the  finality  of  this  judgment,  the  Court  retains  exclusive jurisdiction over the Settlement Agreement and all matters, disputes, claims or defenses arising

out of or related in any way to the Settlement Agreement, including without limitation its applicability, administration, and consummation (collectively, the "Settlement Matters").  The Court also retains exclusive jurisdiction as to the Settlement Matters over Representative Plaintiffs, members of the Settlement Class and the Sonic Defendants, each of whom are hereby deemed to have submitted irrevocably to the exclusive jurisdiction of this Court with regard to all Settlement Matters and to have waived any defenses based on personal jurisdiction, venue, or that the forum is inconvenient.  Without limiting the generality of the foregoing, any dispute arising out of or related in any way to the Settlement Agreement, including, but not limited to, any suit, action, arbitration, or other proceeding by a Settlement Class Member in which the provisions of the Settlement Agreement are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a Settlement Matter.

19.    The Settlement Agreement and the proceedings taken and statements made pursuant to the Settlement Agreement or papers filed seeking approval of the Settlement Agreement, and this Order, are not and shall not in any event be construed as, offered in evidence as, received in evidence as, and/or deemed to be evidence of a presumption, concession, or an admission of any kind by any of the Parties of (i) the truth of any fact alleged or the validity of any claim or defense that has been, could have been, or in the future might be asserted in the Litigation, any other litigation, court of law or equity, proceeding, arbitration, tribunal, investigation, government action, administrative proceeding, or other forum, or (ii) any liability, responsibility, fault, wrongdoing, or otherwise of the Sonic Defendants.  The Sonic Defendants have denied and continue to deny the claims asserted by Representative Plaintiffs. The Court makes no finding as to the merits of these claims.  Nothing contained herein shall be construed to prevent a party from offering the Settlement Agreement into evidence for the purposes of enforcing its terms.

20.      In the event that the Settlement Agreement is terminated pursuant to its terms or the Court's approval of the Settlement is reversed, vacated, or modified in any material respect by this or any other Court, the certification of the Settlement Class shall be deemed vacated, the Litigation shall proceed as if the Settlement Class had never been certified (including but not limited to the Parties' rights to engage in discovery and the Sonic Defendants' right to oppose any subsequent motion for class certification), and no reference to the Settlement Class, this Settlement Agreement, or any documents, communications, or negotiations related in any way hereto shall be made for any purpose.

21.      The Action is hereby **DISMISSED WITH PREJUDICE** and without costs.  This judgment has been entered without any admission by the Sonic Defendants as to the merits of any of Representative Plaintiffs' allegations in the Litigation.

22.      The Court directs the Clerk to enter final judgment.

**SO ORDERED.**


Dated: _____            _____
                                                         Hon. James S. Gwin
                                                         United States District Court Judge