**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT CLEVELAND**

| | | |
|---|---|---|
| In re: | ) | Case No. 1:17-md-02807-JSG |
| | ) | |
| SONIC CORP. CUSTOMER DATA | ) | Judge James S. Gwin |
| BREACH LITIGATION | ) | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**THEIR MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES,**
**SERVICE AWARDS FOR REPRESENTATIVE PLAINTIFFS, AND**
**INDIVIDUAL PAYMENTS TO INDIVIDUAL NAMED PLAINTIFFS**

William B. Federman
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com

*Interim Lead Counsel*

Thomas A. Zimmerman, Jr.
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, IL 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180
tom@attorneyzim.com

*Member of Plaintiffs' Steering Committee*

Michael Fuller
OLSENDAINES
US Bancorp Tower
111 Southwest 5th Ave, Suite 3150
Portland, OR 97204
Telephone: (503) 222-2000
Facsimile: (503) 362-1375
michael@underdoglawyer.com

*Member of Plaintiffs' Steering Committee*

Marc E. Dann (0039425)
DANNLAW
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
mdann@dannlaw.com

*Interim Liaison Counsel*

Melissa R. Emert
STULL, STULL, & BRODY
6 East 45th Street
New York, NY 10017
Telephone: (954) 341-5561
Facsimile: (954) 341-5531
memert@ssbny.com

*Member of Plaintiffs' Steering Committee*

Miles N. Clark
KNEEPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Telephone: (702) 825-6060
Facsimile: (702) 447-8048
miles.clark@knepperclark.com

*Member of Plaintiffs' Steering Committee*

## TABLE OF CONTENTS

I.      SUMMARY OF THE ARGUMENT .................................................................... 1

II.     FACTUAL AND PROCEDURAL HISTORY OF THIS LITIGATION.......................... 2

III.    ATTORNEY FEES........................................................................................ 6

        A.      THE PERCENTAGE-OF-THE-FUND APPROACH........................................ 8

                1.      The Value of the Benefit to the Class ...................................... 9

                2.      The Value of the Attorneys' Services on an Hourly Basis ...................... 10

                3.      Society's Stake in Rewarding Attorneys ................................. 10

                4.      The Contingent Nature of the Representation ......................... 11

                5.      The Complexity of the Litigation ............................................ 11

                6.      The Professional Skill and Standing of the Attorneys Involved.............. 12

        B.      THE LODESTAR APPROACH................................................................ 13

IV.     LITIGATION COSTS AND EXPENSES................................................................ 15

V.      PAYMENTS TO NAMED PLAINTIFFS................................................................ 16

        A.      SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS.......................... 16

        B.      INDIVIDUAL PAYMENTS TO INDIVIDUAL NAMED PLAINTIFFS .......... 17

VI.     CONCLUSION............................................................................................ 18

## **TABLE OF AUTHORITIES**

**Cases**

*Bailey v. AK Steel Corp.*,
   2008 WL 553764 (S.D. Ohio 2008).................................................................................. 14, 15

*Bennett v. SimplexGrinnell LP*,
   2015 WL 12932332 (N.D. Cal. Sept. 3, 2015) ......................................................... 17

*Bessey v. Packerland Plainwell, Inc.*,
   2007 WL 3173972 (W.D. Mich. Oct. 26, 2007).................................................... 8, 11

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)........................................................................................................ 6

*Bowling v. Pfizer, Inc.*,
   102 F.3d 777 (6th Cir. 1996) ...................................................................... 7, 13

*Caligiuri v. Symantec Corp.*,
   855 F.3d 860 (8th Cir. 2017) ................................................................. 11

*Dep't of the Treasury of the State of New Jersey v. Cliffs Nat. Res. Inc.*,
   2016 WL 6915873 (N.D. Ohio June 30, 2016)....................................................... 7, 8

*Gascho v. Glob. Fitness Holdings, LLC*,
   2016 WL 2802473 (6th Cir. May 13, 2016) ......................................................... 7, 9, 12

*In re Polyurethane Foam Antitrust Litig.*,
   168 F.Supp. 3d 985 (N.D. Ohio 2016)................................................................... 15

*In re Prandin Direct Purchaser Antitrust Litig.*,
   2015 WL 1396473 (E.D. Mich. 2015)................................................................ 8, 11

*In re Revco Sec. Litig.*,
   1992 WL 118800 (N.D.Ohio 1992)..................................................................... 14, 15

*In re Se. Milk Antitrust Litig.*,
   2013 WL 2155387 (E.D. Tenn. May 17, 2013)............................................. 7, 8, 11

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
   268 F. Supp. 2d 907 (N.D. Ohio 2003)........................................................ 13, 14, 15

*In re Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*,
    2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ....................................................................... 16

*Lonardo v. Travelers Indem. Co.*,
    706 F. Supp. 2d 766 (N.D. Ohio 2010) .............................................................................. 13, 14

*Mees v. Skreened, Ltd.*,
    2016 WL 67521 (S.D. Ohio Jan. 6, 2016) ........................................................................... 8, 11

*Rawlings v. Prudential-Bache Properties, Inc.*,
    9 F.3d 513 (6th Cir. 1993) ........................................................................................... 7, 14, 15

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,
    436 F. Appx. 496 (6th Cir. 2011) ................................................................................................ 7

## **Rules**

FRCP 23(h) ..................................................................................................................................... 6

Penny Bolin, Shannon Gannon, Henry Gil, Esmeralda Hernandez, Melvin Hildreth III, Megan MacKay, Dometric Pearson, Paula Sbabo, and Cassandra Sharp ("Representative Plaintiffs"), individually and on behalf of a settlement class as defined in the Amended Settlement Agreement (the "Settlement Class"), and Septabeya Bean, Patrick Blanford, Cornelius Bogard, Shadawna Carson, John Dolembo, Carlton Donovan, Vonda Hoover, Barbara Kelley, Mark Korabelnikov, Denise Ramirez, Edward Ramirez, Linda Sipple, and Angela Williams ("Individual Named Plaintiffs") (together with Representative Plaintiffs, "Plaintiffs"), by and through their counsel William B. Federman of Federman & Sherwood ("Interim Lead Counsel"); Marc E. Dann of DannLaw ("Interim Liaison Counsel"); and Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C.; Melissa R. Emert of Stull, Stull, & Brody; Michael Fuller of OlsenDaines; and Miles N. Clark of Knepper & Clark LLC ("Plaintiffs' Steering Committee") (collectively, "Plaintiffs' Counsel" or "Class Counsel"), hereby seek Court approval of a payment of attorneys' fees, reimbursement of Plaintiffs' Counsel for costs and expenses incurred by Plaintiffs' Counsel in the prosecution of this litigation, service awards for Representative Plaintiffs, and individual payments to Individual Named Plaintiffs from the Settlement Fund.

## I.   SUMMARY OF THE ARGUMENT

Through the efforts of Plaintiffs and Plaintiffs' Counsel, the parties were able to reach a Settlement Agreement resolving the claims asserted in this case including negligence, negligence per se, breach of implied contract, negligent misrepresentation, unjust enrichment, violation of twenty-six (26) state consumer protection statutes, violation of fifteen (15) state data breach statutes, and injunctive/declaratory relief stemming from a third-party cyberattack on the point-of-sale ("POS") systems of certain Sonic Drive-In locations in 2017. Exhibit 1, Declaration of [Interim Lead Counsel for Plaintiffs] William B. Federman (the "Federman Declaration" or "Decl."), at ¶¶ 2-3. On December 20, 2018, this Court entered an Order preliminarily approving

1

the Settlement Agreement. *Id.* at ¶ 3. Notice of the Settlement has been given in accordance with the Court's order, Dkt. No. 145, and, as of this date, no Settlement Class members have objected to or opted out of the Settlement. *Id.* at ¶ 36.

As further explained below and as supported by the attached Federman Declaration and the separately submitted detailed time and expense records,[1] this Court should approve a payment of: $1,441,666.67 to Plaintiffs' Counsel for attorneys' fees; $310,253.50 to Plaintiffs' Counsel for reimbursement of costs and expenses incurred by Plaintiffs' Counsel in the prosecution of this litigation; $15,500.00 in service awards for Representative Plaintiffs; and $26,500.00 in individual payments to Individual Named Plaintiffs from the Settlement Fund. The amounts sought in this Motion as fair, adequate, and reasonable under the circumstances of this case. Decl. at ¶ 6.

## II.     FACTUAL AND PROCEDURAL HISTORY OF THIS LITIGATION

Sonic is the fourth largest quick-service burger restaurant chain in the United States, operating more than 3,500 stores in 44 states. Sonic Drive-In restaurants routinely process consumer transactions through point-of-sale ("POS") systems that transmit payment card data of customers who pay with a credit or debit card.

In late September 2017, Sonic was alerted by its third-party payment card processor of unusual activity involving payment cards used at certain Sonic Drive-In locations. Upon being alerted of this unusual activity, Sonic immediately initiated an internal investigation and engaged experienced third-party forensic investigators to assist it in investigating the suspicious activity. At the same time, Sonic's counsel also notified federal law enforcement and began working with law enforcement to investigate the unusual activity as well. Shortly thereafter, Sonic's forensic

---

[1] See *Plaintiffs' Motion to Submit Plaintiff Counsel's Detailed Time and Expense Records Under Seal*, filed 04/04/2019, Dkt. No. 150.

investigators discovered that certain Sonic Drive-In locations had been the victim of a malware attack that appeared to have resulted in possible unauthorized acquisition of credit or debit card numbers.

Four days later, on October 4, 2017, though its forensic investigations into the nature and extent of the data breach were still underway, Sonic made the statutorily permissible substitute notice to Sonic customers via its website, via national press release (distributed through the Business Wire), and by taking advertisements out in certain local media outlets and publications as required by certain state data breach notification statutes. At the same time, Sonic also notified the requisite state regulators and credit bureaus of the data breach. Further, as a precautionary measure, Sonic offered customers who used their credit or debit cards at Sonic Drive-In locations in 2017, 24 months of free fraud detection and identity theft protection through Experian's IdentityWorks program.

After issuing notice, Sonic continued to investigate the nature and extent of the data breach. Based on Sonic's investigation, Sonic identified three hundred and twenty-five (325) franchisee-owned and -operated Sonic Drive-In locations for which the forensic evidence indicates that customer credit or debit card information was stolen.

In response to Sonic's data breach, eight data breach class actions were filed in several different states and eventually consolidated and transferred to this Court by the Judicial Panel on Multidistrict Litigation. (Dkt. Nos. 1, 3. 17). On January 3, 2018, the Court granted the unanimous and unopposed motion by the plaintiffs in the consolidated actions, (Dkt. No. 4), to appoint William B. Federman of Federman and Sherwood as Interim Lead Counsel, Marc Dann of DannLaw as Interim Liaison Counsel, and Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C., Melissa R. Emert of Stull, Stull, & Brody, Michael Fuller of Olsen Daines, and Miles

N. Clark of Knepper & Clark LLC as members of Plaintiffs' Steering Committee. (Non-document Order entered 01/03/2018).

At the early stage of the litigation, Plaintiffs' counsel filed a Motion for Expedited Discovery Relative to the Identities of Knowledgeable Third Parties. (Dkt. No. 14). On January 13, 2018, the Court granted in part and denied in part Plaintiffs' motion to authorize expedited discovery. (Dkt. No. 24). On February 12, 2018, Plaintiffs filed a Consolidated Class Action Complaint. (Dkt. No. 26). On March 14, 2018, Sonic filed a motion to dismiss Plaintiffs' Consolidated Class Action Complaint. (Dkt. No. 39). On April 13, 2018, Plaintiffs filed their opposition to Sonic's motion to dismiss, and Sonic filed its reply on April 27, 2018. (Dkt. No. 73). On July 27, 2018, prior to any decision on Sonic's motion to dismiss, Class Counsel filed a Second Amended Consolidated Class Action Complaint on behalf of the Representative Plaintiffs. (Dkt. No. 114).

Throughout the Litigation, the Parties engaged in substantial discovery. As part of the discovery process, Class Counsel: negotiated the protective order regarding confidential materials (Dkt. No. 67); prepared and served detailed document requests and interrogatories on the Sonic Defendants; prepared and served twenty (20) subpoenas *duces tecum* on third parties (Dkt. Nos. 32, 36, 37, 38, 64, 66, 77, 92); engaged in numerous meet and confers with Sonic and third parties concerning the scope of document productions, ESI protocols, search terms, and document custodians; responded to the Sonic Defendants' requests for production and interrogatories, including gathering and producing responsive documents from numerous Plaintiffs; defended the depositions of Plaintiffs Bogard, Dolembo, Pearson, MacKay, Ramirez, and Bean; prepared for and deposed Mark Davis, Sonic's Vice President of Cybersecurity and Enterprise Systems during the Class Period; negotiated and obtained evidentiary affidavits, in lieu of depositions, from third

party vendors addressing their role in Sonic's information technology and cybersecurity systems and processes; prepared, exchanged and served several letters to Defense Counsel concerning document production and other discovery issues; filed motions against Sonic and third parties First Data Corporation, Oracle Hospitality, Inc., SCI Group, LLC, ServiceNow, and Texas P.O.S. to compel the production of documents (Dkt. No. 81) and argued those motions before the Court; filed an opposition to Sonic's motion for protective order relating to production by third-party CoalFire Systems, Inc. (Dkt. No. 88); filed an opposition to Sonic's motion to compel initial disclosures (Dkt. No. 41) and argued against that motion in a hearing before the Magistrate Judge; reviewed and analyzed more than 130,000 pages of documents produced by Sonic and third parties; interviewed several former Sonic employees identified by Sonic as having relevant knowledge; and retained and consulted with multiple experts, including cybersecurity experts and damages experts. Decl. at ¶ 8.

On June 5, 2018, the Court referred the matter to Magistrate Judge Jonathan D. Greenberg for mediation. (Dkt. No. 105). In advance of the mediation, Class Counsel prepared a Confidential Mediation Statement, which was submitted via email to the chambers of Judge Greenberg. On August 3, 2018, the Parties participated in a full-day mediation presided over by Judge Greenberg. (Dkt. No. 119). Given that substantial progress was made towards a settlement, the Parties participated in a second full day of mediation with Judge Greenberg on August 10, 2018. (Dkt. No. 121). On August 10, 2018, the Parties were able to reach an agreement as to the material terms of the settlement, which were memorialized on the record that same day. (Dkt. No. 124). Thereafter, the Parties negotiated the remaining terms, exchanging drafts of the Agreement and its exhibits during the process. The Agreement was finalized and executed on October 9, 2018. Representative Plaintiffs moved for preliminary approval of that Agreement on October 10, 2018.

(Dkt. No. 132). After a telephone conference with the Court, the parties agreed to an Amended Settlement Agreement, which was executed on December 13, 2018, and submitted to the Court for approval on December 14, 2018. (Dkt. No. 144). The Court entered its order of preliminary approval on December 20, 2018. (Dkt. No. 145).

III.  **ATTORNEY FEES**

Lawyers in a class action who recover a common fund are entitled to a fair and reasonable attorney fee paid from the fund as a whole. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also*, FRCP 23(h) ("[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law …"). As explained by the Sixth Circuit:

> When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved. The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved. For these reasons, it is necessary that district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.

> *        *        *

> Of course, each method has its respective advantages and drawbacks. The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation. However, a percentage award may also provide incentives to attorneys to settle for too low a recovery because an early settlement provides them with a larger fee in terms of the time invested.

> The lodestar method's listing of hours spent and rates charged provides greater accountability. In addition, enhancing the lodestar with a separate multiplier can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved. The lodestar method also encourages lawyers to assess the marginal value of continuing work on the case, since the method is tied to hours and rates, and not simply a percentage of the resulting recovery.

> However, the lodestar method has been criticized for being too time-consuming of scarce judicial resources. District courts must pore over time sheets, arrive at a

6

> reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier. With the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement.

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516–17 (6th Cir. 1993) (internal citations omitted). Thus, in the Sixth Circuit, the District Court can use either the lodestar or percentage of the fund method of calculating attorney's fees. *Id.* at 517. However, the percentage of the fund method is the preferred means of calculating attorneys' fees in a common fund case because the percentage method "more accurately reflects the result achieved," reduces "the incentive for Plaintiff's attorneys to over-litigate" cases, and "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *See Dep't of the Treasury of the State of New Jersey v. Cliffs Nat. Res. Inc.*, 2016 WL 6915873, at *1-2 (N.D. Ohio June 30, 2016) (citing *Gascho v. Glob. Fitness Holdings, LLC*, 2016 WL 2802473, at *7 (6th Cir. May 13, 2016); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013)). Furthermore, once the Court has determined that the percentage-of-the-fund method is appropriate, the Court need not conduct a lodestar cross-check. *See, e.g., Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. Appx. 496, 501 (6th Cir. 2011) (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996).

Here, Plaintiffs' Counsel recovered a Settlement Fund of $4,325,000 from Sonic, creating a common for the benefit of the Settlement Class. Accordingly, as discussed in Section III(A), *infra*, awarding Class Counsel a percentage of the common fund is preferable, appropriate, and reasonable under the circumstances. Decl. at ¶ 3. Additionally, as discussed in Section III(B), *infra*,, the lodestar-cross check in this case demonstrates that Class Counsel's attorneys' fee request is very reasonable under the circumstances.

A.    The Percentage-of-the-Fund Approach

As noted above, the percentage of the fund method is the preferred means of calculating attorneys' fees in a common fund case such as this. *See, e.g., Cliffs Nat. Res.*, 2016 WL 6915873. Here, the Settlement Fund was generated purely through the efforts of Plaintiffs and Plaintiffs' Counsel, who actively litigated this case and who are solely responsible for the results obtained for the Settlement Class. Decl. at ¶¶ 3, 8. Under the circumstances of this case, the percentage-of-the-fund method most accurately reflects the results achieved. *Id.* at ¶ 18. Moreover, as evidenced by the Federman Declaration and the detailed time records submitted by Plaintiffs' Counsel for the Courts' *in camera* review, Plaintiffs' Counsel took an appropriately-measured approach in their prosecution of this case, resulting in an optimal resolution for the Settlement Class. *Id.* at ¶¶ 3-7. Plaintiffs respectfully submit that the Court should follow the general rule and should calculate fees based on a percentage of the $4,325,000.00 common fund in this case. *Id.* at ¶ 18.

In this case, the Court should allow Plaintiffs' Counsel $1,441,666.67, one-third of the common fund they recovered, as a reasonable and appropriate attorneys' fee.[2] Districts courts in this Circuit have held that one-third of the common fund is an appropriate and reasonable attorney fee. *See, e.g., Mees v. Skreened, Ltd.*, 2016 WL 67521 (S.D. Ohio Jan. 6, 2016) (approving an award of attorney's fees of one-third of the settlement amount); *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473 (E.D. Mich. 2015) (approving an award of attorney's fees of one-third of the settlement amount); *In re Se. Milk*, 2013 WL 2155387 (approving an award of attorney's fees of one-third of the settlement amount); *Bessey v. Packerland Plainwell, Inc.*, 2007 WL 3173972 (W.D. Mich. Oct. 26, 2007) (approving an award of attorney's fees of one-third of

_____

[2] Pursuant to the Settlement Agreement, Class Counsel may seek an attorney fee up to one-third of the Settlement Fund plus costs and expenses. Dkt. No. 144-2 at PageID #2725.

8

the settlement amount). Plaintiffs' Counsel invested substantial time, effort and resources into the prosecution of this case with no guarantee or promise of return on investment and achieved the Settlement, which provides benefits to the Settlement Class. Decl. at ¶ 19.

In determining whether a request for attorney's fees is reasonable under the circumstances, courts in this Circuit evaluate six factors: (1) the value of the benefit to the class; (2) the value of the services on an hourly basis; (3) whether attorneys took the case on contingency; (4) rewarding attorneys who produce societal benefits in order to maintain an incentive for others; (5) the litigation's complexity; and (6) the professional skill and standing of class and defense counsel. *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 280 (6th Cir. 2016). Considering this factors, it is clear that $1,441,666.667, one-third of the common fund, is reasonable to allow as an attorneys' fee under the circumstances of this case. Decl. ¶¶ 16, 18, 22.

### 1.  The Value of the Benefit to the Class

The circumstances and background underlying this litigation and the substance of the Settlement Agreement terms all support allowing the attorneys' fee requested in this Motion according to the relevant factors. Of the various forms of relief available in national consumer protection class actions (injunctive, declaratory, coupons, gift cards, cash compensation, etc.) the value of the relief rendered in this case is of the most preferable form: injunctive relief plus cash compensation to the members of the Settlement Class. Decl. at ¶¶ 18, 24. The $4,325,000 common fund, none of which reverts to Defendants, negotiated by Plaintiffs and Plaintiffs' Counsel provides substantial and immediate value to the Settlement Class. *Id.* at ¶¶ 3, 18, 26. As of this date, no Settlement Class members have objected to or opted out of the Settlement. *Id.* at ¶ 36. Moreover, the injunctive relief provided as part of the Settlement, which requires Sonic to undertake measures to prevent other, similar security breaches, has immediate value to members of the Settlement

Class who continue to shop there.[3] *Id.* at ¶ 18, 28. However, Plaintiffs have not factored in a value for the injunctive relief when requesting 33% of the common fund as their attorneys' fee award but, rather, base the fee request solely upon the cash that Sonic is paying to settle the case. *Id.* at ¶ 19. Accordingly, the value of the benefit to the class heavily weighs in favor of granting Plaintiffs' attorneys' fee request.

### 2.    The Value of the Attorneys' Services on an Hourly Basis

Plaintiffs' Counsel have spent 3,464.84 hours litigating this case. Decl. at ¶ 10, Ex. A. At counsel's reasonable and customary rates, this equates to $1,659,805.50 in services for the benefit of the Settlement Class.[4] *Id.* at ¶ 11. This value does not include work done by Plaintiffs' Counsel after February 28, 2019 and, therefore, does not include work that must still be done before the case is concluded. *Id.* at ¶ 10. The value of the services received by Plaintiffs and the Settlement Class in this litigation is commensurate (actually greater than) with the fee sought in this Motion. *Id.* at ¶ 30. Accordingly, this factor weighs in favor of granting Plaintiffs' attorneys' fee request.

### 3.    Society's Stake in Rewarding Attorneys

Data privacy and personal financial security is of utmost importance to American consumers and to the American marketplace. Decl. at ¶ 32. *See also, e.g.* "10 Reasons Why Privacy Matters" by Daniel Solove, 01/20/2014 found at https://teachprivacy.com/10-reasons-privacy-matters/ (last visited 04/04/2019); "How to Keep Your Personal Information Secure" by the Federal Trade Commission, July 2012, found at https://www.consumer.ftc.gov/articles/0272-how-keep-your-personal-information-secure (last visited 04/04/2019). Society stands to greatly benefit by encouraging and incentivizing attorneys to prosecute national data compromises, like the

---

[3] According to a Ponemon study, 71% of consumers continue to do business with a company even after it has had a data breach. *See* Exhibit 2, *The Aftermath of a Data Breach: Consumer Sentiment*, the Ponemon Institute, April 2014, (the "Ponemon Study"), p. 18.
[4] The reasonableness of counsel's rates and the time expended are discussed in Section III(B), *infra*.

massive credit card breach alleged in this case. Decl. at ¶ 32. *See also, e.g.* Ponemon Study at p. 18 (discussing out-of-pocket costs incurred and time spent by consumers impacted by a data breach). As a result of this Litigation, Sonic has agreed to use and employ certain data security practices moving forward, which benefits Settlement Class members who continue to shop at Sonic. Decl. at ¶¶ 18, 28. Accordingly, the societal interest in rewarding attorneys who pursue cases such as this weighs in favor of granting Plaintiffs' attorneys' fee request.

### 4. The Contingent Nature of the Representation

Plaintiffs' Counsel, comprised of consumer protection law firms and attorneys from across the county, undertook this action on a pure contingency basis. Decl. at ¶ 20. Plaintiffs' Counsel invested significant time and resources into the prosecution of this case without any assurance of a return on their investment. *Id.* at ¶ 17. The fees approved in common fund consumer class action cases are frequently range in the range of 25% to 36% of the common fund. *See, e.g., Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017). Further, an attorney fee of one-third of the common fund is regularly approved by district courts in the Sixth Circuit. *See, e.g., Mees*, 2016 WL 67521; *Prandin*, 2015 WL 1396473; *Milk*, 2013 WL 2155387; *Bessey*, 2007 WL 3173972. The attorneys' fee requested here is consistent with other awards in similar, common fund cases. Moreover, the attorneys' fee sought here is consistent with or less than the percentage contingency-fee lawyers commonly receive in individual litigation. Decl. at ¶¶ 20-21; Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, JOURNAL OF EMPIRICAL LEGAL STUDIES, Vol. 7, Issue 4, 811-846 at 830 (Dec. 2010). The contingent favor of the representation weighs in favor of granting Plaintiffs' attorneys' fee request.

### 5. The Complexity of the Litigation

Among national consumer protection class action litigation, data breach cases are some of the most complex. Decl. at ¶ 31. Moreover, data breaches are a relatively new area of the law and

many of the legal and issues encountered in such cases are novel and, as a result, data breach cases present a significant risk to plaintiffs' attorneys. *Id. See also*, generally Timothy H. Madden, *Data Breach Class Action Litigation—A Tough Road for Plaintiffs*, BOSTON BAR J., Fall 2011, at 27; Matthew J. Schwartz, *Why so Many Data Breach Lawsuits Fail*, Bank Info Security, 05/11/2015, https://www.bankinfosecurity.com/data-breach-lawsuits-fail-a-8213.  In  representing  the  Class, Plaintiffs' Counsel had to deal with many complex issues relating not only to the technical issues of how the breach occurred and how it could have been prevented, but also understanding and valuing the injuries suffered by the Class. Decl. at ¶ 8. As a result, Plaintiffs' Counsel spent a significant amount of time and incurred significant expert witness costs to study and value class members' damages in a way that would support class certification and a damage award at trial. *Id.* at ¶¶ 8, 33. Thus, this factor also weighs in favor of granting Plaintiffs' attorneys' fee request.

**6.      The Professional Skill and Standing of the Attorneys Involved**

This Litigation was defended and prosecuted by highly qualified and nationally respected counsel. Decl. at ¶¶ 29, 35. As discussed above, the case presented complex legal and factual issues which required a high level of experience, expertise, and skill by Plaintiffs' Counsel to achieve a good result for the Class. Ultimately, as the result of an arm's length negotiation with the involvement of an experienced neutral, Magistrate Judge Jonathan D. Greenberg, Plaintiffs' Counsel was successful, achieving a settlement which delivers a substantial and immediate benefit to the Class. Accordingly, this factor also weighs in favor of granting Plaintiffs' attorneys' fee request.

Under the circumstances of this case and considering that the six relevant factors identified by the Sixth Circuit in *Gascho*, *supra*, are satisfied, the Court should approve the one-third attorneys' fee sought by Plaintiffs' Counsel as reasonable and appropriate.

### B.     THE LODESTAR APPROACH

Courts often, but are not required to, compare an attorney's lodestar (reasonable hours multiplied by reasonable rates) with a fee request made under the percentage of the fund method as a "cross-check" on the reasonableness of the requested fee. *See, e.g. Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 792 (N.D. Ohio 2010), on reconsideration in part (July 21, 2010) ("In determining what is a reasonable amount of attorneys' fees, a useful starting point is to determine the 'lodestar,' which is calculated by multiplying the proven number of hours reasonably expended on the litigation by a reasonable hourly rate") *cf. Bowling*, 102 F.3d at 779 (affirming district court's fee award, which was based on the percentage-of-the-fund and cross-checked according to the lodestar, without reviewing its lodestar analysis).

Here, the combined lodestar for Plaintiffs' Counsel through February 28, 2019, is $1,659,805.50. Decl. at ¶ 10-11, Ex. A. In support of this lodestar, Plaintiffs' Counsel submit the Federman Declaration and, separately, detailed time records of Plaintiffs' Counsel.[5] The rates charged by Plaintiffs' Counsel range from $250.00 to $950.00 per hour, depending on the attorney's experience. Decl. at ¶ 12. Paraprofessional/staff rates range from $125.00 to $275.00, depending on the person's experience. *Id.* The weighted average hourly rate for work performed by Plaintiffs' Counsel and their paraprofessionals/staff is $479.04 per hour. *Id.* Class Counsel consists of experienced attorneys with expertise specific to complex class actions on a national scale. *Id.* at ¶ 29. The requested rates are reasonable for this case considering the nature of this nationwide complex case as well as the experience and expertise of Plaintiffs' Counsel and should, therefore, be approved. *Id.* at ¶ 5-6; *Lonardo*, 706 F. Supp. 2d at 794 (approving rates of $90 to $825 per hour in a national insurance class action); *In re Sulzer Hip Prosthesis & Knee Prosthesis*

---

[5] *See* footnote 1.

*Liab. Litig.*, 268 F. Supp. 2d 907, 926 (N.D. Ohio 2003) (approving "equalized" rates of $200 to $500 per hour in the settlement of a multi-district products liability class action).

Additionally, the number of hours spent litigating the case (3,464.84) is reasonable considering the length of time the case was litigated; the novelty of the issues presented and the vigorous defense presented. Decl. at ¶¶ 6, 8, 10, 25, 29-30. The nature of the case – its complexity and novelty – required Class Counsel to spend significant time researching, briefing, and preparing to present the legal issues to the Court. *Id.* at ¶ 8. Additionally, the fact that discovery was document-intensive and very contentious. *Id.* Also, because the Settlement Class is national in scope, Plaintiffs' Counsel had to time devoted to travel to and from Court proceedings and for settlement conferences as well as to meet with and prepare and witnesses and for depositions. *Id.* at ¶¶ 8, 34. Further, Lead Counsel reviewed Plaintiffs' Counsel contemporaneous time records and, "wrote off" excessive or duplicative time as necessary. *Id.* at ¶ 5. Accordingly, the time submitted to the Court is reasonable and was necessarily expended to litigate this case. *Id.* at ¶ 6; *Lonardo*, 706 F. Supp. 2d at 794.

"Multipliers are not uncommon in class action settlement cases to enhance the lodestar figure in recognition of the 'risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved.'" *Lonardo*, 706 F. Supp. 2d at 794–95 (*citing Rawlings*, 9 F.3d at 515–17 (applying multiplier of 2); *Sulzer*, 268 F.Supp.2d at 922; *Bailey v. AK Steel Corp.*, 2008 WL 553764 (S.D. Ohio 2008) (applying lodestar multiplier of 3.04); *In re Revco Sec. Litig.*, 1992 WL 118800 (N.D.Ohio 1992) (applying lodestar multiplier of 2.5); and NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2009) ("Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied.")). Here, Class Counsel's attorneys' fee request ($1,441,666.67) is represents a negative multiplier of .87 times

the lodestar.[6] Decl. at ¶ 13. Moreover, the lodestar of $1,659,805.50 does not include time incurred after February 28, 2019, which includes time spent in preparing the present motion for attorneys' fees and expenses or time that will be spent by Plaintiffs' Counsel on continuing services to the Class, including attending the final settlement hearing, responding to Class Members' inquiries, supervising the Claims Administrator in the review and processing of claims, and overseeing the distribution of checks to Class Members. *Id.* at ¶ 10. The additional work required to obtain approval and close out the Settlement will further reduce the multiplier. *Id.* at ¶ 13. Accordingly, Plaintiffs respectfully request that the Court approve an attorneys' fee of $1,441,66.67 to be paid to Class Counsel from the common fund to be disbursed by Interim Lead Counsel.

## IV.    LITIGATION COSTS AND EXPENSES

The successful generation of a common fund entitles attorneys for a class to be reimbursed for their reasonably incurred litigation expenses. *In re Polyurethane Foam Antitrust Litig.,* 168 F.Supp. 3d 985, 1013 (N.D. Ohio 2016) ("[U]nder the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses.") (citing cases).

Plaintiffs' Counsel seek reimbursement of $310,253.50 in reasonable litigation costs and expenses, which were incurred in the prosecution of this action. Decl. at ¶¶ 14-15. Such expenses

---

[6] Even if the Court were to reduce the hourly rates of Plaintiffs' Counsel, the requested attorneys' fee award is still reasonable because a higher multiplier of 1 to 3 times the lodestar would be justified in this case considering the high risk of the case, the importance to the public of having attorneys take on this type of matter, and the results achieved for the Settlement Class. *Rawlings*, 9 F.3d at 515–17 (applying multiplier of 2); *Sulzer*, 268 F.Supp.2d at 922; *Bailey*, 2008 WL 553764 (applying lodestar multiplier of 3.04); *Revco*, 1992 WL 118800 (applying lodestar multiplier of 2.5); NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2009) ("Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied.")).

include court filing fees, document review and storage costs, expert witness fees, deposition court reporter fees, and travel expenses. *Id.* at Ex. B. The largest expense Plaintiffs' Counsel incurred (approximate 81% of all expenses) was $252,250.29 for preparation of expert reports and the underlying study and analysis of Plaintiffs' damages experts, which was necessary to develop a damages model and a computation of damages and instrumental in securing the Settlement. *Id.* at ¶ 33. Additionally, due to the national character of this suit, Plaintiffs' Counsel have also incurred $14,794.76 in travel expenses for travel to Court proceedings, settlement conference, and depositions. *Id.* at ¶ 34. The expenses for which Plaintiffs' Counsel seek reimbursement were necessarily and reasonably incurred to further the litigation on behalf of the Settlement Class and achieve the Settlement. *Id.* at ¶¶ 14-15, 33-34. Accordingly, Plaintiffs respectfully request that the Court approve reimbursement of $310,253.50 to Class Counsel from the common fund for the reasonable litigation costs and expenses incurred through the prosecution of this action.

## V.    PAYMENTS TO NAMED PLAINTIFFS

### A.    SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS

The Court may approve the payment of service awards to class representatives in recognition of work done on behalf of the class. *In re Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.,* 2016 WL 5338012, at *24 (N.D. Ohio Sept. 23, 2016) (collecting cases). In this case, Plaintiffs diligently worked to advance the legal interests of the Settlement Class. In exchange for their services in this case, Plaintiffs respectfully request that the Court approve the following service awards to Representative Plaintiffs as reasonable and appropriate:

(a)    $5,000 for Representative Plaintiff Megan MacKay, who prosecuted this action for the benefit of the Settlement Class, travelled from her home in Surprise, Arizona to Cleveland, Ohio to attend the settlement conference, attended a telephonic conference with the Court, answered discovery, and appeared for a deposition;

(b)     $3,500 for Representative Plaintiff Dometric Pearson, who prosecuted this action to the benefit of the Settlement Class, answered discovery, and appeared for a deposition; and

(c)     $1,000 for each of the seven (7) remaining Representative Plaintiffs Penny Bolin, Shannon Gannon, Henry Gil, Esmeralda Hernandez, Melvin Hildreth III, Paula Sbabo, and Cassandra Sharp, who each prosecuted this action on behalf of the Settlement Class.

In addition, each of the Representative Plaintiffs spent time communicating with Plaintiffs' Counsel and supervising the progress of the case for the benefit of the Settlement Class.

### B.     INDIVIDUAL PAYMENTS TO INDIVIDUAL NAMED PLAINTIFFS

Where some named plaintiffs do not fit within the settlement class definition and have (or may have) claims that are not included in the class settlement, the settlement agreement, like the one here, may provide for a payment to those non-class representative plaintiffs to resolve their claims against the defendant. *See, e.g., Bennett v. SimplexGrinnell LP*, 2015 WL 12932332, at *1 (N.D. Cal. Sept. 3, 2015) (granting final approval of a proposed settlement which including payments to non-class representative plaintiffs to resolve their individual claims). In this case, the Amended Settlement Agreement provides for payments to the Individual Named Plaintiffs, who are not members of the class, in consideration of their time and effort prosecuting the case for the benefit of the Settlement Class and to settle their individual claims against Sonic. (Dkt. No. 144-2, PageID #2702-2703, 2727-2728. Therefore, in accordance with the parties' agreement, Plaintiffs respectfully request that the Court approve the following Individual Payments to Individual Named Plaintiffs as reasonable and appropriate:

(a)     $5,500 for Individual Named Plaintiff Cornelius Bogard who prosecuted this action to the benefit of the Settlement Class, attended court hearings, attended the

mediation and a telephonic conference with the Court, answered discovery, and appeared for a deposition;

(b)    $5,000 for Individual Named Plaintiff Denise Ramirez who each prosecuted this action to the benefit of the Settlement Class, travelled from her home in Albuquerque, New Mexico to Cleveland, Ohio to attend the Settlement Conference, attended a telephonic conference with the Court, answered discovery, and appeared for a deposition;

(c)    $3,500 each for Individual Named Plaintiffs Septabeya Bean and John Dolembo, who each prosecuted this action to the benefit of the Settlement Class, answered discovery, and appeared for a deposition; and

(d)    $1,000 for each of the nine (9) remaining Individual Named Plaintiffs Patrick Blanford, Shadawna Carson, Carlton Donovan, Vonda Hoover, Barbara Kelley, Mark Korabelnikov, Edward Ramirez, Linda Sipple, and Angela Williams, who each prosecuted this action to the benefit of the Settlement Class.

In addition, each of the Individual Named Plaintiffs spent time communicating with Plaintiffs' Counsel and supervising the progress of the case for the benefit of the Settlement Class.

## VI.   <u>CONCLUSION</u>

Data breach class actions are complex and laden with risk. There are numerous examples, in cases such as this, where after spending thousands of hours and advancing hundreds of thousands (or even millions) of dollars in potentially non-reimbursable costs, plaintiffs have received little or no compensation or reimbursement whatsoever. This complex action has been extremely hard-fought and was litigated through two complaints and a motion to dismiss, multiple depositions, extensive document discovery, and two settlement conferences. Plaintiffs faced numerous risks along the way. From the beginning, Plaintiffs faced determined adversaries

represented by experienced and equally determined defense counsel. Without any assurance of success, Plaintiffs and Plaintiffs' Counsel pursued this litigation to an excellent conclusion. The Settlement represents a fair recovery on behalf of the Class and reflects the skill and dedication of Plaintiffs' Counsel.

It is, therefore, respectfully requested that the Court approve the attorney fee and costs and expenses requested and enter the Order submitted herewith awarding Plaintiffs' Counsel a fee of $1,441,666.67 (one-third of the Settlement Fund); reimbursing Plaintiffs' Counsel for litigation expenses in the amount of $310,253.50; awarding Representative Plaintiffs service awards totaling $15,500.00 for their efforts expended in this litigation and achieving this highly favorable resolution for the benefit of the Class; and individual payments to Individual Named Plaintiffs totaling $26,500 for their efforts expended in this Action.

Dated:  April 5, 2019

Respectfully Submitted,

/s/ *William B. Federman*
William B. Federman
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone:  (405) 235-1560
Facsimile:  (405) 239-2112
wbf@federmanlaw.com

*Interim Lead Counsel for Plaintiffs*

Marc E. Dann (0039425)
DANNLAW
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Facsimile:  (216) 373-0536
mdann@dannlaw.com

*Interim Liaison Counsel*

19

Thomas A. Zimmerman, Jr.
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile:  (312) 440-4180
tom@attorneyzim.com

Melissa R. Emert
STULL, STULL, & BRODY
6 East 45th Street
New York, NY 10017
Telephone: (954) 341-5561
Facsimile:  (954) 341-5531
memert@ssbny.com

Michael Fuller
OLSEN DAINES
US Bancorp Tower
111 Southwest 5th Ave, Suite 3150
Portland, Oregon 97204
Telephone: (503) 201-4570
Facsimile:  (503) 362-1375
michael@underdoglawyer.com

Miles N. Clark
KNEEPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Telephone:  (702) 825-6060
Facsimile:   (702) 447-8048
miles.clark@knepperclark.com

*Plaintiffs Steering Committee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 5, 2019, a copy of the foregoing was served via ECF upon the following counsel for Defendants:

Kari M. Rollins
Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, NY 10112
krollins@sheppardmullin.com

Craig C. Cardon
Sheppard Mullin Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
ccardon@sheppardmullin.com

Lisa Thomas
David M. Poell
Sheppard Mullin Richter & Hampton LLP
Three First National Plaza
70 West Madison Street, 48th Floor
Chicago, IL 60602
lmthomas@sheppardmullin.com
dpoell@sheppardmullin.com

David A. Riepenhoff
Melanie J. Williamson
Fishel Hass Kim Albrecht Downey LLP
7775 Walton Parkway, Suite 200
New Albany, OH 43054
driepenhoff@fishelhass.com
mwilliamson@fishelhass.com

/s/ *William B. Federman*

William B. Federman
*Interim Lead Counsel for Plaintiffs*