# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND**

| | | |
|---|---|---|
| IN RE: SONIC CORP. CUSTOMER DATA BREACH LITIGATION (Financial Institutions) | ) ) ) ) | MDL Case No. 1:17-md-02807-JSG |
| THIS DOCUMENT RELATES TO ALL FINANCIAL INSTITUTION ACTIONS | ) ) ) ) | |

<u>**SETTLEMENT AGREEMENT AND RELEASE**</u>

This Settlement Agreement and Release is made as of April 25, 2022, by and among the following parties, as hereinafter defined: (a) the Class Representatives, on behalf of themselves and the Class Members, by and through Class Counsel; and (b) Sonic LLC (f/k/a Sonic Corp.), Sonic Industries Services Inc., Sonic Capital LLC, Sonic Franchising LLC, Sonic Industries LLC, and Sonic Restaurants, Inc.[1] (collectively, "the Sonic Defendants"), by and through their undersigned counsel.

<u>**RECITALS**</u>

**WHEREAS**, in October 2017, the Sonic Defendants announced the Data Breach;

**WHEREAS**, on behalf of themselves and a putative class of similarly situated individuals, the Class Representatives are prosecuting the above-captioned civil action against Sonic, entitled *In re: Sonic Corp. Customer Data Breach Litigation – Financial Institutions Track*, MDL Case No. 1:17-md-02807-JSG, pending in the Northern District of Ohio, Eastern Division at Cleveland, before the Honorable James S. Gwin (the "Litigation");

---

[1] Sonic Restaurants, Inc. became an LLC in 2019 and subsequently merged into Sonic Industries Services Inc. in 2021.

**WHEREAS**, on behalf of themselves and the putative class, the Class Representatives have asserted claims against the Sonic Defendants for negligence and negligence per se, and seek monetary, injunctive, and declaratory relief based upon the Sonic Defendants' allegedly inadequate security precautions in connection with the Data Breach;

**WHEREAS**, the Plaintiffs filed the operative Amended Class Action Complaint on October 21, 2019; the Sonic Defendants filed a Motion to Dismiss the Amended Class Action Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), on October 28, 2019; the Plaintiffs filed a Motion for Class Certification on January 9, 2020; by Order dated July 1, 2020, the Court denied, in part, and granted, in part, the Sonic Defendants' Motion to Dismiss, allowing Plaintiffs' claim for negligence to proceed and dismissing Plaintiffs' claims for negligence per se and for declaratory and injunctive relief; the Sonic Defendants filed a Motion for Summary Judgment as to the Plaintiffs' negligence claim on July 15, 2020; by Amended Order dated November 13, 2020, the Court granted the Plaintiffs' Motion for Class Certification; the Sixth Circuit Court of Appeals denied the Sonic Defendants' request for review pursuant to Fed. R. Civ. P. 23(f); by Order dated September 2, 2021, the Court denied the Sonic Defendants' Motion for Summary Judgment; the Sonic Defendants filed a Motion to Exclude the opinions, testimony and expert report of the Plaintiffs' experts, Ian Ratner and Neil Librock, on October 1, 2021; the Sonic Defendants filed a Motion to Decertify the Class on October 4, 2021; and by Order dated December 15, 2021, the Court granted the Sonic Defendants' Motion to Exclude the opinions, testimony and expert report of the Plaintiffs' expert, Ian Ratner, and denied the Motion to Exclude with respect to Neil Librock while limiting the scope of Mr. Librock's expert testimony;

**WHEREAS,** the Parties engaged in extensive discovery in this Litigation: (i) the Sonic Defendants produced over 131,000 pages of documents, which Class Counsel reviewed and

analyzed; (ii) Plaintiffs produced over 3,000 pages of documents, which Sonic Defendants' Counsel reviewed and analyzed; (iii) Class Counsel conducted third-party discovery, including preparing and serving eighteen (18) subpoenas *duces tecum* on third parties as having relevant information about the Sonic Defendants' information technology and cybersecurity processes and procedures, and obtained evidentiary affidavits, in lieu of depositions, from certain such third parties; (iv) the Sonic Defendants took depositions or obtained declarations from each of the Plaintiffs and four absent putative class members; and (v) the Parties engaged in significant motion practice relating to class certification, the merits of the Parties' claims and defenses, and discovery disputes;

**WHEREAS**, Class Counsel retained expert witnesses to prepare reports in support of Plaintiffs' Motion for Class Certification and in opposition to the Sonic Defendants' Motion to Decertify Class;

**WHEREAS**, the Sonic Defendants retained expert witnesses to prepare reports in opposition to Plaintiffs' Motion for Class Certification and in support of the Sonic Defendants' Motion to Decertify Class;

**WHEREAS**, Visa issued alerts relating to the Data Breach in the series US-2017-0500 and identified 7,347,908 Alerted-On Payment Cards; MasterCard issued alerts relating to the Data Breach in the series ADC004195-US-17 and identified 1,463,705 Alerted-On Payment Cards; and Discover identified 73,334 Payment Cards as having been exposed in the Data Breach;

**WHEREAS**, based upon data obtained from Visa, MasterCard and Discover, there is a total of 8,884,947 Alerted-On Payment Cards relating to the Data Breach;

**WHEREAS**, the Sonic Defendants deny each and every one of Plaintiffs' allegations, and specifically contend that the Sonic Defendants did have adequate security precautions in place,

deny that they are liable in any way for the third-party cyber attack on the point-of-sale systems of certain Sonic Drive-In locations, and deny that Plaintiffs are entitled to any relief from the Sonic Defendants.  The Sonic Defendants have not conceded or admitted any liability, and have  asserted a number of defenses to Plaintiffs' claims.  Nevertheless, given the risks, uncertainties, burden, and expense of continued litigation, the Sonic Defendants have agreed to settle this Litigation on the terms set forth in this Agreement, subject to Court approval;

**WHEREAS**, this Agreement resulted from good faith, arm's-length settlement negotiations over the course of several months, including three full-day mediation sessions before the Honorable Jonathan D. Greenberg on January 31, 2022, February 1, 2022, and February 2, 2022;

**WHEREAS**, Class Counsel has conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims to be resolved by this Settlement Agreement and how best to serve the interests of the Class in the Litigation.  Based on this investigation and the negotiations described above, Class Counsel have concluded, taking into account the sharply-contested issues involved, the risk, uncertainty, and cost of further prosecution of this Litigation, and the substantial benefits to be received by the Class pursuant to this Agreement, that a settlement with the Sonic Defendants on the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interests of the Class;

**WHEREAS**, the Parties understand, acknowledge, and agree that the execution of this Agreement constitutes the settlement and compromise of all disputed claims brought by the Class Representatives and the Class.  This Agreement is inadmissible as evidence against any of the Parties except for purposes of enforcing the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any of the Parties to this Agreement;

4

**WHEREAS**, the Settlement contemplated by this Agreement is subject to preliminary and final approval by the Court, as set forth herein, and is therefore contingent upon such approvals being granted, except for obligations relating to preparation and submission of motions for preliminarily and final approval, the contents thereof and any acts called for herein that relate to obtaining such approvals. This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle all claims and causes of action asserted, or that could have been asserted by the Class Representatives and the Class against the Sonic Defendants and Sonic Released Persons arising out of or relating to the Data Breach;

**NOW, THEREFORE**, in consideration of the covenants and agreements set forth herein and without (a) any admission or concession on the part of the Class Representatives or Class Counsel of the lack of merit of the Amended Class Action Complaint; or (b) any admission or concession by the Sonic Defendants of liability or wrongdoing or the merit of any of the claims in the Litigation or the lack of merit of any defense of the Sonic Defendants to the Amended Class Action Complaint;

**IT IS HEREBY STIPULATED AND AGREED** by the Parties that the Litigation and the claims set forth in the Amended Class Action Complaint be settled, compromised, and dismissed with prejudice, subject to Court approval as required by Federal Rule of Civil Procedure 23, on the following terms and conditions:

**THEREFORE**, the Parties hereby agree as follows:

1.     **DEFINITIONS**

As used in this Agreement, the terms set forth in this section in boldface type will have the following meanings:

**1.1    ADC.**  MasterCard's Account Data Compromise program, as set forth in MasterCard's *Security Rules and Procedures*.

**1.2    Agreement or Settlement Agreement.**  This document, including all exhibits.

**1.3    Alerted-On Payment Card.**  A credit card or debit card PAN that was identified by Visa or MasterCard in a Prior Alert in the US-2017-0500 series (in the case of Visa), or in a Prior Alert in the ADC004195-US-17 series (in the case of MasterCard).

**1.4    Alerted-On Payment Card Account.**  The credit card account or debit card PAN associated with an Alerted-On Payment Card.

**1.5    Alerts**.  Formal notification from Visa and MasterCard that specific payment cards associated with a list of PANs may have been compromised.

**1.6    Amended Class Action Complaint.**  The Amended Class Action Complaint filed in the Litigation on October 21, 2019.

**1.7    Application.**  The filing to be made by the Class Representatives containing the Fee, Cost, and Awards Request.

**1.8    Attorneys' Fees and Costs.**  The attorneys' fees, costs and expenses to be requested by Class Counsel, subject to Court approval.

**1.9    Claimant.**  Any Class Member who submits a Settlement Claim via a Claim Form.

**1.10    Claim(s).**  A Claim Form submitted by a Claimant.

**1.11    Claims Administration.**  The processing, validation and auditing of Claim Forms received from Class Members and the processing of payment of Verified Claims by the Settlement Administrator.

**1.12    Claims Deadline.**  The deadline by which Class Members must submit any Settlement Claims. Settlement Claims submitted after the Claims Deadline will not be timely, will

not qualify for approval as set forth in Section 5 below, and will be rejected unless the Parties expressly agree to accept them.  The Claims Deadline shall be set by the Court in the Preliminary Approval Order.  The parties propose a Claims Deadline that is the 90th day after the Notice Deadline.

      **1.13**    **Claim Form.**  The claim form substantially in the form attached hereto as Exhibit 1, which has been and must be (if substantively altered in any respect by the Court or otherwise) agreed to by the Parties, and is subject to Court approval, for the submission of Settlement Claims to the Settlement Administrator by Class Members.  Only those Class Members who submit a Claim Form that is deemed to be a Verified Claim in the manner set forth in this Agreement, subject to Court approval, shall be eligible to recover a share of the Settlement proceeds.

      **1.14**    **Claims Period.**  The time for Class Members to submit claims, running from the Notice Deadline through the Claims Deadline.

      **1.15**    **Class Counsel.**  This term consists of the following  firms and individuals appointed by the Court as class counsel on November 13, 2020: (1) Brian Gudmundson, Zimmerman Reed LLP; and (2) Charles Van Horn, Berman Fink Van Horn P.C.

      **1.16**    **Class Representatives.**  American Airlines Federal Credit Union, Redstone Federal Credit Union, and Arkansas Federal Credit Union.

      **1.17**    **Class Representative Service Award.**  An award Class Counsel shall request be paid to each of the Class Representatives in their capacity as representatives of the Class in the amounts set forth herein, except as may be altered downward or denied by the Court, to compensate each Settlement Class Representative for prosecuting this Litigation.

      **1.18**    **Costs of Settlement Administration.**  All actual costs associated with or arising from Claims Administration and the administration of the Notice Program as forth in Sections 5,

7, 8 and 9 below, including the printing, electronic generation, publication, and dissemination of all Settlement Notices identified in Paragraph 8.2 below, as well as all costs associated with any audit or review of claims as contemplated herein.  The Costs of Settlement Administration shall be paid by the Sonic Defendants to the Settlement Administrator as set forth in this Agreement. The Sonic Defendants shall not be required to pay Costs of Settlement Administration in excess of $500,000.00, except that this cap shall not prevent the Sonic Defendants from spending additional amounts that may exceed the cap at their own election to exercise their audit rights that may exceed the cap, if any.

1.19    **Court.**  The United States District Court for the Northern District of Ohio.

1.20    **Data Breach**.  The third-party cyber attack targeting the point-of-sale systems of Sonic Drive-Ins believed to have occurred from April 7, 2017 through October 28, 2017 in an effort to acquire, without authorization, customer payment card information.

1.21    **[Intentionally Left Blank]**

1.22    **Effective Date.**  The first date by which all of the events and conditions specified in Paragraph 14.1 herein have occurred and been met.

1.23    **Eligible Alerted-On Payment Card.**  An Alerted-On Payment Card that: (i) was issued by a Class Member; (ii) was included in a Prior Alert; and (iii) incurred fraud and/or was reissued by a Class Member within the four-week period of time after such Alerted-On Payment Card first appeared on a Prior Alert.

1.24    **Fees, Costs, and Awards Request.**  The Class Representatives' request for an award of attorneys' fees, costs, and expenses and any request for an award of Service Payments.

**1.25    Final Approval Hearing.**   The hearing held by the Court for the purpose of determining whether to (a) grant final approval of the Settlement, (b) grant the Application, and (c) enter the Final Judgment.

**1.26    Final Fees Order.**   The final order on the Application, as set forth in the Final Judgment or, in the event the Final Judgment's order on the Application is not fully upheld in connection with an appeal, motion, or petition relating to the Final Judgment, in the subsequent order relating to the Application.

**1.27    Final Judgment.**  A final order and judgment rendered by the Court that, among other things, finally approves the Settlement Agreement and dismisses the Litigation with prejudice against the Sonic Defendants, which this Settlement Agreement contemplates will be approved and entered by the Court.  The proposed Final Judgment is attached hereto as Exhibit 2, has been agreed to by the Parties, and is subject to Court approval.

**1.28    Infor.**  Infor Restaurant Systems, a Division of Infor (US), Inc. and its current and former parents, subsidiaries, affiliated companies, and divisions, whether indirect or direct, as well as their respective predecessors and successors, their respective past and present directors, officers, employees, and principals, and their respective agents, attorneys, insurers, and reinsurers.

**1.29    Long Form Notice.**  A document substantially in the form attached as Exhibit 3, which has been, and must be (if substantively altered in any respect by the Court or otherwise), agreed to by the Parties and the Settlement Administrator, is subject to Court approval, and which will be disseminated in accordance with the Notice Program set forth in Section 8 and the terms of this Settlement.

**1.30    Mail Notice.**  This term shall have the meaning set forth in Paragraph 8.1.2.

**1.31**    **Maximum Class Claims Payment Amount.**   Three million dollars and no/100 cents ($3,000,000.00).

**1.32**    **Maximum Settlement Payment Amount.**   This term shall have the meaning set forth in Paragraph 4.1.

**1.33**    **Notice Deadline.**   The date by which the Settlement Administrator is required to send out Long Form Notice, which shall be thirty (30) days after entry of the Preliminary Approval Order unless a different deadline is set by the Court.

**1.34**    **PAN.**   The payment account number that appears on a credit or debit card and identifies a particular credit or debit card account.

**1.35**    **Party.**   The Class Representatives or Sonic.

**1.36**    **Parties.**   The Class Representatives and Sonic.

**1.37**    **Plaintiffs** or **Financial Institution Plaintiffs.**   American Airlines Federal Credit Union, Redstone Federal Credit Union, and Arkansas Federal Credit Union.

**1.38**    **Plaintiff Released Claims.**  This term shall have the meaning set forth in Paragraph 6.1.

**1.39**    **Plaintiff Released Persons.**   This term shall have the meaning set forth in Paragraph 6.2.

**1.40**    **Plaintiff Releasing Persons.**   This term shall have the meaning set forth in Paragraph 6.1.

**1.41**    **Preliminary Approval Order.**   The order preliminarily approving the Settlement Agreement and, among other things, ordering that notice be provided to the Class.  The proposed Preliminary Approval Order is attached hereto as Exhibit 4, has been agreed to by the Parties, and is subject to Court approval.

**1.42    Prior Alert.**  For a Visa-branded Alerted-On Payment Card Account, a Prior Alert is a PA or IC CAMS alert in the US-2017-0500 series sent by Visa between October 13, 2017 and August 27, 2018.  For a MasterCard-branded Alerted-On Payment Card Account, a Prior Alert is an ADC alert in the ADC004195-US-17 series sent by MasterCard on November 3, 2017 and August 7, 2018.

**1.43    Settlement.**  The compromise and settlement of the Litigation as contemplated by this Agreement.

**1.44    Settlement Administrator.**  KCC Class Action Services LLC, as has been agreed by the Parties, which is experienced in formulating and effectuating notice programs and administering class action settlements, generally and specifically those of the type provided for and made in data breach litigation.  For the avoidance of doubt, the Settlement Administrator shall perform the duties of, among other things: (i) providing notice and Claim Forms to Class Members; (ii) printing or otherwise electronically generating the Long Form Notice (iii) tracking returned Claim Forms and written opt-out notices; (v) notifying the Parties of determinations regarding submitted Claim Forms and opt-out requests consistent with this Agreement; (vi) distributing Settlement proceeds to those Class Members who submitted Verified Claims as provided for by this Agreement; (vii) preparing any applicable tax-related forms that may have to accompany payments to Class Members who submit a timely and valid Claim Form; and (viii) other notice and administration duties in accordance with this Agreement and the Court's orders.

**1.45    Settlement Claim.**  A claim or request submitted by way of a Claim Form either online at the Settlement Website or by mail, seeking settlement benefits as provided for in Section 5 of this Settlement Agreement.

1.46    **Class.**  The class certified in the Court's Amended Order of November 13, 2020 (Dkt. No. 348), which is defined as follows:

> All banks, credit unions, and financial institutions in the United States that received notice and took action to reissue credit cards or debit cards or reimbursed a compromised account from any card brand in the Sonic Data Breach.

1.47    **Class Members.** All entities located in the United States who fall within the definition of the Class.

1.48    **Settlement Website.**  An Internet website established and maintained by the Settlement Administrator containing information regarding this Settlement.  The Settlement Website shall be an easy-to-remember URL that relates to this Litigation and Settlement, such as www.SonicDataBreachFinancialInstitutionSettlement.com.

1.49    **Sonic.**  The Sonic Defendants and their current and former parents, subsidiaries, affiliated companies, and divisions, whether indirect or direct, as well as their respective predecessors and successors, their respective past and present partners, investors, directors, officers, owners, stockholders, members, managers, principals, consultants, employees, representatives, attorneys, funds, insurers, and reinsurers, and all persons acting under, by, through or in concert with any of them; Sonic Franchisees (as defined in § 1.50); and all vendors of and contractors for the Sonic Defendants and Sonic Franchisees who may have been provided, integrated or worked on the systems affected by the Data Breach, expressly including but not limited to Infor.

1.50    **Sonic Franchisees.**  The independent franchise owners and operators of Sonic Drive-In restaurants and their current and former parents, subsidiaries, affiliated companies, and divisions, whether indirect or direct, as well as their respective predecessors and successors, their

respective past and present directors, officers, employees, and principals, and their respective agents, attorneys, insurers, and reinsurers.

**1.51** **Sonic Released Claims.**  This term shall have the meaning set forth in Paragraph 6.2.

**1.52** **Sonic Released Persons.**  Sonic (as defined in § 1.49).

**1.53** **Verified Claim** or **Verified Claims.**  Settlement Claims completed using a Claim Form, which the Settlement Administrator finds to be valid for payment in accordance with this Agreement, either without or after an audit.

**2.** **SETTLEMENT PROCEDURES**

**2.1** The Class Representatives shall move the Court for entry of the Preliminary Approval Order.  Sonic shall not oppose such motion.

**2.2** At any Final Approval Hearing, the Class Representatives will request that the Court enter the Final Judgment.  Sonic shall not oppose such motion, so long as the as the Court has approved the terms of this Agreement in the Preliminary Approval Order and the Request for Final Approval does not propose any alterations to this Agreement or the terms of this settlement. If the Court enters the Final Judgment, the Parties irrevocably waive any right to file any appeal, motion, or petition with respect to the Final Judgment.

**3.** **[Intentionally Left Blank]**

**4.** **SETTLEMENT CONSIDERATION**

**Maximum Settlement Payment Amount**

**4.1** Subject to the other terms and conditions of this Agreement, and subject to Court approval, the Sonic Defendants have agreed to pay up to Five Million Seven Hundred and Thirty Thousand Dollars and no/100 ($5,730,000.00) (the "Maximum Settlement Payment Amount") for

the monetary component of the Settlement, which will be used to pay for the following benefits provided by this Settlement:

**4.1.1**  The Costs of Settlement Administration incurred in accordance with this Agreement, not to exceed Five Hundred Thousand Dollars and no/100 ($500,000.00), as further described in Paragraph 5.7 herein;

**4.1.2**  Attorneys' Fees and Costs, in the amount approved and awarded by the Court, but not to exceed Two Million Two Hundred Thousand Dollars and no/100 ($2,200,000.00);

**4.1.3**  Class Representative Service Awards, in the amounts approved and awarded by the Court to each of the Class Representatives, but not to exceed the aggregate amount of Thirty Thousand Dollars and no/100 ($30,000.00); and

**4.1.4**  Payments—as described herein and in accordance with this Agreement—to Class Members who submit Verified Claims, but not to exceed the Maximum Class Claims Payment Amount of Three Million Dollars and no/100 ($3,000,000.00).  Provided the Effective Date occurs, the payments will be distributed in accordance with Section 7 below to Class Members who submit a Verified Claim to the Settlement Administrator.  The value of the Verified Claims paid to each Class Member will be as follows, subject to the qualifications below in Paragraph 4.1.6: (1) Class Members shall be paid $1.00 for each Verified Claim representing an Eligible Alerted-On Payment Card they reissued ("Reissuance Payment"); and/or (2) Class Members shall be paid $1.50 for each Verified Claim representing an Eligible Alerted-On Payment Card that experienced fraud during the window identified in the definition of Eligible Alerted-On Payment Card ("Fraud Payment").  However, for any Eligible Alerted-On Payment Card that was reissued <u>and</u> experienced fraud during the applicable window, the Class Member must select either a Reissuance Payment <u>or</u> a Fraud Payment for such Eligible Alerted-On Payment Card.  A Class

Member cannot receive a Reissuance Payment and a Fraud Payment for the same Eligible Alerted-On Payment Card, though any Class Member may submit claims for Reissuance Payments and Fraud Payments so long as it is only one per Eligible Alerted-On Payment Card.

4.1.5    The Claim Form, with any attachments, shall be submitted under penalty of perjury and in all material respects take the form and substance found in Exhibit 1 and list out the fields to be included, *i.e.*, the last five (5) digits of card numbers, etc. The Claim Form shall specify the following two (2) options available to Class Members for proving they have a Verified Claim:

**Option 1:** Class Members must complete and submit the spreadsheet attached to the Claim Form ("Option 1 Claim"); or alternatively,

**Option 2:** Class Members must provide a written explanation in the Claim Form, under penalty of perjury, discussing the methodology used to determine their requests for Reissuance Payments and/or Fraud Payments meet the qualification criteria for a Verified Claim ("Option 2 Claim"). The Claim Form shall state that selecting this Option 2 makes it more likely the Class Member's Claim will be audited.

4.1.6    If the total amount of Verified Claims to be paid pursuant to Paragraph 4.1.4 exceeds the Maximum Class Claims Payment Amount, the Settlement Administrator shall adjust the amounts of individual payments to Class Members by decreasing the payments on a pro rata basis such that the total aggregate amount of Verified Claims to be paid pursuant to Paragraph 4.1.4 does not exceed the Maximum Class Claims Payment Amount.  Under no circumstances will the Sonic Defendants be required to pay any Class Relief Payment that exceeds the total amount of Verified Claims submitted by Class Members, even if such total amount is less than the Maximum Class Claims Payment Amount of $3,000,000.

**4.1.7**    The payments identified in Paragraphs 4.1.1 through 4.1.4 of this Agreement shall be paid pursuant to the terms of this Agreement.  The $5,730,000 monetary component as defined above shall be the maximum total amount owed by the Sonic Defendants as part of this Settlement. The Parties agree that the total amount owed by the Sonic Defendants will depend upon: (i) the actual Costs of Settlement Administration, which shall not exceed $500,000 (except as described herein); (ii) the actual amount of Attorneys' Fees and Costs approved by the Court, which shall not exceed $2,200,000; (iii) the actual amount of Class Representative Service awards, which shall not exceed the aggregate amount of $30,000; and (iv) the actual amount of compensable Verified Claims, which shall not exceed the Maximum Class Relief Payment Amount of $3,000,000. Subject to the Sonic Defendants' right to audit Claims pursuant to Paragraph 5.6 of this Agreement, the Sonic Defendants will not be obligated to pay any additional sums, and shall have no other monetary liability for any costs or expenses related to this Settlement, including, without limitation, the costs of administering the Settlement, preparation of Notice, oversight and reporting of the Notice Program, establishing the appropriate Settlement Website, and/or tax filing and distributions.  All such costs shall be subject to the $500,000 cap for the Costs of Settlement Administration.   In no event shall the Sonic Defendants' liability or obligation under this Agreement exceed the Maximum Settlement Payment Amount set forth above.  Notwithstanding the foregoing, the cap for the Costs of Settlement Administration shall not be applied to restrict Sonic's audit rights.  Any Costs associated with permitted audits that exceed the cap for Costs of Settlement Administration may voluntarily be paid by Sonic.

## 5.    CLAIMS PROCESS

**5.1**    All Class Members who desire to receive payment for a Verified Claim must complete and submit a Claim Form to the Settlement Administrator. If mailed, the Claim Form

must be postmarked on or before the Claims Deadline. If submitted online through the Settlement Website, the Claim Form must be completed and submitted on or before the Claims Deadline. Each Class Member will be required to attest to the truthfulness and accuracy of the representations made in his/her Claim Form under penalty of perjury.  Notarization shall not be required.

5.2     The Settlement Administrator, in its sole discretion to be reasonably exercised, subject to Sonic's audit rights, will determine: (a) whether a Claimant qualifies as a  Class Member; (b) the total value of all Verified Claims to be distributed to Class Members, which shall not exceed the Maximum Class Claims Payment Amount; (c) assuming a Claimant qualifies as a Class Member and has submitted a Verified Claim, the amount to be paid to each Class Member.

5.3     Upon receipt of an incomplete or unattested Claim Form, the Settlement Administrator shall request additional information ("Claim Supplementation") and give the Claimant thirty (30) days to cure the defect before rejecting the Settlement Claim.  The Settlement Administrator shall endeavor to send requests for Claim Supplementation on a rolling basis as Claim Forms are received but no later than thirty (30) days after the Claims Deadline.  In the event of unusual circumstances interfering with compliance during the 30-day period, the Claimant may request and, for good cause shown (*e.g.*, illness, military service, out of the country, mail failures, lack of cooperation of third-parties in possession of required information, etc.), shall be given a reasonable extension of the 30-day deadline in which to comply; however, in no event shall the deadline be extended to later than one hundred and eighty (180) days from the Effective Date.  If the defect is not cured, then the Settlement Claim will be deemed invalid and there shall be no obligation to pay the Settlement Claim.

5.4     Following receipt of the additional information requested as Claim Supplementation, the Settlement Administrator shall have thirty (30) days to accept, in whole or

lesser amount, or reject each Settlement Claim.  If, after review of the Settlement Claim, the Settlement Administrator determines that such a Settlement Claim is facially valid, then the Settlement Claim shall be deemed a Verified Claim and paid within the time period allotted by Paragraph 7.2 to the extent and in the amount that the Settlement Administrator finds the Settlement Claim to be valid.  If the Settlement Claim remains invalid because the Claimant does not provide the requested information needed as Claim Supplementation (as defined in § 5.3) and complete the Claim Form and evaluate the Settlement Claim, then the Settlement Administrator may reject the Settlement Claim without any further action.

 **5.5** The Settlement Administrator shall review all submitted Claim Forms for completeness, validity, accuracy, and timeliness, and if there is any reasonable basis to believe a Claim Form is not valid (*e.g.*, the repetition of a single address on multiple Claim Forms, or any other issue or indicator of fraud that appears from the Claim Form), then the Settlement Administrator shall, at any time, contact any Claimant to request additional information and documentation to evaluate and determine the validity of any Settlement Claim.

 **5.6** Within thirty (30) days of the deadline to submit Claim Forms to the Settlement Administrator, the Settlement Administrator shall provide Class Counsel and Defense Counsel with a preliminary report stating the total dollar amount of the claims submitted, the total dollar amount of claims the Settlement Administrator intends to approve, the number of cards claimed by each Class Member, the number of cards (broken down by reissuance and fraud) which the Settlement Administrator intends to approve in total, and the number of cards (broken down by reissuance and fraud) which the Settlement Administrator intends to approve for each Class Member, and whether it appears that the total amount of claims it intends to approve may exceed the Maximum Class Claims Payment Amount.

**5.7**     Within fifteen (15) calendar days from the receipt of the preliminary report the Sonic Defendants may elect to require the Settlement Administrator to audit up to 10% of the Claimants who submitted a Claim Form to provide proof of the total amount of Eligible Alerted-On Payment Cards.  The Settlement Administrator will select, in consultation with the Sonic Defendants, the Claimants from whom to demand such proof, and can include in such population Claimants from whom the Settlement Administrator has already demanded and obtained such proof.  Such proof of reissuance and/or proof of fraudulent or unauthorized charges must be provided to the Sonic Defendants within thirty (30) days of the request to the subject Claimant. The Sonic Defendants may also elect to audit any other Claimant who, based upon the information provided to the Settlement Administrator by that, the Sonic Defendants have a reasonable belief that there may be inaccuracies in such claims.  If a Class Member selects Option 2 as the method for proving a Verified Claim (under § 4.1.5), the Sonic Defendants may elect, at their discretion, to audit those Option 2 Claims, and such audits shall not count against the Sonic Defendants' 10% discretionary audit threshold. If the Sonic Defendants request an Option 2 Claim for audit, the audit will be carried out by the Settlement Administrator, and the Settlement Administrator will make the sole determination as to the validity of the audited Option 2 Claim. To the extent the costs of this auditing process causes the Costs of Settlement Administration to be expected to exceed $500,000.00, the Sonic Defendants may elect to proceed but shall be solely responsible for paying any such additional auditing costs in excess of $500,000.

**5.8**     If any Claimant is requested to provide documentation under this Section and fails to do so, the Settlement Administrator shall not deem their Claim to be a Verified Claim and no payment shall be made with respect to the cards for which documentation is deemed insufficient. Further, if any Claimant who provides proof that evidences the Claimant does not fall within the

definition of the Class because it did not issue any Eligible Alerted-On Payment Cards, the Settlement Administrator shall not deem their Claim to be a Verified Claim and no payment shall be made.

## 6.    RELEASE OF CLAIMS

**6.1    Release of Class Claims.**  As of the Effective Date, the Class Representatives and all other  Class Members who did not Opt Out of the Settlement, on their own behalf and on behalf of their respective past and present parents, subsidiaries, affiliates, divisions, successors, predecessors, assignors, assignees, and assigns, and each of their respective past and present officers, directors, shareholders, partners, members, insurers, agents, employees, associates, and attorneys ("Plaintiff Releasing Persons"), shall be deemed to have waived any right to assert against the Sonic Released Persons, and to have irrevocably released and forever discharged the Sonic Released Persons from and for, any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands of any kind whatsoever, existing or potential, suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise ("Liabilities"), including any known or Unknown Claims (as defined in § 6.3), that they ever had, now have, or may claim now or in future to have that (i) were alleged or asserted or could have been alleged or asserted against any of the Sonic Released Persons in the Amended Class Action Complaint; (ii) arise out of the same nucleus of operative facts as any of the claims alleged or asserted in the Amended Class Action Complaint; or (iii) arise out of or relate to the Data Breach ("Plaintiff Released Claims").

**6.2    Release of Plaintiff Released Persons.**  As of the Effective Date, the Sonic Defendants shall be deemed to have waived any right to assert against the Class Representatives,

the other Class Members, and Class Counsel ("Plaintiff Released Persons") and to have irrevocably released and forever discharged the Plaintiff Released Persons from any and all Claims, including any known or unknown Claims, which it ever had, now has, or may claim now or in the future to have, arising from the institution or prosecution of the Litigation ("Sonic Released Claims").

      **6.3**    **Unknown Claims.**  For purposes of the releases set forth in Sections 6.1 and 6.2 and the proposed Final Judgment attached as Exhibit 2 hereto, "Unknown Claims" means Claims that the Sonic Defendants and the Plaintiff Releasing Persons do not know or expect to exist in their favor as of the entry of the Final Judgment, which if known by them might have affected their settlement of the Litigation.  It is the intention of the Parties and the Class Members that, upon the Effective Date, the Sonic Defendants and each of the Plaintiff Releasing Persons shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished the provisions, rights and benefits conferred by California Civil Code § 1542 to the fullest extent applicable, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Upon the Effective Date, the Sonic Defendants and each Plaintiff Releasing Person shall be deemed to have acknowledged that each such party is aware that such party may hereafter discovery facts other than or different from those that they know or believe to be true with respect to the subject matter of the Plaintiff Released Claims and Sonic Released Claims, but it is such

party's intention to, and each of them shall be deemed upon the Effective Date, to have waived and fully, finally, and forever settled and released any and all Plaintiff Released Claims and Sonic Released Claims, whether known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

**6.4   Bar to Future Suits.**  The Parties agree that the Class Representatives will request that the Court enter the proposed Final Judgment attached as Exhibit 2 hereto as the Final Judgment, which provides that the Sonic Defendants, the Class Representatives, and the other Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Plaintiff Released Persons or Sonic Released Persons or based upon any actions taken by any Plaintiff Released Persons or Sonic Released Persons that are authorized or required by this Agreement or by the Final Judgment.  It is further agreed that this Settlement may be pleaded as a complete defense to any proceeding subject to this Paragraph 6.4.

## 7.   ADMINISTRATION AND PAYMENT OF CLAIMS

**7.1**   The Settlement Administrator shall administer and calculate the value of Verified Claims submitted by Class Members, and give reports as to the number of claims, opt-outs, and the value of Verified Claims to Class Counsel and Defense Counsel.  No later than fourteen (14) days after the Claims Deadline, the Settlement Administrator shall provide Class Counsel and Defense Counsel with a declaration attesting to the number of Claim Forms submitted by Class Members and the number of deficient Claim Forms.  No later than forty-five (45) days after the Claims Deadline, the Settlement Administrator shall provide Class Counsel and Defense Counsel with a declaration attesting to the number of Verified Claims.  Class Counsel and Defense Counsel

shall have the right to request and obtain supporting documentation from the Settlement Administrator if they have a reasonable basis to believe the reports to be inaccurate or inadequate. The Settlement Administrator shall exercise its duties in good faith and has the final decision as to whether to deem a Claim Form a Verified Claim and the amount that each Class Member with a Verified Claim will be paid.

7.2     Payment of Verified Claims shall be made by check and shall be mailed and postmarked within sixty (60) days after the Effective Date, or within thirty (30) days after the date that the Settlement Claim is formally approved, whichever is later.  The Settlement Administrator shall pay these Verified Claims as provided by this Section and Sections 4 and 5 above.

7.3     Each Claimant who receives a settlement check pursuant to this Agreement is responsible for paying any applicable taxes associated with the monies received by that recipient.

7.4     All Settlement checks shall be void ninety (90) days after issuance and shall bear the language: "This check must be deposited or cashed within 90 days, after which time it is void." If a check becomes void, the Class Member shall have until one hundred and fifty (150) days after the Effective Date to request re-issuance.  If no request for re-issuance is made within this period, the Class Member's right to receive monetary relief shall be extinguished, and the Sonic Defendants shall have no obligation to make payments to the Class Member under this Agreement or to provide any other type of monetary relief.  The same provisions shall apply to any re-issued check.  For any checks that are issued or re-issued for any reason more than one hundred and eighty (180) days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

7.5     All Class Members who do not timely opt-out of this Settlement and who fail to submit a Settlement Claim for any benefits hereunder within the time frames set forth herein, or

such other period as may be ordered by the Court, shall be forever barred from receiving any payments pursuant to the Settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein, and the Final Judgment.

7.6     No person shall have any claim against the Settlement Administrator, Released Persons, Class Counsel, Defense Counsel, the Sonic Defendants, and/or Class Representatives based on distributions of benefits to Class Members.

## 8.     NOTICE PROGRAM

8.1     **Notice Plan.**  Upon entry of the Preliminary Approval Order, the Settlement Administrator shall cause notice to be disseminated to the Class pursuant to the Preliminary Approval Order and the terms of this Settlement Agreement ("Notice Program"). The Notice Program shall comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution and Fed. R. Civ. P. 23, and be effectuated pursuant to provisions set forth below, the costs of which shall be included in the Costs of Settlement Administration.  The Notice Plan has two components: (1) Long Form Notice and (2) notice on the Settlement Website.  Subject to the entry of the Preliminary Approval Order, the Notice Plan is to be implemented as follows:

8.1.1   **Certified Class.** Within seven (7) days after entry of the Preliminary Approval Order, the Class Representatives will provide the Settlement Administrator with any contact information in their or Class Counsel's possession for banks, credit unions, and other financial institutions that are potential Class Members.  Based upon information obtained from the Class Representatives (directly or through Class Counsel) and from other reasonably available sources,

the Settlement Administrator will prepare a final list of potential Class Members to which Long Form Notice will be issued.

**8.1.2  Mail Notice.**  Mail Notice will be sent to those on the final list described in Paragraph 8.1.1 by the Notice Deadline.  The "Mail Notice" shall consist of the Long-Form Notice, in the form attached hereto as Exhibit 3, and Claim Form, in the form attached hereto as Exhibit 1.  For any Mail Notices that are returned as undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Mail Notice to the updated address as indicated. For any Mail Notices that are returned as undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses (such as running the mailing address through the National Change of Address Database) and re-mail the Mail Notice to the extent updated addresses are identified.  The Settlement Administrator need only make one attempt to re-mail any Mail Notices that are returned as undeliverable.

**8.1.3  Toll-Free Telephone Number.**  By the Notice Deadline, the Settlement Administrator will establish a toll-free telephone number to respond to inquiries from Class Members.

**8.1.4  Settlement Website.**  By the Notice Deadline, the Settlement Administrator shall establish the Settlement Website and shall maintain and update the Settlement Website, as necessary, throughout the Claims Period. The Settlement Website shall include important information, including, among other things, a toll-free number for Class Members to call to obtain answers to Settlement-related questions or request copies of documents, a list of important deadlines, and links to the Long Form Notice, the Claim Form (available in both printable and fillable forms), the Settlement Agreement, and relevant orders entered by the Court relating to the Settlement.

8.2     Notice shall be provided to Class Members, by the following means: (a) Mail Notice and (b) Long Form Notice posted to the Settlement Website (collectively, the "Settlement Notices" or "Notices").  These Notices together shall include, the general terms of the Settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the Settlement, the process and instructions for making Settlement Claims to the extent contemplated herein, and the date, time, and place of the final approval hearing.

8.3     **CAFA Notice.**  The Sonic Defendants shall be responsible for providing notice of the Settlement to the appropriate state and federal officials in accordance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.

8.4     The Notice Program shall be subject to approval by the Court.

8.5     The Long Form Notice, and Claim Form may be adjusted by the Settlement Administrator in consultation and agreement with the Parties, as may be reasonable and necessary and not inconsistent with the Court's approval.

8.6     No later than fourteen (14) days after the Claims Deadline, the Settlement Administrator shall provide Class Counsel and Defense Counsel with a declaration describing and attesting to the dissemination of the Notices pursuant to the Notice Plan.  Prior to the final approval hearing, Class Counsel shall cause to be filed with the Court an appropriate affidavit or declaration from the Settlement Administrator attesting to its compliance with the Court-approved Notice Program.

## 9.     OPT-OUT PROCEDURES

9.1     **Opt-Out Requests.**  Each Class Member wishing to opt-out of the Class shall individually sign and timely submit written notice of such intent to opt-out to the designated Post Office box to be established by the Settlement Administrator.

9.1.1    **Contents of Opt-Out Requests.**  The written opt-out notice must include the Class Member's name and address; a statement that it wants to be excluded from the Class in this Litigation; and a signature from an employee with authority to make the decision to opt out on behalf of the Class Member.  To be effective, the written opt-out notice must clearly manifest a Class Member's intent to be excluded from the Class. No  Class Member may opt-out of the Class through a so-called "mass" or "class" opt-out.

9.1.2    **Settlement Administrator Will Track Opt-Out Requests.**  The Settlement Administrator shall provide the Parties with copies of all written opt-out notifications, and a final list of all Class Members who have timely and validly excluded themselves from the Class.  No later than fourteen (14) days after the Claims Deadline, the Settlement Administrator shall provide Class Counsel and Defense Counsel with a declaration attesting to the identities and number of Class Members who have timely and validly excluded themselves from the Class.  The declaration shall also state the total percentage of Alerted-On Payment Cards issued by the Class Members who have opted out. This percentage calculation shall be made by dividing the number of Alerted-On Payment Cards subject to their issuers' opt outs by the total number of Alerted-On Payment Cards.  A list of the names of Class Members who have timely and validly opted out shall be filed by Class Counsel with the Court prior to the final approval hearing.

9.1.3    **Opt-Out Deadline.**  To be effective, the written opt-out notice must be postmarked no later than ninety days (90) after the Notice Deadline.

9.2    **No Relief to Class Members That Opt Out.**  All Class Members who submit valid and timely written opt-out notices of their intent to be excluded from the Class shall not receive any benefits of or be bound by the terms of this Settlement Agreement.  All persons falling within the definition of the Class who do not submit valid and timely written opt-out notices of their intent

to be excluded from the Class shall be bound by the terms of this Settlement Agreement and the Final Judgment entered thereon.

## 10.    OBJECTION PROCEDURES

**10.1**    Each Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his/her objection.  Such notice shall state: (a) the objector's name,  current address, telephone number, and email address (if any) of the objector's point of contact; (b) a statement that the objector's point of contact has authority to object on behalf of a Class Member, including an attestation that it issued an Eligible Alerted-On Card; (c) a written statement of all grounds for the objection, accompanied by any evidence or legal support for the objection the objector believes applicable; (d) the identity of all counsel representing the objector, if any; (e) a written statement indicating whether it intends to appear and/or testify at the final approval hearing and the identity of all counsel, if any, representing the objector who will appear at the final approval hearing; (f) a statement identifying any person who will be called to testify at the final approval hearing in support of the objection; (g) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); (h) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last three (3) years; and (i) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last three (3) years.

**10.1.1**  To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court no later than ninety (90) days after the Notice Deadline, and served

concurrently therewith upon Class Counsel Brian Gudmundson of Zimmerman Reed LLP at 1100 IDS Center, 80 South 8th Street, Minneapolis, Minnesota 55402, and Defense Counsel David M. Poell of Sheppard Mullin Richter & Hampton LLP at 70 West Madison Street, 48th Floor, Chicago, Illinois 60602.

**10.1.2**  Any Class Member who fails to substantially comply with the requirements for objecting herein shall waive and forfeit any and all rights it may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation.  The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of Paragraph 10.1. Without limiting the foregoing, any challenge to the final order approving this Settlement Agreement, or the Final Judgment to be entered upon final approval, shall be pursuant to appeal under the Federal Rules of Appellate Procedure.

## 11.  CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS

### Attorneys' Fees and Costs

**11.1**   By filing an Application, Class Counsel may seek from the Court an award of reasonable attorneys' fees, costs, and expenses incurred in the Litigation, not to exceed Two Million Two Hundred Thousand Dollars and no/100 ($2,200,000.00).  Class Counsel shall file a motion for Attorneys' Fees and Costs no earlier than thirty (30) days from the entry of the Preliminary Approval Order by the Court, and no later than fourteen (14) days before the deadline to opt-out or object to the Settlement.  Within thirty (30) days of the Effective Date, the Sonic Defendants shall pay the amount of Attorneys' Fees and Costs awarded by the Court to Lead Class Counsel. Class Counsel shall thereafter, in their sole discretion, fairly and reasonably allocate and distribute the amounts among Plaintiffs' Counsel.  Payment of the awarded fees and costs to Lead

29

Class Counsel, not to exceed Two Million Two Hundred Thousand Dollars and no/100 ($2,200,000.00), shall extinguish all obligations of the Sonic Defendants with respect to Class Counsel's fees and costs.  All and each Class Counsel agree to indemnify and hold harmless the Sonic Defendants from any claims relating to Class Counsel's distribution of these funds or failure to distribute them in any fashion.

     **11.2**    The Sonic Defendants agree not to oppose or object to Class Counsel's Application sought in accordance with this Agreement; provided, however, that the Sonic Defendants' agreement not to oppose or object to Class Counsel's application for Attorneys' Fees and Costs shall not be characterized or construed as Sonic Defendants' belief or agreement that Class Counsel is entitled to an award of up to $2,200,000 or an affirmative endorsement by the Sonic Defendants of the Application.  Class Counsel agree to waive and hereby forego seeking Attorneys' Fees and Costs except as provided for by this Settlement Agreement if a final approval order is entered by the Court.

     **11.3**    The finality, effectiveness, or enforceability of the Settlement Agreement shall not depend upon the Court awarding any particular amount of Attorneys' Fees and Costs, so long as that amount does not exceed Two Million Two Hundred Thousand Dollars and no/100 ($2,200,000.00).  Other than as described in the preceding sentence, no order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any Attorneys' Fees and Costs ordered by the Court to Class Counsel shall affect whether the Final Judgment is final or shall constitute grounds for cancellation or termination of this Settlement Agreement.

**Class Representative Service Awards**

**11.4** Class Counsel intends to apply to the Court for an aggregate award of up to $30,000.00 to be distributed as $10,000.00 to each of the three Class Representatives as Class Representative Service Awards. Class Counsel shall file a motion for Class Representative Service Awards no earlier than thirty (30) days from the entry of the Preliminary Approval Order by the Court, and no later than fourteen (14) days before the deadline to opt-out or object to the Settlement. Such a motion may be supplemented prior to the final approval hearing. The Sonic Defendants agree not to oppose or object to this application.

**11.5** The finality, effectiveness, or enforceability of the Settlement Agreement shall not depend upon the Court awarding any particular amount of Class Representative Service Awards, so long as that amount does not exceed an aggregate total of $30,000.00. Other than as described in the preceding sentence, no order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any Class Representative Service Awards ordered by the Court to the Class Representatives shall affect whether the Final Judgment is final or shall constitute grounds for cancellation or termination of this Settlement Agreement.

## 12. PRELIMINARY APPROVAL

**12.1** Class Counsel shall submit this Settlement Agreement to the Court and file a motion for preliminary approval of the Settlement with the Court requesting entry of a Preliminary Approval Order (substantially in the form of Exhibit 4) requesting, *inter alia*:

**12.1.1** preliminary approval of the Settlement Agreement;

**12.1.2** approval of the Notice Program;

**12.1.3** approval of the Long Form Notice, in substantially the form attached hereto as Exhibit 3;

**12.1.4**  appointment of the Settlement Administrator; and

**12.1.5**  approval of the Claim Form substantially in the form attached hereto as Exhibit 1.

## 13.  FINAL APPROVAL

**13.1**  The final approval hearing shall be scheduled no earlier than ninety (90) days after the notices are made.  In order to comply with CAFA, 28 U.S.C. § 1715, Class Counsel shall file a motion for final approval, which has been submitted to the Sonic Defendants for review in advance of filing, no later than fourteen (14) days before the final approval hearing.

**13.2**  This Settlement Agreement is subject to and conditioned upon the Court's entry of a Final Judgment (substantially in the form of Exhibit 2), which shall, among other things:

**13.2.1**  determine that the Settlement Agreement is fair, adequate, and reasonable;

**13.2.2**  determine that the Notice Program satisfies due process requirements;

**13.2.3**  dismiss with prejudice all claims in the Litigation against the Sonic Defendants;

**13.2.4**  bar and enjoin any Class Members who did not timely opt-out in accordance with the requirements of the Settlement Agreement from asserting any of the Released Claims; and

**13.2.5**  release and forever discharge the Sonic Released Persons from the Plaintiff Released Claims, and the Plaintiff Released Persons from the Sonic Released Claims, as provided for in Paragraphs 6.1 and 6.2 of this Settlement Agreement.

## 14.  CONDITIONS OF SETTLEMENT, CANCELLATION, OR TERMINATION

**14.1**  The Effective Date of the Settlement shall be conditioned on the occurrence of all of the following events:

**14.1.1**  the Court has entered the Final Judgment granting final approval to the Settlement Agreement (among other things) as set forth herein; and

**14.1.2** either (a) thirty (30) days have passed after entry of the Final Judgment (*i.e.*, the Final Judgment is entered as a final judgment) and no appeal is taken after the entry of the Final Judgment and no motion or other pleading has been filed with the Court (or with any other court) seeking to set aside, enjoin, or in any way alter the Final Judgment or to toll the time for appeal of the Final Judgment; or (b) all appeals, requests for reconsideration, rehearing, or other forms of review and potential review of the Final Judgment are exhausted, and the Final Judgment is upheld without any material modification of the terms of this Agreement.

**14.2** If all of the conditions specified in Paragraph 14.1 hereof are not satisfied, the Settlement Agreement shall be deemed terminated and/or canceled unless Class Counsel and the Sonic Defendants' counsel mutually agree in writing to proceed with the Settlement Agreement.

**14.3** If the Settlement Agreement is not approved by the Court in accordance with its terms or the Settlement Agreement is terminated and/or cancelled, then (a) the Parties shall be restored to their respective positions in the Litigation as if the Agreement had never been entered into (and without prejudice to any of the Parties' respective positions on the issue of class decertification, the Court's jurisdiction to preside over a trial, or any other issue in the Litigation); and (b) the terms and provisions of the Settlement Agreement and statements made in connection with seeking approval of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*. The Parties' agreement to the certification of the Class is also without prejudice to any position asserted by the Parties in this or any other proceeding, case, or action, as to which all of their rights are specifically preserved.

14.4    The Settlement Agreement may be terminated and/or cancelled by any of the Parties if (a) the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily approve or finally approve the Settlement Agreement; (b) an appellate court reverses the final approval order and/or Final Judgment, and the Settlement Agreement is not reinstated and finally approved without material change by the Court on remand; or (c) the Court or any reviewing appellate court incorporates material terms or provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the Preliminary Approval Order, Final Approval Order, the Final Judgment, or the Settlement Agreement.

14.5    Notwithstanding any provision of this Settlement Agreement to the contrary, including but not limited to Paragraphs 14.2 and 14.3, and for the avoidance of any doubt, the finality or effectiveness of the Settlement Agreement shall not depend upon the Court awarding any particular amount of Attorneys' Fees and Costs and/or Class Representative Service Awards. No order of the Court, or modification or reversal or appeal of any order of the Court concerning the amount(s) of any Attorneys' Fees and Costs and/or Class Representative Service Awards awarded by the Court to Class Counsel and/or Class Representatives shall affect whether the Final Judgment is final or shall constitute grounds for cancellation and/or termination of this Settlement Agreement.

14.6    The Sonic Defendants shall have the sole discretion to terminate the Settlement Agreement if Class Members that collectively issued more than fifteen percent (15%) of the Alerted-On Payment Cards submit valid requests to opt-out.

## 15.    MISCELLANEOUS PROVISIONS

15.1    **Cooperation**. The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate

and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

**15.2    No Admission**. The Settlement Agreement reflects an agreement to settle claims that are contested and shall not be deemed an admission by any of the Parties as to the merits of any claim or defense.

**15.3    Good Faith and Arm's-Length Negotiations**. The Parties each agree that the Settlement was negotiated in good faith by the Parties, and reflects a Settlement that was reached voluntarily after consultation with competent legal counsel.  The Parties reserve their right to rebut, in a manner that such Party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

**15.4    Modifications to this Agreement**. The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

**15.5    Complete Agreement**. The Parties intend this Settlement Agreement and the exhibits hereto to be a final and complete resolution of all disputes between them with respect to the Litigation, and no representations, warranties, or inducements have been made to any Party concerning the Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in such document.  Except as otherwise provided herein, each Party shall bear its own costs.  This Agreement supersedes all previous agreements made by the Parties.

**15.6    Authorization**. Class Counsel, on behalf of the Class, is expressly authorized by the Class Representatives to take all appropriate actions required or permitted to be taken by the Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf

of the Class that they deem appropriate to carry out the spirit of this Settlement Agreement and to ensure fairness to the Class.

15.7    Each counsel or other person executing the Settlement Agreement on behalf of any Party hereto hereby warrants that such person has the full authority to do so.

15.8    **No Third-Party Beneficiaries**. Except as expressly stated herein in Section 6 of the Agreement with respect to the Sonic Released Persons and the Plaintiff Released Persons, this Agreement is intended for the sole benefit of the Parties, and each of their respective successors, and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

15.9    **Execution in Counterparts**. The Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

15.10   **Successor and Assigns**. The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

15.11   **Court Retains Jurisdiction**. The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Settlement Agreement.

15.12   **Governing Law and Forum**. The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Ohio, and the rights and obligations of the Parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Ohio without giving effect to choice of law principles.

15.13   **Currency**. All dollar amounts are in United States dollars.

**15.14  Continuing Confidentiality**. All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**IN WITNESS WHEREOF**, the Parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

Dated:  April 26, 2022


_____
Craig Cardon
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067

Kari M. Rollins
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10112

David M. Poell
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
70 West Madison Street, 48th Floor
Chicago, Illinois 60602

*Counsel for the Sonic Defendants*


_____
Brian C. Gudmundson
ZIMMERMAN REED LLP
1100 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402

Charles H. Van Horn
BERMAN FINK VAN HORN P.C.
3475 Piedmont Road, NE, Suite 1100
Atlanta, Georgia 30305

*Interim Co-Lead Counsel for Plaintiffs and the Class*

# EXHIBIT 1

**CLAIM FORM**
*In re: Sonic Corp. Customer Data Breach Litigation,*
MDL Case No. 1:17-md-02807-JSG (N.D. Ohio)

**COMPLETE AND SIGN THIS CLAIM FORM AND SUBMIT ONLINE NO LATER THAN [DATE] at:**

**[SETTLEMENT WEBSITE]**

or

**SUBMIT BY MAIL, POSTMARKED NO LATER THAN [DATE], AT:**

**[SETTLEMENT ADMINISTRATOR MAILING ADDRESS]**

Use this Claim Form if your financial institution is a Class Member that is entitled to submit a claim under the Settlement.  See [SETTLEMENT WEBSITE] for more information.

**CLASS MEMBER INFORMATION.**  Please legibly print or type the following information:

Name of Financial Institution/Class Member: _____

Name of Person Filling Out This Form: _____

Your Title at the Financial Institution: _____

Mailing Address: _____

City, State, Zip Code: _____

Daytime Telephone Number: (_____)_____

Email Address (if provided, we will communicate primarily by email about your claim): _____

**CLAIM SUBMITTAL.**  There are two options for you to submit a claim, each of which is described below.  Submit your claim form using only one of the two options.  **Please note that if you choose Option One, your claim may be simpler to prepare and less likely to be audited. If you need assistance or have questions regarding the completion of this Claim Form, please contact [ADMINISTRATOR EMAIL/ PHONE NUMBER].**

**OPTION ONE**

**Materials to Gather to Complete Option One on this Claim Form:** For an issuer of Visa-branded payment cards, the payment account numbers ("PANs") that appeared in a PA or IC CAMS alert in the US-2017-0500 series sent by Visa between October 13, 2017 and August 27, 2018 ("Prior Visa Alert"). For an issuer of MasterCard-branded payment cards, the PANs that appeared in an ADC alert in the ADC004195-US-17 series sent by MasterCard on November 3, 2017 and August 7, 2018 ("Prior MasterCard Alert"). For each PAN you identify that appeared on a Prior Visa Alert or Prior MasterCard Alert, you must also determine: (a) whether your Financial Institution reissued the payment card associated with each PAN **and** the date of such reissuance; (b) whether the payment card associated with each PAN experienced fraudulent charges **and** the date of such fraudulent charges; **and** (c) the first Prior Visa Alert/Prior MasterCard Alert that each identified payment card appeared on. A Prior Alert.

The Settlement Agreement defines "Eligible Alerted-On Payment Card" as An Alerted-On Payment Card that: (i) was originally issued by a Class Member; (ii) was included in a Prior Alert; **and** (iii) incurred fraud and/or was reissued by a Class Member within the four-week period of time after such Alerted-On Payment Card first appeared on a Prior Alert.

Use this Claim Form if your financial institution wants to receive a payment per Eligible Alerted-On Payment Card. If your financial institution seeks to recover Reissuance Payments, please submit the attached "Reissuance Payment Spreadsheet" with this Claim Form. If your financial institution seeks to recover Fraud Payments, please submit the attached "Fraud Payment Spreadsheet" with this Claim Form.

CERTIFICATION OF PAYMENT CARDS. (To determine if your financial institution is eligible for Reissuance Payments and/or Fraud Payments, answer Questions 1 through 6 below.)

    **A.  REISSUANCE PAYMENTS:** $1.00 for each Alerted-On Payment Card that: (i) was originally issued by a Class Member; (ii) was included in a Prior Visa Alert or Prior MasterCard Alert; **and** (iii) was reissued by a Class Member within the four-week period of time after such Alerted-On Payment Card first appeared on a Prior Visa Alert or Prior MasterCard Alert. The amount of Reissuance Payments may be adjusted downward depending on the number of claimants.

    **B.  FRAUD PAYMENTS:** $1.50 for each Alerted-On Payment Card that: (i) was originally issued by a Class Member; (ii) was included in a Prior Visa Alert or Prior MasterCard Alert; **and** (iii) incurred fraud within the four-week period of time after such Alerted-On Payment Card first appeared on a Prior Visa Alert or Prior MasterCard Alert. The amount of Reissuance Payments may be adjusted downward depending on the number of claimants.

    <u>**A Class Member cannot receive a Reissuance Payment and a Fraud Payment for the same Eligible Alerted-On Payment Card. However, any Class Member may submit claims for Reissuance Payments and Fraud Payments for different Eligible Alerted On-Payment Cards, so long as it submits only one claim (whether for a Reissuance Payment or a Fraud Payment) per Eligible Alerted-On Payment Card.**</u>

    **Please answer the following questions to determine your eligibility for a payment of $1.00 or $1.50 per Eligible Alerted-On Payment Card:**

1.    Did you submit a Reissuance Payment Spreadsheet with this Claim Form?

       <u>Yes</u> ☐ (*You could be eligible for Reissuance Payments* (*Proceed to Question 2*)    <u>No</u> ☐ *(You are not eligible for a Reissuance Payment under Option One; Jump to Question 4 or move to Option Two for claim submittal)*

2.    Based on your Reissuance Payment Spreadsheet, did you reissue any Alerted-On Payment Cards within the four-week period of time after such Alerted-On Payment Cards first appeared on a Prior Visa Alert or Prior MasterCard Alert?

       <u>Yes</u> ☐ (*You are eligible for Reissuance Payments* (*Proceed to Question 3*)    <u>No</u> ☐ *(You are not eligible for a Reissuance Payment; Jump to Question 4)*

3.    How many Alerted-On Payment Cards did you reissue within the four-week period of time after such Alerted-On Payment Cards first appeared on a Prior Visa Alert or Prior MasterCard Alert? Insert number here: _____.

       Multiply the above number by $1.00 to determine the total amount of Reissuance Payments you are entitled to receive: $ _____. **Proceed to Question 4.**

4.   Did you submit a Fraud Payment Spreadsheet with this Claim Form?

   <u>Yes</u> ☐ (*You could be eligible for Fraud Payments (Proceed to Question 5)*   <u>No</u> ☐ *(You are not eligible for a Fraud Payment under Option One; either submit your claim with only the Reissuance Payments described above, or move to Option Two for claim submittal)*

5.   Based on your Fraud Payment Spreadsheet, did you issue any Alerted-On Payment Cards that incurred fraud within the four-week period of time after such Alerted-On Payment Cards first appeared on a Prior Visa Alert or Prior MasterCard Alert?

   <u>Yes</u> ☐ (*You are eligible for Fraud Payments (Proceed to Question 6)*   <u>No</u> ☐ *(You are not eligible for a Fraud Payment)*

6.   How many Alerted-On Payment Cards incurred fraud within the four-week period of time after such Alerted-On Payment Cards first appeared on a Prior Visa Alert or Prior MasterCard Alert? Insert number here: _____.

   Multiply the above number by $1.50 to determine the total amount of Fraud Payments you are entitled to receive: $ _____.

## OPTION TWO

Instead of completing the spreadsheets and Option One, you may choose the following option to submit your claim.  To do so, you must attach to this claim form a written explanation, which will be under penalty of perjury as described below, describing the process and methodology you used to determine that you had Eligible Alerted-On Payment Cards and that those cards are eligible for either Reissuance Payments and/or Fraud Payments (but not both for any one card) and an explanation for why those requests meet the qualification criteria.  **Importantly, if you choose Option Two, your claim is more likely to be audited.**

The Settlement Agreement defines "Eligible Alerted-On Payment Card" as An Alerted-On Payment Card that: (i) your Financial Institution originally issued; (ii) was included in a Prior Alert; <u>and</u> (iii) incurred fraud and/or was reissued by a Class Member within the four-week period of time after such Alerted-On Payment Card first appeared on a Prior Alert.

Use this Claim Form if your financial institution wants to receive a payment per Eligible Alerted-On Payment Card.

CERTIFICATION OF PAYMENT CARDS. (To determine if your financial institution is eligible for Reissuance Payments and/or Fraud Payments, answer Questions 1 through 6 below.)

A.   REISSUANCE PAYMENTS: $1.00 for each Alerted-On Payment Card that: (i) your Financial Instiution originally issued; (ii) was included in a Prior Visa Alert or Prior MasterCard Alert; <u>and</u> (iii) your Financial Institution reissued within the four-week period of time after such Alerted-On Payment Card first appeared on a Prior Visa Alert or Prior MasterCard Alert. The amount of Reissuance Payments may be adjusted downward depending on the number of claimants.

B.   FRAUD PAYMENTS: $1.50 for each Alerted-On Payment Card that: (i) your Financial Institution originally issued; (ii) was included in a Prior Visa Alert or Prior MasterCard Alert; <u>and</u> (iii) incurred fraud within the four-week period of time after such Alerted-On Payment Card first appeared on a Prior Visa Alert or Prior MasterCard Alert. The amount of Reissuance Payments may be adjusted downward depending on the number of claimants.

   **<u>A Class Member cannot receive a Reissuance Payment and a Fraud Payment for the same Eligible Alerted-On Payment Card. However, any Class Member may submit claims for Reissuance Payments and Fraud Payments for different Eligible Alerted On-Payment Cards, so long as it submits only one claim (whether for a Reissuance Payment or a Fraud Payment) per Eligible Alerted-On Payment Card.</u>**

**Please answer the following questions to determine your eligibility for a payment of $1.00 or $1.50 per Eligible Alerted-On Payment Card:**

1.  Did you attach to this claim form a written explanation signed under penalty of perjury describing  the process and methodology you used to determine your requests for Reissuance Payments and an explanation for why those requests meet the qualification criteria?

    <u>Yes</u> ☐ (*You could be eligible for Reissuance Payments (Proceed to Question 2)*     <u>No</u> ☐ *(You are not eligible for a Reissuance Payment under Option Two; Jump to Question 4)*

2.  Based on your written explanation and methodology, did you reissue any Alerted-On Payment Cards within the four-week period of time after such Alerted-On Payment Cards first appeared on a Prior Visa Alert or Prior MasterCard Alert?

    <u>Yes</u> ☐ (*You are eligible for Reissuance Payments (Proceed to Question 3)*     <u>No</u> ☐ *(You are not eligible for a Reissuance Payment; Jump to Question 4)*

3.  How many Alerted-On Payment Cards did you reissue within the four-week period of time after such Alerted-On Payment Cards first appeared on a Prior Visa Alert or Prior MasterCard Alert? Insert number here: _____.

    Multiply the above number by $1.00 to determine the total amount of Reissuance Payments you are entitled to receive: $ _____. **Proceed to Question 4.**

4.  Did you attach to this claim form a written explanation signed under penalty of perjury describing the process and methodology you used to determine which of your Alerted-On Payment Cards, if any, qualify for Fraud Payments and an explanation for why those requests meet the qualification criteria?

    <u>Yes</u> ☐ (*You could be eligible for Fraud Payments (Proceed to Question 5)*     <u>No</u> ☐ *(You are not eligible for a Fraud Payment under Option Two)*

5.  Based on your written explanation and methodology, did you issue any Alerted-On Payment Cards that incurred fraud within the four-week period of time after such Alerted-On Payment Cards first appeared on a Prior Visa Alert or Prior MasterCard Alert?

    <u>Yes</u> ☐ (*You are eligible for Fraud Payments (Proceed to Question 6)*     <u>No</u> ☐ *(You are not eligible for a Fraud Payment)*

6.  How many Alerted-On Payment Cards incurred fraud within the four-week period of time after such Alerted-On Payment Cards first appeared on a Prior Visa Alert or Prior MasterCard Alert? Insert number here: _____.

    Multiply the above number by $1.50 to determine the total amount of Fraud Payments you are entitled to receive: $ _____.

**SIGN CLAIM FORM**

By submitting this Claim Form, the above-named Class Member certifies that it is eligible to make a claim in this settlement and that the information provided in this Claim Form and in the attachments thereto is true and correct. The Duly Authorized Representative of the Class Member declares under penalty of perjury under the laws of the United States of America that all statements in this claim form, including any spreadsheet or written explanation accompanying this Claim Form, which are incorporated by reference herein,  are true and correct. The above-named Class Member understands that the claim made in this Claim Form may be subject to audit, verification, and Court review.

_____          _____
Signature of Duly Authorized Representative                Date
of Settlement Class Member

_____          _____
Print Name                                                                  Title

<p style="text-align:center;color:red;">CLAIM FORM SUBMISSION REMINDERS</p>

- You may submit your Claim Form and attachments by mail or through the Settlement website at [SETTLEMENT WEBSITE].

- Please keep a copy of this Claim Form and attachments if submitting by mail.

- Claim Forms and attachments must be submitted through the website by [DATE] or mailed so that they are postmarked by [DATE].

| Reissued Alerted-On Payment Card  (Last five digits of 16-Digit PAN) | Reissuance Date for Alerted-On Card in Column "A" | First Prior Alert Each Card in Column "A" Appeared On (e.g., IC/PA/ADC number) | Date Each Prior Alert in Column "C" Was Issued (e.g., Day, Month, Year) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

| Alerted-On Payment Card with Fraud Charges (Last five digits of 16-Digit PAN) | Date of Fraud for Card in Column "A" | First Prior Alert Each Card in Column "A" Appeared On (e.g., IC/PA/ADC Number) | Date Each Prior Alert in Column "C" Was Issued (e.g., Day, Month, Year) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT CLEVELAND**

|  |  |  |
|---|---|---|
| IN RE: SONIC CORP. CUSTOMER DATA BREACH LITIGATION (Financial Institutions) | ) ) ) ) | MDL Case No. 1:17-md-02807-JSG |
| THIS DOCUMENT RELATES TO ALL FINANCIAL INSTITUTION ACTIONS | ) ) ) ) | |

**[PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT**

The Court, having considered the Class Representatives' Motion for Final Approval (the "Motion") of the settlement (the "Settlement") of the above-captioned case ("the Litigation") pursuant to the Settlement Agreement dated April 26, 2022, between Financial Institution Plaintiffs American Airlines Federal Credit Union, Redstone Federal Credit Union, and Arkansas Federal Credit Union ("Financial Institution Plaintiffs") and Defendants Sonic LLC (f/k/a Sonic Corp.), Sonic Industries Services Inc., Sonic Capital LLC, Sonic Franchising LLC, Sonic Industries LLC, and Sonic Restaurants, Inc. (collectively, the "Sonic Defendants"), having considered all of the submissions and arguments with respect to the Motion, and having held a Fairness Hearing on _____ ___, 2022, finds that:

1. Unless defined herein, all capitalized terms in this Order shall have the respective meanings as defined in the Settlement Agreement.

2. Notice to the Class Members has been provided in accordance with the Court's Preliminary Approval Order, and the substance of, and dissemination program for, the Notice fully complied with the requirements of Federal Rule of Civil Procedure 23(b)(3) and due process,

1

constituted the best notice practicable under the circumstances, and provided due and sufficient notice to the Class.

3.      The Settlement Agreement was the result of arm's-length negotiations conducted in good faith and without collusion by counsel for the Parties.   The Class Representatives and Class Counsel support the Settlement.

4.      The Settlement as set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Certified Class in light of the complexity, expense, and duration of litigation and the risks involved in establishing liability and damages, and in maintaining the class action through trial and appeal.

5.      The Court finds that the consideration to be received under the Settlement Agreement by the Class on the one hand and the Sonic Defendants on the other hand is reasonable, considering the facts and circumstances of the claims and affirmative defenses asserted in the Litigation, and the potential risks and likelihood of success of alternatively pursuing trials on the merits.

6.      The persons listed on Exhibit A hereto are found to have validly excluded themselves from the Settlement in accordance with the provisions of the Settlement Agreement.

7.      It is in the best interests of the Parties, and consistent with principles of judicial economy, that any dispute between any Class Member and Sonic Defendants regarding a Settlement Matter (as defined below) should be presented exclusively to and resolved by this Court.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

8.      The Settlement Agreement is finally approved as fair, reasonable, adequate, and in the best interests of the Certified Class. The Parties are directed to consummate the Settlement

Agreement in accordance with its terms.  The Parties, and Class Members who did not timely exclude themselves from the Certified Class, are bound by the terms and conditions of the Settlement Agreement.

9.     On November 13, 2020, the following Class was certified pursuant to Federal Rule of Civil Procedure 23: All banks, credit unions, and financial institutions in the United States that received notice and took action to reissue credit cards or debit cards or reimbursed a compromised account from any card brand in the Sonic Data Breach ("Certified Class").

10.    The requirements of Rule 23 have been satisfied.  The Certified Class is so numerous that joinder of all members is impracticable; there are at least some questions of law or fact common to the Certified Class, which common questions predominate over any questions affecting only individual members; the claims of the Financial Institution Plaintiffs are typical of the Class Members' claims; and the Financial Institution Plaintiffs have fairly and adequately represented the interests of the Certified Class.

11.    The Court hereby confirms the preliminary appointment of the Financial Institution Plaintiffs as representatives of the Certified Class.  The Class Representatives have fairly and adequately represented the interests of the Certified Class.

12.    The Court hereby confirms the appointment of the following attorneys as Class Counsel: Brian Gudmundson, Zimmerman Reed LLP; and Charles Van Horn, Berman Fink Van Horn P.C.  Class Counsel is experienced in complex class litigation and has fairly and adequately represented the interests of the Certified Class.

13.    The Settlement Administrator is directed to distribute according to the terms of the Settlement Agreement the consideration provided under the Settlement Agreement to Class Members who have submitted Verified Claims.

14.     The Releasing Parties release and forever discharge the Released Parties from the

Released Claims, as set forth below:

> Upon the Effective Date, each Class Member who has not timely opted out of this Settlement, including Financial Institution Plaintiffs, shall be deemed to have, and by operation of this Final Judgment shall have, completely, fully, finally, irrevocably, and forever released, relinquished, and discharged all Released Claims.  Further, upon the Effective Date, and to the fullest extent permitted by law, each Class Member who has not timely opted-out of this Settlement, including Financial Institution Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum based on, relating to, concerning, or arising out of any of the Released Claims. It is the intent of the Parties that this Release shall not be considered, interpreted, or construed to prevent Class Members from pursuing claims related to the Data Breach against any person or entity that is not a "Released Person" as that term is defined in the Settlement Agreement.

> "Released Claims" means any and all claims, rights, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature, and character, known and unknown, including without limitation, negligence, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of confidence, invasion of privacy, misrepresentation (whether fraudulent, negligent, or innocent), unjust enrichment, bailment, wantonness, failure to provide adequate notice pursuant to any breach notification statute or common law duty, any federal, state, or local statutory or regulatory claims, including, but not limited to, pursuant to consumer protection laws, unfair and deceptive trade practice laws, and further including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees, costs, and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that any Class Member has, has asserted, could have asserted, or could assert against any of the Released Persons based on, relating to, concerning, or arising out of the Data Breach (including, but not limited to, the costs of reissuing payment cards or reimbursing individuals for fraudulent charges) or the allegations, facts, or circumstances described in the Litigation. Released Claims shall also include Unknown Claims, as that term is defined in the Settlement Agreement.

15.     Financial Institution Plaintiffs and members of the Certified Class are permanently

enjoined and barred from commencing, prosecuting, or otherwise litigating, in whole or in part,

either directly, representatively, derivatively, or in any other capacity, whether by a complaint,

counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency or other authority or forum wherever located, any  Released Claims.  Any person or entity that knowingly violates such injunction shall pay the reasonable costs and attorneys' fees incurred by the other party as a result of such violation.

16.      The Court hereby awards Class Counsel $_____ for attorneys' fees plus $_____ for reimbursement of their litigation costs and expenses.  The Court finds this award of attorneys' fees, costs and expenses fair and reasonable.

17.      The Court hereby approves the following service awards to each of the three (3) Class Representatives in the amounts set forth below:

(a)      $_____ for Financial Institution Plaintiff American Airlines Federal Credit Union, who prosecuted this action on behalf of the Certified Class, attended court hearings, answered discovery, appeared for a deposition, and assisted with the resolution of this matter;

(b)      $_____ for Financial Institution Plaintiff Redstone Federal Credit Union, who prosecuted this action on behalf of the Certified Class, attended court hearings, answered discovery, appeared for a deposition, and assisted with the resolution of this matter; and

(c)      $_____ for Financial Institution Plaintiff Arkansas Federal Credit Union, who prosecuted this action on behalf of the Certified Class, attended court hearings, answered discovery, appeared for a deposition, and assisted with resolution of this matter.

The Court finds the service awards are fair and reasonable.

18.     Without affecting the finality of this judgment, the Court retains exclusive jurisdiction over the Settlement Agreement and all matters, disputes, claims or defenses arising out of or related in any way to the Settlement Agreement, including without limitation its applicability, administration, and consummation (collectively, "Settlement Matters").  The Court also retains exclusive jurisdiction as to any Settlement Matters over Financial Institution Plaintiffs, members of the Certified Class, and the Sonic Defendants, each of whom are hereby deemed to have submitted irrevocably to the exclusive jurisdiction of this Court with regard to all Settlement Matters and to have waived any defenses based on personal jurisdiction, venue, or that the forum is inconvenient.  Without limiting the generality of the foregoing, any dispute arising out of or related in any way to the Settlement Agreement, including, but not limited to, any suit, action, arbitration, or other proceeding by a Class Member in which the provisions of the Settlement Agreement are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a Settlement Matter.

19.     The Settlement Agreement and the proceedings taken and statements made pursuant to the Settlement Agreement or papers filed seeking approval of the Settlement Agreement, and this Order, are not and shall not in any event be construed as, offered in evidence as, received in evidence as, and/or deemed to be evidence of a presumption, concession, or an admission of any kind by any of the Parties of: (i) the truth of any fact alleged or the validity of any claim or defense that has been, could have been, or in the future might be asserted in the Litigation, any other litigation, court of law or equity, proceeding, arbitration, tribunal, investigation, government action, administrative proceeding, or other forum; or (ii) any liability, responsibility, fault, wrongdoing, or otherwise.  The Sonic Defendants have denied and continue to deny the claims asserted by the Financial Institution Plaintiffs.  The Court makes no finding as

to the merits of the claims the Financial Institution Plaintiffs and Certified Class assert. Nothing contained herein shall be construed to prevent a party from offering the Settlement Agreement into evidence for the purposes of enforcing its terms.

20. In the event that the Settlement Agreement is terminated pursuant to its terms or the Court's approval of the Settlement is reversed, vacated, or modified in any material respect by this or any other Court, the Litigation shall proceed and no reference to this Settlement Agreement, or any documents, communications, or negotiations related in any way hereto shall be made for any purpose.

21. The Action is hereby **DISMISSED WITH PREJUDICE** and without costs. This judgment has been entered without any admission by the Sonic Defendants as to the merits of any of Financial Institution Plaintiffs' allegations in the Litigation.

22. The Court directs the Clerk to enter final judgment.

**SO ORDERED.**


Dated: _____          _____
                                         Hon. James S. Gwin
                                         United States District Court Judge

# EXHIBIT 3

<u>UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO</u>

# If your financial institution issued credit or debit cards or reimbursed compromised accounts as a result of the third-party cyberattack Sonic announced in 2017, it may be eligible for a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A settlement has been proposed in a class action lawsuit against Sonic LLC (f/k/a Sonic Corp.), Sonic Industries Services Inc., Sonic Capital LLC, Sonic Franchising LLC, Sonic Industries LLC, and Sonic Restaurants, Inc.[1] (collectively, "the Sonic Defendants") regarding the third-party cyberattack targeting the point-of-sale systems of Sonic Drive-Ins believed to have occurred from April 7, 2017 through October 28, 2017 (the "Data Breach").

- The lawsuit, called *In re: Sonic Corp. Customer Data Breach Litigation – Financial Institutions Track*, MDL Case No. 1:17-md-02807-JSG (N.D. Ohio), alleges that the Sonic Defendants are legally responsible for the Data Breach and asserts claims for negligence and negligence per se.  The Sonic Defendants deny these allegations.

- Plaintiffs brought the action as a class action on behalf of themselves and other similarly situated financial institutions allegedly affected by the Data Breach.

- If the Settlement becomes effective, the Sonic Defendants will pay, on a claims-made basis, up to $3,000,000 to fund distributions to those financial institutions who submit timely and valid claims, are covered by the Settlement, and do not exclude themselves from the Settlement.

- Your financial institution is receiving this notice because it may be one of the financial institutions covered by the Settlement.

***Your financial institution's legal rights will be affected, whether it acts or not, if it is covered by the Settlement and the Settlement becomes effective. Read this notice carefully.***

| YOUR FINANCIAL INSTITUTION'S LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | If your financial institution is covered by the Settlement, does not ask to be excluded, and submits a valid claim, it will receive a cash payment if the Settlement becomes effective. Submitting a claim is the only way for covered financial institutions to receive a payment as part of the Settlement. |
| **EXCLUDE YOURSELF** | If your financial institution asks to be excluded from the Settlement, it will not receive a cash payment but may still be able to file its own lawsuit against the Sonic Defendants for the Data Breach.  If the Settlement becomes effective, excluding your financial institution from the Settlement is the only option that allows it to file or be part of another lawsuit against the Sonic Defendants concerning the claims being resolved by the Settlement. |
| **OBJECT** | If your financial institution is covered by the Settlement and does not ask to be excluded, it can file an objection telling the court in charge of the litigation why it doesn't like the Settlement. It can also ask to speak in court about its objection(s) to the Settlement. |
| **DO NOTHING** | If your financial institution is covered by the Settlement and does nothing, it will not receive a cash payment and, if the Settlement becomes effective, it will give up its rights to be part of any other lawsuit against the Sonic Defendants concerning the claims being resolved in the Settlement. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The court in charge of the litigation still needs to decide whether to approve the Settlement.  Payments otherwise due under the Settlement will not be made unless and until that court approves the Settlement and any appeals from that

---

[1] Sonic Restaurants, Inc. became an LLC in 2019 and subsequently merged into Sonic Industries Services Inc. in 2021.

court's approval are resolved in a way that upholds the Settlement, whereupon the Settlement will become effective. Please be patient.

## BASIC INFORMATION

### 1. Why did I get this notice package?

Your financial institution may have issued payment cards included in one or more of the alerts sent out by Visa, MasterCard, or Discover relating to the Sonic Data Breach and thus may be a member of the group of financial institutions covered by the Settlement.

The court in charge of the litigation is the United States District Court for the Northern District of Ohio (the "Court") and the litigation is known as *In re: Sonic Corp. Customer Data Breach Litigation – Financial Institutions Track*, MDL Case No. 1:17-md-02807-JSG.  The financial institutions who are pursuing the litigation, American Airlines Federal Credit Union, Redstone Federal Credit Union, and Arkansas Federal Credit Union, are the "Plaintiffs."  The companies the Plaintiffs are suing, Sonic LLC (f/k/a Sonic Corp.), Sonic Industries Services Inc., Sonic Capital LLC, Sonic Franchising LLC, Sonic Industries LLC, and Sonic Restaurants, Inc. are the defendants.

The Court authorized this notice because, if your financial institution is covered by the Settlement, you have a right to know about the proposed settlement of the litigation and about all of your options with respect to that settlement before the Court decides whether to approve it.  If the Court approves the Settlement and any appeals from such approval are resolved such that the approval is fully upheld, the Settlement will become effective and KCC Class Action Services, LLC, the settlement administrator appointed by the Court with responsibility for class notice and claims administration (the "Settlement Administrator"), will distribute any cash payments that are due under the Settlement.

This package explains the lawsuit, the Settlement, your financial institution's legal rights, what benefits are available, who is eligible for them, and how to get them.

### 2. What is the lawsuit about?

Plaintiffs allege that, between April 7, 2017 and October 28, 2017, hackers targeted point-of-sale systems with inadequate security precautions at certain Sonic drive-in restaurants, enabling the hackers to steal payment card data when customers used their credit or debit cards.  The Sonic Defendants deny the allegations in their entirety and assert that they had adequate safeguards in place.

The Sonic Defendants deny any wrongdoing or that they were negligent in any way.  No court or other entity has made any judgment or other determination as to any wrongdoing or negligence by the Sonic Defendants.

### 3. Why is this a class action?

In a class action, one or more entities called "Class Representatives" sue on behalf of themselves and other entities with similar claims arising from the matter at issue.  All of these entities together are the "Class" or "Class Members."  Here, by bringing the lawsuit as a class action, Plaintiffs, as Class Representatives, seek to have the Court resolve both their own claims and the claims of other financial institutions against the Sonic Defendants arising from the Data Breach.

### 4. Why is there a settlement?

The Court has not decided in favor of Plaintiffs or the Sonic Defendants.  Instead, both sides agreed to a settlement. Settlements of class actions avoid the costs and uncertainty of a trial and related appeals, while providing benefits to members of the Class.  Plaintiffs and their attorneys think the Settlement is best for all Class Members (as defined under Question 5 below).

## WHO IS PART OF THE SETTLEMENT

### 5. How do I know if my financial institution is covered by the Settlement?

Your financial institution is a "Class Member" and covered by the Settlement if:

- It is a bank, credit union, or financial institution in the United States that received notice and took action to reissue credit cards or debit cards or reimbursed a compromised account in the Sonic Data Breach.

**Questions? Call [TOLL-FREE NUMBER] or visit [SETTLEMENT WEBSITE]**

### 6. I'm still not sure if my financial institution is part of the Settlement.

If you are still not sure whether your financial institution is covered by the Settlement, you can ask for free help from the attorneys representing the Class ("Class Counsel," *see* Question 16).  You can also call [TOLL-FREE NUMBER] or visit [SETTLEMENT WEBSITE] for more information.

## THE SETTLEMENT BENEFITS

### 7. What does the Settlement provide?

If the Settlement becomes effective, the Sonic Defendants will pay up to $5,730,000, of which up to $3,000,000 will be used to pay Class Members who submit valid Claim Forms, up to $500,000 will be used to pay for the Costs of Settlement Administration, up to $2,200,000 will be used to pay attorney's fees and costs, and $30,000 will be used to pay Service Awards to the Class Representatives.

### 8. How much will my financial institution's payment be?

If the Settlement becomes effective, Class Members that submit a valid Claim Form will receive $1.00 for each Eligible Alerted-On Payment Card they reissued ("Reissuance Payment") and/or $1.50 for each Eligible Alerted-On Payment Card that experienced fraud during the four week window following those cards' first appearance on a Card Brand Alert (as identified in the definition of Eligible Alerted-On Payment Card) ("Fraud Payment").  However, for any Eligible Alerted-On Payment Card that was reissued <u>and</u> experienced fraud during the applicable window, the Class Member must select either a Reissuance Payment or a Fraud Payment for such Eligible Alerted-On Payment Card.  A Class Member cannot receive a Reissuance Payment and a Fraud Payment for the same Eligible Alerted-On Payment Card, though any Class Member may submit claims for Reissuance Payments and Fraud Payments so long as it is only one per Eligible Alerted-On Payment.

An Eligible Alerted-On Payment Card is a credit card or debit card payment account number that was identified by Visa, MasterCard, Discover, or another card brand in a Prior Alert in the US-2017-0500 series (in the case of Visa), or in a Prior Alert in the ADC004195-US-17 series (in the case of MasterCard) and incurred fraud and/or was reissued within the four-week period of time after such Alerted-On Payment Card first appeared on a Prior Alert.  For a Visa-branded Alerted-On Payment Card Account, a Prior Alert is a PA or IC CAMS alert in the US-2017-0500 series sent by Visa between October 13, 2017 and August 27, 2018.  For a MasterCard-branded Alerted-On Payment Card Account, a Prior Alert is an ADC alert in the ADC004195-US-17 series sent by MasterCard on November 3, 2017 and August 7, 2018.

## HOW TO GET A PAYMENT – SUBMITTING A CLAIM FORM

### 9. How can my financial institution get a payment?

To qualify for a payment, your financial institution must complete and submit a valid Claim Form.  The Claim Form is attached to this Notice and you can also get the Claim Form at [SETTLEMENT WEBSITE].  Read the Claim Form carefully, include all information the form asks for, sign it, and submit it through [SETTLEMENT WEBSITE] by [DATE] or mail it postmarked no later than [DATE] to the Settlement Administrator at [ADDRESS].  The Settlement Administrator will review your financial institution's Claim Form to determine whether it is valid and, if so, to determine the amount of your financial institution's payment.

### 10. When would my financial institution get its payment?

Payments to Class Members will be made after the claims validation process is complete, the Settlement is finally approved by the Court, any appeals from the Court's approval have been completed and have been resolved in a way that upholds the Settlement, and the Settlement thereby has become effective.  The Court will hold a hearing on [DATE] to decide whether to approve the Settlement.  If the Court approves the Settlement, there may be appeals, which could take more than a year to resolve.  You may visit [SETTLEMENT WEBSITE] for updates on the progress of the Settlement.  Please be patient.

### 11.  What is my financial institution giving up to get a payment or remain in the Class?

If your financial institution is covered by the Settlement and the Settlement becomes effective, and unless your financial institution excludes itself from the Settlement, it can't sue the Sonic Defendants or be part of any other lawsuit against the Sonic Defendants concerning the issues this Settlement resolves.  Unless your financial institution excludes itself, all of the decisions by the Court related to the Settlement will bind your financial institution.  The specific claims against the Sonic

Questions? Call [TOLL-FREE NUMBER] or visit [SETTLEMENT WEBSITE]

2

Defendants that your financial institution will release in the event it does not exclude itself and the Settlement becomes effective are described in Section 6 of the Settlement Agreement and Release. The Settlement Agreement and Release is available at [SETTLEMENT WEBSITE].

The Settlement Agreement and Release describes the released claims with specific language so read it carefully. If you have any questions about what this language means, you can talk to the law firms listed in Question 15 for free or you can, of course, talk to your financial institution's own lawyer.

If your financial institution wants to keep its right to sue the Sonic Defendants based on claims this Settlement resolves, it must take steps to be excluded from the Class (*see* Questions 13–15).

## EXCLUDING YOUR FINANCIAL INSTITUTION FROM THE SETTLEMENT

### 12. How can my financial institution ask to be excluded from the Settlement?

If your financial institution is covered by the Settlement and wishes to be excluded from or "opt out" of the Settlement, your financial institution must send a "Request for Exclusion" by U.S. Mail that includes the information below. If it fails to include this information, the Request for Exclusion will be ineffective and your financial institution will be bound by the settlement, including all releases, if the settlement becomes effective.

- The name of this proceeding, *In re: Sonic Corp. Customer Data Breach Litigation – Financial Institutions Track*;

- The name and address of the financial institution;

- The words "Request for Exclusion" at the top of the document or a statement in the body of the letter requesting exclusion from the Class;

- The number of Alerted-On Payment Card Accounts that your financial institution issued; and

- The name, address, email address, telephone number, position, and signature of the employee authorized to make such decisions for the financial institution.

Your financial institution must mail the Request for Exclusion, postmarked no later than [DATE], to:

[SETTLEMENT ADMINISTRATOR]

If your financial institution sends an effective Request for Exclusion, it will not receive any payment as part of the Settlement, cannot object to the Settlement, and will not be legally bound by anything that happens in the lawsuit. It may be able to sue the Sonic Defendants for the Released Claims in the future. If your financial institution both objects to the Settlement and sends an effective Request for Exclusion, it will be deemed to have excluded itself from the Settlement and its objection will not be entertained by the Court.

### 13. If my financial institution doesn't exclude itself, can it sue the Sonic Defendants for the same thing later?

No. If your financial institution is covered by the Settlement and doesn't ask to be excluded from the Settlement, it gives up any right to sue the Sonic Defendants for the claims that the Settlement resolves, as further detailed in the Settlement Agreement and Release, if the Settlement becomes effective. If your financial institution has a pending lawsuit, it should speak to its lawyer immediately to assess whether it should exclude itself from the settlement and continue its own lawsuit. Remember, the exclusion deadline is [DATE].

### 14. If my financial institution excludes itself, can it get money from this Settlement?

No. If your financial institution excludes itself from the Settlement, it will not receive any payment as part of the Settlement. If your financial institute excludes itself, do not send in a Claim Form asking for payment.

## THE LAWYERS REPRESENTING YOUR FINANCIAL INSTITUTION

### 15. Does my financial institution have a lawyer in the lawsuit?

Yes. The Court appointed Brian Gudmundson of Zimmerman Reed LLP and Charles Van Horn of Berman Fink Van Horn P.C. as "Class Counsel" to represent your financial institution and other Class Members in the lawsuit. Your financial institution will not be charged for these lawyers. If your financial institution wants to be represented by its own lawyer, it may hire one at its own expense.

**Questions? Call [TOLL-FREE NUMBER] or visit [SETTLEMENT WEBSITE]**

**16. How will the lawyers be paid?**

The Class Representatives will ask the Court to approve attorneys' fees, costs, and expenses for Class Counsel and for service awards for the Class Representatives.  Service awards are compensation to the Class Representatives for their efforts in pursuing the lawsuit, producing documents, and providing testimony on behalf of the Class.  The Court will decide the total amount of attorneys' fees, costs, and expenses and service awards to be approved.  These amounts, up to a combined total of $2,230,000, will not reduce the amount of money available to the Class.

## OBJECTING TO THE SETTLEMENT

**17.  How does my financial institution tell the Court that it doesn't like the Settlement?**

If your financial institution is a Class Member, it can object to the Settlement if it disagrees with any aspect of the Settlement.  Your financial institution can, in its objection, give reasons why it thinks the Court should not approve the Settlement.  The Court will consider its views.

Your financial institution's objection must be in writing and must include:

- the name of this proceeding, *In re: Sonic Corp. Customer Data Breach Litigation – Financial Institutions Track*;

- your financial institution's name, current address, telephone number, and email address (if any) of the financial institution's point of contact;

- a statement that the financial institution's point of contact has authority to object on its behalf, including an attestation that the financial institution issued an Eligible Alerted-On Card;

- a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable;

- the identity of all counsel representing the objector, if any;

- a statement of whether a representative of your financial institution or the financial institution's counsel intends to appear and argue at the Final Approval Hearing (*see* Question 19), including a statement identifying any person who will be called to testify at the final approval hearing in support of the objection;

- a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last three years;

- a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last three years; and

- the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation).

Any objection must filed with the Court and mailed to Class Counsel and Defense Counsel, postmarked no later than [DATE]:

| Court | Class Counsel | Defense Counsel |
|---|---|---|
| Clerk of the Court<br>USDC, Northern District of Ohio<br>Carl B. Stokes U.S. Court House<br>801 West Superior Avenue<br>Cleveland, OH 44113 | Brian C. Gudmundson<br>ZIMMERMAN REED LLP<br>1100 IDS Center, 80 South 8th St<br>Minneapolis, MN 55402 | David M. Poell<br>SHEPPARD MULLIN RICHTER &<br>HAMPTON LLP<br>70 West Madison Street, 48th Floor<br>Chicago, IL 60602 |

**18. What's the difference between objecting and excluding/opting out?**

Objecting is simply telling the Court that your financial institution doesn't like something about the Settlement.  Your financial institution can object to the Settlement only if it is a Class Member and does not exclude itself from the Class.  Exclusion from or "opting out" of the Settlement is telling the Court that the financial institution doesn't want to be included in the Settlement.  If your financial institution excludes itself, it will have no basis to object to the Settlement because it is no longer affected by the Settlement.

**Questions? Call [TOLL-FREE NUMBER] or visit [SETTLEMENT WEBSITE]**

4

### THE COURT'S FINAL APPROVAL HEARING

**19.  When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Approval Hearing at [TIME] on [DATE] in Courtroom _____ before Judge James S. Gwin of the United States District Court for the Northern District of Ohio, located at the Carl B. Stokes U.S. Court House, 801 West Superior Avenue, Cleveland, Ohio 44113.  This hearing date and time may be moved.  Please refer to the Settlement Website ([SETTLEMENT WEBSITE]) for notice of any changes.

At the Final Approval Hearing, the Court will consider whether to approve the Settlement.  If there are objections, the Court will consider them.  The Court will listen to people who appear at the hearing (*see* Question 17).  At the Final Approval Hearing the Court may also consider whether to approve the request for Class Counsel fees and expenses and the service awards to the Class Representatives (*see* Question 16).  At or after the Final Approval Hearing, the Court will decide whether to approve the Settlement.  It is not known how long these decisions will take.

**20. Does my financial institution have to attend the hearing?**

No.  Class Counsel will answer questions the Court may have.  Your financial institution may, however, send a representative at its own expense.  If your financial institution submits an objection, it does not need to send a representative to come to the Court.  As long as it submitted its objection on time and in the proper form, the Court will consider it.  Your financial institution may also pay its own lawyer to attend, but it is not necessary.

### IF YOU DO NOTHING

**21. What happens if my financial institution does nothing in response to this notice?**

If your financial institution is a Class Member and it does nothing, it will remain a part of the Class but will not receive any payments from the Settlement.  It will no longer be able to bring any action against the Sonic Defendants concerning the claims being resolved through this Settlement if the Settlement becomes effective.

### GETTING MORE INFORMATION

**22. How do I get more information?**

This notice summarizes the Settlement.  More details are in the Settlement Agreement and Release, which is available at [SETTLEMENT WEBSITE].

**Questions? Call [TOLL-FREE NUMBER] or visit [SETTLEMENT WEBSITE]**

5

# EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION AT CLEVELAND

|  |  |  |
|---|---|---|
| | ) | |
| IN RE: SONIC CORP. CUSTOMER DATA | ) | MDL Case No. 1:17-md-02807-JSG |
| BREACH LITIGATION | ) | |
| (Financial Institutions) | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO ALL | ) | |
| FINANCIAL INSTITUTION ACTIONS | ) | |
| | ) | |

## [PROPOSED] PRELIMINARY APPROVAL ORDER

The matter before the Court is the motion of Financial Institution Plaintiffs American Airlines Federal Credit Union, Redstone Federal Credit Union, and Arkansas Federal Credit Union ("Financial Institution Plaintiffs"), for preliminary approval of a proposed class action settlement with Defendants Sonic LLC (f/k/a Sonic Corp.), Sonic Industries Services Inc., Sonic Capital LLC, Sonic Franchising LLC, Sonic Industries LLC, and Sonic Restaurants, Inc. (collectively, the "Sonic Defendants"), on behalf of a Certified Class.  The proposed Settlement would resolve all of the claims asserted by Financial Institution Plaintiffs and members of the Certified Class in this action against the Sonic Defendants (the "Litigation").

This matter has been resolved by compromise as a result of good faith, arm's-length settlement negotiations over the course of several months, including three full-day mediation sessions before the Honorable Jonathan D. Greenberg on January 31, 2022, February 1, 2022, and February 2, 2022 (the "Mediation").  Financial Institution Plaintiffs and the Sonic Defendants (collectively, the "Parties"), through their respective counsel, have executed and filed with this Court a Settlement Agreement that resolves this Litigation and all claims alleged therein.  The Court, having been made aware of content of the Mediation, reviewed the Settlement Agreement,

1

including the exhibits thereto, and considered the briefing submitted in support of the unopposed motion and the arguments of counsel thereon, finds that the terms of the proposed Settlement are fair, reasonable and adequate to the Financial Institution Plaintiffs and the Certified Class and that the interests of fairness, consistency, and efficiency are well served by a single class settlement. The Court therefore hereby GRANTS the preliminary approval motion and ORDERS as follows.

1.      Except as otherwise stated, this Order incorporates the defined terms set forth in the Settlement Agreement.

2.      On November 13, 2020, this Court certified the following Class, pursuant to Federal Rule of Civil Procedure 23(b)(3): All banks, credit unions, and financial institutions in the United States that received notice and took action to reissue credit cards or debit cards or reimbursed a compromised account from any card brand in the Sonic Data Breach (the "Certified Class").

3.      With respect to the Certified Class, the Court has found that: (i) the members of the Certified Class are so numerous that joinder of all Class Members in this action would be impracticable; (ii) there are questions of law and fact common to the Certified Class that predominate over individual questions, including whether Sonic Defendants failed to take adequate security measures to protect the cardholder data of the Class Member's customers, whether the Sonic Defendants were negligent, whether Financial Institution Plaintiffs and Class Members are entitled to injunctive/declaratory relief, and whether Financial Institution Plaintiffs and Class Members are entitled to, and the proper amount of, damages; (iii) the claims of the Financial Institution Plaintiffs are typical of the claims of the Certified Class, and Financial Institution Plaintiffs do not have any conflicts of interest with the other members of the Certified Class; (iv) Financial Institution Plaintiffs and Class Counsel can fairly and adequately represent and protect the interests of the Class Members, as shown by their extensive investigation, vigorous

prosecution of this Litigation, and services performed to date; and (v) a class action is superior to other available methods for the fair and efficient adjudication of the controversy as it relates to the proposed Settlement, considering the interests of the Class Members in individually controlling the prosecution of separate actions, the extent and nature of any litigation concerning the controversy already commenced by Class Members, the desirability or undesirability of continuing the Litigation of these claims in this forum, and the difficulties likely to be encountered in the management of a class action.

4.       The Settlement, on the terms and conditions set forth in the Settlement Agreement, is preliminarily approved by this Court as being fair, reasonable, adequate, and within the range of possible final judicial approval.  The Court finds that the Settlement resulted from arm's-length negotiations conducted in good faith by the Parties in a Mediation before Magistrate Judge Jonathan D. Greenberg, and reflects a settlement that was reached voluntarily after consultation with experienced legal counsel.

5.       The Court has found that the Class Representatives are able to fairly and adequately represent the Certified Class and appointed Financial Institution Plaintiffs as the Class Representatives for the Certified Class.  The Class Representatives have diligently prosecuted this Litigation.

6.       The Court appointed the following attorneys as "Class Counsel" on November 13, 2020: Brian Gudmundson, Zimmerman Reed LLP; and Charles Van Horn, Berman Fink Van Horn P.C., finding that these attorneys are able to fairly and adequately represent the Certified Class. Class Counsel have competently represented the Class Representatives and Certified Class in this matter.

7.     The Court preliminarily approves the monetary relief to the Class Members provided in the Settlement Agreement, with the Court finding that this relief is within the range of fairness, reasonableness and adequacy.

8.     The Court approves the Notice Program set forth in the Settlement Agreement, as well as the Notices attached as Exhibit C (Long Form Notice) and Exhibit D (Website Notice) thereto.  The Court finds that the Notices collectively provide a sufficiently clear and concise description of the Litigation, the Settlement terms, and the rights and responsibilities of the Class Members.  The Court further finds that the plan for dissemination of the Notices by the following methods: (i) mailing the Long Form Notice and Claim Form to the updated addresses of the Class Members; and (ii) posting the Long Form Notice and Claim Form to the Settlement Website as set forth in the Settlement Agreement, is the best means practicable, and is reasonably calculated to apprise the Class Members of the Litigation and their right to participate in, object to, or exclude themselves from the Settlement.  Accordingly, the Parties and their counsel are directed to disseminate the Notices pursuant to the terms of the Settlement Agreement.

9.     The Court approves the Claim Form attached to the Settlement Agreement as Exhibit B.

10.     The Court approves and appoints KCC LLC as the Settlement Administrator and directs them to perform the duties set forth in the Settlement Agreement.  All costs and expenses incurred by the Settlement Administrator in connection with disseminating the notice and administering the Settlement shall be paid as set forth in the Settlement Agreement. .

11.     The Court will conduct a final approval hearing, at which time it will consider any objections to the Settlement Agreement and determine whether the Settlement Agreement should be finally approved.  The final approval hearing will take place on _____ ___, 2022

at _____ \_.m.  Class Counsel shall file their motion for final approval of the Settlement no later than fourteen (14) days prior to the final approval hearing.

12.     Class Counsel shall file their preliminary motions for an award of Attorneys' Fees and Costs, and for Service Awards to the Representative Plaintiffs as Class Representatives, no earlier than thirty (30) days after entry of the Preliminary Approval Order by the Court, and no later than fourteen (14) days prior to the deadline for submission of Requests for Exclusion and Objections.  These motions may be supplemented prior to the final approval hearing, and the Court will rule upon the motions at the final approval hearing.  All such awards shall be paid as set forth in the Settlement Agreement. .

13.     Any Class Member who intends to object to the fairness, reasonableness, or adequacy of the Settlement, the proposed Attorneys' Fees and Costs, and/or the proposed Service Awards, must deliver to David M. Poell of Sheppard Mullin Richter & Hampton LLP as counsel for the Sonic Defendants, and to Brian C. Gudmundson of Zimmerman Reed LLP as Class Counsel, and file with the Court, a written statement of the objections, as well as the specific reasons for each objection.  Any objection must also set forth: (a) the objector's name,  current address, telephone number, and email address (if any) of the objector's point of contact; (b) a statement that the objector's point of contact has authority to object on behalf of a Class Member, including an attestation that it issued an Eligible Alerted-On Card; (c) a written statement of all grounds for the objection, accompanied by any evidence or legal support for the objection the objector believes applicable; (d) the identity of all counsel representing the objector, if any; (e) a written statement indicating whether it intends to appear and/or testify at the final approval hearing and the identity of all counsel, if any, representing the objector who will appear at the final approval hearing; (f) a statement identifying any person who will be called to testify at the final

approval hearing in support of the objection; (g) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative; (h) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last three (3) years; and (i) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last three (3) years.

14.    All objections must be filed with the Court and delivered to counsel for Defendants and Class Counsel no later than one hundred twenty (120) days after entry of this order.  Objections must be delivered to the Court, Class Counsel, and the Sonic Defendants' counsel at the addresses listed below:

Court:

Clerk of the Court
U.S. District Court for the Northern District of Ohio
Carl B. Stokes United States Court House
801 West Superior Avenue
Cleveland, Ohio 44113

Class Counsel:

Brian C. Gudmundson
Zimmerman Reed LLP
1100 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402

The Sonic Defendants' Counsel:

David M. Poell
Sheppard Mullin Richter & Hampton LLP
70 West Madison Street, 48th Floor
Chicago, Illinois 60602

No person will be entitled to be heard at the final approval hearing, and no written objections will be received or considered by this Court at the final approval hearing, unless all pertinent terms and conditions set forth above and in the Class Notice have been fully met.  If an objection is overruled, the objecting Class Member will be bound by the terms of the Settlement and may not exclude him/herself later.

15.     Any person who elects to opt out of the Certified Class shall not: (1) be bound by any orders entered in this Litigation, including, but not limited to, any final order approving the Settlement; (2) be entitled to relief under the Settlement Agreement; (3) gain any rights by virtue of the Settlement Agreement; and (4) be entitled to object to any aspect of the Settlement Agreement.  No person may opt out of the Certified Class through a so-called "mass" or "class" opt-out.

16.     Any Class Member who wishes to be excluded from the Settlement must fully comply with all pertinent terms and conditions set forth in the Long Form Notice.  All Requests for Exclusion must be postmarked no later than one hundred twenty (120) days after entry of this order.  Class Members who submit a timely and valid Request for Exclusion will have no rights under the Settlement Agreement, will not share in the distribution of any Settlement proceeds, and will not be bound by the Settlement Agreement. Any Class Member who does not submit a timely and valid Request for Exclusion shall be bound by all terms of the Settlement Agreement and any final order approving the Settlement.

17.     No later than fourteen (14) days after the deadline for submission of Claim Forms, the Settlement Administrator shall provide a declaration to Class Counsel and the Sonic Defendants' counsel attesting to the measures taken to provide the notice to the Class Members

pursuant to the Notice Program, and the information pertaining to claims and requests for exclusion as set forth in the Settlement Agreement.

18.     In the event this Court does not finally approve the Settlement Agreement, any and all rights of the Parties existing prior to the execution of the Settlement Agreement shall be preserved and the Litigation shall proceed in all respects as if the Settlement Agreement and any related orders had not been entered.   In such an event, none of the terms of the Settlement Agreement shall be admissible in any trial or otherwise used against any Party, except to enforce the terms thereof that relate to the Parties' obligations in the event of termination.  Any Settlement-related funds the Sonic Defendants transferred to the Settlement Administrator shall be returned to the Sonic Defendants, less notice and administrative expenses actually incurred by the Settlement Administrator (as to which the Sonic Defendants shall have no right of reimbursement from any person, including the Settlement Administrator, Financial Institution Plaintiffs, or Class Counsel).

19.     For the benefit of the Class Members and as provided in the Settlement Agreement, this Court retains continuing jurisdiction over the implementation, interpretation, and enforcement of the Settlement Agreement.

20.     The Parties are directed to carry out their obligations under the Settlement Agreement.

**Summary of Applicable Dates**

| | | |
|---|---|---|
| 1. | Notice Deadline | No later than thirty (30) calendar days after entry of this Order |
| 2. | Deadline for Class Counsel to move for attorneys' fees and expenses and for Class Representative Service Awards | No earlier than thirty (30) days after entry of this Order and no later than fourteen (14) days before the deadline to opt out or object. |
| 3. | Deadline for Class Members to Opt Out or Object | No later than ninety (90) calendar days after the Notice Deadline |
| 4. | Deadline for Class Members to submit a Claim Form ("Claim Deadline") | No later than ninety (90) calendar days after the Notice Deadline |
| 5. | Deadline for Settlement Administrator to Submit Declaration attesting to compliance with the Notice Program and stating the number of submitted Claims and timely Opt-Outs | No later than fourteen (14) calendar days after Claims Deadline |
| 6. | Deadline for Plaintiffs to file a Motion for Final Approval of Settlement. | No later than fourteen (14) calendar days prior to Final Approval Hearing |
| 6. | Final Approval Hearing | [Court Insert Date] |

**SO ORDERED.**


Dated: _____          _____
                                        Hon. James S. Gwin
                                        United States District Court Judge