UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE: SONIC CORP.<br>CUSTOMER DATA SECURITY<br>BREACH LITIGATION<br><br>(FINANCIAL INSTITUTIONS) | CASE NO. 1:17-md-2807<br>MDL No. 2807<br><br>OPINION & ORDER<br>[Resolving Doc. 514] |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In 2017, hackers broke into Sonic[1] customers' payment card data.  The hackers stole customer payment card information from more than seven-hundred Sonic franchised Drive-Ins.

In this class action, Plaintiff Financial Institutions sue Sonic Defendants and say the Sonic Defendants' negligence caused the data breach.

Now, after three years of litigation, the parties have negotiated a settlement agreement.[2]  Plaintiffs now ask the Court to: (1) grant preliminary approval of the settlement agreement; (2) direct notice to class members, and (3) set a final approval hearing.[3]

For the reasons explained below, the Court **GRANTS** preliminary approval of the proposed settlement agreement.[4]  The Court **APPROVES** the proposed notice plan.  The Court will hold a final approval hearing before deciding whether to grant final approval to

---

[1] Sonic Corporation and its subsidiaries and affiliates Sonic Industries Services, Inc., Sonic Capital LLC, Sonic Franchising LLC, Sonic Industries LLC, and Sonic Restaurants, Inc. (collectively, "Sonic" or "Sonic Defendants" or "Defendants").
[2] Doc. 514-1 at 2.
[3] Doc. 514.
[4] Except as otherwise stated in this opinion, this order incorporates the defined terms set forth in the settlement agreement.

Case No. 1:17-md-2807
GWIN, J.

the proposed settlement agreement.

## I. Background

### a. Litigation History

In 2017, a data breach compromised Sonic customer payment data.[5] Impacted consumers sued Sonic Defendants in multiple lawsuits.[6] Those consumer lawsuits settled.[7]

In the current case, Plaintiff Financial Institutions sue Sonic Defendants for negligence related to insecure systems that led to the data breach.[8] Plaintiffs allege that Sonic's negligence required financial institutions to spend resources to respond to the breach.[9]

This litigation has spanned more than three years.[10] In that time, the parties have engaged in extensive discovery: exchanging "hundreds of thousands of documents"; retaining six experts who served reports; and deposing corporate representatives, class members, third-party representatives, and experts.[11]

Over the course of the three years, this Court has ruled on numerous motions. The Court partially granted and partially denied Sonic Defendants' motion to dismiss.[12] The Court granted Plaintiffs' motion for class certification.[13] The Court denied Sonic Defendants' summary judgment motion.[14]

Before reaching a settlement agreement, the parties also began pretrial motions practice. The Court granted Sonic's motion to exclude Plaintiffs' expert witness on damages

---

[5] Doc. 174.
[6] *Id.*
[7] *Id.*
[8] Doc. 453.
[9] *Id.* at 1-4.
[10] Doc. 514-1 at 3.
[11] *Id.* at 6-7.
[12] Doc. 304; Doc. 357.
[13] Doc. 348.
[14] Doc. 453.

Case No. 1:17-md-2807
GWIN, J.

and denied Sonic's motion to exclude a liability expert witness.[15] Three pretrial motions remain pending: Sonic's motion to decertify the class, Sonic's motion for a suggestion of remand, and Plaintiffs' motion to bifurcate the trial.[16]

### b. Class Certification

In November 2020, the Court certified a class action.[17] The Court defined the certified class as: "All banks, credit unions, and financial institutions in the United States that received notice and took action to reissue credit cards or debit cards or reimbursed a compromised account from any card brand in the Sonic Data Breach."[18]

With the class certification decision, the Court found that the Plaintiffs met the Rule 23(a) requirements for going ahead with a class action. First, the Court found that the class included thousands of financial institutions, meeting the numerosity requirement.[19] Second, the Court found class members' claims involved common questions of law and fact, including whether Sonic Defendants owed a duty to financial institutions and whether Sonic Defendants acted negligently through their data security practices.[20] Third, the Court found that the named Plaintiffs presented typical class claims because their negligence claims centered on Sonic Defendants' alleged data security failures.[21] Fourth, the Court found that the named Plaintiffs provided adequate representation.[22]

In addition to finding that Plaintiffs met the Rule 23(a) prerequisites, the Court also found that the Plaintiffs met the Rule 23(b) class action requirements. The Court found that

---

[15] Doc. 498.
[16] Doc. 477; Doc. 481; Doc. 503.
[17] Doc. 343; Doc. 348. The Sixth Circuit denied Sonic Defendants permission to appeal the class certification decision. Doc. 447.
[18] Doc. 348 at 1.
[19] *Id.* at 4.
[20] *Id.* at 5-6.
[21] *Id.* at 6-7.
[22] *Id.* at 8.

- 3 -

Case No. 1:17-md-2807
GWIN, J.

shared questions predominated over individual questions.[23]  In addition, the Court found that a class action would be superior to individual actions because of the number of financial institutions affected and because of the similarity of their claims.[24]

The Court appointed Financial Institution Plaintiffs as the class representatives for the certified class.  The class representatives have diligently prosecuted this litigation.

The Court appointed the following attorneys as Class Counsel in November 2020: Brian Gudmundson, Zimmerman Reed LLP; and Charles Van Horn, Berman Fink Van Horn P.C.  The Court found that these attorneys could fairly and adequately represent the certified class. Class counsel have competently represented the class representatives and certified class in this litigation.

### c. Proposed Settlement Agreement

Now, the parties seek preliminary approval of their proposed settlement agreement.

To reach the proposed settlement, the parties negotiated for months.[25]  The parties negotiated in at least three full-day mediation sessions with Magistrate Judge Jonathan D. Greenberg in January and February 2022.[26]

Under the settlement agreement, Sonic would pay under a per-card formula up to $5.73 million to resolve class member claims.[27]  This total would include up to $3 million to pay class members' claims ($1.00 per reissued card and $1.50 per card experiencing fraud within four weeks of the breach).[28]  Sonic would pay up to $500,000 for settlement administration, up to $30,000 for class representative service awards, and up to $2.2 million

---

[23] *Id.* at 10-11.
[24] *Id.* at 12.
[25] Doc. 514-1 at 12.
[26] *Id.*
[27] Doc. 514-3 at 14-15.
[28] *Id.* at 15.

- 4 -

Case No. 1:17-md-2807
GWIN, J.

for attorneys' fees and expenses.[29]

## II. Legal Standard

Under Federal Rule of Civil Procedure 23, parties must seek Court approval to settle a class action.[30]

In the Sixth Circuit, class action settlement approval occurs in three steps. First, the district court decides whether to preliminarily approve the settlement.[31] Second, the district court directs notice of the proposed settlement to class members.[32] Third, the district court conducts a hearing to decide whether to grant final approval to the settlement.[33]

At the preliminary approval stage, courts consider "whether the compromise embodied in the decree is illegal or tainted with collusion."[34] Preliminary approval is appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."[35]

At the preliminary approval stage, courts cannot yet conduct "a full and complete fairness review."[36] Instead, courts conduct a "preliminary evaluation," considering whether the proposed settlement "disclose[s] grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of

---

[29] *Id.*
[30] Fed. R. Civ. P. 23(e).
[31] *Tennessee Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565 (6th Cir. 2001).
[32] *Id.*
[33] *Id.* at 565-66.
[34] *Id.* at 565.
[35] *In re Polyurethane Foam Antitrust Litig.*, 10-MD-2196, 2012 WL 12868246, at *4 (N.D. Ohio Jan. 23, 2012) (quotation marks omitted).
[36] *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001).

Case No. 1:17-md-2807
GWIN, J.

the class, or excessive compensation for attorneys."[37]

Preliminary approval "says nothing about final approval of the settlement."[38] Before granting final approval, the Court will conduct "a hearing where all interested parties have had the opportunity to be heard."[39] After that hearing, the Court will decide whether the proposed settlement is "fair, reasonable, and adequate."[40]

At the approval hearing, the Court will especially consider the number of class plaintiffs who have submitted claims.

### III. Discussion

#### A. Preliminary Approval

The Court grants preliminary approval to the proposed settlement agreement. The Court finds that the agreement was the product of arms-length negotiation, not collusion. The parties' extensive negotiations included mediation with Magistrate Judge Greenberg.

The Court preliminarily approves the monetary relief to the Class Members provided in the settlement agreement. At this stage, the settlement agreement seems arguably fair, reasonable, and adequate.

Granting preliminary approval does not create a commitment to grant final approval. The Court will take all evidence into account, including any objections, before making a final approval decision after the hearing.

#### B. Notice Plan

The Court approves the notice program described in the settlement agreement, as well as the notices attached as Exhibit C (Long Form Notice) and Exhibit D (Website Notice).

---

[37] *Id.* at 352 (quotation marks omitted).
[38] *In re Polyurethane Foam Antitrust Litig.,* 2012 WL 12868246 at *4.
[39] *Id.*
[40] Fed. R. Civ. P. 23(e).

- 6 -

Case No. 1:17-md-2807
GWIN, J.

The Court finds that the notices collectively supply a sufficiently clear and concise description of the litigation, the settlement terms, and the rights and responsibilities of the class members. The Court further finds that the plan for distributing the notices is the best means practicable and is reasonably calculated apprise the class members of the litigation and their right to participate in, object to, or exclude themselves from the settlement.

The parties and their counsel will distribute notices by: (i) mailing the Long Form Notice and Claim Form to the updated addresses of the class members; and (ii) posting the Long Form Notice and Claim Form to the settlement website.

The Court directs the parties and their counsel to distribute the notices following the terms of the settlement agreement.

### C. Settlement Administration

The Court approves the claim form attached to the settlement agreement as Exhibit B.

The Court approves and appoints KCC LLC as the settlement administrator and directs them to perform the duties set forth in the settlement agreement.[41]

### D. Final Approval Hearing

The Court will conduct a final approval hearing. At the hearing, the Court will consider any objections to the settlement agreement and decide whether to grant final approval.

The final approval hearing will take place on October 6, 2022 at 12:00 PM.

Class counsel will file their preliminary motions for an award of attorneys' fees and costs, and for service awards to the representative plaintiffs as class representatives, no earlier

---

[41] The settlement agreement governs payment for the settlement administrator's notice-distribution and settlement-administration costs and expenses.

Case No. 1:17-md-2807
GWIN, J.

than 30 days after entry of this preliminary approval order by the Court, and no later than 30 days prior to the deadline for submission of requests for exclusion and objections. Class counsel may supplement these motions before the final approval hearing.

The Court will rule on the motions at the final approval hearing. All such awards will be paid as set forth in the settlement agreement.

### E. Objections

Any class member who intends to object to the fairness, reasonableness, or adequacy of the Settlement, the proposed attorneys' fees and costs, and/or the proposed service awards, must file with the Court a written statement of the objections, as well as the specific reasons for each objection. Objectors should also deliver those statements to David M. Poell of Sheppard Mullin Richter & Hampton LLP as counsel for the Sonic Defendants, and to Brian C. Gudmundson of Zimmerman Reed LLP as Class Counsel.

In addition to the reasons for each objection, any objection statement must include: (a) the objector's name and contact information; (b) a statement describing the objector's relationship with the class members; (c) a written statement of all objections; (d) the identity and contact information of any attorney representing the objector, if any; (e) a statement indicating whether the objector asks to be heard at the final approval hearing; and (f) a statement identifying any witnesses that the objector may call to give testimony at the final approval hearing in support of the objection.

Any objector must file any objections with the Court's Clerk of Courts and delivered to counsel for Defendants and Class Counsel no later than 120 days after entry of this order. Objectors must deliver their objections to the Court, Class Counsel, and the Sonic Defendants' counsel at the addresses listed below:

- 8 -

Case No. 1:17-md-2807
GWIN, J.

<u>Court</u>
Clerk of the Court
U.S. District Court for the Northern District of Ohio
Carl B. Stokes United States Court House
801 West Superior Avenue
Cleveland, OH 44113

<u>Class Counsel</u>
Brian C. Gudmundson
Zimmerman Reed LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402

<u>The Sonic Defendants' Counsel</u>
David M. Poell
Sheppard Mullin Richter & Hampton LLP
70 West Madison Street, 48th Floor
Chicago, Illinois 60602

### F. Opt Out

Any person who elects to opt out of the certified class will not: (1) be bound by any orders entered in this litigation, including, but not limited to, any final order approving the settlement; (2) be entitled to relief under the settlement agreement; (3) gain any rights by virtue of the settlement agreement; and (4) be entitled to object to any aspect of the settlement agreement. No person may opt out of the certified class through a so-called "mass" or "class" opt-out.

Any class member who seeks exclusion from the settlement must satisfy the Long Form Notice pertinent terms and conditions. Any exclusion requests must be postmarked no later than 120 days after entry of this order.

Class members who submit a timely and valid request for exclusion will have no rights under the settlement agreement, will not share in the distribution of any settlement proceeds, and will not be bound by the settlement agreement. Any class member who does

Case No. 1:17-md-2807
GWIN, J.

not submit a timely and valid request for exclusion will be bound by any final order approving the settlement.

### G. Settlement Administrator Declaration

No later than 14 days after the deadline for submission of claim forms, the settlement administrator will supply a declaration to class counsel and the Sonic Defendants' counsel describing the measures taken to give class members notice through the notice program. The declaration must also include the information about claims and requests for exclusion as described in the settlement agreement.

### H. Effect of a Final Approval Denial

If this Court does not finally approve the settlement agreement, all rights of the parties existing prior to the execution of the settlement agreement will be preserved and the litigation will proceed in all respects as if the settlement agreement and any related orders had not been entered. In such an event, none of the terms of the settlement agreement will be admissible in any trial or otherwise used against any party, except to enforce the terms that relate to the parties' obligations in case of termination.

Any settlement-related funds the Sonic Defendants transferred to the Settlement Administrator will be returned to the Sonic Defendants, less notice and administrative expenses actually incurred by the Settlement Administrator (as to which the Sonic Defendants will have no right of reimbursement from any person, including the Settlement Administrator, Financial Institution Plaintiffs, or class counsel).

### I. Jurisdiction

For the benefit of the class members and as provided in the settlement agreement, this Court retains continuing jurisdiction over the implementation, interpretation, and

Case No. 1:17-md-2807
GWIN, J.

enforcement of the settlement agreement.

This Court directs the parties to carry out their obligations under the settlement agreement.

### J. Schedule

| | |
|---|---|
| Notice Deadline | No later than 30 days after entry of this order |
| Deadline for class counsel to move for attorneys' fees and expenses and for class representative service awards | No earlier than 30 days after entry of this order and no later than 30 days before the deadline to opt out or object |
| Deadline for class members to opt out or object | No later than 90 days after the Notice Deadline |
| Deadline for class members to submit a Claim Form ("Claims Deadline") | No later than 90 days after the Notice Deadline |
| Deadline for Settlement Administrator to submit declaration attesting to compliance with the Notice Program and stating the number of submitted claims and timely opt-outs | No later than 90 days after the Notice Deadline |
| Deadline for Plaintiffs to file a motion for final approval of settlement | No later than 14 days before the Final Approval Hearing |
| Final Approval Hearing | October 6, 2022 at 12:00 PM |

## IV. Conclusion

For the reasons stated above, the Court **GRANTS** preliminary approval of the settlement agreement. The Court **APPROVES** the notice plan. The Court **ORDERS** any class

- 11 -

Case No. 1:17-md-2807
GWIN, J.

members seeking to object or opt out to do so following the terms in this order.

        IT IS SO ORDERED.

Dated: May 10, 2022                     *s/    James S. Gwin*
                                                           JAMES S. GWIN
                                                           UNITED STATES DISTRICT JUDGE