**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND**

|  |  |  |
|---|---|---|
| | ) | |
| IN RE: SONIC CORP. CUSTOMER DATA | ) | MDL Case No. 1:17-md-02807-JSG |
| BREACH LITIGATION | ) | |
| (Financial Institutions) | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO ALL | ) | |
| FINANCIAL INSTITUTION ACTIONS | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND
SERVICE PAYMENTS FOR CLASS REPRESENTATIVES**

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

REVIEW OF THE LIFE OF THE CASE.........................................................................2

    A.    Class Counsel's Factual Investigation Resulted in a Thorough Class Action Complaint...........................................................................................................3

    B.    Class Counsel Defeated Sonic's Rule 12(b)(6) Motion and Efforts to Obtain Reconsideration....................................................................................................4

    C.    Class Counsel Obtained Extensive Factual and Expert Discovery Benefiting Plaintiffs' Case.....................................................................................................5

    D.    Class Counsel Obtained a Certified Classes .........................................................7

    E.    Class Counsel Defeated Sonic's Summary Judgment Motion and Supplemental Summary Judgment Briefing ...............................................................................8

    F.    Class Counsel Engaged in Substantial Pre-Trial Motion Practice...........................9

    G.    Class Counsel's Intensive and Lengthy Settlement Negotiations Resulted in the Settlement Agreement ....................................................................................10

    H.    Class Counsel Secured a Favorable Settlement on the Class's Behalf ................10

ARGUMENT ...............................................................................................................12

I.    The Court Should Award $2,200,00 for Attorneys' Fees and Expenses...........................12

    A.    The Court Should Award Class Counsel a Portion of Its Reasonable Lodestar....12

    B.    The Moulton Factors Support Plaintiff's Attorney's Fee Request ........................13

        i.    Factor 1: Class Counsel's Efforts Resulted in Significant Classwide Benefits ...................................................................................................15

        ii.    Factors 2 and 3: Class Counsel's Substantial Effort, its Significant Achievements, and the Risk it Incurred Support Its Fee Request..............17

        iii.    Factor 4: Class Counsel's Work Provided a Significant Societal Benefit...................................................................................................19

        iv.    Factor 5: The Procedure and Factual Issues in this Case Were Complex..................................................................................................20

v.      Factor 6: Class Counsel are Highly Skilled and Experienced in Class Actions and Data Breach Litigation............................................................22

C.      A Percentage-of-the-Fund Method Cross Check Supports Plaintiffs' Request.....23

II.      The Court Should Award Plaintiffs' Reasonable Litigation Expenses............................25

III.      The Court Should Award Class Representative Service Awards ......................................26

CONCLUSION ..............................................................................................................................27

# TABLE OF AUTHORITIES

## Cases

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ................................................................................................. 12, 15, 23

*Bowling v. Pfizer, Inc.*,
102 F.3d 777 (6th Cir. 1996) ........................................................................................... 14

*Davidson v. Henkel Corp.*,
No. 12 Civ. 14103, 2015 WL 13034891 (E.D. Mich. Dec. 8, 2015) ................................ 26

*Dillow v. Home Care Network, Inc.*,
No. 1:16-cv-612, 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018) ....................................... 26

*Dillsworth v. Case Farms Processing, Inc.*,
No. 5:08-cv-1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ...................................... 26

*Dowdell v. Apopka*,
698 F.2d 1181 (11th Cir. 1983) ....................................................................................... 25

*Elec. Constr. Indus. Prefunding Credit Reimbursement Program v. Veterans Elec., LLC*,
No. 17-cv-1576, 2021 WL 308545 (E.D. Wis. Jan. 29, 2021) ........................................ 18

*Eltman v. Grandma Lee's, Inc.*,
No. 82–cv–1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986) ........................................... 18

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
137 F.R.D. 240 (S.D. Ohio 1991) .................................................................................... 26

*Ganci v. MBF Inspection Servs. Inc.*,
No. 2:15-cv-2959, 2019 WL 6485159 (S.D. Ohio Dec. 3, 2019) .................................... 26

*Gascho v. Global Fitness Holdings, LLC*,
822 F.3d 269 (6th Cir. 2016) ..................................................................................... passim

*Hadix v. Johnson*,
65 F.3d 532 (6th Cir. 1995) ............................................................................................. 17

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ........................................................................................................ 15

*Humphrey v. Stored Value Cards*,
No. 1:18-CV-01050, 2021 WL 110786 (N.D. Ohio Jan. 12, 2021) .......................... 15, 16, 19

*In re Cardizem CD Antitrust Litig.*,
 218 F.R.D. 508 (E.D Mich. 2003) ............................................................................. 25

*In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*,
 333 F.R.D. 364 (E.D. Pa. 2019) ............................................................................... 19

*In re Monosodium Glutamate Antitrust Litig.*,
 No. 00-md-1328, 2003 WL 297276 (D. Minn. Feb. 6, 2003) ........................... 19, 20

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
 No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ....................... 26

*In re Target Corp. Customer Data Sec. Breach Litig.*,
 892 F.3d 968 (8th Cir. 2018) ................................................................................... 19

*In re WorldCom, Inc. ERISA Litig.*,
 No. 02–CV–4816, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004).............................. 19

*In re Xcel Energy, Inc., Sec. Derivative & ERISA Litig.*,
 364 F. Supp. 2d 980 (D. Minn. 2005)...................................................................... 18

*In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*,
 No. 1:08-WP-65000, 2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ..................... 16

*Karpik v. Huntington Bancshares Inc.*,
 No. 2:17-CV-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021) .............. 20, 21, 25

*Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*,
 487 F.2d 161 (3d Cir. 1973)..................................................................................... 12

*Macaluso v. Zirtual Startups*, LLC,
 No. 2:19-CV-3616, 2021 WL 3639665 (S.D. Ohio Aug. 17, 2021) ........................ 20

*Mashburn v. Nat'l Healthcare Inc*.,
 684 F. Supp. 679 (M.D. Ala. 1988) ........................................................................ 18

*Moulton v. U.S. Steel Corp.*,
 581 F.3d 344 (6th Cir. 2009) ............................................................................ 13, 14

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.*,
 No. 2:97-cv-750, 2016 WL 5122565 (S.D. Ohio Sept. 21, 2016)........................... 26

*Rawlings v. Prudential-Bache Props., Inc.*,
 9 F.3d 513 (6th Cir. 1993) ....................................................................................... 12

*Rikos v. Proctor & Gamble Co.*,
　　No. 1:11-CV-226, 2018 WL 2009681 (S.D. Ohio Apr. 30, 2018) ..................................... 15, 24

*Rivas v. BG Retail, LLC*,
　　No. 16-cv-6458, 2020 WL 264401 (N.D. Cal. Jan. 16, 2020).................................................. 19

*Rui He v. Rom*,
　　751 Fed. Appx. 664 (6th Cir. 2018)......................................................................................... 13

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*,
　　707 F. Supp. 2d 737 (N.D. Ohio 2010)................................................................................... 17

*Van Horn v. Nationwide Prop. and Cas. Ins. Co.*,
　　436 Fed. Appx. 496 (6th Cir. 2011)......................................................................................... 13

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................................... 4

Fed. R. Civ. P. 23(f)........................................................................................................................ 8

Fed. R. Civ. P. 23(g)(1)(A)(ii)-(iii)............................................................................................... 22

Fed. R. Civ. P. 23(h)...................................................................................................................... 12

# INTRODUCTION

Court-appointed Class Counsel litigated this case for over three years, obtained Class certification, and defeated Sonic's Rule 23(f) petition to the Sixth Circuit, defeated two dispositive motions by Sonic, secured critical expert and factual discovery, and prepared to try this case before a jury.  Class Counsel's tireless work throughout this litigation, along with tough negotiations before United States Magistrate Judge Jonathan D. Greenberg, led to the Settlement of this matter. After months of negotiations, the parties agreed to a Settlement designed to provide relief straight to the heart of this matter—a per card recovery for institutions who reissued cards and experienced fraud the wake of the Sonic data breach.

Under the Settlement Agreement, Sonic agreed not to challenge Class Counsel's request for reimbursement of litigation expenses and an award of attorneys' fees of up to $2,200,000 total, nor to challenge a request for an award of class representative service awards up to $10,000 per Class Representative ($30,000 total).  These amounts are in addition to and paid separately from the up to $3 million Sonic agreed to pay Class members who submit successful claims for payment of fraud reimbursement or card reissuance costs and the up-to-$500,000 Sonic agreed to pay for notice and administration costs.

For its efforts in litigating the case, Class Counsel now seeks attorneys' fees and expenses of $2,200,000 and Class Representative service awards of $10,000 for each Plaintiff.  In the Sixth Circuit, the touchstone for awarding attorneys' fees and expenses is the reasonableness of the request.  Reasonableness is determined by examining the work done (best measured by the lodestar method) and the results achieved (best measured by the percentage of the fund method).  Here, the lodestar method best accounts for both the work done and results achieved in this case, and fully supports Class Counsel's fee request.  Class Counsel litigated this case to the doorsteps of trial

against a sophisticated Defendant committed to a vigorous defense, and achieved success before this Court and the Sixth Circuit.  Although all of Class Counsel's lodestar was reasonably incurred, it seeks a drastically reduced portion of that lodestar here.

Similarly, the Class Representatives have endured years of litigation and multiple rounds of depositions and discovery requests.  Class Representatives put forth their best efforts to represent the interests of the Class, incurring the substantial risk that they may obtain no recovery at all and assisting Class Counsel in certifying one of only a few classes in a data breach action.

For these reasons, further described below, Plaintiffs respectfully ask that the Court award Class Counsel $1,639,000.54 in attorneys' fees and $560,999.46 in expenses (totaling $2,200,000) and the Class Representatives $10,000 each as service awards for their efforts in litigating this case on behalf of the Class and achieving a strong result through the Settlement Agreement.  Class Counsels' attorneys' fee and expense request of $2,200,000 reflects an over 73% reduction from their reasonably incurred lodestar, and is reasonable under either the appropriate lodestar calculation method, or as cross-checked against the alternative percentage of the benefit method.

## REVIEW OF THE LIFE OF THE CASE

Class Counsel litigated this case over three years and obtained success at every stage of the litigation, overcoming Sonic's[1] forceful defense of the claims against it.  For instance, Class Counsel successfully: (1) defeated Sonic's motion to dismiss and subsequent motions for reconsideration and to certify questions to the Oklahoma Supreme Court; (2) obtained extensive factual and expert discovery to support Plaintiffs' case; (3) obtained a certified class of financial

---

[1] "Sonic" or "Defendants" refers to Defendants Sonic Corp. (n/k/a Sonic LLC); Sonic Franchising LLC; Sonic Industries LLC; Sonic Industries Services Inc.; Sonic Restaurants, Inc; and Sonic Capital.

institutions impacted by Sonic's data breach; (4) defeated Sonic's Fed. R. Civ. P.  23(f) petition to appeal class certification to the Sixth Circuit; and (5) defeated Sonic's motion for summary judgment.  This case proceeded to the doorsteps of trial and, in anticipation of trying this case, Class Counsel spent significant time in meet-and-confers with Sonic concerning admissibility of documents for trial, briefing motions to exclude certain experts and documents from trial, and briefing Sonic's motion to decertify the Class.  However, after extensive negotiations over several months, the parties settled this action, resulting in Class-wide relief for the financial institutions who replaced or experienced fraud on certain cards alerted-on due to Sonic's data breach.

## A.  Class Counsel's Factual Investigation Resulted in a Thorough Class Action Complaint

On March 4, 2019, Plaintiff American Airlines Federal Credit Union filed a complaint against Sonic in the Western District of Oklahoma arising from the Sonic data breach.  *Am. Airlines Fed. Credit Union v. Sonic Corp., et al.*, No. 5:19-cv-0208 (W.D. Okla. Mar. 4, 2019).  That complaint and another brought by Alcoa Community Federal Credit Union[2] were tagged as related to an existing Multi-district Litigation ("MDL") created to consolidate related consumer cases against Sonic for the alleged harm caused by the data breach.  The Judicial Panel on Multi-District Litigation ("JPML") transferred Plaintiffs' complaint to this Court.  ECF No. 155.

On October 21, 2019, Plaintiffs American Airlines Federal Credit Union, Redstone Federal Credit Union, and Arkansas Federal Credit Union filed a new, amended class action complaint ("ACAC") against Sonic in this Court.  ECF No. 197.  Class Counsel's investigation led to additional, more specific allegations concerning the data breach and Sonic's wrongful conduct that caused it.  *See, e.g.*, *id.* at ¶¶ 53–80.  Specifically, due to Sonic's security deficiencies, hackers

---

[2] *Alcoa Cmty. Fed. Credit Union v. Sonic Corp., et al.*, No. 4:18-cv-0770 (E.D. Ark. Oct. 16, 2018).

breached and installed card-scraping malware on point-of-sale systems at certain Sonic-franchised restaurants that were designed and controlled by Sonic.  *Id.*  The hackers stole payment card data and posted approximately 5 million payment cards for sale on the dark web.  *Id.* at ¶¶ 80, 108, 120.

After the Sonic data breach was uncovered, the card brands issued alerts to Plaintiffs and other financial institutions and provided lists of specific credit and debit cards determined to have been exposed during Sonic's Data Breach.  *Id.* at ¶¶ 19–20.  Plaintiffs suffered losses by reimbursing fraud on alerted-on accounts and reissuing alerted-on cards.  *Id.* at ¶¶ 28–30. Accordingly, Plaintiffs brought three claims against Sonic: (1) negligence, (2) negligence *per se*, and (3) declaratory relief.  *Id.* at ¶¶ 132–167.

### B.    Class Counsel Defeated Sonic's Rule 12(b)(6) Motion and Efforts to Obtain Reconsideration

On October 28, 2019, Sonic moved to dismiss the ACAC pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 199.  There, Sonic sought dismissal of Plaintiffs' negligence claim by arguing it owed no duty to financial institutions to implement reasonable data security measures or protect against a third-party criminal act under either Oklahoma law or its statutory obligations under the Federal Trade Commission Act.  ECF No. 199-1, at 7–15.  Sonic also argued the economic loss doctrine barred Plaintiffs' negligence claims and that the declaratory relief claim failed outright. *Id.* at 19–20.

Plaintiffs opposed Sonic's motion to dismiss on all counts, arguing Sonic owed Plaintiffs a duty because of the foreseeable risk of harm should Sonic fail to secure its payment systems and because Sonic's own actions created a foreseeable risk of harm by implementing knowingly dangerous data security.  ECF No. 211, at 8–16.  Plaintiffs further argued Oklahoma's economic loss doctrine applied only to product liability cases.  *Id.* at 18–19.  Plaintiffs also opposed the dismissal of their negligence *per se* and declaratory relief claims.  *Id.* at 16–20.

On July 1, 2020, the Court denied in part and granted in part Sonic's motion to dismiss. ECF No. 304.  The Court declined to dismiss Plaintiffs' negligence claim, holding that Plaintiffs adequately alleged Sonic's affirmative acts that put Plaintiffs at a greater risk of harm due to a data breach.  *Id.* at 7–8.  The Court also agreed with Plaintiffs that Oklahoma's economic loss doctrine did not apply to this case.  *Id.* at 12–13.  The Court dismissed Plaintiffs' negligence *per se* claim and the declaratory relief claim.  *Id.* at 11–12, 13–14.

Even after the Court's order, Sonic continued to litigate its motion to dismiss, twice moving the Court to reconsider its decision with respect to the economic loss doctrine or, alternatively, certifying the question to the Oklahoma Supreme Court.  ECF No. 308; ECF No. 351.  Sonic asserted that whether the economic loss doctrine applies in the data breach context was an issue of first impression in Oklahoma that should be certified to the Oklahoma Supreme Court.  ECF No. 351-1.  Plaintiffs opposed, arguing Oklahoma courts had refused to apply the economic loss doctrine beyond products liability claims and that Sonic's request to certify questions to the Oklahoma Supreme Court was unnecessary and untimely.  ECF No. 353.  The Court denied Sonic's motions for reconsideration.  ECF No. 357.

## C.    Class Counsel Obtained Extensive Factual and Expert Discovery Benefiting Plaintiffs' Case

The parties spent significant time engaging in discovery over the course of the litigation, including: (1) discovery of the parties and of certain third parties and absent Class members; (2) discovery on liability and damages experts; and (3) resolving a number of discovery disputes, some on the parties' own and some with the Court's assistance.

Both sides served and responded to multiple sets of document requests and requests for admission, exchanging hundreds of thousands of documents.  Plaintiffs also served document

requests on relevant sophisticated third parties.  The Parties jointly deposed representatives of some of these third parties, including Visa, Trustwave, and Ernst & Young.

Plaintiffs deposed six of Sonic corporate representatives to conduct factual discovery and resolve disputes as to the authenticity and admissibility of certain documents.  Sonic deposed corporate representatives from each Named Plaintiff, and served discovery on five absent Class members, most of whom it also deposed: Alcoa Federal Credit Union, Logix Federal Credit Union, Ascend Federal Credit Union, Georgia's Own Credit Union, and Pentagon Federal Credit Union.

The parties retained experts and served reports for liability and damages issues, as both issues required technical expertise and analysis.  Plaintiffs retained three experts to support their claims: (1) Matthew Strebe, a technical expert who provided testimony on Sonic's data security and its relationship to the data breach; (2) Ian Ratner, Plaintiffs' classwide damages expert, who proposed a model to measure aggregate Class damages; and (3) Neil Librock, an expert on financial institutions' risk analysis and response who offered opinion regarding classwide injury. Sonic deposed each of these experts twice.  Sonic also retained three responsive experts: (1) Lorin Hitt and Andrew Richmond, both of whom responded to Plaintiffs' Classwide damages model; and (2) Bruce Hartley, Sonic's liability and technical expert.  Plaintiffs deposed Mr. Hitt.

Finally, the parties had discovery and other non-dispositive disputes that took significant effort to resolve.  These included: (1) Plaintiffs' pursuit of discovery from Sonic franchisees impacted by the Data Breach (ECF No. 216); (2) Sonic's pursuit of certain discovery from Alcoa Federal Credit Union (ECF No. 227); (3) Sonic's motion for a protective order seeking to impose an early deadline on Mr. Ratner's report (ECF No. 295); (4) Plaintiffs' motion to bifurcate trial and renewed motion (ECF No. 503); and (5) Sonic's pursuit of documents and a second deposition of American Airlines Federal Credit Union (ECF No. 405).  The parties also spent significant time

addressing and resolving Sonic's opposition to the admissibility and authenticity of certain potential trial exhibits, including briefing Sonic's motion for a protective order that sought to prevent Plaintiffs from authenticating documents via depositions of Sonic's employees.  ECF No. 460.  The Corut denied that motion.  *Id.*  These efforts lasted through several meet-and-confers, hundreds of requests for admissions, several further depositions, and still further issues were poised to be brought before the Court at the time the case resolved.

### D.      Class Counsel Obtained a Certified Classes

On January 9, 2020, Plaintiffs moved to certify a Class defined as:

> All banks, credit unions, financial institutions and other entities in the United States that received an alert of a potentially compromised account from any card brand in the Sonic Data Breach.

ECF No. 240-1.  Plaintiffs argued certification was appropriate because the common questions of Sonic's liability predominated.  *Id.* at 13–18.  Plaintiffs also proposed an aggregate damages methodology and, alternatively, methods for addressing any individual damage issues.  *Id.* at 19.

Sonic opposed class certification and moved to exclude each of Plaintiffs' class certification experts.  ECF Nos. 266; 270; 271; 272.  Sonic primarily contended that: (1) the proposed Class definition was overbroad; (2) individual causation and damages issues undermined the predominance of common factual and legal issues for both liability and damages inquiries; (3) Plaintiffs would not fairly and adequately represent the Class; and (4) the class mechanism was not the superior method of adjudicating the case due to purported manageability issues.  *Id.* Plaintiffs filed an extensive Reply in support of class certification and opposed each motion to exclude their experts.

The Court granted Plaintiffs' motion for class certification but modified the proposed Class definition.  ECF No. 348.  The Court certified a Class encompassing:

All banks, credit unions, and financial institutions in the United States that received notice and took action to reissue credit cards or debit cards or reimbursed a compromised account from any card brand involved with the Sonic Data Breach.

*Id.* at 1.

On November 27, 2020, Sonic petitioned the Sixth Circuit for permission to appeal the Class Certification Order pursuant to Fed. R. Civ. P. 23(f).  ECF No. 352-1.  Sonic argued: (1) Class membership was not ascertainable or administratively feasible; (2) the Class definition was overbroad and would encompass uninjured entities; and (3) the Court abused its discretion in certifying the Class.  *Id.*  Plaintiffs opposed Sonic's petition.  On Aug. 26, 2021, the Sixth Circuit denied Sonic's petition, holding the Court's Class definition was sufficiently definite and that common liability issues predominated over individualized damages issues.  ECF No. 447, at 3–6.

### E.    Class Counsel Defeated Sonic's Summary Judgment Motion and Supplemental Summary Judgment Briefing

On July 15, 2020, Sonic moved for summary judgment on Plaintiffs' negligence claim, arguing that Sonic did not take any affirmative action that created the risk of the data breach.  ECF No. 311.  Rather, Sonic claimed its point-of-sale vendor and its franchisees were the only entities who committed affirmative acts that gave rise to the Data Breach.  *Id.* at 11–29.  Plaintiffs defended against Sonic's summary judgment motion, arguing the evidence showed Sonic's affirmative acts directly caused the data breach, particularly Sonic's responsibility for and actions with respect to the virtual private network, remote access accounts, and proprietary payment systems required at its franchisees' restaurants.  ECF No. 327, at 11-20.

Sonic replied, arguing the Court could not consider Plaintiffs' produced evidence because it was supposedly based on inauthentic or inadmissible documents.  ECF No. 333.  Plaintiffs moved to strike Sonic's reply as premature and because it substantially violated page limit requirements.  ECF No. 339.  The Court agreed, struck Sonic's reply, ordered Sonic to submit a

new reply, and permitted Plaintiffs to submit a sur-reply.  ECF No. 366.  Sonic also re-raised its evidentiary arguments through several motions *in limine*.  ECF No. 377; ECF No. 378; ECF No. 379.  Plaintiffs opposed each motion.

Before the Court had ruled on Sonic's summary judgment motion, Sonic requested an opportunity to submit supplemental summary judgment arguments.  ECF No. 361.  In its supplemental briefing, Sonic argued: (1) the intervening acts of the criminal hackers and of the card brands who issued the alerts constituted intervening acts that absolved Sonic of liability; and (2) Plaintiffs supposedly had no evidence causally linking their damages to Sonic's data breach. ECF No. 432.  Thus, Plaintiffs were compelled to defend against a third round of substantive summary judgment briefing.  ECF No. 438.

On July 28, 2021, the parties argued Sonic's summary judgment motion before the Court. On September 7, 2021, the Court again ruled in Plaintiffs' favor and denied Sonic's summary judgment motion in its entirety, finding Plaintiffs had sufficiently shown that Sonic's affirmative acts created the risk of the Data Breach, and further reserved issues of causation for the factfinder. ECF No. 453.

### F.     Class Counsel Engaged in Substantial Pre-Trial Motion Practice

After the Court denied summary judgment, the parties briefed a series of critical motions, some of which remained pending at the time of settlement.  Those motions included: (1) Sonic's motion to exclude Plaintiffs' expert, Ian Ratner (ECF No. 475); (2) Sonic's motion to exclude Plaintiffs' expert, Neil Librock (ECF No. 476); (3) Sonic's motion to decertify the Class (ECF No. 477); (4) Sonic's motion for remand of the MDL actions to their original jurisdictions (ECF No. 481); and (5) Plaintiffs' renewed motion to bifurcate trial (ECF No. 503).

The parties fully briefed and argued Sonic's motions to exclude experts, and the Court granted in part and denied in part Sonic's motions, excluding Mr. Ratner's opinion and modifying the scope of Mr. Librock's testimony.  ECF No. 498.  *Id.*  Sonic's motions to decertify the Class and seeking to remand the case were fully briefed but not argued or ruled upon at the time the parties reached the proposed settlement.

### G. Class Counsel's Intensive and Lengthy Settlement Negotiations Resulted in the Settlement Agreement

The proposed Settlement is the product of arduous negotiations that culminated in a marathon, three-full-day mediation session before United States Magistrate Judge Jonathan D. Greenberg.  *See* Decl. of Brian C. Gudmundson in Supp. of Pls.' Mot. for Attorneys' Fees and Expenses and Class Rep. Service Awards ("Gudmundson Decl."), ¶ 42 (filed concurrently with this motion).  This mediation was not the first of the parties' settlement discussions, though it was the first one to reach an agreement.  Earlier efforts included a settlement conference before Judge Greenberg on September 20, 2019, pursuant to this Court's order.  *Id.* at ¶ 41.  Nearly a year later, on July 17, 2020, the Plaintiffs sent Sonic a new settlement demand.  *Id.*  Over the course of mid-2021, the parties, following guidance from the Court, also discussed potential resolution.  *Id.*

In November 2021, the parties continued to engage in settlement negotiations, both on their own and with the assistance of Judge Greenberg.  *Id.* at ¶ 42.  The discussions advanced and the parties agreed to mediation before Judge Greenberg on January 31, 2022.  *Id.*  After three days of all-day, extensive negotiations, the parties reached a tentative settlement on February 2, 2022.  *Id.*  This Court granted preliminary approval of that settlement on May 10, 2022.  ECF No. 518.

### H. Class Counsel Secured a Favorable Settlement on the Class's Behalf

Under the Settlement Agreement, Sonic has agreed to pay up to $5.73 million to resolve Plaintiffs' and the Class's claims.  Gudmundson Decl., at ¶ 43.  First, Sonic has agreed to pay, on

a per-card basis, up to $3 million to Class members who, within four weeks of having received an alert due to the Sonic Data Breach, reimbursed fraud on or reissued a card alerted-on account.  *Id.* at ¶¶ 44–45.  Class members may pursue one of two types of payments for each payment card alerted by a card brand: a Reissuance Payment or a Fraud Payment.  The Reissuance Payment allows Class members to receive $1.00 for each eligible, alerted payment card it reissued.  *Id.* at ¶ 45.  The Fraud Payment allows Class members to receive $1.50 for each alerted, eligible payment card that experienced fraud.  *Id.*  Payment cards are eligible for a Reissuance Payment or Fraud Payment if the card was: (1) issued by the Class member; (2) included on a Sonic-related card brand alert; and (3) experienced fraud or was reissued by the Class member within four weeks of when the card first appeared on the Sonic-related alert.  *Id.*

The claims process is simple.  *Id.* at ¶ 46.  To receive a payment, Class members must complete a Claim Form and either: provide basic data regarding the timing of its reissued and fraud cards or the total amount of reissued and fraud cards along with an explanation of how they calculated the numbers.  *Id.*

Additionally, Sonic has agreed to pay up to $500,000 for notice and settlement administration costs, $2,200,000 in attorney's fees and expenses, and $30,000 for Class Representative service awards.  *Id.* at ¶ 47.  Each of these amounts will be paid separately from any amount made available to pay validly submitted claims.  *Id.*  Thus, the amount of any award of attorneys' fees and expenses and Class Representative service awards will not impact in any way the amount made available to Class members.  *Id.*

**ARGUMENT**

**I.      The Court Should Award $2,200,00 for Attorneys' Fees and Expenses**

It is well-settled that attorneys who represent a class and whose efforts achieve a benefit for class members are "entitled to a reasonable attorney's fee" as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Under Fed. R. Civ. P. 23(h), a court may award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  "When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).  Here, Class Counsel seeks an award of attorneys' fees of $1,639,000.54 and $560,999.46 in expenses, totaling $2,200,000.  Class Counsel's request is far below the lodestar it incurred in this case and is fully supported by Class Counsel's successes during the litigation in the face of Sonic's vigorous defense and the substantial benefit Class Counsel achieved on behalf of the Class through the Settlement benefits.

**A.      The Court Should Award Class Counsel a Portion of Its Reasonable Lodestar**

Whether an attorney's fees request is reasonable depends on its fairness.  *Id.* The Sixth Circuit considers "two measures of fairness of an attorney's award—work done and results achieved[.]" *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016).  "The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 516 (citing *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 166–68 (3d Cir. 1973)).

The trial court has considerable discretion to award a reasonable fee using either the lodestar or the percentage method, as long as it articulates the rationale for its decision.  *Gascho*, 822 F.3d at 280 (quoting *Moulton v. U.S. Steel Corp.,* 581 F.3d 344, 352 (6th Cir. 2009)); *see also Rui He v. Rom*, 751 Fed. Appx. 664, 673 (6th Cir. 2018) (holding the trial court is entitled to "substantial deference because the rationale for the award is predominantly fact-driven" and its "superior understanding of the litigation" assists with minimizing appellate review (internal citations omitted)).  Regardless of the method employed, the Court may, but is not required to, "cross check" the award using the alternative method.  *Van Horn v. Nationwide Prop. and Cas. Ins. Co.*, 436 Fed. Appx. 496, 501 (6th Cir. 2011).

Here, Class Counsel seeks an award of $2,200,000 for fees and reimbursement of litigation expenses for its efforts to successfully litigate this action on behalf of the Class, oppose Sonic's forceful defense of the claims against it, and come to a Classwide Settlement that provides significant benefits and relief to Class members harmed by the Sonic data breach.  The Court, applying the lodestar method, should find Class Counsel's request to be fair and reasonable because Class Counsel seeks only their expenses and a portion of the lodestar, which they reasonably incurred and submitted monthly to the Court throughout the litigation.  Additionally, although it need not do so, if the Court applies the percentage of the benefit method as a cross-check on the fee award, Class Counsel's request is still reasonable.  The Court, therefore, should approve Class Counsel's request for an award of attorneys' fees and expenses.

### B.    The *Moulton* Factors Support Plaintiff's Attorney's Fee Request

The Sixth Circuit considers six factors when deciding whether to apply the lodestar or percentage of the fund method, and the amount of a reasonable fee award.  Those factors are:

(1) the value of the benefit rendered to the plaintiff class;
(2) the value of the services on an hourly basis;

(3) whether the services were undertaken on a contingent fee basis;
(4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;
(5) the complexity of the litigation; and
(6) the professional skill and standing of counsel involved on both sides.

*Moulton*, 581 F.3d at 352 (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).  Here, each factor weighs in favor of applying the lodestar method and finding that a $2,200,000 award— amounting to $1,639,000.54 in attorneys' fees and $560,999.46 in expenses—is reasonable.  As discussed further below, the lodestar method better accounts for the substantial work Class Counsel performed and the success it obtained throughout the litigation, but Class Counsel's requested attorneys' fee also fits squarely within the percentages approved under the percentage of the benefit method.

While the percentage of the benefit method provides a simple measure of determining the fairness of Class Counsel's fee request, *Gascho*, 822 F.3d at 279, it does not fully highlight the complexity of this case or the enormous effort Class Counsel undertook to overcome Sonic's vigorous defense and come to a settlement that provides significant Classwide relief.  Moreover, the percentage of the benefit method is a more precise tool for determining fairness in a common fund settlement (where there is one pool of money for class member claims *and* fees) which is not the structure of this settlement.  *Id.*  The attorneys' fees here are paid separately from the funds used to pay Class member claims, so any amount awarded for attorneys' fees will have no bearing on the amount the Class members will receive through the Settlement.  Gudmundson Decl., ¶ 47.

Regardless of the approach the Court takes, Class Counsel's fee request is reasonable and the Court should approve it.

      i.      <u>Factor 1: Class Counsel's Efforts Resulted in Significant Classwide</u>
<u>Benefits</u>

Courts have consistently recognized that the result achieved is "the most critical" factor in awarding fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). When considering the result and benefit to the Class, courts examine the total amount of the settlement fund. *Rikos v. Proctor & Gamble Co.*, No. 1:11-CV-226, 2018 WL 2009681, *8 (S.D. Ohio Apr. 30, 2018) (citing *Boeing Co.*, 444 U.S. at 480-81). The Court's analysis is not, however, limited to the final numbers in the Settlement; rather, it may also consider the success achieved throughout the litigation. *Humphrey v. Stored Value Cards*, No. 1:18-CV-01050, 2021 WL 110786, at *6 (N.D. Ohio Jan. 12, 2021) (holding that class counsel obtained "great results" on behalf of the Class by obtaining certification of the class, partial summary judgment, and securing a $550,000 settlement fund). Here, this factor favors approving Class Counsel's fee request and applying the lodestar method because Class Counsel secured significant benefits for the Class through the Settlement and, as the lodestar method better demonstrates, Class Counsel obtained several critical victories during the extensive pretrial litigation of this Class action.

The Settlement provides Plaintiffs and the Class with significant benefits, totaling up to $5.73 million. These benefits include: (1) up to $3 million to Class members who submit claims; (2) $500,000 for notice and administration; and (3) $2,200,000 in attorneys' fees and expenses and $30,000 for Class Representative Service awards;. Gudmundson Decl., ¶¶ 43–47. Class members may submit claims for a per-card payment for cards that were reissued or incurred fraud within four weeks following being alerted by a card brand. *Id.* at ¶¶ 45–46. These claims are specific to the Court's revised definition of the Class. *See, e.g.*, *id.* at ¶ 24. When the Court certified the Class, it limited the Class definition to include only those financial institutions who both received an alert related to the Sonic data breach *and* reissued an alerted-on card, reimbursed fraud, or both

due to the data breach.  ECF No. 348.  The Court thus limited the Class to those two categories of damages.  *Id.* at 1.  The Settlement affords the entire Class an opportunity to recover a portion of its losses by completing and timely submitting a simple claim form.[3]  Gudmundson Decl., at ¶ 46.

Additionally, Sonic agreed to pay reasonable attorney's fees and expenses up to $2,200,000, separate from the amount made available to pay Class member claims.  *Id.* at ¶ 47.  Thus, while Class members receive the benefit of up to $3 million in payments for valid and timely claims, they also have no obligation to give up any portion of those benefits to Class Counsel for attorneys' fees or expenses.  *Id.*  The Settlement, thus, represents a significant benefit to the Class that Class Counsel achieved after an exacting and lengthy litigation of this case.

Apart from the settlement dollars obtained, Class Counsel obtained significant achievements throughout the litigation that ultimately motivated this Settlement and were only possible due to Class Counsel's substantial effort.  These successes included obtaining: (1) partial denial of Sonic's motion to dismiss and denial of Sonic's two motions for reconsideration; (2) class certification and defending that result before the Sixth Circuit; and (3) full denial of Sonic's motions for summary judgment.  Gudmundson Decl., at ¶¶ 11–12, 24, 30–31; *Humphrey*, 2021 WL 110786, at *6.  In securing these results, Class Counsel incurred considerable lodestar and expenses, of which it only seeks a portion through its present motion.  Thus, the attorneys' fees and expense Plaintiffs request is not a windfall, but a reflection of extensive and largely successful work.  *See, e.g.*, *In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.,* No. 1:08-WP-65000, 2016 WL 5338012, at 20 (N.D. Ohio Sept. 23, 2016).  The value of the benefit to the class

---

[3] The exact number of Class members is not known.  While the parties know every financial institution that received an alert from a card brand warning of one or more cards compromised by the Sonic data breach, the Class is limited to those who subsequently took action to reimburse alerted-on cards or reimburse fraud on an alerted-on account.  *Id.*  The number of alert recipients who took those actions is not known.

and results achieved on its behalf justifies the requested award of $2,200,000 for attorneys' fees and expenses.

       ii.       <u>Factors 2 and 3: Class Counsel's Substantial Effort, its Significant Achievements, and the Risk it Incurred Support Its Fee Request</u>

The value of the services Class Counsel provided, and the risk Class Counsel undertook by agreeing to litigate this action on a contingency basis also justifies applying the lodestar method and finding the requested award to be reasonable.

This litigation has been exacting and brought the parties to the doorsteps of trial, requiring Class Counsel to expend significant time and effort.  Pursuant to this Court's July 6, 2019 Case Management Order, Class Counsel filed, under seal on a monthly basis, their time and expense reports over the life of this case.  Gudmundson Decl., at ¶ 53.  Those reports collectively show that Class Counsel spent 10,262.3 hours advancing the case, resulting in a lodestar of $6,095,072.50 as of June 30, 2022 (which excludes additional time spent in forming this fee petition and assisting in the administration of the Settlement).[4]  *Id.* at ¶¶ 54–55.  The lodestar uses the typical hourly rates of the attorneys billing time on this case multiplied by the hours billed, which are typical rates for the markets served, experience level of the respective attorney, and for the work performed.  *See Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 758 (N.D. Ohio 2010), *as corrected* (Apr. 13, 2010) (citing *Hadix v. Johnson,* 65 F.3d 532, 535 (6th Cir. 1995) (applying out-of-market rates to specialized litigation with a nationwide scope)); *see also Gascho* at 280 (finding an hourly rate appropriate based on counsel declarations listing

---

[4] Class Counsel reviewed and excluded entries initially included in the submissions to the Court but that were subsequently determined to have included an incorrect hourly rate, listed an incorrect number of hours, or incorrectly calculated the individual entry's lodestar (i.e hours billed multiplied by the hourly rate).  *Id.* at ¶ 54.  Class Counsel, therefore, adjusted the lodestar downward from the total lodestar listed in the submissions to the Court.  *Id.*

:each person who billed hours on the case, their rates and experience, and what percentage of the billing was attributed to each lawyer or paralegal").[5]

Class Counsel's lodestar was eminently reasonable given the length and intensity of this litigation. Throughout the action, Sonic vigorously litigated its defense. Gudmundson Decl., ¶¶ 34–39. Sonic is entitled to pursue its defense as it sees fit. However, as explained in detail above, Sonic's forceful defense also required Class Counsel to incur significant lodestar to advance and protect the Class's interests. *Id.*; *see also Elec. Constr. Indus. Prefunding Credit Reimbursement Program v. Veterans Elec., LLC*, No. 17-cv-1576, 2021 WL 308545, at *3 (E.D. Wis. Jan. 29, 2021) (finding attorneys' lodestar reasonable even where it was "high with relation to what was being pursued" because defendant's "forceful litigation strategy" contributed to the lodestar).

Additionally, all while Class Counsel incurred its lodestar, it faced a risk that it may never be paid, in part or at all. "Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *In re Xcel Energy, Inc., Sec. Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005). Moreover, "a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *Mashburn v. Nat'l Healthcare Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988); *see also Eltman v. Grandma Lee's, Inc.*, No. 82–cv–1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986) ("To make certain that the public interest is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."). Because Class Counsel expended these hours on a contingency basis, Class Counsel has received no payment for its work, accepting the risk that, should they fail,

---

[5] *See also* Gudmundson Decl. at ¶ 56 (listing partner and associate hourly rates approved in other data breach class action cases).

they would receive nothing.  Because society has an interest in fairly compensating competent attorneys, when the class counsel takes the case on contingency, it weighs in favor of awarding attorneys' fees.  *Humphrey* at *7.  Here, Class Counsel litigated for three years, engaging in extensive motions practice, discovery, defense of a petition to appeal to the Sixth Circuit, and settlement negotiation—all on contingency.  An award of $1,639,000.54 for attorneys' fees, which represents 27% of their reasonable lodestar incurred, is fair.

Again, even though all of Class Counsel's lodestar was reasonably incurred, they ask the Court to award only $1,639,000.54 in attorneys' fees.  That constitutes a deduction of 73.1% or a negative multiplier of .269, which is reasonable in light of the benefits of the Settlement and the successes in the case.  Gudmundson Decl., at ¶ 59; *see also In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018) (approving "a negative lodestar multiplier of .74" because similar multipliers were held "reasonable in the past."); *Rivas v. BG Retail, LLC*,  No. 16-cv-6458, 2020 WL 264401, at *8 (N.D. Cal. Jan. 16, 2020) ("A negative multiplier 'suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by class counsel.'") (internal citations omitted)); *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 389 (E.D. Pa. 2019) (holding that a negative multiplier of .195 "suggests that Plaintiffs' fee request is reasonable.").  Plaintiffs' request is eminently reasonable and the Court should approve it.

### iii.   Factor 4: Class Counsel's Work Provided a Significant Societal Benefit

Class Counsel's efforts also benefited the public at large.  *See In re WorldCom, Inc. ERISA Litig.,* No. 02–CV–4816, 2004 WL 2338151, at *10 (S.D.N.Y. Oct. 18, 2004) (noting in awarding attorneys' fees that "Lead Counsel has performed an important public service in this action . . . ."); *In re Monosodium Glutamate Antitrust Litig.*, No. 00-md-1328, 2003 WL 297276, at *1 (D. Minn.

Feb. 6, 2003) ("The theory behind attorneys' fees awards in class actions is not merely to compensate counsel for their time, but to reward counsel for the benefit they brought to the class and take into account the risk undertaken in prosecuting the action.").  This case involved a cybersecurity attack that breached hundreds of Sonic franchisee restaurants that impacted millions of customers and thousands of financial institutions.

Throughout the litigation, Plaintiffs highlighted the disconnect between Sonic and its franchisees and specifically, Sonic's effort to centralize its control over cybersecurity while attempting to eschew any responsibility for it.  Gudmundson Decl., ¶¶ 5, 8.  That effort, in Plaintiffs' view, left many franchisees unprotected from a data breach and meant that no one identified the data breach while it was ongoing.  *Id.* at ¶ 5.  As one of the top franchised fast-food restaurants in the nation, this litigation drew Sonic's attention to improvements required to protect its brand and its customers from repeat cybersecurity attacks, particularly concerning the security of Sonic's vendors and its remote access tools.  *Id.*  Thus, this litigation performed a critical public service in seeking to incentivize companies to adequately secure their customers' data.

iv.        Factor 5: The Procedure and Factual Issues in this Case Were Complex

The level of complexity of this case also justifies Plaintiffs' requested award of attorneys' fees because it is a class action and deals with complex and highly technical subject matter. "Generally, most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *Karpik v. Huntington Bancshares Inc.*, No. 2:17-CV-1153, 2021 WL 757123, at *4 (S.D. Ohio Feb. 18, 2021) (internal citations omitted). Further, the complexity of a case may be indicated by the presence of "unresolved legal issues and substantial discovery." *Macaluso v. Zirtual Startups*, LLC, No. 2:19-CV-3616, 2021 WL 3639665, at *6 (S.D. Ohio Aug. 17, 2021).

This litigation was exceedingly complex, both procedurally and substantively. Procedurally, this case is an "inherently complex" class action case with a certified class. *Karpik*, 2021 WL 757123, *4. As a class action, this case was subject to numerous rounds of briefing concerning certification of the Class, including Plaintiffs' motion, Sonic's Rule 23(f) petition to the Sixth Circuit, and Sonic's motion to decertify. Gudmundson Decl., ¶¶ 21–25, 37. Furthermore, the parties spent significant time and effort analyzing the measure of Classwide, and individual, injury and damages, including competing expert testimony. *Id.* at ¶ 16.

Substantively, this case also proved to be complex because it concerned highly technical facts related to data security, payment platforms, and the cyberattack. *Id.* Consequently, fact and expert discovery were heavily engaged in throughout the case. For instance, Plaintiffs and Sonic litigated numerous discovery disputes, including: (1) a motion for protective order seeking to prevent its third-party production request (ECF No. 216); (2) a motion for protective order seeking to quash the Class's Amended Notice for 30(b)(6) deposition of Sonic (ECF No. 424, ECF No. 440, ECF No. 442); and (3) a motion and amended motion to compel (ECF No. 405, ECF No. 410, ECF No. 460, ECF No. 417). Gudmundson Decl., at ¶ 19. The parties took at least nineteen depositions, including of Sonic's and Plaintiffs' corporate representatives, several absent class members, third-party representatives, and the parties' experts. *Id.* at ¶¶ 14–15.

Furthermore, due to the technical fact issues presented in this case, the parties required the expertise of several technical experts concerning Sonic's data security, the level of its control over franchisee restaurants, and the cause of the Data Breach. To address those highly technical issues, both sides retained technical experts to provide specialized knowledge and analysis of Sonic's and the franchisees' data security and electronic financial payment systems. *Id.* at ¶¶ 16–17.

Therefore, the complexity of this case, both as a Class action and because it involved highly technical, complicated facts related to cybersecurity, weighs in favor of granting the requested attorneys' fees award.

       v.      <u>Factor 6: Class Counsel are Highly Skilled and Experienced in Class Actions and Data Breach Litigation</u>

Class Counsel in this case are well-versed in successfully representing financial institutions in data breach actions.  Prior to this case, Class Counsel were involved in litigating, and satisfactorily resolving, the Target, Home Depot, Wendy's, and Arby's data breach cases, among several others, on behalf of financial institutions. ECF No. 173.  Co-lead counsel Brian Gudmundson has practiced law for eighteen years throughout the United States, including as class counsel or as a part of the steering committee in numerous data breach actions on behalf of financial institutions (e.g., Arby's, Equifax, Target, Marriott, Wendy's, and Home Depot) and several other similarly large and complex class actions.  *Id.* at 6–8.  Co-lead counsel Charles Van Horn has extensive experience litigating on behalf of financial institutions in data breach and cyber-related issues, as well as fraudulent conveyances. *Id.* at 8–9.  Mr. Van Horn also served as counsel or as part of a steering committee for the Arby's, Marriott, Equifax, Wendy's, and Home Depot data breach actions.  *Id.*  The executive committee has decades of combined experience working as co-counsel in class actions, multi-district litigation, and other complex litigation relating to data security.  *Id.* at 9–12.

Previously, in appointing Class Counsel and the executive committee, the Court held that they met the requirements under Rule 23, and that counsel had "experience handling class actions, other complex litigation, and the types of claims asserted in the action" and "knowledge of the applicable law." Fed. R. Civ. P. 23(g)(1)(A)(ii)-(iii); *see* ECF No. 182.  Indeed, this team of lawyers has extensive relevant experience litigating these specific types of claims for this specific

class of plaintiffs.  ECF No. 173.  Class Counsel is comprised of highly regarded, nationally recognized attorneys and law firms with the resources and experience necessary to successfully prosecute a case of this magnitude, as they have done here.  As their resumes reflect, the attorneys and law firms in Class Counsel are responsible for achieving some of the largest class action recoveries in some of the most complex, document-intensive and high-profile class data breach actions ever.

Class Counsel in this case are highly regarded and have a strong history of success in litigating the niche claims in this case.  Thus, the financial institutions were best served by retaining Class Counsel's extensive experience representing financial institutions in the event of a wide-spread data breach.  This factor further supports Plaintiffs' requested award of attorneys' fees.

Taken together, all of the *Moulton* factors support the reasonableness of Plaintiffs' requested fees.  The Court should apply the lodestar method of analyzing Plaintiffs' requested award, find it reasonable, and grant Plaintiffs Motion.

### C.      A Percentage-of-the-Fund Method Cross Check Supports Plaintiffs' Request

While not necessary, *Gascho*, 822 F.3d at 281, Plaintiffs' fee request is also reasonable under a percentage of the fund analysis.  A percentage of the fund calculation assesses the amount of the attorneys' fees in relation to the total monetary value of the settlement.  *See id.* at 279. Percentage of the fund calculations are used to encourage early settlement and to ensure Class Counsel do not obtain a disproportionate percentage of the value recovered in the Settlement.  *Id.* When considering the total value of the settlement, the Sixth Circuit permits courts to use the total amount available to the Class, even if that amount is not fully claimed by Class members.  *Id.* at 286; *see also Boeing Co.*, 444 U.S. at 479.  Generally, in the Sixth Circuit, courts have awarded fees between 20% to 50% of the benefit to the class, in addition to counsel's reasonable expenses.

*Rikos*, 2018 WL 2009681 at *9 (collecting cases stating that between 20% and 50% is reasonable for attorneys' fees).

Here, the benefits of a percentage of the fund analysis are not achieved because this case is not at an early stage (i.e., the percentage of the benefit cannot promote early settlement) and the attorneys' fees are paid separately from the amount made available to pay to Class members' claims (meaning the percentage of the benefit method would not ensure that the ratio of settlement fund is fairly distributed to the class and to counsel).  Even so, Class Counsel's fee request is reasonable under the percentage of the benefit method.

The total monetary value of the proposed Settlement here is $5.73 million, comprised of: (1) $3 million made available to pay Class member claims; (2) $500,000 made available to pay for Settlement notice and administration; (3) $30,000 made available to pay for an award of Class Representative service awards (up to $10,000 per representative); and (4) up to $2,200,000 made available for an award of attorneys' fees and expenses.  After accounting for Class Counsel's reasonable expenses, only $1,639,000.54 of the $2,200,000 award would be used to pay attorneys' fees.  Given the $5,730,000 value of the Settlement, Class Counsels' attorneys' fees would amount to approximately 28.6% of the total value of the Settlement.  Gudmundson Decl., ¶¶ 59, 62; *see also In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035, ECF No. 502-1, at 6–7, 22–23 (N.D. Ga. May 28, 2020) (settlement value determined by "adding up" the requested fee, litigation expenses, costs of administration, and cap for claims) (attached to Gudmundson Decl. as Ex. 1); *In re Arby's Rest. Grp., Inc. Data Sec. Litig*., No. 1:17-cv-1035, ECF No. 510 (Nov. 25, 2020) (order approving attorneys' fee request) (attached to Gudmundson Decl. as Ex. 2).

This percentage is well within the range considered reasonable by the Sixth Circuit and justified by the complexity of the case, results obtained for the class, and extensive litigation in

this case over the last three years.  Therefore, under the lodestar method and with a percentage of the fund cross check, Class Counsel's requested attorneys' fees and expenses are reasonable.

## II.  The Court Should Award Plaintiffs' Reasonable Litigation Expenses.

Class Counsel seeks an award of $2,200,000, amounting to $1,639,000.54 in attorneys' fees and $560,999.46 in expenses.  Gudmundson Decl., at ¶ 57–58.  "Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims[.]"  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D Mich. 2003); *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *9 (S.D. Ohio Feb. 18, 2021) (awarding counsel its "out-of-pocket expenses" that "were necessary and directly related to the litigation."); *see also Dowdell v. Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("[A]ll reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement" may be recovered.");

Here, Class Counsel seek recovery for those expenses related to the prosecution of this action.  These expenses have been documented to the Court in monthly submission upon transfer of this action to the MDL.  Gudmundson Decl., at ¶ 53.  Moreover, these expenses were specifically incurred and necessary for the advancement of this litigation.  *Id.* at ¶ 57; *see also Cardizem*, 218 F.R.D at 534–35 ("[C]lass counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses.").  Therefore, Class Counsel's expenses of $560,999.46 were reasonably incurred and the Court should order they be reimbursed.

### III.     The Court Should Award Class Representative Service Awards

Class representative service awards "encourage class members to become class representatives and reward their individual efforts on behalf of the class." *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *8 (N.D. Ohio Aug. 12, 2019).  "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ganci v. MBF Inspection Servs. Inc.*, No. 2:15-cv-2959, 2019 WL 6485159, at *8 (S.D. Ohio Dec. 3, 2019) (quoting *Dillsworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010)).

Where Class representatives have spent time and effort to help advance the case and secure a settlement on behalf of the class, courts have awarded $10,000 per representative and more.  *See, e.g.*, *Owner-Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.*, No. 2:97-cv-750, 2016 WL 5122565, at *7 (S.D. Ohio Sept. 21, 2016) (approving two service awards of $25,000 each from a $3 million settlement); *Davidson v. Henkel Corp.*, No. 12 Civ. 14103, 2015 WL 13034891, at *3 (E.D. Mich. Dec. 8, 2015) (approving $15,000 service award for the named plaintiff from a $3,350,000 settlement fund); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving six service awards of $50,000 each); *see also Dillow v. Home Care Network, Inc.*, No. 1:16-CV-612, 2018 WL 4776977, at *1 (S.D. Ohio Oct. 3, 2018) (granting $8,500 service award from a $113,224 settlement, because named plaintiff "contributed her efforts to the lawsuit by providing information and documents to her counsel, remaining informed and involved throughout the litigation, contacting and consulting her counsel concerning the litigation, reviewing documents and settlement proposals, and was willing to testify at a trial");

*see also* Gudmundson Decl., Ex. 2, at 12–13 (awarding $10,000 to financial institution class representatives in the Arby's data breach litigation).

Here, Class Representatives provided consistent, extensive, and invaluable assistance to Class Counsel that materially moved this case forward and contributed to Class Counsel's numerous successes.  Gudmundson Decl., ¶¶ 63–67.  The Class Representatives played an early role in helping Class Counsel develop the case theory, understand the relationship between the timing of the data breach and damages, and determine the amount of individual damages attributable to the data breach.  *Id.* at ¶ 65(a)–(e).  During the litigation, Class Representatives responded to numerous requests for production of documents, interrogatories, and admissions.  *Id.* at ¶ 65(f).  Corporate representatives from each of the Class Representatives' offices sat for depositions by Sonic's counsel twice.  *Id.* at ¶ 65(g).  Class Representatives attended all hearings with the Court and actively participated and aided in the mediation and settlement of this action.  *Id.* at ¶ 65(c), (i).

In short, each Class Representative remained active in this case from start to finish, including attending in-person status conferences, reviewing and approving the settlement, and providing feedback and input on case theories and developments.  *Id.* at ¶¶ 64–66.  Therefore, the Court should award $10,000 in service awards to each of American Airlines Federal Credit Union, Arkansas Federal Credit Union, and Redstone Federal Credit Union.

## CONCLUSION

Pursuant to the above, the Court should award Class Counsel $2,200,000 in attorneys' fees and expenses and a $10,000 Class Representative Service Awards to each Class Representative.

Dated: August 8, 2022

*/s/ Brian C. Gudmundson*

Brian C. Gudmundson
Michael J. Laird
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
brian.gudmundson@zimmreed.com
michael.laird@zimmreed.com

Charles H. Van Horn
Katherine M. Silverman
**BERMAN FINK VAN HORN P.C.**
3475 Piedmont Road, NE
Suite 1640
Atlanta, GA 30305
Telephone: (404) 261-7711
Facsimile: (404) 233-1943
cvanhorn@bfvlaw.com
ksilverman@bfvlaw.com

*Interim Co-Lead Counsel for Plaintiffs and the Class*

Joseph P. Guglielmo
Erin Green Comite
Margaret Ferron
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com
mferron@scott-scott.com

Karen Sharp Halbert
William R. Olson
**ROBERTS LAW FIRM P.A.**
20 Rahling Circle
Little Rock, AR 72223
Telephone: (501) 821-5575
Facsimile: (501) 821-4474
karenhalbert@robertslawfirm.us
williamolson@robertslawfirm.us

Arthur M. Murray
Stephen B. Murray, Sr.
Caroline Thomas White
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 525-8100
Facsimile: (504) 584-5249
amurray@murray-lawfirm.com
smurray@murray-lawfirm.com
cthomas@murray-lawfirm.com

*Executive Committee for Plaintiffs and the Class*