UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE: SONIC CORP. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>(FINANCIAL INSTITUTIONS) | CASE NO. 1:17-md-2807<br>MDL No. 2807<br><br>ORDER<br><br>[Resolving Doc. 522; Doc. 524] |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

The parties seek the Court's approval of their proposed class settlement and attorney's fee request.[1] On October 6, 2022, the Court held a fairness hearing on the proposed class settlement and fee request. At that hearing, class counsel and defense counsel both argued in favor of approving the settlement. No class members have objected to the terms of the settlement or to the attorney's fee request.

For the following reasons, the Court **APPROVES** the class settlement and **GRANTS** the attorney's fee and expenses request. The Court also **APPROVES** reduced incentive awards for named class members.

## I. Background

### a. Litigation History

In 2017, a data breach compromised Sonic customer payment data.[2] Impacted consumers sued Sonic Defendants in multiple lawsuits.[3] After the MDL Court consolidated pretrial proceedings, those consumer lawsuits settled.[4]

---

[1] Doc. 522 (motion for attorney fees); Doc. 524 (motion for class settlement approval).
[2] Doc. 174.
[3] *Id.*
[4] *Id.*

Case No. 17-md-2807
Gwin, J.

In the current case, Plaintiff Financial Institutions make similar claims. The Financial Institutions sue for negligence related to insecure systems that arguably allowed the data breach.[5] Plaintiffs allege that Sonic's negligence required financial institutions to spend resources to respond to the breach.[6]

This litigation has spanned more than three years.[7] In that time, the parties engaged in extensive discovery: exchanged "hundreds of thousands of documents"; retained six experts who served reports; and deposed corporate representatives, class members, third-party representatives, and experts.[8]

Over the course of the three years, this Court ruled on numerous motions. The Court partially granted and partially denied Sonic Defendants' motion to dismiss.[9] The Court granted Plaintiffs' motion for class certification.[10] The Court denied Sonic Defendants' summary-judgment motion.[11]

Before reaching a settlement agreement, the parties also began pretrial motions practice. The Court granted Sonic's motion to exclude Plaintiffs' expert witness on damages and denied Sonic's motion to exclude a liability expert witness.[12] Three pretrial motions remain pending: Sonic's motion to decertify the class, Sonic's motion for a suggestion of remand, and Plaintiffs' motion to bifurcate the trial.[13]

---

[5] Doc. 453.
[6] *Id.* at 1–4.
[7] Doc. 514-1 at 3.
[8] *Id.* at 6–7.
[9] Doc. 304; Doc. 357.
[10] Doc. 348.
[11] Doc. 453.
[12] Doc. 498.
[13] Doc. 477; Doc. 481; Doc. 503.

Case No. 17-md-2807
Gwin, J.

### b. Class Certification

In November 2020, the Court certified a class action.[14] The Court defined the certified class as:

> All banks, credit unions, and financial institutions in the United States that received notice and took action to reissue credit cards or debit cards or reimbursed a compromised account from any card brand in the Sonic Data Breach.[15]

In its class-certification decision, the Court found that the Plaintiffs met the Rule 23(a) requirements for going ahead with a class action. First, the Court found that the class included thousands of financial institutions, meeting the numerosity requirement.[16] Second, the Court found class members' claims involved common questions of law and fact, including whether Sonic Defendants owed a duty to financial institutions and whether Sonic Defendants acted negligently through their data-security practices.[17] Third, the Court found that the named Plaintiffs presented typical class claims because their negligence claims centered on Sonic Defendants' alleged data-security failures.[18] Fourth, the Court found that the named Plaintiffs provided adequate representation.[19]

In addition to finding that Plaintiffs met the Rule 23(a) prerequisites, the Court also found that the Plaintiffs met the Rule 23(b) class-action requirements. The Court found that shared questions predominated over individual questions.[20] Additionally, the Court found that a class action would be superior to individual actions because of the number of financial

---

[14] Doc. 343; Doc. 348. The Sixth Circuit denied Sonic Defendants permission to appeal the class certification decision. Doc. 447.
[15] Doc. 348 at 1.
[16] *Id.* at 4.
[17] *Id.* at 5–6.
[18] *Id.* at 6–7.
[19] *Id.* at 8.
[20] *Id.* at 10–11.

-3-

Case No. 17-md-2807
Gwin, J.

institutions affected and because of their claims' similarity.[21]

The Court appointed Financial Institution Plaintiffs as the class representatives for the certified class. The class representatives have diligently prosecuted this litigation.

The Court appointed the following attorneys as Class Counsel in November 2020: Brian Gudmundson, Zimmerman Reed LLP; and Charles Van Horn, Berman Fink Van Horn P.C. The Court found that these attorneys could fairly and adequately represent the certified class. Class counsel have competently represented the class representatives and certified class in this litigation.

### c. Proposed Settlement Agreement

Now, the parties seek final approval of their proposed settlement agreement.

To reach the proposed settlement, the parties negotiated for months.[22] The parties negotiated in at least three full-day mediation sessions with Magistrate Judge Jonathan D. Greenberg in January and February 2022.[23]

Under the settlement agreement, Sonic would pay under a per-card formula up to $5.73 million to resolve class members' claims.[24] This total would include up to $3 million to pay class members' claims. Class members may recover $1.00 per card the class member reissued or $1.50 per card the class member reimbursed for fraud within four weeks of the breach.[25] Sonic also agreed to pay up to $500,000 for settlement administration, up to $30,000 for class-representative incentive awards, and up to $2.2 million for attorney's fees and expenses.[26]

---

[21] *Id.* at 12.
[22] Doc. 514-1 at 12.
[23] *Id.*
[24] Doc. 514-3 at 14–15.
[25] *Id.* at 15.
[26] *Id.*

-4-

Case No. 17-md-2807
Gwin, J.

### d. Class Response to the Settlement

The claims administrator notified 5,085 potential-class-member financial institutions.[27] The administrator's website, which provides information to potential class members, received 4,056 visits as of September 15, 2022.[28]

By the end of the claims period, class members had filed 360 claims.[29]

Only two class members asked for exclusion from the class settlement.[30] No class members objected to the proposed settlement.[31]

## II. Legal Standard

Courts in the Sixth Circuit reviewing a proposed class action settlement evaluate seven factors to determine whether the settlement is "fair, reasonable, and adequate."[32] These factors are:

(1) the risk of fraud or collusion;

(2) the complexity, expense and likely duration of the litigation;

(3) the amount of discovery engaged in by the parties;

(4) the likelihood of success on the merits;

(5) the opinions of class counsel and class representatives;

(6) the reaction of absent class members; and

(7) the public interest.[33]

---

[27] Doc. 524-2 at 4.
[28] Id.
[29] Doc. 147 at 1–2.
[30] Doc. 135-1 at 14.
[31] Id.
[32] FED. R. CIV. P. 23(e)(1)(C).
[33] Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007) (hereinafter "UAW").

Case No. 17-md-2807
Gwin, J.

The proponents of a settlement bear the burden of proving that the settlement is fair, adequate, and reasonable.[34]

Similarly, when determining whether to approve an attorney's fee request, the Court's ultimate inquiry is whether that fee request is reasonable under the circumstances. Factors relevant to that reasonableness inquiry include:

(1) the value of the benefit to the class;

(2) the value of the services on an hourly basis;

(3) whether attorneys took the case on contingency;

(4) rewarding attorneys who produce societal benefits in order to maintain an incentive for others;

(5) the litigation's complexity; and

(6) the professional skill and standing of class and defense counsel.[35]

### III. Discussion

a. Proposed Settlement

The Court finds that the proposed settlement is fair, reasonable, and adequate to compensate the class.

The seven factors that the Sixth Circuit has recognized as relevant to determining a class settlement's fairness all weigh in favor of approving this settlement.

#### Complexity and Amount of Discovery Favors the Settlement

This case was highly complex. Plaintiffs brought negligence claims for a nationwide class of financial institutions. Unlike consumer class actions, this litigation involved legally sophisticated parties on both sides.

---

[34] *In re Dry Max Pampers Litig.*, 724 F.3d 713, 719 (6th Cir. 2013).
[35] *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996); *see also Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 280 (6th Cir. 2016) (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)).

Case No. 17-md-2807
Gwin, J.

Plaintiffs sought recovery for damages they incurred after Sonic's data breach compromised millions of credit and debit cards. Plaintiffs alleged damages for the cost of reissuing cards and reimbursing fraud that alerted accounts suffered.

Plaintiffs faced a difficult battle in proving that Sonic's affirmative acts, rather than the hack, proximately caused their injuries.

This case was both expensive to litigate and potentially exposed Sonic to hundreds of millions of dollars in potential liability.[36] Perhaps because of the high potential liability, Sonic Defendants vigorously opposed all of Plaintiff's efforts. Similarly, the parties engaged in extensive discovery involving both Plaintiffs' underlying factual claims and experts.

To summarize, Plaintiffs faced a significant risk that they would lose. However, Defendant Sonic faced extremely large damages exposure if Plaintiffs won.

### The Opinions of Class Counsel, Reactions of Class Representatives, and Reactions of Absent Class Members Factors Favor Approval

Both class and defense counsel argued in support of the settlement. No class representative has objected. Of over 5,000 potential class members, only two opted out of the settlement, and none objected.[37] Further, the class members are sophisticated financial institutions that can reliably determine whether a settlement furthers their best interests. The class members' positive reaction to the settlement therefore favors approval.

### Likelihood of Success on the Merits Favors the Settlement

This case's merits were uncertain. To establish liability at trial, Plaintiffs would have to prove that Sonic's actions, rather than a large transaction processor or the hacker,

---

[36] Plaintiff Redstone Federal Credit Union alone alleged over $1 million in damages from the breach. Doc. 197 at 11. And around 5,000 institutions received card brand alerts. Doc. 524-2 at 2.
[37] Doc. 524-2 at 14.

Case No. 17-md-2807
Gwin, J.

proximately caused their injuries. Because proximate causation presents a factual jury question, Plaintiffs' success was nowhere guaranteed.

Further, even assuming Plaintiffs succeeded, they still faced an appellate attack on their success up to and through trial. Inevitably, Defendant would have challenged the Court's class certification, the Court's denial of Defendant's motion to exclude a liability expert witness, and numerous evidentiary issues that were bound to arise at trial.

So, by settling, Plaintiffs avoided the real possibility that the class would be left with zero recovery. The likelihood of success on the merits (or the uncertainty of success), favors approving the settlement.

### Risk of Fraud or Collusion

The Court does not find any improper behavior on class counsel's part. First and foremost, the parties reached this settlement on the doorstep of trial and after facing significant defenses at every stage. Magistrate Judge Greenberg mediated the settlement discussions, which lasted three full days. The combination of the late stage of this litigation and a neutral and detached magistrate's involvement in settlement negotiations weighs against the possibility of fraud or collusion.

Finally, as the Court will discuss in further depth below, class counsel here have not requested an exorbitant fee amount. In fact, although class counsel sometimes request lodestar multipliers,[38] the fee counsel requests here is a significant discount from its lodestar calculations.

---

[38] *See, e.g.*, *In re Oral Sodium Phosphate Solution-Based Prods. Liability Action*, No. MDL 2066, 2010 WL 5058454, at *4–5 (N.D. Ohio Dec. 6, 2010).

Case No. 17-md-2807
Gwin, J.

For those reasons, the Court finds that the facts discussed above weigh against any finding that there was fraud or collusion in this settlement's formation.

### Public Interest

The final *UAW* factor—whether the settlement is in the public interest—also weighs in favor of approval.

The public interest strongly favors settling class actions.[39] Further, the public interest favors compensating attorneys for bearing the risk and expense of litigating class actions when necessary, instead of simply settling those cases at the first opportunity or not bringing those cases at all. As such, the public interest factors favor the proposed settlement.

For those reasons, the Court finds that the proposed settlement is fair, reasonable, and adequately compensates the class. The Court therefore **APPROVES** the proposed settlement.

### b. Attorney's Fee and Expenses

Class counsel propose using the lodestar method to calculate a reasonable fee in this case. Class counsel also argues that its proposed attorney's fee remains reasonable when cross-checked as a percentage of the total settlement.

### 1. Lodestar Calculation

The Court finds that class counsel's requested rates and number of hours are reasonable.

Class counsel calculates its lodestar using hourly rates between $295.00 and $1,295.00 for attorney work and rates between $170.00 and $350.00 for non-attorney

---

[39] *See UAW,* 497 F.3d at 632 (noting the "federal policy favoring settlement of class actions").

Case No. 17-md-2807
Gwin, J.

work.[40] The five law firms that have served as class counsel worked a total of 10,262.3 hours on this case, yielding a lodestar total of $6,095,072.50.

Despite its calculated lodestar, class counsel seeks only $1,639,000.54 in attorney's fees. This amounts to approximately 27% of the lodestar total. Applying this discount, class counsel essentially requests hourly rates between $79.65 and $349.65 for attorney work and rates between $45.90 and $94.50 for non-attorney work.

After consulting the LSI-adjusted Laffey Matrix[41] and considering the length and complexity of this case, as well as class counsel's performance during this litigation, the Court finds that all of class counsel's substantially discounted hourly rates and hours spent for this litigation are reasonable.[42]

### 2. Fund-Percentage Crosscheck

Cross-checking the $1.64 million requested fee against the fund-percentage calculation supports class counsel's request.

Defendant Sonic has agreed to pay up to $3 million to compensate class members' valid and timely claims. Defendant Sonic has also agreed to pay $500,000 in claims-administration costs and up to $30,000 in class-representative incentive awards.

Along with the $1.64 million in fees, class counsel seeks $560,999.46 in expenses.

---

[40] Doc. 522-2 at 14–18.
[41] *See See the Matrix*, LAFFEY MATRIX, http://www.laffeymatrix.com/see.html (last visited Oct. 13, 2022) (approving hourly rates between $343 and $997 for attorneys during this litigation's five-year pendency, based on an attorney's years of experience).
[42] *See Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 280-81 (6th Cir. 2016). The Court is satisfied that the hours provided are reasonable based on class counsel's monthly reports, as well as its past experience calculating attorney's fees, the length and complexity of this case, and class counsel's affidavits which were averred under penalty of perjury.

-10-

Case No. 17-md-2807
Gwin, J.

The total hypothetical common fund in this case is therefore $5.73 million. Class counsel's requested fee accounts for approximately 29% of the hypothetical common fund. This is within the ordinary attorney's fee range.[43]

### 3. Reasonable Fee

The Court finds that class counsel's hours and fee rates are reasonable. Further, the fund-percentage crosscheck shows that class counsel requests a reasonable portion of a hypothetical common fund.

For those reasons, the Court **APPROVES** $1,639,000.54 for class counsel's fee.

### c. Incentive Awards

The Court will approve reduced incentive awards for the named Plaintiffs. Each of the named Plaintiffs had extensive involvement in this litigation, including responding to discovery, reviewing filings, and depositions.

However, the Court believes that $10,000 is excessive to adequately compensate the named Plaintiffs for their role in recovering benefits for the class.[44] Incentive awards are most appropriate "when the award represents a fraction of a class representative's likely damages" to ensure that named and unnamed class members' incentives are aligned.[45]

Here, a $10,000 incentive exceeds an appropriate fraction of two of the three named plaintiffs' likely recovery under the settlement. The three class representatives, American Airlines Federal Credit Union, Redstone Federal Credit Union, and Arkansas Federal Credit

---

[43] See *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1013 (N.D. Ohio 2016) ("[T]wenty-five percent has traditionally been the benchmark standard [for percentage-of-the-fund fee awards], with the ordinary range for attorney's fees between 20–30%." (internal quotation marks and text modifications omitted)).
[44] See, e.g., *Hadix v. Johnson*, 322 F.3d 895, 898–99 (6th Cir. 2003) ("[I]ncentive awards are usually viewed as extensions of the common-fund doctrine, a doctrine that holds that a litigant who recovers a common fund for the benefit of persons other than himself is entitled to recover some of his litigation expenses from the fund as a whole.").
[45] *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013).

-11-

Case No. 17-md-2807
Gwin, J.

Union allege that they received Sonic-related alerts for about 7,000, 50,000, and 6,300 cards, respectively.[46] Even assuming every alerted-on card qualified for the $1.50 fraud compensation under the settlement,[47] American Airlines would recover $10,500 and Arkansas would recover $9,450. A $10,000 incentive award would essentially double these representatives' recovery.

Plaintiff Redstone, however, could theoretically recover up to $75,000 under the settlement. But class counsel does not say that Redstone deserves a greater award than the other named plaintiffs.

The Court therefore **APPROVES** reduced incentive awards of $7,500 each for Plaintiff American Airlines Federal Credit Union, Plaintiff Redstone Federal Credit Union, and Plaintiff Arkansas Federal Credit Union.

### d. Costs

Class counsel also seeks $560,999.46 in costs. The Court finds this amount reasonable given the length and complexity of this litigation. Further, class counsel provided the Court with detailed hours and expense reports each month.[48]

Because class counsel's costs were reasonable and well documented, the Court **GRANTS** class counsel's request for costs.

### e. Rule 23 Class Certification

Finally, the Court must ensure that the settlement's proposed class comports with Federal Rule of Civil Procedure 23's requirements for class certification. Here, the parties

---

[46] Doc. 197.
[47] American Airlines and Arkansas would realistically recover significantly less. Not all alerted-on cards required reissuance or fraud mitigation. *See* Doc. 293 at 5–6.
[48] The Court received monthly expense reports from January 31, 2020 to September 30, 2022.

Case No. 17-md-2807
Gwin, J.

propose to settle a nationwide class comprising all the putative nationwide class's claims arising from the data breach.[49]

> The Court previously certified a class of:
>
> All banks, credit unions, and financial institutions in the United States that received notice and took action to reissue credit cards or debit cards or reimbursed a compromised account from any card brand involved with the Sonic Data Breach.[50]

The Court reaffirms its previous reasoning for granting class certification under Rule 23(a) and Rule 23(b)(3).[51]

The Court thus finds that certifying a nationwide settlement class is appropriate for settlement.

---

[49] *See* Doc. 514-3 at 21.
[50] Doc. 348.
[51] *See* Doc. 69.

Case No. 17-md-2807
Gwin, J.

## IV. Conclusion

For those reasons, the Court **GRANTS** the parties' motion to approve the proposed settlement. The Court **CERTIFIES** the nationwide class as defined in the proposed settlement. The Court also **APPROVES** incentive awards of $7,500 each for Plaintiff American Airlines Federal Credit Union, Plaintiff Redstone Federal Credit Union, and Plaintiff Arkansas Federal Credit Union.

Finally, the Court **GRANTS** class counsel's motion for attorney's fees and costs.

IT IS SO ORDERED.

Dated: October 17, 2022         *s/ James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE